their earning, essentially daring the Plaintiffs to litigate by his statement, "[e]verything that has been done to this point can be proven and defended in a court of law."

4.61.4  Defendants and Koster had that opportunity to prove and defend "[e]verything that has been done to this point" at that moment in time.  Moreover, each time Flores or Clarkson demanded production of verifiable documentary evidence, and each time they asked for disclosure, Defendants should have disclosed and defended each time. Defendants, specifically Koster, Emre, Harlan, and Childs, could have taken those opportunities, and this instant opportunity, to provide what they claim they could do "in a court of law." Instead, they chose not to do so, and chose to risk everything on their bluff.

4.61.5  Koster Cannot Now Present Evidence and Seek a Defense as Koster forewent that opportunity to speak long ago and is estopped from doing so by equitable estoppel. Koster, et al., foreswore that duty and opportunity to produce verifiable documentary evidence before the Plaintiffs suffered accumulating irrevocable damage; this, notwithstanding non-performance of neither the ALICORN/IDLYC/BMW transaction nor the ALICORN/HALL/BEREA/CBS Gold Buy/Sell substitution.

4.61.6  The Defendants have far exceeded any reasonable period to respond and produce, and are barred by equitable tolling to now respond to Plaintiffs' demands or effect their fiduciary duty.  Defendants, particularly Koster counseled by Harlan, continued their conscious indifference to their fiduciary duty through silence,

concealment and non-disclosure of information legally due Plaintiffs. Koster and

Harlan knew they would be prohibited or otherwise be estopped[‡] from later making

certain related arguments, defenses or claiming certain related rights later.

   4.61.7  It is evident, given the aforementioned fact , Koster and Harlan took into

account their tortious and/or illegal acts, their reckless and wanton disregard of the

law, and the harm they had, or would continue to inflict upon others, and with scienter,

weighed the risks of their deeds. [*5,*6,*7,*9,*11,*12,*13,*14,*15,*16,*17,*18,*19,*20,*21,†2,†3,†4,†5,†7,†8,†8,†9,†10,†11.]


## 4.62  11/11/2010 - FLORES CALLS OUT KOSTER AND CONFRONTS "EVERYTHING CAN BE PROVEN AND DEFENDED IN A COURT OF LAW" CLAIM

   4.62.1  On November 11, 2010 2:56 PM CST, Flores affords Koster an opportunity

to correct and/or recant his declaration implicating "Richard [Hall] and two other

partners" in a conspiracy to remove Plaintiffs' ownership of their one-third interest in

their earnings from the Gold Transaction. Further, Flores asks Koster to point out

any inaccuracies of Flores' answers or statements to Clarkson's referral of counsel's

questions.

> Flores:
>
> "If your statement "/it was requested by both richard, and the other
> two partners to find a replacement for your 1/3rd /" in your email
> response is not true, please state so immediately, and consider such
> as legal opportunity to recant that statement. Otherwise, we take
> your statement as your acknowledgment that same is, by your
> affirmation by silence, a accurate, true and correct declaration of the
> facts. Our reliance on your statement may substantially affect those
> individuals. (Exhibit 90 at ①)

"If there is, in my response to the email inquiry by Ms. Vicki
Clarkson, of Calgary, Canada, on Nov 11, 2010 1:03 PM, a statement
that you believe is incorrect, please note exactly the inaccuracy of my
answer to her and/or her counsel's question." (id. at ②)

4.62.2   Estoppel by Silence. An estoppel arises because Defendants, specifically

Koster, counseled by Harlin, had an obligation and a duty to speak, and they

intentionally failed, or should have acted, and did not, or otherwise withheld

information for which they had the duty to provide the Plaintiffs. By Defendants'

silence that arises from their obligation their silence was maintained to intentionally

mislead that the Plaintiff would be deceived.  Koster and the Collective were given an

opportunity, to restate, recant, or otherwise respond and withdraw Koster's

statements and implications of Richard Hall, Eugene Fletcher and Winston J.  Cook in

the Fraud, Conversion, Conspiracy, Theft, Tortious Interference, Violation of the

Deceptive Trade Practices Act, Interference with and Existing Contract, by the use of

the public telecommunication wires to remove the Plaintiffs' ownership and rights to

the property known as the "one-third" interest in the returns(profits) of the Gold

Transaction.*5,*6,*7,*8,*9,*11,*13,*19,*20,‡1,‡7,‡8,‡9,‡2,‡4,


**4.63   11/12/2010 – KOSTER'S PATHOLOGICAL LYING AND *PSEUDOLOGIA
FANTASTICA.***

4.63.1   On Friday, November 12, 2010 10:40:04, Koster responds to Flores'

November 11, 2010 2:56 PM message (¶ 4.62) giving  Koster an opportunity to recant or

substantiate his claims in his November 11, 2010 at 1:23 PM message (¶ 4.61):

4.63.2  Koster, instead of recanting or affirming Flores' request to substantiate his claims, he initiates an *ad hominem* attack declaring that Flores did not make anyone aware of Clarkson's involvement until the middle of the year 2010. It is clear and incontestable that Koster lied and had made an intentionally false statement. His perjured statement is wholly contradicted by incontrovertible evidence which shows Koster, Emre and Childs, all, had full knowledge of Clarkson's involvement since December 18, 2009, elucidated below:

4.63.2.1  The Big Lie.

"Had you been upfront [*sic*] about her involvement from the get go, I would have more compassion for your situation."
(Exhibit 91 at ①)

An examination of a message sent by Kerim S. Emre unequivocally controverts Koster's statement. On the day of the Plaintiffs' engagement with the Alicorn PSP on Friday, December 18, 2009 at 10:15 PM, Kerim S. Emre (Exhibit 8 at ②) forwarded (*id.* at ①) a message from John Childs to Flores containing  Subject: Fwd: eFax message from "403 283 3223".

Emre stated, "Here is the copy of the [bank] wire confirmation message!" The message encloses the e-mail from John Childs (id. at ③) showing that Childs had received an internet facsimile message From: eFax "eFax" <message @ inbound.efax.com> (id. at ④) showing,  Subject: eFax message from "403 283 3223" - 2 page(s), Caller-ID: 403-283-3223 (id. at ⑤). The eFax message verifies eFax message origin as Fax Message [Caller-ID: 403-283-3223] (id. at ⑥), the number of pages and time the eFax message was received (id. at ●). The eFax is a copy of the

actual telephonic facsimile of the <u>TD Canada Trust FAX confirmation sent on December 18, 2009 at 3:48 PM MST</u> by <u>Wendy Hill-Tout (id. at ❾) at Voice Pictures to Scott Koster</u> (id at ❿).

The TD Canada Trust wire payment <u>confirmation clearly shows Vicki A. Clarkson as the funds sender and Scott Koster as the recipient</u> of the funds. The evidence shows that all were aware in the Collective,[67] as well as Koster, that Vicki Clarkson was involved in the PSP transaction from the beginning, and had known of Flores' partner's involvement for eleven months when he claimed that neither he nor the Collective was aware. Bank records will show the transfer to Koster's bank account and that he had received a telephonic facsimile of the TD Canada Trust wire confirmation as well. Koster's claim that no one else had been made aware is again false. The evidence is irrefutable, and shows Koster's claim was simply a bold face lie.

### 4.64  I ALWAYS TELL THE TRUTH STATEMENT AN INDICATION OF *PSEUDOLOGIA FANTASTICA.*[68]

> "I ALWAYS tell the truth, because it can be proven. Its easy to remember, and it does not come back to bite you. My integrity is one of the things that has always set me apart from other brokers out there, and its what has moved me

---

[67] ¶ 3.3, pg. 19.

[68] Dike CC, Baranoski M, Griffith EE (2005). "Pathological·lying revisited". The Journal of the American Academy of Psychiatry and the Law 33 (3): 342–9. PMID 16186198. http://www.jaapl.org/cgi/pmidlookup?view=long&pmid=16186198.; also, Hardie TJ, Reed A (July 1998). "Pseudologia fantastica, factitious disorder and impostership: a deception syndrome". Medicine, Science, and the Law 38 (3): 198–201. PMID 9717367; Newmark N, Adityanjee, Kay J (1999). "Pseudologia fantastica and factitious disorder: review of the literature and a case report". Comprehensive Psychiatry 40 (2): 89–95. doi:10.1016/S0010-440X(99)90111-6. PMID 10080254.

> forward into the position I am in today with my platforms,
> providers, and lenders. Im finding it difficult to continue to
> feel compassion about this situation, while it risks to affect my
> other clients in an adverse way." (Exhibit 91 at ②)

Given Koster's statement in light of the evidence provided in the Exhibits thus far, more explanation is unneeded. However, Koster's statements do shed light upon the man's veracity and that of his colleagues. Moreover, it demonstrates the credibility of Koster's representations of the truth and facts in these matters, if not all he may give tongue to in future assertions he may make to the Plaintiffs or in the course of litigation.

4.64.1.1  Koster embellishes upon his veracity by asserting the credibility of the financial instrument, Richard Hall's "group" and can prove the "offering " is 100% ... something.

> "… The paperwork is real, the SBLC offering is real, and I can prove
> what my company is offering to you 100%. (*id.* at ③)

> "… Richards group is also very real. I cannot comment on what they
> will be willing to offer. (*id.* at ④)

> "… I can however request a copy of the buy/sell agreement from Mr.
> Cook [Winston J. Cook], which I actually believe John [Childs] has a
> copy of." (*id* at ⑤)

It is noted here, that Koster asserts that Cook and Childs both possess a copy of the Gold Buy/Settlement; which, since the Plaintiffs or Flores owns a one-third interest, and Cook and Childs are in control of the financial instruments and have some control over the Gold Buy/Sell contract, such establishes and conveys a fiduciary duty upon Cook and Childs, thus begging the questions:

> Why hasn't Cook and Childs fulfilled their duty to
>
> inform the Plaintiffs or at least Flores of their status,
>
> and maintained a communication with the Plaintiffs?
>
> AND
>
> Why have they not produced for the Plaintiffs all the
>
> relevant documents legally due them?

To the date of the filing of this Complaint, neither Mr. Hall's group has been proven real nor the "paperwork" have proven to be real except for replication of their images, but nothing proven of substance.

As far as to the proof of what Koster's company is offering to the Plaintiffs, which is "100%", we leave such determination and inferences as to the composition of the 100%, to the wisdom of the Court.

## 4.65  11/15/2010 - GARY GRAB'S LETTER - NOTICE OF INTENT TO JOIN & PARTICIPATE IN SUIT AND DEMAND FOR PRODUCTION FROM KOSTER

On November 15, 2010 Flores receive correspondence from Gary Grab, Attorney at Law, counsel for Vicki Clarkson stating:

> "Upon reviewing with VC the issues in the above-styled cause of
> action and the circumstances related thereto, VC hereby wishes to
> hereby confirm its intention to join and participate in the
> abovementioned cause of action as a plaintiff ... In the event VC does
> not receive by close of business (5:00 pm MST) on Tuesday,
> November 16, 2010 "verifiable documents" unconditionally
> evidencing that certain Gold Buy / Sell transaction entered into with,
> inter alia, Scott Koster, Alicorn Capital Management and Kerim
> Emre, respectively, hereby expresses its desire to proceed to
> litigation and/or to pursue such other remedies available at law.

"… Please be advised that in the event the above mentioned documents are not provided to VC by close of business (5:00 pm MST) on Tuesday, November 16, 2010 VC hereby confirms that it will pursue all available remedies, including, but not limited to, immediate injunctive relief from the Court and to proceed expeditiously to discovery and trial." (Exhibit 92)

4.65.1 Flores' Tuesday, November 16TH Message Inquiring On Koster's Legal

Counsel and Clarifying Legal Status of He and Clarkson.

On Tuesday, November 16, 2010 1:43 PM, Flores sent a message to Koster

inquiring about his legal representation, clarification of his misunderstanding that

Vicki Clarkson was suing Flores, and again asking for the production of documents:

"Let me first ascertain that you haven't engaged legal counsel to represent you. Yes or No. I cannot discuss matters pertaining to this case if you have engaged an attorney to represent you. It appears you are saying you haven't engaged representation. Thusly: (Exhibit 93 at ①)

"Ms Clarkson is not bringing a "case" (a complaint {suit} or legal proceeding) against me. She could have filed a Petition to Intervene as of right under Fed. R. Civ. P. 24(a)(2) or permissively under Fed. R. Civ. P. 24(b)(2). et seq. (*id.* at ②)

"… I am asking you for a production of documents which you have stated on more than one occasion that could evidence your claims of veracity. That is all you've been asked to deliver. Clarkson, et al., will press the Plaintiffs into aggressive action if you do not comply with the request for documents.

    I don't understand why, if you have the verifiable documents that you say which will prove the legitimacy of the transaction. You stated you were going to provide the information to me. This would quickly bring this matter to a conclusion. (*id.* at ③)"

4.65.2 Emre Is Given Opportunity to Provide Proof of the Gold Buy/sell

Legitimacy.

