IN UNITED STATES DISTRICT COURT
*for the*
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

R. Lance FLORES, and
Vicki CLARKSON,

        *Plaintiffs*,

v.

Scott Anthony KOSTER, *et al.*

        *Defendants.*

Civil Action

Nº

Certification of Domestic Business Records - Affidavit

STATE OF TEXAS     §
DALLAS COUNTY     §

1. "My name is Rudolph Lance Flores (hereinafter "R. Lance Flores"), I am competent to make this declaration. The facts stated in this declaration are within my personal knowledge.

2. I am the custodian of the records of Mockingbird Films International LLC ("MFI").

3. Attached to this declaration are pages in seven (7) volumes identified as Exhibits 1 thru 7 from the records of MFI.

4. These bound and sealed pages of records are kept by MFI in the regular course of business transactions, communications and in the regular and normal course of due diligence processes. Also, it was the regular course of business of MFI for an officer of MFI, with knowledge of the act, event, condition, opinion, or diagnosis, to make the records or to transmit information of the occurrence to be included in the records. The records attached to this declaration were made at, near, or reasonably soon after the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters. The attached records are the original records or exact duplicates of the original records, and regular electronic Internet communications and included the clear and obvious marked referential annotation marks made for the benefit and referential convenience of the Court.

5. I certify under penalty of perjury that the foregoing is true and correct."

EXECUTED on April 1, 2011.

_____
R. Lance Flores

SWORN TO and SUBSCRIBED before me by
Rudolph Lance Flores a.k.a. R. Lance Flores on April 1ˢᵗ, 2011.

_____
Notary Public in and for the State of Texas

LUIS E MORENO
My Commission Expires
January 23, 2013

IN UNITED STATES DISTRICT COURT
for the
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

R. Lance FLORES, and
Vicki CLARKSON,

          Plaintiffs,

v.

Scott Anthony KOSTER, et al.

          Defendants.

Civil Action

Nº

## PLAINTIFFS' EXHIBITS
## VOLUME 1

[Note: O→; #●; or ←● Annotations are reference marks added for referential clarity. Some e-mail message inclusions omitted]

## CONTENTS

**EXHIBIT 001** - 2ND Tex. DTPA Notice. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**EXHIBIT 002** - Cert USPS Tex. DTPA & 1ST Evidentiary Findings. . . . . . . . . . . . . . . . . . . . . . . . 4

**EXHIBIT 003** – Emre Offer & Proposal for $40,000,000 Financial Instrument Purchase Wed, 2 Dec 2009 12:16 -0800 E-mail. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**EXHIBIT 004** – Emre Thu, 3 Dec 2009 09:23 PM E-mail Msg. . . . . . . . . . . . . . . . . . . . . . . . . . 5