On Tuesday, November 16, 2:24 PM CST, Flores sent a message informing Emre

of the Plaintiffs' status and urges Emre to provide proof of the settlement transaction.

> "… If you can provide information it would suffice, and we could
> move onto the settlement. I don't understand why Scott will not
> comply, and most likely, neither will the judge. Scott seems
> determined to force this situation into full blown litigation. If you can
> provide any proof of the legitimacy of this transaction, I urge you to
> do so, and let's just move on." (Exhibit 94)


**4.66  11/16/2010  4:26 PM - KOSTER RESPONSE TO PLAINTIFFS ATTORNEYS'**

**DEMAND FOR PRODUCTION OF DOCUMENTS.**

4.66.1  On Tuesday, November 16, 2010, Koster delivered by attachments to his

e-mail the following documents:

- Cook Business Services LLC & Alicorn Capital Management LLC, ENGAGEMENT LETTER (Vol. 4  Exhibit 98)
- Cook Business Services LLC & Alicorn Capital Management LLC ESCROW & WIRE INSTRUCTIONS TO BUSCH LAW CENTER (Exhibit 99)
- Cook Business Services LLC  FEE PROTECTION AGREEMENT OF 10/14/2010  (Exhibit 100)
- Interlink Global Messaging & Cook Business Services LLC  SBLC TRANSMITTAL SERVICE (Exhibit 101)
- Cook Business Services LLC  STANDBY LETTER OF CREDIT APPLICATION & October 19, 2010 FEE PROTECTION AGREEMENT (Exhibit 102)
- Winston Cook $10,000,000 USD SBLC TRANSMITTAL VIA MT760 Facilitated by Interlink Global Messaging (Exhibit 103)
- Winston Cook  SBLC TEMPLATE & MT760 SBLC TEMPLATE (Vol. 5 Exhibit 104)
- BEREA FINANCIAL CONSULTING & MANAGEMENT AGREEMENT,  COOK BUSINESS SERVICES LLL/Winston J. Cook - INVESTOR & Berea Inc/Christine Wong-Sang - PRINCIPAL (Exhibit 105)

4.66.2 11/16/2010 4:26 PM - Documents Produced Show Breaches of Fiduciary Duties, Bad Faith, and Fraud by Koster, Hall and Cook. The documents delivered by Koster demonstrate management and control over Plaintiffs' property or property rights by ALICORN, BEREA, CBS, their principals and agents, clearly establishing fiduciary duty and obligations. The documents further reveal Flores' as a beneficiary of the SBLC. From the documents, it appears the principals and/or individuals having influence and control of the Gold Transaction removed the Plaintiffs as beneficiaries form the transactions, whom they had previously requested removal from the transaction in retaliation for Plaintiffs' pursuit of litigation and engagement of federal officials, according to Koster.[69] The documents do not show Flores participation in the final Gold Transaction. Instead it appears Koster, counseled by Harlan, had with the cooperation of Richard Hall and Winston J. Cook, removed Flores from the actual benefits of the gold profit part of the Gold Transaction. Rather, they had conspired to pay the Plaintiffs only a rebate on one-third of the SBLC face value instead of the revenues of the gold sale.

Moreover, what the documents divulged, is that both Richard Hall and Winston J. Cook supervised, managed, controlled or otherwise oversaw the entire Gold Transaction, fully aware that Flores was a client/investor. Hall, and Cook never provided any status either verbally or by written communication of the proceedings of the business enterprise. They both had a fiduciary duty as did Koster to inform and maintain the duty to inform and disclose information critical to the Plaintiffs, but their

---

[69] ¶ 4.59.4, pg. 122

fiduciary's duties go beyond mere fairness and honesty; they obliged Koster, Hall and

Cook to further the beneficiary's best interests. Thus, the fiduciaries of the

ALICORN/HALL/BEREA/CBS Enterprise's Gold Transaction are not entitled to the

profits from their bad faith and breach of fiduciary duty.[70] Richard Hall, Christine

Wong-Sang, Vladimir Pierre-Louise, Eugene Fletcher, Winston J. Cook, Scott A.

Koster, Kerim Emre, John Childs, Thomas P. Harlan, their related agents, partners,

companies, &c. are not entitled to any of the revenues or earnings ensuing out of the

Gold Transaction.

    4.66.3  Richard Hall, Christine Wong-Sang, Vladimir Pierre-Louise, Eugene

Fletcher, Winston J. Cook, Scott A. Koster, Kerim Emre, John Childs, Thomas P.

Harlan breached their fiduciary duties through Silence, Concealment, Beach of

Contract for Nonperformance, Breach of Common Law Duty of Good Faith,

Intentional Misrepresentation, Willful Omissions, Fraud by Concealment, and

Conspiracy to enact their tortious conduct and depriving that which was legally due

Plaintiffs. They are not entitled to any of the earning, profits, or otherwise any

---

    [70] *International Bankers Life Insurance Co. v. Holloway*, 368 S.W.2d 567, 576-77 (Tex. 1963).
Fiduciaries who breach their duty forfeit all right to compensation, even if they did not profit from the
breach of fiduciary duty.

It is beside the point for either Turner or Corbett to say that Kinzbach suffered no damages because it
received full value for what it has paid and agreed to pay. A fiduciary cannot say to the one to whom he
bears such relationship: You have sustained no loss by my misconduct in receiving a commission from a
party opposite to you, and therefore you are without remedy. It would be a dangerous precedent for us to
say that unless some affirmative loss can be shown, the person who has violated his fiduciary relationship
with another may {138 Tex. 574} hold on to any secret gain or benefit he may have thereby acquired. It is
the law that in such instances if the fiduciary "takes any gift, gratuity, or benefit in violation of his duty, or
acquires any interest adverse to his principal, without a full disclosure, it is a betrayal of his trust, and a
breach of confidence, and he must account to his principal for all he has received." *United States v. Carter*,
217 U.S. 286, 30 Sup. Ct. 520, 54 L. Ed. 775, 19 Am. Cas. 594. *See* also *Ash v. A. B. Frank Co.*, 142 S. W. 42;
*Armstrong v. O'Brien*, 83 Texas 635, 19 S. W. 268.

revenues from the Gold Transaction Koster and Harlan knew they would be

prohibited by equitable estoppel particularly Promissory Estoppel, Estoppel by

Non-disclosure, Estoppel by Silence, Estoppel by Estoppel by Misrepresentation, or

otherwise be estopped from later making certain related arguments, defenses or

claiming certain related rights later.  By their breach of fiduciary duty, Richard Hall,

Christine Wong-Sang, Vladimir Pierre-Louise, Eugene Fletcher, Winston J.  Cook,

Scott A.  Koster, Kerim Emre, John Childs, Thomas P.  Harlan, forfeit all right to

compensation from the Gold Transaction nor may they benefit from the SBLC

instrument(s) identified or unidentified related in any way to the transaction.[71]
(*6,*7,*10,*11,*13,*19,‡1,‡2,‡4)


**4.67  11/17/2010 1:13 AM - DISCOVERY OF AUGUST 16TH & OCTOBER 18TH**

**DOCUMENT FORGERIES IN SECOND DOCUMENT SET DELIVERY†7,†8,†8**

   4.67.1  On Wednesday, November 17, 2010 1:13 AM, Koster, early Wednesday

morning, delivered a second set of documents that included:

>    (1)  {1[ST]} PARTNERSHIP TERMINATION AND WIND-UP
> AGREEMENT AND MUTUAL RELEASE (August 16TH Original
> Signed & Sealed Document – "1ST Wind-up Agreement"  Exhibit 107)

>    (2)  {1ST} WIND-UP AGREEMENT SOLO PAGE FORGERY
> (August 16[TH] "1ST Wind-up Agreement Page 4 Document Forgery")
> (Exhibit 108)

>    (3)  {2[ND]} PARTNERSHIP TERMINATION AND WIND-UP
> AGREEMENT AND MUTUAL RELEASE ATTACHMENT "A"
> STRUCTURE OF FINANCIAL INSTRUMENT (October 18[TH]
> "2ND Wind-up Agreement Document Forgery") (Exhibit 109)

---

[71]  *See,* Texas Supreme Court, *International Bankers Life Insurance Co.,* supra, FN 70

4.67.2  The August 16TH document forgery is fully described at ¶ 4.43, pg. 100, although the August 16TH document forgery was not discovered until Koster delivered all three of the above documents over the wires by Internet e-mail to Flores on November 17, 2010 at 1:13 AM.

4.67.3  The October 18TH Document Forgery.  Upon examination of the October 18TH document forgery (Exhibit 109) the Plaintiff discovered that document's third page, the signature page had been forged.  The original document had Flores' initials inscribed on the first two pages, and Flores had placed a type written series of vertical bars, "| ", in the blank space at the bottom of the second page, which overflowed two additional vertical bars onto the original third page, the original signature page.

Plaintiffs discovered the forged signature of Ivan Santos beneath Flores' signature on the third page. Next, Plaintiffs noted that, that Flores had not even sent his signed copy to Koster until 12:03 PM CST (18:03 GMT) on October 18TH which was 1:03 AM, the 19TH of October in Manila, Republic of the Philippines where Ivan Santos resides.[72] Yet, Mr. Santos' signature shows he signed the same original document on the same day.

Either Koster forged Santos' signature, or Koster is the first person to accomplish the unraveling of the unknown laws of physics, and accomplished backward time travel to have Santos sign on the same day in Manila.

---

[72]  ¶ 4.49.4 on page 113; see also Exhibit 81

4.67.4  Koster's forgeries of both the <u>August 16TH "1ST Wind-up Agreement Page 4</u> <u>Document Forgery"</u> and the <u>October 18TH "2ND Wind-up Agreement Document</u> <u>Forgery"</u> affected a monetary transaction value of millions of dollars that was made in a direct offer and sale of a commodity security. These forged financial contract instruments were transmitted by the use of the public regulated communications wires in interstate commerce over the Internet, and may well be violations of State and federal crimes, and predicate acts, elements of racketeering.[*7,*8,*9,*11,*16,*18,15,17,19,15]


**4.68  11/22/2010 - INTERNAL FINDINGS OF PLAINTIFFS' ATTORNEYS.**

4.68.1  On Monday, November 22, 2010 9:01 PM CST, Scott Koster asked to be kept informed and have Plaintiffs' Attorneys copy him on findings of their internal investigation.  (Exhibit 111)

4.68.2  On Monday, November  22, 2010  11:18 PM, Flores wrote to Koster informing him that:

> "… The buy/sell document was requested however never received.  Ms. Clarkson's attorney is still waiting for this document. Please forward immediately, or advise which of the documents below is representing the buy/sell … *&c.*"


4.68.3  Warning to Koster Not to Interfere with Gold Transaction to Deter Investigation and Discovery Processes – Hall and Company Inextricably Intertwined with the Activities of the Collective.

On Tuesday, November 23, 2010 1:25 PM, Flores responds to Koster's November 22, 2010 9:01 PM message:

"... We will only provide the portions of the finding as the information is attorney work-product that has substantive import relating to civil and criminal implications. We will only divulge that portion that you are or should have been aware of since you have been the primary actor with access to all of the information for which we only obtained after disclosing our intention to secure information through injunction relief through the federal court.

"You are urged to complete the transaction keep it moving forward and not interfere with that process while we reform the settlement agreement in light of the evidence at hand and any other forensic evidence through our discovery and investigations.

"We are unconcerned about Richard Hall, Vladimir Pierre-Louise, or Christine Wong-Song, /inter alios/, interfering with the transaction completion as we have clear and convincing evidence that they are inextricably intertwined with this and other Alicorn financial transactions and same have evolved a substantial nexus as to operate as a financial syndicate with common purpose, interest and objectives ..."

### 4.69  12/1/2010 - DELIVERY OF TEXAS DECEPTIVE TRADE PRACTICES ACT NOTICE & EVIDENTIARY FINDINGS

4.69.1  On Wednesday, December 01, 2010 11:19 AM, Flores delivered by Certified Electronic Mail (E-mail) and a printed original of Deceptive Trade Practices Notice & Findings fr 1ST Examination of the Scott Koster and Kerim Emre.  (Exhibit 114)

4.69.2  Plaintiffs incorporate by reference from the Deceptive Trade Practice Act Notice for IDLYC-BMW Majestic and substitution Gold Buy/Sell Contract (DTPA Notice and December 1, 2010 Findings from the 1ST Examination of the Evidence rendered in the records of the Court by Plaintiffs' Exhibits Volume 5, Exhibit 115 and Exhibit 116 respectively.  The facts and allegations contained in all of the paragraphs of the aforesaid instruments in Exhibits "115" and "116" are hereby re-averred and

re-alleged, for all purposes, and incorporated with the same force and effect as if set

forth verbatim herein.