**EXHIBIT 005** – Emre-Koster Alicorn Profit Sharing Agreement. . . . . . . . . . . . . . . . . . . . . . . . . 6

**EXHIBIT 006** – Fri, 11 Dec 2009 Msg fr Emre - Payment Schedule w/o Attachments. . . . . . . . . . . . . . 10

**EXHIBIT 007** – 14 Dec 2009 Emre Msg - Partnership (PSP) Wiring Instructions. . . . . . . . . . . . . . . . 10

**EXHIBIT 008** – Wire Xfer Fr Clarkson via Canada Trust to Koster. . . . . . . . . . . . . . . . . . . . . . . 12

**EXHIBIT 009** – Koster/Alicorn IDLYC Buy/Sell Trade Contract. . . . . . . . . . . . . . . . . . . . . . . . . 16

**EXHIBIT 010** – Kerim Emre Email - BG ISIN number. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

**EXHIBIT 011** – Deutsche Bank AG London - instrument ISIN XS0205433377. . . . . . . . . . . . . . . . . . 19

**EXHIBIT 012** – Kerim Emre Email - Payout Schedule..................................... 20

**EXHIBIT 013** – Emre 13 Jan 2010 12:17:16 -0800 Subfee Agreement................... 20

**EXHIBIT 014** – 3 Feb 2010 Emre e-mail - Update from Koster......................... 21

**EXHIBIT 015** – 3 Feb 2010 12:49:55 -0800 e-mail fr John Childs..................... 22

**EXHIBIT 016** – Kerim A. Emre - Curriculum Vitae - Entrepreneur Days................ 23

**EXHIBIT 017** – "Topix.com"Internet Product Solicitation............................ 24

**EXHIBIT 018** – "Tradetuber" Internet Product Solicitation.......................... 26

**EXHIBIT 019** – "Reserve-Bank"Internet Product Solicitation......................... 27

**EXHIBIT 020** – Alicorn Capital Management - POF Internet Product Solicitation...... 28

**EXHIBIT 021** – Alicorn Capital Management - Other Services Internet Product Solicitation... 29

**EXHIBIT 022** – 4 Feb 2010 Emre msg - Update - Notice Proof of Performance Information.... 30

**EXHIBIT 023** – 4 Feb 2010 Koster Msg w/Atchmt: 1) NDA - 2) MT999 Preadvice......... 30

**EXHIBIT 024** – 4 Feb 2010 Koster - Attachment: NDA.................................. 31

**EXHIBIT 025** – 4 Feb 2010 Koster - Attachment: MT999 Preadvice..................... 32

**EXHIBIT 026** – Series of Communications Concerning San Antonio Production Facilities...... 33

**EXHIBIT   001 - 2ND Tex. DTPA Notice**

# 2nd Notice; Deceptive Trade Practice Act Notice
## for IDLYC/BMW Majestic Transactions and
## substitution Gold Buy/Sell Contract (DTPA Notice)

### Via: Certified E-mail

Notice.eml
Subject: Notice
From: Legal <legaldeptcv@mockingbirdfilms.com>
Date: Tue, 18 Jan 2011 17:05:05 -0600
To: Kerim Emre <kerim.emre@gmail.com>

[On January 18, 2011, Defendant Kerim S. Emre was served by Certified Email with a Texas Deceptive Trade Practices Act notice by the only method to which he would allow communication. Emre would refused to provid a business or residence where he could receive notice or any other communications through the United State Postal Service. All attempts to locate his address lead to minimally six recent addresses none of which could be substantiated as his domicile.]

### 20110118 TDTP2 Ltr.pdf

Attachment - 201011 w/Certified Mail Posting-Time Digital Certificate

ReadNotify.com E-mail Posting-Time Digital Certificate.   On Tue, 18 Jan 2011 23:05:25 GMT the above e-mail arrived from legaldeptcv@mockingbirdfilms.com for kerim.emre@gmail.com, was assigned sequence number #16636622 and ReadNotify reference 404230ebcb24c7aecade6014df8e201a, digitally signed, and immediately dispatched.

NB: This certificate irrevocably links the body and headers of this email to the date and time they were dispatched. The following signature is now published online; to view it, verify it, or for more information, please visit www.ReadNotify.com.

-----BEGIN PGP SIGNATURE-----
Version: GnuPG v1.0.6 (ReadNotify.com TimeStamp Server v2.2)
Comment: Certificate #16636622, created Tue, 18 Jan 2011 23:05:25 GMT

```
iQBvAwUBTTYctTanThAdit3tAQESswLQwRjg1+ZQpE9eFQSEcrr+xdk322W1bDNu
mQcTnBD0HZ0CmCkEcB9yQ9Bx2ayk3TRcXYpR995XQRVK17faoxxz0pBqZBIKhnuy
bQXoWoU6qZ2Ip7Ge/IXiX+rD
=678e
```
-----END PGP SIGNATURE-----

**EXHIBIT 002** - Cert USPS Tex. DTPA & 1ST Evidentiary Findings





**EXHIBIT 003** – Emre Offer & Proposal for $40,000,000 Financial Instrument Purchase Wed, 2 Dec 2009 12:16 -0800 E-mail

(Wednesday, December 2, 12:16 PM CST)
-------- Original Message --------
Subject:   alternative
Date:   Wed, 2 Dec 2009 16:16:52 -0800
From:   Kerim Emre <kerim.emre@gmail.com>
To:      lance@mockingbirdfilms.com

Hi Lance,
To help you get to the 40M instrument, would it help if you paid for an instrument about the same amount up front, but on the back end, you wouldn't need to make another payment until 60 days from receiving said instrument, and then only have to pay 1% per month for a couple of months and then pay the remainder in a lump sum? Would that help with cash flow and your draws? Just trying to think outside the box. It's something that is available through the same provider and it might make sense for us to be able to put this deal through at the higher amount of the SBLC? Also, I saw what you mean by the pricing "not adding up." It's actually the fees for the intermediaries. Once you add the 5% to the issuance fee, and the total it should add up. Please don't hesitate to call if I can help in any way.
Best,
Kerim
kerim.emre@gmail.com
P: 951-719-4819
F: 951-224-6844

---

**EXHIBIT 004** – Emre Thu, 3 Dec 2009 09:23 PM E-mail Msg

(Thursday, December 3, 2009 9:23 PM)
-------- Original Message --------
Subject:   Update
Date:   Thu, 3 Dec 2009 09:23:19 -0800
From:   Kerim Emre <kerim.emre@gmail.com>
To:      lance@mockingbirdfilms.com

Hi Lance,
I am going to have the paperwork here for you shortly. I am also trying to get the escrow paperwork at the same time. As a side note, your setup with prosperity will probably require that the 1M or so that you want to pay on a monthly basis until you pay off the instrument, come out of the draw before it is sent to you. This would ensure that for Prosperity that you would be paying that amount and not defaulting on it. I think this way, all 3 parites, SBLC provider, Prosperity, and you would be happy. I will let you know as soon as I have the paperwork.
Best,
Kerim
kerim.emre@gmail.com
P: 951-719-4819
F: 951-224-6844

**EXHIBIT  005** – Emre-Koster Alicorn Profit Sharing Agreement

# Profit Sharing Agreement
# of
# Alicorn Capital Management

This AGREEMENT of PARTNERSHIP is made as of <u>11 DEC 2009</u> by and between the undersigned Partners.