4.69.3  The aforementioned TEXAS DECEPTIVE TRADE PRACTICES ACT

NOTICE & EVIDENTIARY FINDINGS were delivered to Scott Anthony Koster

and Kerim S.  Emre by certified email and U.S. Postal Service certified mail on

December 1, 2010.[73]

4.69.4  Pursuant to Fed. R. Evid. 201 Plaintiffs request Court's Judicial Notice of

the Deceptive Trade Practice Act Notice for IDLYC-BMW Majestic and substitution

Gold Buy/Sell Contract (DTPA Notice) and December 1, 2010 Findings from the 1ST

Examination of the Evidence


4.70  1/21/2011 - THOMAS HARLAN EXTOLLS HIS PROFESSIONAL

EXPERIENCE AND ACKNOWLEDGES RECEIPT AND REVIEW OF TEXAS

DTPA NOTICE.

4.70.1  On Friday, January 21, 2011 12:56 PM CST, Thomas P.  Harlan, wrote to

Flores copying Gary Grab, attorney for Vicki Clarkson, and Vicki Clarkson, the

following:

> " ... I have been involved in hundreds if not thousands of lawsuits,
> including a number in Texas ...
>
> "... Finally, please be advised that while you have sent out the
> required noticed under Texas' Deceptive Trade Practices Act, you
> have not negotiated in good faith to settle this matter. We are not
> going to work with or sign anything remotely like the "Settlement
> Agreement" or other items that you have created. We will have a

---

[73]  *See,* Exhibit 116, Texas DTPA Notice Certificate of Service

simple, straightforward settlement agreement that is customarily used in cases like this. Again, if there is an offer, please put it out there. We are more than willing to work with you to bring this matter to a reasonable conclusion." (*emphasis added*) (Exhibit 122)

4.70.2  On Friday, January 21, 2011 2:14 PM CST, Flores responded to Harlan's 12:56 PM message.

Flores:

"Dear Mr. Harlan --
    It appears you have made some false presumptions, out of conversation with your client and a unreliable source perhaps. I have not participated as a broker in any capacity.  The "$10k" which you reference, is no part of the Koster/Alicorn et al. transaction and pre-discovery fishing will not provide credible facts.
    As far as criminal actions, such is not in our sphere to prosecute, and is wholly in the hands of appropriate authorities to effect responsive actions that which may be appropriate to the evidence at hand or result from ongoing investigations. Further related inferences neither warrant nor merit additional response.
    Unfortunately, we have experienced agreements with your client, but if you have something that would be acceptable to the Court, then certainly present it to us. Our demands have remained the same:
1) We want consideration for damages, knowing well that your client does not have the wherewithal to make us whole, but we would accept a structured settlement on a portion of direct and collateral damages would allow us to create financial mechanisms to recover a portion of the damages your client is liable.
2) In damage recovery for the IDLYC transaction and the promised replacement by means of an alternative financial mechanism of equivalent worth such as Gold Buy/Sell or equivalent. Doesn't get much simpler.

LF"

4.70.3  Neither Harlan nor Koster have ever responded to Flores' January 21, 2011 2:14 PM message and have since withdrawn into their fraud and theft scheme.  Of far greater import and consequence, that brought about Harlan's response in behalf of Koster, is the failure of Koster, Harlan and Emre to resolve the <u>Deceptive Trade</u>

<u>Practice Act Notice for IDLYC-BMW Majestic and substitution Gold Buy/Sell</u>

<u>Contract (DTPA Notice)</u> and <u>December 1, 2010 Findings from the 1ST Examination of</u>

<u>the Evidence</u> with such utter pretermission.  The gravamen that embodies this issue,

is the Defendants' willful and reckless disregard for the law and rights of others, their

unlawful and/or illegal acts, the unconscionable harm they have intentionally inflicted,

and their malice.

4.70.4   As of the filing of this Complaint Koster and Emre have failed to resolve

DTPA notice or attempt to resolve the demands of the December 1, 2010 DTPA

notice, nor have they tendered a settlement offer.  Moreover, Harlan clearly stated the

Defendants' intractable position: "We are not going to work with or sign anything

remotely like the 'Settlement Agreement' or other items that you have created."

(Exhibit 122)

4.70.5   EXPIRATION OF TIME TO RESOLVE TEXAS DTPA.  Pursuant to

Section 17.505, Texas Business & Commerce Code, Defendants were served notice of

a Deceptive Trade Practices Act claim against them on Wednesday, December 1, 2010.

The requisite sixty (60) day period for Defendants to resolve this matter has since

tolled without any resolution nor attempt to resolve the claim as required of the

Defendants pursuant to TEX BC. CODE ANN. § 17.505 : Texas Statutes - Section

17.505: NOTICE; INSPECTION:

> (a) As a prerequisite to filing a suit seeking damages under Subdivision (1)
> of Subsection (b) of Section 17.50 of this subchapter against any person, a
> consumer shall give written notice to the person at least 60 days before
> filing the suit advising the person in reasonable detail of the consumer's
> specific complaint and the amount of economic damages, damages for

mental anguish, and expenses, including attorneys' fees, if any, reasonably incurred by the consumer in asserting the claim against the defendant ...

4.71  OPEN-ENDED CONTINUITY INVOLVING DISTINCT THREAT OF LONG-TERM ILLEGAL AND ABUSIVE ACTIVITY. The Defendants' acts establish an open-ended continuity incorporating the related predicates themselves involving a distinct threat of long-term illegal and abusive activity, where their acts are part of an ongoing and regular way of doing business and conducting or participating in an illegitimate ongoing enterprise, and pose a substantial threat to the public.

Based on the evidence presented in the certified Domestic Business Records incorporated herein contained in Exhibit Volumes 1-6 and best of Plaintiffs' knowledge and upon reasonable belief the foregoing was instituted or sustained through Conspiracy, Coercion, Extortion, Receiving the Proceeds of Extortion , Forgery, Obstruction of Justice, and that the Defendants' frauds and other tortious act were accomplished by the extensive use of not less than twelve counts, and likely twenty-seven counts of distinguishable acts of Wire Fraud,  and other racketeering activities which Defendants used in their strategic and tactical operations of the Syndicate and the ALICORN/HALL/BEREA/CBS Enterprise.

## § V  CAUSES OF ACTION

The allegations contained in all of the paragraphs of this Complaint are hereby re-averred and re-alleged, for all purposes, and incorporated herein with the same force and effect as if set forth verbatim herein.


### 5.1  1ST CAUSE OF ACTION – FRAUD IN THE INDUCEMENT

AGAINST:    Scott Anthony Koster, Kerim S. Emre, Thomas P. Harlan, John Childs,

                Mark Alan Gelazela, William Chandler Reynolds, Steven E. Woods,

                ALICORN CAPITAL MANAGEMENT LLC, IDLYC HOLDINGS

                TRUST LLC (USA), IDLYC HOLDINGS TRUST (NEW ZEALAND),

                BMW MAJESTIC LLC AND/OR THEIR AGENTS. John/Jane Doe(s)

                (the "Syndicate Defendants")

5.1.1    The allegations contained in all of the paragraphs of this Complaint are hereby re-averred and re-alleged, for all purposes, and incorporated herein with the same force and effect as if set forth verbatim herein.

5.1.2    Defendants made a material representation to Plaintiffs that was false, and at the time that the representation was made, they knew it was false or they made it recklessly, as a positive assertion and without knowledge of its truth. More precisely, Defendants' induced the Plaintiffs by misrepresentation which lead them to enter into a transaction with a false impression of the risks, in which, from the onset of the transaction Defendants never intended to fulfil their fiduciary duties, did breach their fiduciary duty, with the intent and foreknowledge that their fraudulent inducement

was wholly a tool by which they would later introduce, exercise and continue other frauds against the Plaintiffs. The Defendants deceitful conduct raises a substantial public interest to permit tort principles to apply and remedy this wrong where:

    (1)  all the elements of intentional misrepresentation are present;

    (2)  that the intentional misrepresentation occurred prior to contract formation; and

    (3)  that the fraud relates to a matter extraneous to the contract.

    Moreover, Defendants directly made, or by and through their agents made, the representations with the intent that Plaintiffs act on it, and Plaintiffs did act on it in reliance on the representation. Ultimately, the said material representation caused injury and damages to Plaintiffs when Defendants failed to provide the promised earnings in a timely manner and as promised, and in fact used the fraudulent inducement to perpetrate other frauds. Such fraud in the inducement was a proximate cause of Plaintiffs' damages.


## 5.2  2ND CAUSE OF ACTION – COMMON LAW FRAUD

    AGAINST:  All Defendants

    5.2.1    The allegations contained in all of the paragraphs of this Complaint are hereby re-averred and re-alleged, for all purposes, and incorporated herein with the same force and effect as if set forth verbatim herein.

    5.2.2    Defendants made a material representation to Plaintiffs that was false, and at the time that the representation was made, they knew it was false or they made it

recklessly, as a positive assertion and without knowledge of its truth and/or had a duty and obligation to instruct or advise another not to do so. More specifically, Defendants represented to Plaintiffs that they could acquire funding for the acquisition funding on time and in a sufficient amount that Plaintiffs would be able to purchase financial instruments necessary to collateralize Plaintiffs' loan from the primary loan funding for their film slate and related ancillary projects. Moreover, they made the representation with the intent that Plaintiffs act on it, and Plaintiffs did act on it in reliance on the representation, effectuating a detrimental reliance upon the Plaintiffs to the Defendants. Ultimately, the said material representation caused injury and damages to Plaintiffs when Defendants failed to provide the promised funding in a timely manner and as promised and in fact never paid out the gains, profits, earnings from Plaintiffs' investment funds.  Defendants' fraud was a proximate cause of Plaintiffs' damages.


## 5.3  3RD CAUSE OF ACTION – NEGLIGENT MISREPRESENTATION AND DECEIT

AGAINST: All Defendants

5.3.1    The allegations contained in all of the paragraphs of this Complaint are hereby re-averred and re-alleged, for all purposes, and incorporated herein with the same force and effect as if set forth verbatim herein.

5.3.2    Defendants made a false representation to Plaintiffs in the course of Defendants' business. Namely, that Defendants would timely and on certain terms,

provide funding through secured scheduled trades to Plaintiffs. Defendants did not

provide such funding in a timely manner nor on the terms promised. In making this

false representation, upon which Plaintiffs relied, Defendants did not exercise

reasonable care or competence in obtaining or communicating the information to

Plaintiffs and/or had a duty and obligation to instruct or advise another to do so. Such

negligent misrepresentation was a proximate cause of Plaintiffs' damages.

## 5.4  4TH CAUSE OF ACTION – FRAUD BY NON-DISCLOSURE

   AGAINST: All Defendants

   5.4.1   The allegations contained in all of the paragraphs of this Complaint are

hereby re-averred and re-alleged, for all purposes, and incorporated herein with the

same force and effect as if set forth verbatim herein.

   5.4.2   Defendants concealed from or failed to disclose certain facts to Plaintiffs,

which they had a duty to disclose. These facts were material and Defendants knew

that Plaintiffs were ignorant and did not have equal opportunity to discover them. As a

result of Defendant's deliberate silence regarding these facts, they intended to induce

Plaintiffs to take some action or refrain from acting. Plaintiffs relied on the

Defendants non-disclosure and were injured as a result of acting without knowledge of

the undisclosed facts.

   5.4.3   More particularly, Defendants concealed and/or had a duty and obligation to

instruct or advise another not to conceal from Plaintiffs the following facts prior to

Plaintiffs' reliance: that Defendants would not or could not provide the requested

funding in the time frame originally promised; that the funding would be provided on the same terms as the parties' prior investment agreement; and that Defendants would be required to meet certain benchmarks or conditions precedent before receiving funds from their earnings. Such fraud by non-disclosure was a proximate cause of Plaintiffs' damages.

## 5.5  5ᵀᴴ CAUSE OF ACTION – AIDING AND ABETTING FRAUD

AGAINST:   All Defendants

5.5.1   The allegations contained in all of the paragraphs of this Complaint are hereby re-averred and re-alleged, for all purposes, and incorporated herein with the same force and effect as if set forth verbatim herein.

5.5.2   Each of the Defendants knew about the schemes used to defraud the Plaintiffs and other PSP partners of the PSP and Gold Transaction as described in the Complain.

5.5.3   Each of the Defendants actively participated in the schemes to defraud by knowingly providing encouragement and substantial assistance in perpetration of the fraud, as described in this Complaint.

5.5.4   As a direct and proximate result of the Defendants' encouragement and substantial assistance in perpetration of the fraud, Plaintiffs suffered injuries, damages, or losses in an amount to be determined at trial.

5.5.5   Plaintiffs are entitled to punitive damages because the Defendants conduct was malicious, willful, wanton, intentional, and outrageous, evidencing evil motive,

reckless indifference to or reckless disregard for the rights of others; and, particularly Defendants Koster and Emre who failed to resolve the issues and demands set forth in the Texas  Deceptive Trade Practices Act notices served upon them and subsequently acknowledged by Thomas P.  Harlan representing Koster.


## 5.6  6TH CAUSE OF ACTION – BREACH OF CONTRACT

AGAINST: Scott Anthony Koster, Thomas P.  Harlan, Kerim S. Emre, and Alicorn Capital Management LLC.