**Alicorn Capital Management LLC., Scott A. Koster CEO.**

**Mockingbird Films International LLC., Lance Flores.**

### Overview

Alicorn Capital Management has a direct working relationship with a PPP that has a surplus of holdings in the amount of 110,000,000,000.00USD (One Hundred and Ten Billion Dollars) in Bank Guarantee (BG's) with the following Financial Institutions; HSBC Hong Kong, Standard Chartered Hong Kong, Deutsche Bank Hong Kong. Our company has been provided with the opportunity to obtain these instruments at a discounted fee, to be taken directly back into the Platforms own programs. The profit for this program, based on these instruments, is 15% weekly or better, guaranteed in writing by the platform. This is a limited entry offer. The following buy in points will allow you the a return of the corresponding amount based off of the issuance of a 100MUSD Bank Guarantee.

| Contribution | Profit to Client | Term |
|---|---|---|
| 80,000USD | 12% of weekly profit | Length of trade outlined by contract |

### I. Formation
The undersigned hereby form a Profit Sharing Partnership, and in accordance with the laws of, the State of Minnesota.

### II. Name
The name of the Partnership shall be Alicorn Capital Management Profit Sharing Agreement.

### III. Term
The Partnership shall begin on 11 DEC 2009 and shall continue until closing of the Trade program entered into as outlined above.

### IV. Purpose
The purpose of the Partnership shall be to obtain a Bank Guarantee that is currently owned and managed by the private placement platform, to be taken into trade through one of their programs. This agreement is for the payment of fees associated with the Bank Guarantee, as well as the sharing of profits, on a sliding scale based off level of contribution, of the funds generated by the private placement program returns.

### V. Capital Contributions

The Partners will each make a contribution that will dictate their share of the profit return of the PPP payouts as outlined in the above overview. No individual or groups contribution to this program will exceed in a funding greater than a 33% profit share. If individual or groups wish, multiple JV agreements for multiple instruments can be arranged.

### VI. Valuation of the Partnership

The valuation of the Partnership is solely based off of the issuance of the PPP contract. This Profit Sharing Agreement has no value in its self, outside of the proposed return based off of the guaranteed trade contract.

### VII. Capital Accounts

There shall be maintained a capital account in the name of each Partner. All proceeds of the result of the program outlined by the Private Placement Contract will be paid directly to a paymaster, and forwarded onto the individual/groups supplied banking coordinates.

### VIII. Management

Except as otherwise determined, all compliance related decisions shall be made by Alicorn Capital Management (and or assigned).

### IX. Sharing of Profits and Losses

Net profits and losses of the individual/group shall inure to, and be borne by, the Partners, in proportion to the value of each of their contributions.

### X. Transactional Summary

A Transactional Summary will be provided to all parties who participate in this Profit Share Agreement, at weekly intervals. Any additional book keeping is the direct responsibility of the individual/group.

### XI. Bank Account

The individual/group may select a bank for the purpose of opening a bank account for the depositing of program profits, to be distributed by the appointed paymaster.

### XII. Broker Admission

None of the Partners of this Partnership shall be a broker, principal owners of the funds only.

### XIII. No Compensation

No Partner shall be compensated for services rendered to the Partnership.

### XIV. Additional Partners

Additional Partners may be admitted at any time prior to the issuance of the first payment, upon the unanimous consent of the Partners, so long as the share of the combined Partners does not exceed 90% of the face value of the instrument.

### XV. Transfers to a Trust

A Partner may, after giving written notice to the other Partners, transfer interest in the Partnership to a revocable living trust, of which the Partner is the grantor and sole trustee.

### XVI. Removal of a Partner

There are no provisions for the removal of any individual/group without the consent of Alicorn Capital Management as well as the Platform director.

### XVII. Termination of Partnership

There are no provisions for the termination of partnership of any individual/group without the consent of Alicorn Capital Management as well as the Platform director.

### XVIII. Death or Incapacity of a Partner

In the event of the death or incapacity of a Partner (or the death or incapacity of the grantor and sole trustee of a revocable living trust), profits from program will be held and directed towards the nearest living relative.

### XIX. Terms of Payment for Profit Share Opportunity.

Payment for entry into the profit share opportunity are to be made via wire transfer, certified funds, or cash deposit to the provided account information upon acceptance of this agreement. Upon execution of payment, there are no provisions for a refund or a withdraw from this agreement, or the entry into the program.