5.6.1   The allegations contained in all of the paragraphs of this Complaint are hereby re-averred and re-alleged, for all purposes, and incorporated herein with the same force and effect as if set forth verbatim herein.

5.6.2   Scott Anthony Koster, counseled by Harlan , and Kerim S. Emre, individually and on behalf of Alicorn Capital Management LLC, agreed to timely and with agreed upon terms provide earning, or revenues to Plaintiffs related to the PSP investment in that the earned revenues would be provided on the same terms as the parties' investment agreement and that Defendants were required to meet certain benchmarks or conditions of the performance. The Defendants breached such agreement and failed to timely provide such revenues to the Plaintiffs' from the earning of the PSP on those terms and otherwise never performed on the Plaintiffs' investment. Defendants' breach caused substantial monetary damages to and ultimately, the accumulation of those, and addition damages and liabilities, and other

harm to Plaintiffs. Such breach of the contract was a proximate cause of Plaintiffs'

damages.

### 5.7  7TH CAUSE OF ACTION – BREACH OF FIDUCIARY DUTY & BREACH OF CONFIDENTIAL OR SPECIAL RELATIONSHIP

AGAINST:   Scott Anthony Koster, Kerim S. Emre, Thomas P. Harlan, John Childs,

Mark Alan Gelazela, William Chandler Reynolds, Steven E. Woods,

ALICORN CAPITAL MANAGEMENT LLC, IDLYC HOLDINGS

TRUST LLC (USA), IDLYC HOLDINGS TRUST (NEW ZEALAND),

BMW MAJESTIC LLC AND/OR THEIR AGENTS, John/Jane Doe(s).

(the "Syndicate Defendants")

5.7.1   The allegations contained in all of the paragraphs of this Complaint are

hereby re-averred and re-alleged, for all purposes, and incorporated herein with the

same force and effect as if set forth verbatim herein.

5.7.2   At times material to this Complaint, the aforementioned defendants

identified in ¶ 5.7 were Investment Advisors, and/or associated with Investment

Advisors, and/or Account Managers and/or Legal Counsel having closely-held

knowledge of, and intimately involved with the activities of the aforementioned

Defendants, within the meaning and contemplation of the securities laws of the United

States and the State of Texas, and therefore owed fiduciary duties to the Plaintiffs.

5.7.3   Defendants owed the Plaintiffs the following fiduciary duties, among others,

which they breached: (1) duty of loyalty and utmost good faith; (2) duty of candor; (3)

duty to refrain from self-dealing; (4) duty to act with integrity of the strictest kind; (5)

duty of fair, honest dealing; (6) duty of full disclosure; and (7) duty of loyalty to the

joint concern to, including duties to:

5.7.3.1  Not make false or misleading statements to the Plaintiffs of material

facts pertaining to their investments;

5.7.3.2  Not omit to make material statements which, under the circumstances,

were necessary to make other statements made to the Plaintiffs not misleading or

deceptive;

5.7.3.3  Correct false or misleading statements of material facts pertaining to

the Plaintiffs' investments that were made by others and which the Defendants

knew to be false or misleading;

5.7.3.4  Use reasonable care and the competence of a skilled Investment

Advisor when performing due diligence inquiries concerning the appropriateness

of the Plaintiffs' investments in the ALICORN/IDLYC/BMW Fund and the PSP

Fund and any and all of those funds' investments with sub-managers of Funds;

5.7.3.5  Use reasonable care and the competence of a skilled investment advisor

in managing and monitoring the Plaintiffs' investments in the

ALICORN/IDLYC/BMW Fund and the PSP Fund once made;

5.7.3.6  Ensure that the Plaintiffs' investments in the ALICORN/IDLYC/BMW

Fund and the PSP Fund were suitable for the Plaintiffs' given their circumstances;

5.7.3.7  Avoid and/or fully disclose conflicts of interests that could effect their

decisions in the management of the Plaintiffs' investments;

5.7.3.8  Warn the Plaintiffs if and when their investments were subjected to an undue risk of loss; and

5.7.3.9  Take such remedial steps as were available to them to minimize or recover the Plaintiffs' financial losses.

5.7.4    Defendants have breached their fiduciary duties owed to the Plaintiffs by, among other things:

5.7.4.1  Falsely stating to the Plaintiffs, and by confirming or acquiescing in the making of false statements to Plaintiffs by their business partners and consultants, that the ALICORN/IDLYC/BMW Fund employed a proprietary, and scheduled purchases and sales investment strategy with a written guarantee of the underwriting Deutsche Bank SBLC and that the ALICORN/IDLYC/BMW Fund was better suited to advance Plaintiffs' primary funding for film slate;

5.7.4.2  Failing to disclose to the Plaintiffs that any purported investing of their money by the ALICORN/IDLYC/BMW Fund was being conducted solely by the principals of IDLYC and BMW and not pursuant to any investment strategy being conducted or monitored by ALICORN, and by failing to disclose to the Plaintiffs that principals of IDLYC and BMW had complete custody and control of the money they invested in the ALICORN/IDLYC/BMW PSP Fund;

5.7.4.3  Failing to correct statements made to the Plaintiffs by Scott Anthony Koster, Thomas P. Harlan, Kerim S. Emre, John Childs, Mark Alan Gelazela, William Chandler Reynolds, Steven E. Woods, Alicorn Capital Management LLC, Idlyc Holdings Trust LLC (USA), Idlyc Holdings Trust (New Zealand), BMW

Majestic LLC that they knew to be false and misleading, namely, that any purported investing of the Plaintiffs' money by the ALICORN/IDLYC/BMW Fund was being controlled solely by Mark Alan Gelazela, William Chandler Reynolds, Steven E. Woods and not pursuant to any "propriety" investment;

5.7.4.4  Failing to employ reasonable care and competence in performing due diligence concerning the ALICORN/IDLYC/BMW Fund, and in managing or monitoring the Plaintiffs' investments in the ALICORN/IDLYC/BMW PSP Fund once they were made;

5.7.4.5  Causing the Plaintiffs to pay substantial management/broker fees of 16.7% of the investment plus 16.7% of the scheduled earnings payments relating to their investment in the ALICORN/IDLYC/BMW PSP Fund when, in fact, neither the Defendants nor Koster, Emre, Harlan and John Childs were performing any meaningful management, oversight, monitoring or control over those investments and the money purportedly invested by the Plaintiffs in the ALICORN/IDLYC/BMW PSP Fund was simply being transferred to Mark Alan Gelazela, William Chandler Reynolds, Steven E. Woods, Alicorn Capital Management LLC, Idlyc Holdings Trust LLC (USA), Idlyc Holdings Trust (New Zealand), BMW Majestic LLC;

5.7.4.6  Failing to satisfactorily disclose to the Plaintiffs the serious nature, scope and effect of conflicts of interest arising from their business relationships with Mark Alan Gelazela, William Chandler Reynolds, Steven E. Woods, Alicorn

Capital Management LLC, Idlyc Holdings Trust LLC (USA), Idlyc Holdings

Trust (New Zealand), BMW Majestic LLC;

5.7.4.7  Failing to warn the Plaintiffs that their investments with the

ALICORN/IDLYC/BMW PSP Fund were subject to undue risk of loss, even in

the face of reports questioning the legitimacy of Mark Alan Gelazela, William

Chandler Reynolds, Steven E. Woods, Scott Anthony Koster, Alicorn Capital

Management LLC, Idlyc Holdings Trust LLC (USA), Idlyc Holdings Trust (New

Zealand), BMW Majestic LLC purported investment strategy and the authenticity

of his reported investment returns;

5.7.4.8  Failing, following the public revelations about Mark Alan Gelazela,

William Chandler Reynolds, Steven E. Woods, Idlyc Holdings Trust LLC (USA),

Idlyc Holdings Trust (New Zealand), BMW Majestic LLC criminal conduct, to

disclose to the Plaintiffs the fact that they knew that their investments in the

ALICORN/IDLYC/BMW Fund had been placed entirely in the care and custody

of Mark Alan Gelazela, William Chandler Reynolds, Steven E. Woods, Alicorn

Capital Management LLC, Idlyc Holdings Trust LLC (USA), Idlyc Holdings

Trust (New Zealand), BMW Majestic LLC and failing to take any remedial actions

against their business partners, consultants and counsel, in order to recover or

minimize the Plaintiffs' financial losses; and

5.7.4.9  Making false or misleading statements to the Plaintiffs about Scott

Anthony Koster, Thomas P. Harlan, Kerim S. Emre, John Childs, Mark Alan

Gelazela, William Chandler Reynolds, Steven E. Woods, Alicorn Capital

Management LLC, Idlyc Holdings Trust LLC (USA), Idlyc Holdings Trust (New

Zealand), BMW Majestic LLC and their criminal conduct concerning the true

breadth of the ALICORN/IDLYC/BMW PSP Fund's exposure to loss,

additionally, and for such breach of Syndicate Defendants fiduciary duty, they

"forfeit all right to compensation, even if they did not profit from the breach of

fiduciary duty;"[74].

5.7.5    As a direct and proximate result of the Defendants' numerous breaches of

their fiduciary duties to the Plaintiffs, the Plaintiffs have suffered substantial

monetary damages and severe emotional distress.


## 5.8  8TH CAUSE OF ACTION – BREACH OF FIDUCIARY DUTY &

   BREACH OF CONFIDENTIAL OR SPECIAL RELATIONSHIP

AGAINST:    Scott Anthony Koster, Richard Hall, Winston Jerome Cook, Kerim S.

   Emre, John Childs, Thomas P. Harlan, ALICORN CAPITAL

   MANAGEMENT LLC, BEREA LLC, and COOK BUSINESS

   SERVICES LLC.  (the "Gold Transaction Defendants")

5.8.1    The allegations contained in all of the paragraphs of this Complaint are

hereby re-averred and re-alleged, for all purposes, and incorporated herein with the

same force and effect as if set forth verbatim herein.

5.8.2    Gold Transaction Defendants owed the Plaintiffs a fiduciary duty as a result

of a formal or informal fiduciary relationship of trust and confidence with Plaintiffs.

---

[74] See *International Bankers Life Insurance Co., ibid.* at  FN 70  pg. 137

Defendants, by refusing to timely provide promised returns on their investment schemes, and by forcing Plaintiffs into accumulated liabilities and damages, breached their fiduciary duties to Plaintiffs which resulted in injury to the Plaintiffs and/or benefit to the Plaintiffs.

5.8.3   Gold Transaction Defendants owed to the Plaintiffs the following fiduciary duties, among others, which they breached: (1) duty of loyalty and utmost good faith; (2) duty of candor; (3) duty to refrain from self-dealing; (4) duty to act with integrity of the strictest kind; (5) duty of fair, honest dealing; (6) duty of full disclosure; and (7) duty of loyalty to the joint concern.

5.8.4   After initial contact with Richard Hall, the Plaintiffs never received Hall's or his associates contact information from either Hall, or Cook, or Koster.  Koster never provided the contact information for Cook.  Cook was found by Flores on the social network "Facebook", where he contacted Cook and provided him with Flores' contact information.  Hall owed the Plaintiffs a fiduciary duty as he controlled the gold investment which was the substitution for the PSP performance failure and damages. Cook, owed the Plaintiffs a fiduciary duty as he controlled the SBLC security instrument and was well aware of the distribution and control of Plaintiffs earnings from the Gold Transaction.  Koster failed in the performance of his fiduciary duties as he had since December of 2009, and for such breach of Gold Transaction Defendants fiduciary duty, they "forfeit all right to compensation, even if they did not profit from the breach of fiduciary duty."[75]

---

[75] See *International Bankers Life Insurance Co., ibid.* at  FN 70  pg. 137

5.8.5   As a direct and proximate result of the Defendants Hall's, Cook's, and Koster's breaches of their fiduciary duties of care and loyalty to the Plaintiffs, the Plaintiffs have suffered substantial monetary damages and severe emotional distress.

## 5.9  9TH CAUSE OF ACTION – CONVERSION

AGAINST:   All Defendants

5.9.1   The allegations contained in all of the paragraphs of this Complaint are hereby re-averred and re-alleged, for all purposes, and incorporated herein with the same force and effect as if set forth verbatim herein.

5.9.2   Plaintiffs' have a right of ownership and entitlement to the immediate possession of investment funds paid to the PSP and all proceeds occurring out of the funds  generated by, earnings, revenues or profits derived by use of the Plaintiffs's investment funds from the ALICORN/IDLYC/BMW investment transaction and the Gold Transaction in an amount equal the original amount set forth in the original PSP agreement, notwithstanding additional damages.

5.9.3   The Plaintiffs' investment funds were placed in the custody of the Syndicate Defendants for the specific conditions identified in ¶¶ 4.5.1 - 4.5.2, pg. 41, investing funds in the PSP that was intended or compensating the PSP partners pursuant to the terms of set forth in contracts identified above.

5.9.4   Defendants diverted and misappropriated portions of Plaintiffs' investment funds for other and different purposes of using the funds for their own personal use

and then embezzled the from the use of the portions appropriated for the Plaintiffs investment.