### XX. Forbidden Acts

No Partner shall:

- Have the right or authority to bind or obligate the Partnership to any extent whatsoever with regard to any matter outside the scope of the Partnership purpose.
- Except as provided in this agreement, without the unanimous consent of all the other Partners, assign, transfer, pledge, mortgage, or sell all or part of his or her interest in the Partnership to any other Partner or other person whomsoever, or enter into any agreement as the result of which any person or persons not a Partner shall become interested in the Partnership.
- Use the Partnership name, credit, or property for other than Partnership purposes.
- Do any act detrimental to the interests of the Partnership or any act that would make it impossible to carry on the business or affairs of the Partnership.

### XXI. Confidentiality

In the course of the PPP, the individual/group recognizes that they may come in contact with or become familiar with information which Alicorn Capital Management or its

subsidiaries or affiliates may consider confidential. This information may include, but is not limited to, information pertaining to the Alicorn Capital Management corporate and/or key individuals personal, financial, and identifying which information may be of value. Individual/Group agrees to keep all such information confidential and not to discuss or divulge it to anyone outside parties listed in this agreement. Alicorn Capital Management and/or Scott A. Koster also agrees not to disseminate, share or otherwise use any information obtained with other entities and/or interested parties unless directed by group/individual.

## XXII. Release of Liability.

Understood and acknowledged by all parties, Alicorn Capital Management and/or Scott A. Koster, and his/her agents, assigns, employees, clients, customers, representatives, and any and all other persons, firms and whatsoever does hereby indemnify, release, acquit, hold harmless, and forever discharge Alicorn Capital Management, successors, agents, assigns, employees, representatives, and any and all other persons and firms whatsoever, from any and all claims, demands, damages, actions, causes of action, or suits of any kind or nature whatsoever, both known and unknown, specifically including but not limited to this agreement or the use or misuse of the products obtained as a result of this agreement, failure of the PPP to provide said services, or failure of the PPP to divulge key information regarding the terms of the Trade. The terms of this Release are contractual and not a mere recital. In the event of non-performance as outlined by the terms of the Trade Agreement, all contributions will be refunded to the appropriate parties within 60 days, after the acceptance of such request in writing. Should it develop that there are any errors, mistakes or any omissions in this Agreement, whether legal or factual and whether mutual or unilateral, which would cause the release of the parties herein released to be defective or less than complete, then Alicorn Capital Management and/or Scott A. Koster, will sign any and all documents and do any and all things necessary to effectuate a full, final and absolute release of said parties and all others having any liability in the premises. This provision (XXII) survives termination of this Agreement and remains in full effect indefinitely.

This Agreement of Partnership shall be binding upon the respective heirs, executors, administrators, and personal representatives of the Partners. The Partners have caused this Profit Sharing Agreement to be executed on the dates indicated below, effective as of the date indicated above. No parties on either side of this agreement are allowed or entitled to make any changes to this document.

**Printed Name:** _____    **Title** _____    **Date:** _____

**Signed Name**

**Accepted by: Alicorn Capital Management**

Scott A. Koster CEO

**EXHIBIT 006** – Fri, 11 Dec 2009 Msg fr Emre - Payment Schedule w/o Attachments

-------- Original Message --------
Subject:   JV agreement and FPA as a doc file
Date:   Fri, 11 Dec 2009 15:40:27 -0800
From:   Kerim Emre <kerim.emre@gmail.com>
To:       lance@mockingbirdfilms.com

Hi Lance,
Just to be safe, I am sending you the PDF as a doc file. I also included the FPA for the trade. You will be getting approximately 1.8M/week, of which 16.7% will be the brokers' fees, which will leave you, in your pocket, 1.5M based on the 1.8M being paid out.
Best,
Kerim
kerim.emre@gmail.com
P: 951-719-4819
F: 951-224-6844

---

**EXHIBIT 007** – 14 Dec 2009 Emre Msg - Partnership (PSP) Wiring Instructions

-------- Original Message --------
Subject:   Wiring Instructions
Date:   Mon, 14 Dec 2009 09:27:44 -0800
From:   Kerim Emre <kerim.emre@gmail.com>
To:       lance@mockingbirdfilms.com

Hi Lance,
These are the wiring instructions for the $80,000 JV trade partnership. Please let me know if they need anything else.

Scott Koster
TCF Bank
19270 Freeport Street
Elk River MN 55330
763-441-1560
Routing Number: XXXXX0001
Account Number: XXXXXX7813 [1]

Best,
Kerim
kerim.emre@gmail.com
P: 951-719-4819

---

[1] Redacted pursuant to Fed. R. Civ. P. 5.2 "... a party or nonparty making the filing may include only: ... (4) the last four digits of the financial-account number."