5.9.5   The Defendants' misappropriation of the Plaintiffs' investment funds deprived Plaintiffs of their possessory rights to the investment funds.

5.9.6   As a result of the Defendants' conduct, Plaintiffs are entitled to recover the value of the converted funds, plus interest calculated from the time of conversion, plus all  earnings, revenues, and profits originally contracted, notwithstanding damages therefrom.

5.9.7   Plaintiffs are entitled to punitive damages because the Defendants' conduct was malicious, willful, wanton, intentional, and outrageous, evidencing evil motive or reckless indifference to the rights of others.


## 5.10  10TH CAUSE OF ACTION – TORTIOUS INTERFERENCE WITH EXISTING CONTRACTS

AGAINST:   Scott Anthony Koster

5.10.1  The allegations contained in all of the paragraphs of this Complaint are hereby re-averred and re-alleged, for all purposes, and incorporated herein with the same force and effect as if set forth verbatim herein.

5.10.2  Plaintiffs had contracts with Koster, in which Koster, counseled by Harlan, tortuously interfered[76] with the existing Gold Transaction substitution agreement.[77] Koster willfully and intentionally interfered with said contracts, which interference

---

[76]  ¶ 4.60.1, pg. 123
[77]  ¶ 4.41.3, pg. 98

proximately caused actual injuries, damages, or loss to Plaintiffs. More specifically, Plaintiff's acts of deception, negligent misrepresentation, common law fraud, fraud by non-disclosure, and breach of fiduciary duty more fully described herein tortuously interfered with contracts. Such tortious acts caused Plaintiffs damages and harm.

## 5.11  11TH CAUSE OF ACTION – TORTIOUS INTERFERENCE WITH PROSPECTIVE CONTRACT

AGAINST:   Scott Anthony Koster, Thomas P. Harlan, Kerim S. Emre, John Childs

5.11.1  The allegations contained in all of the paragraphs of this Complaint are hereby re-averred and re-alleged, for all purposes, and incorporated herein with the same force and effect as if set forth verbatim herein.

5.11.2  In addition to the  contracts, Plaintiffs had already entered into, there was a reasonable probability that Plaintiffs would have entered into various contracts or business relationships with Berea LLC to lever-up the Gold Transaction in order to complete the restoration of the non-performance of the ALICORN/IDLYC/BMW transaction.  Koster, counseled by Harlan, by his independently tortious or unlawful acts or omissions, including but not limited to acts of deception, negligent misrepresentation, common law fraud, fraud by non-disclosure, and breach of fiduciary duty more fully described herein intentionally interfered with these prospective business relationships and proximately caused Plaintiffs to suffer actual damage, loss, or harm.

5.12  12TH CAUSE OF ACTION – VIOLATIONS OF THE DECEPTIVE TRADE
PRACTICES ACT

AGAINST:   Scott Anthony Koster, Kerim S. Emre.

5.12.1  The allegations contained in all of the paragraphs of this Complaint are
hereby re-averred and re-alleged, for all purposes, and incorporated herein with the
same force and effect as if set forth verbatim herein.

5.12.2  The Defendants' conduct constitutes a breach of the Texas  Deceptive
Trade Practices Act, including:

5.12.2.1  Section 17.46(b). More specifically, the Defendants' actions constitute
breaches of the following provisions of Section 17.46(b):(5)Representing that goods
or services have sponsorship, approval, characteristics, ingredients, uses, benefits,
or quantities which they do not have or that a person has a sponsorship, approval,
status, affiliation, or connection which he does not;

5.12.2.2  Section 17.46(b):(7). Representing that goods or services are of a
particular standard, quality, or grade, or that goods are of a particular style and
model, if they are of another;

5.12.2.3  Section 17.46(b):(9). Advertising goods or services with intent not to
sell them as advertised;

5.12.2.4  Section 17.46(b):(12) Representing that an agreement confers or
involves rights, remedies, or obligations which it does not have or involve, or which
are prohibited by law; and

5.12.2.5  Section 17.46(b):(24) The failure to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed.

5.12.3  Plaintiffs relied on the Defendants' false, misleading, and deceptive acts to its detriment. Such actions and deceptive acts were a producing cause of damages to the Plaintiffs. The conduct of the Defendants as described herein was committed knowingly.

5.12.4  Defendants were actually aware, at the time of the conduct, of the falsity, deception, and unfairness of the conduct about which Plaintiffs complain.

5.12.5  Further, the conduct of the Defendants was committed intentionally. That is, the Defendants had actual awareness of the falsity, deception, or unfairness of their acts or practice described herein coupled with the specific intent that Plaintiffs acted in detrimental reliance on the falsity or deception by the Defendants. Finally, the Defendants misrepresentations and breaches of the Deceptive Trade Practices Act were unconscionable. Accordingly, Plaintiffs are entitled to treble damages pursuant to the Deceptive Trade Practices Act.

5.13  13 ᵀᴴ CAUSE OF ACTION – PROMISSORY ESTOPPEL

AGAINST:   Scott Anthony Koster, Kerim S. Emre, Thomas P. Harlan, John Childs,

Mark Alan Gelazela, William Chandler Reynolds, Steven E. Woods,

ALICORN CAPITAL MANAGEMENT LLC, IDLYC HOLDINGS

TRUST LLC (USA), IDLYC HOLDINGS TRUST (NEW ZEALAND),

BMW MAJESTIC LLC AND/OR THEIR AGENTS.  (the "Syndicate

Defendants")

5.13.1  The allegations contained in all of the paragraphs of this Complaint are

hereby re-averred and re-alleged, for all purposes, and incorporated herein with the

same force and effect as if set forth verbatim herein.

5.13.2  Plaintiffs plead, in the alternative if necessary, a cause of action against

Syndicate Defendants for promissory estoppel.

5.13.3  Syndicate Defendants made promises to Plaintiffs that include, but are not

limited to, the following:

5.13.3.1  representing to Plaintiffs that it would pay them earnings for their

investment; and

5.13.3.2  representing to Plaintiffs that the ALICORN/IDLYC/BMW

transaction PSP would pay regularly scheduled weekly earnings payments

beginning on or about December 4, 2010, to an escrow account and on or about

December 12, 2010, to Plaintiffs' designated bank account.

5.13.3.3   Syndicate Defendants made these promises in order to induce Plaintiffs to take and/or forego certain actions.  The promises made by the above Defendants and/or their representatives were reasonably calculated to induce Plaintiffs to take and/or forego certain actions.  Plaintiffs' reliance upon Defendants' promises was reasonably foreseeable to the Defendants.

5.13.4  The Plaintiffs, in fact, relied on each and every one of Defendants' promises and has taken definite and substantial action in reliance on the promises to their detriment.

5.13.5  Defendants' promises were the proximate cause of significant damages to Plaintiff, which are in excess of the minimum jurisdictional limit of this Court.  In order for injustice to be avoided, the Court must enforce the promises made to Plaintiff by Defendants and/or their agents. Under Texas law, "[t]he elements in a suit for breach of contract are: (1) a valid contract; (2) the plaintiff performed or tendered performance; (3) the defendant breached the contract; and (4) the plaintiff was damaged as a result of that breach".[78] The elements of a promissory estoppel claim are "(1) a promise, (2) foreseeeability of reliance thereon by the promisor, and (3) substantial reliance by the promisee to his detriment." In addition to these basic requirements for promissory estoppel, "Texas courts have also established a fourth requirement of a definite finding that injustice can be avoided only by the enforcement

_____

        [78]   *Godwin Gruber, P.C. v. Deuschle*, 261 F.Supp.2d 682, 690 (N.D. Tex.), affirmed, 87 Fed. Appx. 338 (5th Cir. 2003) (quoting *Aquila Southwest Pipeline, Inc. v. Harmony Exploration, Inc.*, 48 S.W.3d 225, 235 (Tex. App. – San Antonio 2001, pet. denied))

of the promise,"[79] and for such breach of Syndicate Defendants fiduciary duty, they "forfeit all right to compensation, even if they did not profit from the breach of fiduciary duty."[80]

    5.13.6  Under the analysis, a review of Plaintiffs' Original Complaint establishes that Plaintiffs have set forth allegations against Defendants that could establish all of the elements of a breach of contract claim and the alternative claim of promissory estoppel.  If the allegations are proved, Plaintiff should be entitled to recover against Syndicate Defendants.


**5.14  14TH CAUSE OF ACTION – PROMISSORY ESTOPPEL**

**AGAINST:**    Scott Anthony Koster, Richard Hall, Winston Jerome Cook, Kerim S. Emre, John Childs, Thomas P. Harlan, ALICORN CAPITAL MANAGEMENT LLC, BEREA LLC, and COOK BUSINESS SERVICES LLC.  (the "Gold Transaction Defendants")

    5.14.1  The allegations contained in all of the paragraphs of this Complaint are hereby re-averred and re-alleged, for all purposes, and incorporated herein with the same force and effect as if set forth verbatim herein.

    5.14.2  Plaintiffs plead, in the alternative if necessary, a cause of action against Defendants Scott Anthony Koster, Richard Hall, Winston Jerome Cook, Alicorn Capital Management LLC, Berea LLC, and Cook Business Services LLC.

---

[79] *Clardy Mfg. Co. v. Marine Midland Bus. Loans, Inc.*, 88 F.3d 347, 360 (5th Cir. 1996), cert. denied, 519 U.S. 1078 (1997) (internal quotation marks and citation omitted).

[80] See *International Bankers Life Insurance Co., ibid.* at  FN 70  pg. 137

5.14.3  Defendants Scott Anthony Koster, Richard Hall, Winston Jerome Cook, Alicorn Capital Management LLC, Berea LLC, and Cook Business Services LLC and/or their agents made promises to Plaintiff that include, but are not limited to, the following:

5.14.3.1  representing to Plaintiffs that it would pay them earnings for their investment; and

5.14.3.2  representing to Plaintiffs that the ALICORN/HALL/BEREA/CBS Gold Transaction it would pay regularly scheduled monthly earnings payment from the profit earnings from the sale of gold, to Plaintiffs' designated bank account.

5.14.3.3  Defendants Scott Anthony Koster, Richard Hall, Winston Jerome Cook, Alicorn Capital Management LLC, Berea LLC, and Cook Business Services LLC. and/or their agents made these promises in order to induce Plaintiffs to take and/or forego certain actions.  The promises made by the above Defendants and/or their representatives were reasonably calculated to induce Plaintiffs to take and/or forego certain actions.  Plaintiffs' reliance upon Defendants' promises was reasonably foreseeable to Defendants.

5.14.4  Plaintiffs, in fact, relied on each and every one of Defendants' promises and has taken definite and substantial action in reliance on the promises to their detriment.

5.14.5  Defendants' promises were the proximate cause of significant damages to Plaintiff, which are in excess of the minimum jurisdictional limit of this Court.  In

order for injustice to be avoided, the Court must enforce the promises made to

Plaintiff by Defendants and/or their agents.

5.14.6   Under the analysis, a review of Plaintiffs' Original Complaint establishes

that Plaintiffs have set forth allegations against both Defendants Scott Anthony

Koster, Richard Hall, Winston Jerome Cook, Alicorn Capital Management LLC,

Berea LLC, and Cook Business Services LLC. that could establish all of the elements

of a breach of contract claim and the alternative claim of promissory estoppel.  If the

allegations are proved, Plaintiff should be entitled to recover against Defendants Scott

Anthony Koster, Richard Hall, Winston Jerome Cook, Alicorn Capital Management

LLC, Berea LLC, and Cook Business Services LLC.


5.15  15TH CAUSE OF ACTION – INTENTIONAL INFLICTION OF
EMOTIONAL DISTRESS

AGAINST:    All Defendants

5.15.1   The allegations contained in all of the paragraphs of this Complaint are

hereby re-averred and re-alleged, for all purposes, and incorporated herein with the

same force and effect as if set forth verbatim herein.

5.15.2   The Plaintiffs reposed a high degree of trust in the Defendants with the

expectation that their substantial investments in the ALICORN/IDLYC/BMW PSP

Fund and the substituted  ALICORN/BEREA/CBS Gold Transaction settlement, and

that they would be managed and monitored by the Defendants with reasonable care,

competence and due diligence, and that the Defendants would deal with them with the utmost good faith, fairness and candor.

5.15.3  As set forth herein, the Defendants have breached their fiduciary duties owed to the Plaintiffs and have defrauded them, thereby causing them to suffer substantial financial losses in their productive professional years and at a time when they are heavily reliant on their investments, for Clarkson's real-estate and property development and investment partnership with Flores, and Flores reliance to produce motion picture productions.  As well, they caused Plaintiffs to suffer the mounting damages along with the increasing cost of delaying crews, talent, and affecting location availability; and Plaintiffs suffered irreversible damage to their reputations, and loss of credibility and trust with the "A" List crews and talent, and that would extend into the industry including unions, and local government officials who were working to create incentives for employment and education for their constituents and the economic welfare of their communities anticipating the arrival of the slate productions.  The Defendants have intentionally or recklessly engaged in extreme and outrageous conduct which was intended or substantially certain to inflict severe emotional distress upon the Plaintiffs.

5.15.4  As a result of the Defendants' extreme and outrageous conduct, the Plaintiffs have suffered and continue to suffer severe emotional distress.

5.16  16TH CAUSE OF ACTION – CIVIL CONSPIRACY

AGAINST:    All Defendants

5.16.1  The allegations contained in all of the paragraphs of this Complaint are hereby re-averred and re-alleged, for all purposes, and incorporated herein with the same force and effect as if set forth verbatim herein.

5.16.2  The Defendants combined, agreed and conspired with each other and with others to commit tortious acts against the Plaintiffs as set forth in all Causes of Actions in § V hereof.

5.16.3  It was an object and purpose of the conspiracy to conceal material information from the Plaintiffs and to provide them with false or misleading information concerning their investment of substantial sums of money in the ALICORN/IDLYC/BMW PSP Fund and the ALICORN/BEREA/CBS Gold Buy/Sell Fund, in violation of fiduciary duties owed by the Defendants to the Plaintiffs. It was further an object and purpose of the conspiracy to conceal material information from the Plaintiffs and to provide them with false or misleading material information concerning the extent to which the Plaintiffs' were exposed to financial losses related to fraudulent conduct by the Defendants, as well as the degree to which the Defendants' named and unnamed partners and business associates, including John/Jane Does were involved in that fraud, including wire fraud, and coercion, extortion, forgery, obstruction of justice, by and through their inextricable

relationships in their association-in-fact enterprises all in violation of fiduciary duties owed by the Defendants to the Plaintiffs.

5.16.4  In furtherance of the conspiracy, the Defendants engaged in overt actions and conduct as alleged in §§ III, IV & V hereof.

5.16.5  As a direct and proximate result of the Defendants' actions in committing the tortious conduct as set forth in herein, and because of their combination, agreement and conspiracy in furtherance of such tortious conduct, the Defendants are each liable for the damages thereby suffered by the Plaintiffs.

5.17  17TH CAUSE OF ACTION – SECURITIES FRAUD: CONTROLLING PERSONS LIABILITY  (15 U.S.C. §78t(a))

AGAINST:   All Syndicate Defendants

5.17.1  The allegations contained in all of the paragraphs of this Complaint are hereby re-averred and re-alleged, for all purposes, and incorporated herein with the same force and effect as if set forth verbatim herein.

5.17.2  At times material to this Complaint, the Defendants acted as controlling persons within the meaning and contemplation of Section 20(a) of the Securities Exchange Act of 1934 (15 U.S.C. §78t(a)).

5.17.3  At times material to this Complaint, Syndicate Defendants held high level positions in ALICORN, IDLYC, and BMW or were acting as agents of one another as described in ¶¶ 6.2 and 6.1, *supra*, and had active and direct participation in and

relationships in their association-in-fact enterprises all in violation of fiduciary duties owed by the Defendants to the Plaintiffs.

5.16.4  In furtherance of the conspiracy, the Defendants engaged in overt actions and conduct as alleged in §§ III, IV & V hereof.

5.16.5  As a direct and proximate result of the Defendants' actions in committing the tortious conduct as set forth in herein, and because of their combination, agreement and conspiracy in furtherance of such tortious conduct, the Defendants are each liable for the damages thereby suffered by the Plaintiffs.


5.17  17TH CAUSE OF ACTION – SECURITIES FRAUD (15 U.S.C. §78t(a) & 15 U.S.C. §78(j)(b) and SEC Rule 10b-5)

AGAINST:    All Syndicate Defendants

5.17.1  The allegations contained in all of the paragraphs of this Complaint are hereby re-averred and re-alleged, for all purposes, and incorporated herein with the same force and effect as if set forth verbatim herein.

5.17.2  At times material to this Complaint, the Defendants acted as controlling persons within the meaning and contemplation of Section 20(a) of the Securities Exchange Act of 1934 (15 U.S.C. §78t(a)15 U.S.C. §78(j)(b) and SEC Rule 10b-5: All Defendants).

5.17.3  At times material to this Complaint, Syndicate Defendants held high level positions in ALICORN, IDLYC, and BMW or were acting as agents of one another as described in ¶¶ 6.2 and 6.1, *supra*, and had active and direct participation in and

knowledge of false or misleading statements, as set forth in § IV, made by each other regarding the ALICORN/IDLYC/BMW and PSP financial transactions hereof.

5.17.4  165. At times material to this Complaint, Koster, Emre, and ALICORN, CAPITAL MANAGEMENT LLC, representing those in association with them in the Syndicate ("Syndicate Defendants"), were publicly identified and promoted on the Internet to prospective clients by the Syndicate Defendants as a financial services company as a pretense for their investment service, investment management and investment advisory.

5.17.5  The Syndicate Defendants each had the actual power to influence and control the content and dissemination of false and misleading statements made by Koster, Emre, Childs, Gelazela, Woods and ALICORN/IDLYC/BMW Fund or the PSP Fund to the Plaintiffs in order to prevent the dissemination of such false and misleading statements to Plaintiffs in order to prevent the dissemination of such false and misleading statements or to cause them to be corrected.

5.17.6  The Syndicate Defendants each had the actual power to influence and control the content and dissemination of false and misleading statements made by each other to the Plaintiffs in order to prevent the dissemination of such false and misleading statements or to cause them to be corrected.

5.17.7  By virtue of their status as controlling persons, the Syndicate Defendants are liable for damages suffered by the Plaintiffs as a direct and proximate result of wrongful conduct by the Syndicate Defendants.

5.18  18TH CAUSE OF ACTION - UNJUST ENRICHMENT / CONSTRUCTIVE TRUST

AGAINST: All Defendants

5.18.1  The allegations contained in all of the paragraphs of this Complaint are hereby re-averred and re-alleged, for all purposes, and incorporated herein with the same force and effect as if set forth verbatim herein.

5.18.2  A fiduciary and/or confidential relationship existed between each of the Defendants and the Plaintiffs.

5.18.3  The Defendants secured management and performance-based fees from the Plaintiffs in exchange for investment advisory services which were to be provided with reasonable care and competence, due diligence and the utmost good faith and fair dealing toward the Plaintiffs.

5.18.4  Upon information and belief, the Defendants received other valuable consideration, either directly or indirectly, from their consultants, partners or legal counsel client or from other sources under their management, control or influence, in exchange for their referral of investors such as the Plaintiffs or other funds purportedly controlled or managed by the Syndicate of Syndicate Defendants.

5.18.5  As set forth herein, the Defendants have breached their duties to the Plaintiffs and have defrauded them.

5.18.6  To prevent unjust enrichment, the Court should impose a constructive trust upon each of the Defendants in an amount equal to any pecuniary benefits they have

received, whether directly or indirectly, by virtue of the Plaintiffs' investments in the

ALICORN/IDLYC/BMW Fund or PSP Fund or ALICORN/BEREA/CBS Gold

Transaction Funds or other funds.

# § VI  OTHER PLEADINGS

## 6.1  AGENCY & AUTHORITY

6.1.1    The allegations contained in all of the paragraphs of this Complaint are hereby re-averred and re-alleged, for all purposes, and incorporated herein with the same force and effect as if set forth verbatim herein.

6.1.2    At all times material to this lawsuit, upon information and belief, Koster and Emre, were agents of Woods, Gelazela, and Reynolds, that Harlan was agent for Koster, ALICORN, and the Syndicate, and vice versa; that Koster was agent for Richard Hall, BEREA and its principals, and vice versa; that Koster was agent for Cook and CBS, and vice versa; and that Emre and Childs were agents for Koster, and vice versa.

6.1.3    Upon information and belief, Koster and Emre had actual authority to act on behalf of Woods, Gelazela, and Reynolds and *vice versa* at all relevant times material to this lawsuit. More specifically, upon information and belief, Woods, Gelazela, and Reynolds intentionally conferred upon Koster and Emre actual authority, intentionally allowed Koster and Emre to believe they had actual authority, or by a lack of due care, allowed Koster and Emre to believe they had authority to act on their behalf in dealing with Plaintiffs and *vice versa*. Moreover, Koster and Emre were acting within the scope of their agency when they committed the torts alleged herein, or when they reached any verbal agreement with Plaintiffs.

Further, upon information and belief, Koster and Hall had actual authority to act on behalf of Cook and *vice versa* at all relevant times material to this lawsuit.

6.1.4   Further, upon information and belief and in the alternative, Koster counseled by Harlan, and Emre had apparent authority to act on behalf of Woods, Gelazela, and Reynolds at all relevant times material to this lawsuit. More specifically, Woods, Gelazela, and Reynolds knowingly permitted Koster and Emre to hold themselves out as having authority or acted with such lack of ordinary care as to clothe Koster and Emre with the indicia of authority.

6.1.5   Plaintiffs justifiably relied on the actual or apparent authority of Koster and Emre and such justifiable reliance caused damages to Plaintiffs.


## 6.2 RATIFICATION.

6.2.1   The allegations contained in all of the paragraphs of this Complaint are hereby re-averred and re-alleged, for all purposes, and incorporated herein with the same force and effect as if set forth verbatim herein.

6.2.2   Upon information and belief, in the alternative, Koster and Emre ratified the acts and omissions of Woods, Gelazela, and Reynolds, either by word, act, or conduct after acquiring full knowledge of the act or omission. Moreover, the approval or ratification was given with the intention of giving validity to the acts or omissions of Koster and Emre.

6.2.3   Further, upon information and belief, in the alternative, Hall and Cook ratified the acts and omissions of Koster, Emre, Childs and either by word, act, or

conduct after acquiring full knowledge of the act or omission. Moreover, the approval or ratification was given with the intention of giving validity to the acts or omissions of Koster, Emre, Childs, Hall and Cook.

## 6.3 PIERCING THE CORPORATE VEIL/ALTER EGO.

6.3.1   The allegations contained in all of the paragraphs of this Complaint are hereby re-averred and re-alleged, for all purposes, and incorporated herein with the same force and effect as if set forth verbatim herein.

6.3.2   Upon information and belief Koster, Emre, Woods, Gelazela, Reynolds, ALICORN CAPITAL MANAGEMENT LLC, IDLYC HOLDINGS TRUST LLC (USA), IDLYC HOLDINGS TRUST LLC (New Zealand), and BMW MAJESTIC LLC, were mere tools or business conduits of one-another, or were operated as a single business enterprise; thus, each should be liable for the liability of the other as alter egos by piercing the corporate veil.

## 6.4 PLAINTIFFS PLEAD DELAYED DISCOVERY & INTENTIONAL INTERFERENCE

6.4.1   The allegations contained in all of the paragraphs of this Complaint are hereby re-averred and re-alleged, for all purposes, and incorporated herein with the same force and effect as if set forth verbatim herein.

6.4.2   With the discovery of evidence, information due Plaintiffs by Defendants during the course of business transactions, within Defendants' possession of Plaintiffs'

claims against Defendants despite the Plaintiffs' exercise of reasonable diligence on their part and required specificity already plead, it is difficult to imagine how Plaintiffs could plead breach of fiduciary duty, fraud and scienter with more specificity then they have thus far, before having the opportunity to conduct comprehensive discovery given the circumstances set forth in the facts.

## 6.5  PLAINTIFFS PLEAD DELAYED DISCOVERY FOR: <u>RACKETEERING (INVOLVING, *inter alia*, WIRE FRAUD, EXTORTION, FORGERY, OBSTRUCTION OF JUSTICE AND MONEY LAUNDERING)</u>

6.5.1   The allegations contained in all of the paragraphs of this Complaint are hereby re-averred and re-alleged, for all purposes, and incorporated herein with the same force and effect as if set forth verbatim herein.

6.5.2   As Rule 9(b)'s pleading requirements pending further discovery for allegations of wire fraud pursuant and discovery of co-conspirators (whom the Plaintiffs have reason to believe laundered monies to conceal the whereabouts of the Plaintiffs' and others' funds) to the Racketeer Influenced and Corrupt Organizations Act "because of the apparent difficulties in specifically pleading mail and wire fraud as predicate acts." *New England Data Servs.*, 829 F.2d at 290-91.9 See *North Bridge Assoc., Inc. v. Boldt*, 274 F.3d 38, 44 (1st Cir. 2001)(noting that in the RICO context, where "the specific information [concerning the defendants' use of interstate telecommunications facilities] is likely in the exclusive control of the defendant, the Court should make a second determination as to whether the claim as presented

warrants the allowance of discovery and if so, thereafter provide an opportunity to amend the defective complaint") (citing *Feinstein v. Resolution Trust Corp.*, 942 F.2d 34, 43 (1st Cir.1991)).

6.5.3   The Defendants, directly and indirectly, made use of the means and instrumentalities of interstate commerce and extensively used the domestic communication wires in connection with the Defendants acts, practices, and courses of business alleged herein within the Northern District of Texas, Calgary Alberta, Canada, and elsewhere.

6.5.4   Plaintiffs have clearly shown violations of State and Federal criminal law and requisite predicate acts that attach to 18 U.S.C. §§ 1961-1968  Civil RICO, including numerous counts of Coercion, Conversion, Extortion, Forgery, Obstruction of Justice, and wire fraud.

6.5.5   Plaintiffs have shown that Defendants have set up extensive structures that are not only interconnected domestically, but internationally, using influences impinging upon the public and the public fabric.  Their activities are of substantial import to the public and have existed for several years.  On information and belief based upon the evidence, submitted herewith, the Plaintiffs aver that the Defendants devised a schema and artifices to defraud the Plaintiffs and others to obtain monies by means of false and fraudulent pretenses, representations, or promises, and transmitted by means of wire by telephonic voice and over the Internet in both interstate and foreign commerce, writings, financial instruments and voice communications for the purpose of executing their schemes and various artifices in

violation of 18 U.S.C. Sec. 1343 (1988) Wire Fraud, Coercion, Conversion, Extortion, Forgery, and Obstruction of Justice as an integral part of their schema.

6.5.6   The RICO statute creates civil liability for those who engage in a"pattern of racketeering activity." 18 U.S.C. §§ 1962, 1964.  Though limited in discovery, the Plaintiffs have nonetheless established a pattern of racketeering activity, fulfilled the necessary predicate acts, and that the Defendants' pattern of racketeering and extent of those activities will very likely continue. Clearly, Plaintiffs have reached past any challenge for failure to satisfy the specificity requirement of Federal Rule of Civil Procedure 9(b), as such, Plaintiffs should be granted the leave to amend their complaint on the ground that it would serve the interests of justice and justly serve the public interest as well.

6.5.7   Plaintiffs believe discovery will reveal further support of  RICO claims and that until discovery is complete that it would be prudent to later seek leave to amend in light of newly discovered evidence; and, it is premature to plead RICO claims and file a RICO Case Statement, as the Plaintiffs are confident that the number of RICO defendants are likely to increase and the reach of racketeering activities will extend further.

Wherefore, Plaintiffs assert non-waiver of RICO claims and defer to such time as discovery is completed.

## 6.6  PLAINTIFFS PLEAD DELAYED DISCOVERY FOR: <u>FRAUD AND FRAUDULENT CONCEALMENT OF THIS FRAUD</u>

6.6.1   The allegations contained in all of the paragraphs of this Complaint are hereby re-averred and re-alleged, for all purposes, and incorporated herein with the same force and effect as if set forth verbatim herein.

6.6.2   On the part of Defendants, thus suspending the running of limitations as to all claims. Equitable tolling permits the Plaintiffs to avoid the bar of the statute of limitations if despite the exercise of all due diligence they are unable to obtain vital information bearing on the existence of their claims. In the instant case, the doctrine of equitable estoppel becomes consequential since the Defendants have clearly established active steps to prevent or severely restrain the Plaintiffs' ability to secure essential information regarding their illegal or unlawful actions with particularity.


## 6.7  PLAINTIFFS PLEAD DELAYED DISCOVERY FOR: <u>FRAUDULENT CONCEALMENT OF FACTS UNDER DEFENDANTS' CONTROL</u>

6.7.1   The allegations contained in all of the paragraphs of this Complaint are hereby re-averred and re-alleged, for all purposes, and incorporated herein with the same force and effect as if set forth verbatim herein.

6.7.2   Giving rise to this cause of action against Defendants including those unknown for which they have concealed information. Their concealment has prevented Plaintiffs from showing the extent of nexus or co-conspiracy in Defendants unlawful or

illegal transgressions, thus suspending the running of limitations and reasonable relaxation of Rule 9(b).

## 6.8  PLAINTIFFS PLEAD DELAYED DISCOVERY FOR:  <u>BREACH OF FIDUCIARY DUTY, INCLUDING THE DUTY TO DISCLOSE</u>

6.8.1   The allegations contained in all of the paragraphs of this Complaint are hereby re-averred and re-alleged, for all purposes, and incorporated herein with the same force and effect as if set forth verbatim herein.

6.8.2   Against Defendants, particularly Eugene Fletcher, thus suspending the running of limitations against all Defendants and reasonable relaxation of Rule 9(b).

## 6.9  PLAINTIFFS PLEAD DELAYED DISCOVERY FOR: <u>JOHN/JANE DOE(S) CONCERT OF ACTION</u>

6.9.1   The allegations contained in all of the paragraphs of this Complaint are hereby re-averred and re-alleged, for all purposes, and incorporated herein with the same force and effect as if set forth verbatim herein.

6.9.2   For conspiracy to conceal negligence, to commit fraud and to fraudulently conceal the acts and the existence of the fraud and conspiracy, thus suspending the running of limitations against all JOHN/JANE DOE Defendants and reasonable relaxation of Rule 9(b) Plaintiffs include:

6.9.2.1  John Doe 1 REDACTED from INSTANCE TYPE AND TRANSMISSION -notification of Original SWIFT (ACK); Message Reference

1010 09 ███████████████ 46579; Receiver HSBCHKHHHKH (HSBC)(ALL HK OFFICES AND HEAD OFFICE) HONG KONG HK; Transaction Reference Number ███/blc/a011/09 ... SIGNED BY AND BETWEEN [JOHN DOE 1 REDACTED] AND BMW MAJE, TRASK AND AFFILIATES ... [*dtd.*] 24/Dec/2009 10:08:30 AM

6.9.2.2  John Doe 2 (TRASK AND AFFILIATES LTD.) from INSTANCE TYPE AND TRANSMISSION -notification of Original SWIFT (ACK); Message Reference 1010 09 ███████████████ 46579; Receiver HSBCHKHHHKH (HSBC)(ALL HK OFFICES AND HEAD OFFICE) HONG KONG HK; Transaction Reference Number ███/blc/a011/09 ... SIGNED BY AND BETWEEN [JOHN DOE 1 REDACTED] AND BMW MAJE, TRASK AND AFFILIATES ... [*dtd.*] 24/Dec/2009 10:08:30 AM

6.9.2.3  John Doe 3 ("HSBC HK Banker") from x INSTANCE TYPE AND TRANSMISSION -notification of Original SWIFT (ACK); Message Reference 1010 09 ███████████████ 46579; Receiver HSBCHKHHHKH (HSBC)(ALL HK OFFICES AND HEAD OFFICE) HONG KONG HK; Transaction Reference Number ███/blc/a011/09 ... SIGNED BY AND BETWEEN [JOHN DOE 1 REDACTED] AND BMW MAJE, TRASK AND AFFILIATES ... [*dtd.*] 24/Dec/2009 10:08:30 AM

6.9.2.4  John Doe 4 (John Childs, San Francisco, CA)

6.9.2.5  John Doe 5 (Dr. Eugene Fletcher; Cook Business Services LLC, 5710 Melanie Trail, Atlanta, GA, 30349-2853 – Tel. (770)  969-2217)

## 6.10  PLAINTIFFS PLEAD DELAYED DISCOVERY FOR: <u>INCLUSION OF</u>
### <u>NOMINAL DEFENDANTS UNJUST ENRICHMENT</u>

6.10.1  The allegations contained in all of the paragraphs of this Complaint are hereby re-averred and re-alleged, for all purposes, and incorporated herein with the same force and effect as if set forth verbatim herein.

6.10.2  HSBC HONG KONG, thru HSBC Group Head Office (London, UK), thru HSBC Bank N.A. (USA).

6.10.3  Alexzander KOKER (Principal, Avira Investment Limited), AVIRA INVESTMENT LIMITED, Ghana, and

6.10.4  Terra KOSTER; 14391 80TH Street, Milaca, Minnesota 56353.

6.10.5  Chelsey REYNOLDS; 26 Marlwood Lane, Palm Beach Gardens, FL 33418.

## 6.11  PLAINTIFFS PLEAD: <u>VIOLATION OF SECTION 10(b) OF THE</u>
### <u>EXCHANGE ACT AND RULE 10-5</u>

6.11.1  The allegations contained in all of the paragraphs of this Complaint are hereby re-averred and re-alleged, for all purposes, and incorporated herein with the same force and effect as if set forth verbatim herein.

6.11.2  As a part of and in furtherance of their scheme, Defendants Woods, Gelazela, Reynolds, Koster, Harlan, and Emre and through ALICORN CAPITAL MANAGEMENT LLC, IDLYC HOLDINGS TRUST LLC (USA), IDLYC HOLDINGS TRUST LLC (New Zealand), and BMW MAJESTIC LLC, directly and

indirectly, prepared, disseminated or used contracts, written offering documents,

promotional materials, investor and other correspondence, and oral presentations,

which contained untrue statements of material facts and misrepresentations of

material facts, and which omitted to state material facts necessary in order to make

the statements made, in light of the circumstances under which they were made, not

misleading, including, but not limited to, those set forth above.

6.11.3  Defendants Woods, Gelazela, Reynolds, Koster, Harlan, and Emre  made

the above-referenced misrepresentations and omissions knowingly or grossly

recklessly disregarding the truth.

6.11.4  By reason of the foregoing, Defendants Woods, Gelazela, Reynolds, Koster,

Harlan, and Emre have violated and will very likely to continue to violate the

provisions of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5

thereunder [17 C.F.R. §240.10b-5]


6.12  PLAINTIFFS PLEAD: VIOLATIONS OF SECTION 17(a) OF THE
SECURITIES ACT

6.12.1  The allegations contained in all of the paragraphs of this Complaint are

hereby re-averred and re-alleged, for all purposes, and incorporated herein with the

same force and effect as if set forth verbatim herein.

6.12.2  Defendants Woods, Gelazela, Reynolds, Koster, Harlan, and Emre, directly

or indirectly, singly, in concert with others, in the offer and sale of securities, by use of

the means and instruments of transportation and communication in interstate

commerce and by use of the wires or mails, have: (a) employed devices, schemes or artifices to defraud; (b) obtained money or property by means of untrue statements of material fact or omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in transactions, practices or courses of business which operate or would operate as a fraud or deceit.

6.12.3  As part of and in furtherance of this scheme, Defendants Woods, Gelazela, Reynolds, Koster, Harlan, and Emre, directly and indirectly, prepared, disseminated or used contracts, written offering documents, promotional materials, investor and other correspondence and oral presentations, which contained untrue statements of material fact and which omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, including, but not limited to, those statements and omissions set forth in the foregoing.

6.12.4  Defendants Woods, Gelazela, Reynolds, Koster, Harlan, and Emre, made the above-referenced misrepresentations and omissions knowingly or grossly recklessly disregarding the truth.

6.12.5  By reason of the foregoing, Defendants Woods, Gelazela, Reynolds, Koster, Harlan, and Emre have violated, and are likely to continue in their violations of Sections 17(a) of the Securities Act [15 U.S.C. 77q(a).

### 6.13  PLAINTIFFS PLEAD: <u>VIOLATIONS OF SECTION 5(a) AND 5(c) OF THE</u> <u>SECURITIES ACT</u>

6.13.1  The allegations contained in all of the paragraphs of this Complaint are hereby re-averred and re-alleged, for all purposes, and incorporated herein with the same force and effect as if set forth verbatim herein.

6.13.2  Defendants Woods, Gelazela, Reynolds, Koster, Harlan, and Emre, directly or indirectly, singly and in concert with others, have been offering to sell, selling and delivering after sale, certain securities, and have been, directly and indirectly: (a) making use of the means and instruments of communication in interstate commerce and of the wires to sell securities, through the use of written contracts, offering documents and otherwise; (b) carrying and causing to be carried through the wires or mails and in interstate commerce by the means and instruments of transportation, such securities for the purpose of sale and for delivery after sale; and (c) making use of the means or instruments of transportation and communication in interstate commerce and of the wires or mails to offer to sell such securities.

6.13.3  As describe in the foregoing, the purported Alicorn/Idlyc/BMW private placement program and PSP was offered and sold to the Plaintiffs and others through a direct solicitation of investors. Plaintiffs can find no registration statements that have been filed with the Securities and Exchange Commission or are otherwise in effect with respect to their offerings.

6.13.4  By reason of the foregoing, Defendants Woods, Gelazela, Reynolds, Koster, Harlan, and Emre, have violated and it is likely they will continue to violate Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. 77e(a) and 77e(c)].

## 6.14  PLAINTIFFS PLEAD: <u>VIOLATIONS OF SECTION 1 5(a)(1) OF THE EXCHANGE ACT</u>

6.14.1  The allegations contained in all of the paragraphs of this Complaint are hereby re-averred and re-alleged, for all purposes, and incorporated herein with the same force and effect as if set forth verbatim herein.

6.14.2  At the times alleged in this Complaint, Defendants Woods, Gelazela, Reynolds, Koster, Harlan, and Emre have been in the business of effecting transactions in securities, as set forth in the foregoing fact and allegations, for the accounts of others.

6.14.3  Complaint, Defendants Woods, Gelazela, Reynolds, Koster, Harlan, and Emre made use of the telephonic and communications wires, and of the means and instrumentalities of interstate commerce to effect transactions in and to induce or attempt to induce the purchase of their security instruments.

6.14.4  At the times alleged in this Complaint, Defendants Woods, Gelazela, Reynolds, Koster, Harlan, and Emre were not registered with the Securities and Exchange Commission as brokers or dealers, as required by section 15(b) of the Exchange Act [15 U.S.C. §780(b)].

6.14.5  By reason of the foregoing, Defendants Woods, Gelazela, Reynolds, Koster, Harlan, and Emre have violated and it is likely they will continue to violate section 1 5(a)(1) of the Exchange Act [15 U.S.C. §78o(a)(1 )J.

## 6.15  CLAIM AGAINST THE NOMINAL DEFENDANTS AS CUSTODIANS OF INVESTOR FUNDS AND UNJUST ENRICHMENT

6.15.1  The allegations contained in all of the paragraphs of this Complaint are hereby re-averred and re-alleged, for all purposes, and incorporated herein with the same force and effect as if set forth verbatim herein.

6.15.2  As set forth in the forgoing, the Nominal Defendants have received funds and/or property derived through conversion or from the illicit proceeds obtained from the use of Plaintiffs' funds by one or more of the Defendants, which are the proceeds, or are traceable to the proceeds, of the Defendants unlawful activities, as alleged throughout the Complaint.

6.15.3  Nominal Defendants have obtained the funds and/or property alleged above as part of and in furtherance of Defendants' frauds, contractual defaults, torts and/or racketeering activities or their securities violations alleged throughout this Complaint and under the circumstances in which it is not just, equitable nor conscionable for them to retain the funds and/or property derived therefrom. As a consequence, Nominal Defendants

6.15.3.1  Vladimir PIERRE-LOUISE,

6.15.3.2  Christine WONG-SANG,

6.15.3.3  Tulin Emre,

6.15.3.4  IBalance LLC,

6.15.3.5  GODSPEEDS ENDEAVORS LLC,

6.15.3.6  GODSPEEDS INITIATIVE LLC,

6.15.3.7  GODSPEEDS ENTERTAINMENT,

6.15.3.8  SPIN ENTERTAINMENT

6.15.3.9  Alexzander KOKER (Principal, Avira Investment Limited), and

6.15.3.10  AVIRA INVESTMENT LIMITED (Ghana).

have been unjustly enriched.


## 6.16  PLAINTIFFS PLEAD: ESTOPPEL BY SILENCE

6.16.1  The allegations contained in all of the paragraphs of this Complaint are hereby re-averred and re-alleged, for all purposes, and incorporated herein with the same force and effect as if set forth verbatim herein.

6.16.2  Equitable estoppel arises because all Defendants, but especially Koster, counseled by Harlin, had an obligation and a duty to speak, and they intentionally failed, or should have acted, and did not, or otherwise withheld information for which they had the duty to provide the Plaintiffs. By Defendants' silence that arises from their obligation their silence was maintained to intentionally mislead so that the Plaintiff would be deceived.

6.16.3  Koster and the Syndicate members were given almost fifteen months to speak, and they intentionally failed, or should have acted, and did not, or otherwise

withheld information for which they had the duty to provide the Plaintiffs. Koster stated on several occasion that he could prove and defend his acts and provide all the documentary evidence in a court of law or other statements. However, Koster never did so to the date of the filing of this Complaint; far beyond a reasonable period to respond to demands for that which he should provided long before now, and surly beyond challenge to Plaintiffs' claim of equitable estoppel.

6.16.4  Koster and the Collective were given an opportunity, to restate, recant, or otherwise respond and withdraw Koster's statements and implications of Richard Hall, Eugene Fletcher and Winston J. Cook in the Fraud, Conversion, Conspiracy, Theft, Tortious Interference, Violation of the Deceptive Trade Practices Act, Interference with an Existing Contract, by the use of the public telecommunication wires to remove the Plaintiffs' ownership and rights to the property known as the "one-third" interest in the returns (profits) of the Gold Transaction. However, Koster never did so to the date of the filing of this Complaint; far beyond a reasonable period to respond to demands for that which he should provided long before now, and surly beyond challenge to Plaintiffs' claim of equitable estoppel.


## 6.17  PLAINTIFFS PLEAD ESTOPPEL BY ACQUIESCENCE.

6.17.1  The allegations contained in all of the paragraphs of this Complaint are hereby re-averred and re-alleged, for all purposes, and incorporated herein with the same force and effect as if set forth verbatim herein.

6.17.2  Defendants, specifically Koster, counseled by Harlin, continued their acquiescence to Plaintiffs' legal notifications arising after Flores gave numerous legal warnings to Defendants based on clearly asserted facts and specification of related legal principle, thereafter, neither Koster nor his counsel Harlin, respond within a reasonable period of time nor have they responded as of the filing of the filing of this Complaint. By acquiescing, the Defendants lost the legal right to assert the contrary of any and all issues presented to them and are now prohibited or otherwise estopped from making related arguments, defenses or claiming related rights. It is evident, given the aforementioned facts incorporated hereto, Defendants, particularly Koster and Harlin, took into account their tortious and/or illegal acts, their reckless and wanton disregard of the law, and the harm they had, or would continue to inflict upon others, and with scienter, weighed the risks of their deeds.

## 6.18  PLAINTIFFS PLEAD PRECLUSION FROM CLAIMING A BAR BY LIMITATIONS.

6.18.1  The allegations contained in all of the paragraphs of this Complaint are hereby re-averred and re-alleged, for all purposes, and incorporated herein with the same force and effect as if set forth verbatim herein.

6.18.2  Plaintiffs allege that the actions of all Defendants, because of their conduct, statements and promises, preclude them from claiming a bar by limitations to any of Plaintiffs' claims. Plaintiffs plead the doctrine of equitable estoppel.

## § VII  DAMAGES

**7.1  COMPENSATORY DAMAGES.** In Actual Damages as a direct and proximate result of the Defendants' conduct, the Plaintiffs have sustained damages well in excess of this Court's minimum $75,000 jurisdictional limit. More specifically, Defendants' conduct has proximately caused the following damages, both past and future: 1) lost profits; 2) loss of credit; 3) loss of credibility and reputations critical to Plaintiffs' functional viability and performance within financial, Plaintiff Clarkson's real-estate and Plaintiff Flores 'motion pictures industries; Plaintiffs' individual reputations, loss of goodwill; damages for interruption to and cessation of its business operations; consequential damages; and reliance damages. Plaintiffs' damages will exceed One Hundred -Eighty million U. S. Dollars ($180,000,000 USD) and likely in next several years, may exceed an amount greater than Two Hundred -Twenty million U.S. Dollars ($220,000,000 USD).

**7.2  EXEMPLARY DAMAGES.** Additionally, Plaintiffs seeks exemplary damages as a result of Defendants' willful, fraudulent, or malicious conduct.  Plaintiffs assert Punitive Damages pursuant to Texas Civil Practice & Remedies Code - Section 41.003 for harm with respect to Plaintiffs proof by clear and convincing evidence the elements of exemplary damages as provided by this section resulting from: 1)  fraud, 2)  malice, and 3) gross negligence.

**7.2.1   DTPA RELIEF & DAMAGES.** Plaintiffs are entitled the following relief pursuant to TEX BC. CODE ANN. § 17.50:

**Texas Statutes - Section 17.50: RELIEF FOR CONSUMERS:**

(b) In a suit filed under this section, each consumer who prevails may obtain:

(1) the amount of economic damages found by the trier of fact. If the trier of fact finds that the conduct of the defendant was committed knowingly, the consumer may also recover damages for mental anguish, as found by the trier of fact, and the trier of fact may award not more than three times the amount of economic damages; or if the trier of fact finds the conduct was committed intentionally, the consumer may recover damages for mental anguish, as found by the trier of fact, and the trier of fact may award not more than three times the amount of damages for mental anguish and economic damages; ...

(g) Chapter 41, Civil Practice and Remedies Code, does not apply to a cause of action brought under this subchapter.

(h) Notwithstanding any other provision of this subchapter, if a claimant is granted the right to Koster and Emre a cause of action under this subchapter by another law, the claimant is not limited to recovery of economic damages only, but may recover any actual damages incurred by the claimant, without regard to whether the conduct of the defendant was committed intentionally. For the purpose of the recovery of damages for a cause of action described by this subsection only, a reference in this subchapter to economic damages means actual damages. In applying Subsection (b)(1) to an award of damages under this subsection, the trier

of fact is authorized to award a total of not more than three times actual damages, in accordance with that subsection.

## 7.3  PRE- /POST- JUDGMENT INTEREST & ATTORNEYS' FEES.

Because of the Defendants' intentional infliction of emotional distress above-described, and continued distress brought upon the Plaintiffs, they cannot reasonably detach themselves to effectively prosecute this action past discovery into trial and therefore Plaintiffs shall retain other attorneys to do so. Wherefore, Plaintiffs  also seeks pre- and post-judgment interest, attorneys' fees not excluded by DTPA, and taxable costs of court.

## § VIII  REQUEST FOR ORDER PROHIBITING DESTRUCTION

## OR SPOLIATION OF EVIDENCE

Plaintiffs request the Court immediately issue an ORDER instructing the Defendants not to destroy, discard or spoil any documents or records, whether written, recorded, or stored electronically, that may be or may have become relevant to any issue in this suit.

## § IX  PRAYER

WHEREFORE, Plaintiffs respectfully pray, for these reasons, that Defendants be

served and cited to appear and answer herein, and for the following relief:

1) Damages in an amount to be proven at trial, including but not limited to

compensatory and consequential damages;

2) Treble damages where appropriate under Texas TEX. BUS. & COM. CODE § 17.43

3) Restitution;

4) The imposition of a constructive trust on all monies provided by the Plaintiffs to the

Defendants and all assets acquired with such funds;

5) Equitable accounting, including accounting to Plaintiffs for any and all gains, profits,

benefits, gratuities and advantages derived by Defendants resulting out of the PSP

investment funds and all of Plaintiffs' litigation expenses, including reasonable

attorney fees and the costs of this action;

6) An avoidance of transfers to the extent of the satisfaction of the Plaintiffs' claims, an

attachment against the Defendants' property, attorney fees, and costs;

7) Injunctive relief preventing the sale or disposition of Defendants' assets acquired

through the diversion of funds from the Plaintiffs;

8) A finding of alter ego status of all Defendants;

9) Punitive damages on any and all causes of actions permitting such damages;

10) Attorney fees and costs incurred in prosecuting this action;

11) Pre-judgment and post-judgment interest as provided by statute;

12) Additional and/or alternative relief as the Court may deem to be just, equitable and

appropriate; and further:

that an ORDER be immediately issued against destruction or spoliation of evidence herein, and upon final hearing of this cause, a permanent injunction against further abuse be issued, and that Plaintiffs have judgment against Defendants, jointly and severally, for damages described herein,;

that Defendants be cited to appear and answer and that Plaintiff have judgment against Defendants for all these actual damages, special damages (including incidental damages), attorney fees, prejudgment and post-judgment interest, costs of the suit, and all other relief in law and in equity to which Plaintiffs may be entitled.

Respectfully submitted, and signed on this the 4th day of April 2011.


s/ _R. Lance Flores_                         s/ _V. Clarkson_

R. LANCE FLORES                              VICKI CLARKSON
Lead Attorney

3314 Pleasant Drive                          2416 - 36 Street SW
Dallas, Texas 75227 USA                      Calgary, AB T3E 2Z5
Tel. (Dallas): +1 (214) 272-0349
Tel. (Fax): +1 (210) 519-6528                Tel. (Calgary): +1 403-244-9980
ECF & Case Management E-mail:                Tel. (Fax:) +1 (403) 246-3331
LF_legaldept@MockingbirdFilms.com            ECF & Case Management E-mail:
                                             VC_LegalDept@MockingbirdFilms.com

Attorney for the Plaintiff                   Attorney for the Plaintiff

§JS 44 (TXND Rev. 2/10)

**CIVIL COVER SHEET**

RECEIVED BY ___

APR - 8 2011

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| **I. (a) PLAINTIFFS** | **DEFENDANTS** |
|---|---|
| R. LANCE FLORES, VICKI CLARKSON | Scott Anthony Koster, ET AL. |

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

**(b)** County of Residence of First Listed Plaintiff **Dallas County, TX**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant **Mille Lacs County, MN**
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Attorneys (If Known)

**3-11CV-726-M**

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only) and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☒ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

**V. ORIGIN** (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing (**Do not cite jurisdictional statutes unless diversity**):
28 U.S.C. § 1332, 28 U.S.C. §1367, 28 U.S.C. §1391(a)

Brief description of cause:
Two fraud & theft of money investment schemes involving embezzlement, extortion, forgery, obstruction of justice

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ 220,000,000.00
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

**VIII. RELATED CASE(S) PENDING OR CLOSED:** (See instructions)

JUDGE ___ DOCKET NUMBER ___

DATE 04/04/2011

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # ___ AMOUNT ___ APPLYING IFP ___ JUDGE ___ MAG. JUDGE ___