## IN UNITED STATED DISTRICT COURT
### for the
### NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

Civil Action

R. Lance FLORES, and
Vicki CLARKSON,

Plaintiffs,

v.

Nº

Scott Anthony KOSTER, et al.

Defendants.

---

## PLAINTIFFS' EXHIBITS
## VOLUME  4

---

[Note: ○→; #●→; or ←● ↘   Annotations are reference marks added for referential clarity.  Some e-mail message inclusions omitted]

EXHIBIT  079 - 10/11-12 SWIFT Transmission Msgs Koster-Flores........................ 3

EXHIBIT  080 - 10/18 11:37 AM Koster Msg.  SBLC Structure doc.  (blank unsigned 2ND Wind-up Agmt.)............................................................. 4

EXHIBIT  081 - 10/18 12:03 PM Flores Msg.  to Koster.................................. 7

EXHIBIT  082 - 10/18 Koster 3:26 PM Msg.  w/Att.  Arcadio Ivan Santos III 10/18/2020 Executed 2ND Wrap-up Agmt............................................... 11

EXHIBIT  083 - 10/19 John Childs' Msg.  w/Att.  Sub Fee Agmt........................... 15

EXHIBIT  084 - 11/22 Koster Msg. Subject: Lets get this settled now.  Flores' legal notices/Emre's kickback.......................................................... 16

EXHIBIT  085 - (4 Msgs.)  Gold Transaction status - Exchange between Flores, Childs and Koster ............................................................... 17

EXHIBIT  086 - Clarkson Msg. to Koster - Fiduciary Duty query and Gold Transaction status. ............................................................... 19

EXHIBIT  087 - Flores/Cook exchange - Flores' contact information and teleconference schedule ............................................................... 20

EXHIBIT  088 - 11/11 Flores's answer to 11/10/ Clarkson Msg............................ 21

1

**EXHIBIT 089 - 11/11 1:23 PM Koster Msg. - Ruffled Feathers - Prove & Defend Everything in Court of Law - Theft of Plaintiffs' Gold Transaction ⅛ Interest Requested by Richard Hall, and the other two partners**................................................... 23

**EXHIBIT 090 - 11/11 2:56 PM Flores Msg to Koster**..................................... 24

**EXHIBIT 091 - 11/12 Koster Msg to Flores - I Always Tell the Truth - Alicorn Gold Transaction Offering is 100% - Richard's Group (Richard Hall, Christine Wong-Sang, Vladimir Pierre-Louise, a.k.a. Berea Inc.) is also very real.**........................................... 25

**EXHIBIT 092 - 11/15 Gary W. Grab Law Office Letter.**................................. 26

**EXHIBIT 093 - 11/16 Flores - Legal Counsel query - Plaintiffs Clarification - Demand for information:**................................................................. 28

**EXHIBIT 094 - 11/16 2:24 PM Flores Msg to Emre**..................................... 30

**EXHIBIT 095 - 11/16 3:45 PM Koster Msg - Notice of defaced Gold Transaction Information Delivery.**.................................................................. 31

**EXHIBIT 096 - 11/16 4:24 PM Koster Msg - Response to Flores 4:10 PM Msg**.............. 32

**EXHIBIT 097 - 11/16 Koster Msg w/7 Attachments**.................................... 33

**EXHIBIT 098 - CBS/Alicorn Engagement Letter.**...................................... 34

**EXHIBIT 099 - CBS/Alicorn Escrow & Wire Inst to Busch Law Cntr.**..................... 35

**EXHIBIT 100 - CBS 10/14/2010 Fee Protection Agmt.**.................................. 36

EXHIBIT  079 - 10/11-12 SWIFT Transmission Msgs Koster-Flores

———— Original Message ————
Subject:    Re: SWIFT Xmsn
Date:    Mon, 11 Oct 2010 14:06:15 -0500
From:  Scott Koster <koster.scott@gmail.com>
To:      Lance @ MFI <lance@mockingbirdfilms.com>


①➔We are ready to execute today/tomorrow. New concessions became available. I'm getting info
to you as I get it. We should be live by the end of the week.


— — — — — — — — — — — — — — — — — — —

②➔On Oct 12, 2010 5:46 PM, "Lance @ MFI" <lance@mockingbirdfilms.com> wrote:
        Does Richard have a transaction code for us?


———— Original Message ————
Subject:    Re: Transaction Code
Date:    Tue, 12 Oct 2010 18:04:39 -0500
From:  Scott Koster <koster.scott@gmail.com>
To:      Lance @ MFI <lance@mockingbirdfilms.com>

③➔        Yes sir, we are getting all docs put together.

        On Oct 12, 2010 5:46 PM, "Lance @ MFI" <lance@mockingbirdfilms.com> wrote:
            > Does Richard have a transaction code for us?

**EXHIBIT  080 - 10/18 11:37 AM Koster Msg.  SBLC Structure doc.  (blank unsigned 2ND Wind-up Agmt.)**

(11:37 AM CST)

———— Original Message ————
Subject:    SBLC Structure document.
Date:    Mon, 18 Oct 2010 11:37:36 -0500
From:  Scott Koster <koster.scott@gmail.com>
To:    Lance @ MFI <lance@mockingbirdfilms.com>
CC:    John Childs <jchilds3@gmail.com>, Kerim Emre <kerim.emre@gmail.com>


Lance,

See attached. I will return signed copy upon receipt. This document is needed to show that the three of you are equal partners. The contract signed on the instrument will explain the specifics of the instrument, which Mr. Cook will be executing.

If you have any questions, please feel free to ask.

–
Scott A. Koster
koster.scott@gmail.com
info@alicorncapitalmanagement.com
Direct: 612-916-7007
Conference Line: 218-844-8230
Access Code: 380262#
Skype: alicorn.capital


[AttachmentAStructure.doc]

## PARTNERSHIP TERMINATION AND WIND-UP AGREEMENT
## AND MUTUAL RELEASE

### Attachment "A"
### Structure of financial instrument

NOW, THEREFORE, the parties, to include, "MFI", "Cook" and "Santos" by their signatures below, for good and valuable consideration, the sufficiency and adequacy of which is hereby acknowledged, agree to take equal 1/3 partnership with one another. This partnership shall be for issuance, and all benefits that arise from the use of the Stand by Letter of Credit ("LOC"). Parties agree to distribute evenly any and all financial gains, after commissions and fee's, directly attributed to any use of this "LOC".

This agreement stands for the lifetime of the "LOC", and extends to parties successors, privies, agents, heirs, legatees, representatives, and assigns.

1.      **Binding Effect.** The parties agree that this Agreement is and shall be binding on each signatory hereto and on each of their heirs, executors, administrators, assigns, agents, officers, shareholders, and successors in interest.

2.      **Entire Agreement.** This Agreement contains the entire understanding between the parties and supersedes all prior agreements and understandings relating to the subject matter of this Agreement. This Agreement shall not be modified, amended, or terminated except as subsequently executed in writing by the parties.

3.      **Review of Agreement.** Each party represents and certifies that they (1) have received a copy of this Agreement for review and study before being asked to sign it; (2) have read this Agreement carefully; (3) have been given a fair opportunity to discuss and negotiate the terms of this Agreement; (4) understand its provisions; (5) have been advised and has consulted with their attorney; (6) have determined that it is in its best interest to enter into this Agreement; (7) have not been influenced to sign this Agreement by any statement or representation not contained in this Agreement or that it is subject to as a condition precedent; and (8) enter into this Agreement knowingly and voluntarily.

4.      **Governing Law.** This Agreement will be construed and interpreted in accordance with the laws of the State of Minnesota. The parties agree that the State District Courts of Minnesota, Hennepin County, shall have exclusive jurisdiction over both the parties and any and all claims arising as a result of this Agreement or its enforcement. The parties specifically agree to personal jurisdiction of the Hennepin County State District Courts.

5.      **Joint Drafting of Agreement.** The parties agree and acknowledge that neither party shall be determined to be the drafter of such agreement and it is acknowledged that all parties through counsel have had input in drafting this Agreement. Accordingly, any rules against the drafter, including ambiguity, shall not be interpreted against any party.

**ACCEPTED AND AGREED.**

Dated: _____

_____
Lance Flores  MFI

Dated: _____

_____
Winston J. Cook

Dated: _____

_____
Ivan Arcadia Santos


Alicorn Capital Management, LLC

Date: _____
By: _____

_____
Its: _____

6

**EXHIBIT 081 - 10/18 12:03 PM Flores Msg. to Koster w/Flores' 12:03 PM Executed 2ND Wind-up Agmt.**

(12:03 PM CST)

From: "Lance @ MFI" <lance@mockingbirdfilms.com>
To: Scott Koster <koster.scott@gmail.com>
CC:
Subject: SBLC Structure document.
Date: Mon, 18 Oct 2010 18:03:06 GMT
Content-Type: text/plain; charset=utf-8

This document is weak and is full of holes. It couldn't have been drafted by an attorney or paralegal. It doesn't identify any of parties or much else and wouldn't hold muster as a valid contract in any court. I can't believe this is what we've waited two weeks to complete the transaction. I've drafted or worked on many contracts and funds distribution agreements. I know that no lawyer created this. Why don't you get the attorneys for the other partners and let us draft a valid legal instrument.

Lance

On 10/18/2010 11:37 AM, Scott Koster wrote:
> Lance,
>
> See attached. I will return signed copy upon receipt. This document is
> needed to show that the three of you are equal partners. The contract
> signed on the instrument will explain the specifics of the instrument,
> which Mr. Cook will be executing.
>
> If you have any questions, please feel free to ask.
>
> --
> Scott A. Koster
> koster.scott@gmail.com <mailto:koster.scott@gmail.com>
> info@alicorncapitalmanagement.com
> <mailto:info@alicorncapitalmanagement.com>
> Direct: 612-916-7007
> Conference Line: 218-844-8230
> Access Code: 380262#
> Skype: alicorn.capital

[Attachment]

**PARTNERSHIP TERMINATION AND WIND-UP AGREEMENT
AND MUTUAL RELEASE**

**Attachment "A"
Structure of financial instrument**

       NOW, THEREFORE, the parties, to include, R. Lance Flores for Mockingbird Films International "MFI", Winston J. Cook "Cook" and Ivan Arcadia Santos "Santos" (hereinafter exclusively and collectively the "Parties") by their signatures below, for good and valuable consideration, the sufficiency and adequacy of which is hereby acknowledged, agree to take equal 1/3 partnership with one another. This partnership shall be for issuance, and all benefits that arise from the use of the Stand by Letter of Credit ("LOC"). Parties agree to distribute evenly any and all financial gains, after commissions and fee's, directly attributed to any use of this "LOC".

This agreement stands for the lifetime of the "LOC", and extends to parties successors, privies, agents, heirs, legatees, representatives, and assigns.

1.    **Binding Effect.** The parties agree that this Agreement is and shall be binding on each signatory hereto and on each of their heirs, executors, administrators, assigns, agents, officers, shareholders, and successors in interest.

2.    **Entire Agreement.** This Agreement contains the entire understanding between the parties and supersedes all prior agreements and understandings relating to the subject matter of this Agreement. This Agreement shall not be modified, amended, or terminated except as subsequently executed in writing by the parties.

3.    **Review of Agreement.** Each party represents and certifies that they (1) have received a copy of this Agreement for review and study before being asked to sign it; (2) have read this Agreement carefully; (3) have been given a fair opportunity to discuss and negotiate the terms of this Agreement; (4) understand its provisions; (5) have been advised and has consulted with their attorney; (6) have determined that it is in its best interest to enter into this Agreement; (7) have not been influenced to sign this Agreement by any statement or representation not contained in this Agreement or that it is subject to as a condition precedent; and (8) enter into this Agreement knowingly and voluntarily.

4.    **Governing Law.** This Agreement will be construed and interpreted in accordance with the laws of the State of Minnesota. The parties agree that the State District Courts of Minnesota, Hennepin County, shall have exclusive jurisdiction over both the parties and any and all claims arising as a result of this Agreement or its enforcement. The parties specifically agree to personal jurisdiction of the Hennepin County State District Courts.

5.    **Joint Drafting of Agreement.** The parties agree and acknowledge that neither party shall be determined to be the drafter of such agreement and it is acknowledged that all parties through counsel

8

have had input in drafting this Agreement. Accordingly, any rules against the drafter, including ambiguity, shall not be interpreted against any party.

6.    **Severability**. In the event that any section or portion of this Agreement shall be deemed to be invalid, void, voidable, or otherwise unenforceable under law, then, in that event, such section shall be severed from the entire agreement with all remaining sections retaining their full force and effectiveness hereunder.

1.    **Execution of Agreement**. This Agreement may be executed by the parties in any number of counterparts so that the collection of all counterparts or partial executions shall constitute a fully executed and enforceable agreement. A facsimile or electronic copy of any execution of a counterpart shall have the same force and effect as if the same were an original.

8.    **Headings**. The headings in this Agreement are included herein for convenience and reference only and should not be construed a part of this Agreement for any other purpose.

9.    **Mutual Release**. All parties hereby agree to unconditionally release one another from any and all liability or damages relating to the use or application of the SBLC. This release is applicable to all partners as well as their respective successors, privies, agents, heirs, legatees, representatives, and assigns, each hereby releases and forever discharges Parties and its respective successors, privies, agents, heirs, legatees, representatives, members, managers and governors together with any assigns from any and all manner of claims, actions, causes of actions, law suits, damages, liabilities, obligations, warranties, agreements, rights, costs, expenses, attorneys' fees, judgments, claims, counterclaims, crossclaims, and demands of any nature whatsoever, which relates to or has been asserted, or could have been asserted, whether they are in law, equity, or both, whether past, present, or future, known or unknown, suspected or unsuspected, asserted or unasserted, liquidated or unliquidated, absolute or contingent, contractual, tortious, or otherwise, or in any way arising out of or pertaining to said claims, including, without limitation, any claims or potential claims associated with the investment referenced above or the partnership formed by the parties. This release specifically excludes any and all rights and/or remedies to enforce the terms of this Agreement.

**(Signatures to follow on next page)**

9

**ACCEPTED AND AGREED**

Dated: Monday, October 18, 2010 _____

Lance Flores  MFI

Dated: _____      _____

Winston J. Cook

Dated: _____      _____

Ivan Arcadia Santos

Alicorn Capital Management, LLC

Date: _____      _____

By: _____

Its: _____

EXHIBIT  082 - 10/18 Koster 3:26 PM Msg.  w/Att.  Arcadio Ivan Santos III 10/18/2020 Executed 2ND Wrap-up Agmt

(3:26 PM CST)

———— Original Message ————
Subject:     Re: SBLC Structure document.
Date:   Mon, 18 Oct 2010 15:26:44 -0500
From:  Scott Koster <koster.scott@gmail.com>
To:      Lance @ MFI <lance@mockingbirdfilms.com>

Lance, the other two parties have signed and returned theirs already. I am going to provide you with Ivans, so that you can sign that one, and then I will forward it, with both Ivans signature as well as your own, onto Dr. Fletcher and Mr. Cook, to have them execute.

I understand that we agreed to do this months ago, but we also intended to issue seperate agreements for each of you. The lender would not allow it, and for Richard, it would be a nightmare with paperwork all the way.

Please see attached. I will send a copy of this with my signature, along with another copy of the wrapup document, when we get this finished. You will also be in receipt obviously with a copy of the documents for the SBLC, as well as for the Buy/Sell.

On Mon, Oct 18, 2010 at 1:17 PM, Lance @ MFI <lance@mockingbirdfilms.com> wrote:

 I have one that was drafted and approved by myself, Merrill Lynch attorneys and a Michigan law firm's investment department that all participated in the SBLC. I will clean out the parties and send it. We all agreed to this issue two months ago.


  On 10/18/2010 1:03 PM, Lance @ MFI wrote:
>    This document is weak and is full of holes. It couldn't have been drafted by an attorney or paralegal. It doesn't identify any of parties or much else and wouldn't hold muster as a valid contract in any court. I can't believe this is what we've waited two weeks to complete the transaction. I've drafted or worked on many contracts and funds distribution agreements. I know that no lawyer created this. Why don't you get the attorneys for the other partners and let us draft a valid legal instrument.
>
>    Lance
>
>    On 10/18/2010 11:37 AM, Scott Koster wrote:
>>    Lance,
>> (&c.)

**PARTNERSHIP TERMINATION AND WIND-UP AGREEMENT**
**AND MUTUAL RELEASE**

**Attachment "A"**
**Structure of Financial Instrument**

NOW, THEREFORE, the parties, to include, "MT", "Cook" and "Santos" by their signatures below, for good and valuable consideration, the sufficiency and adequacy of which is hereby acknowledged, agree to take equal 1/3 partnership with one another. This partnership shall be for issuance, and all benefits that arise from the use of the Stand by Letter of Credit ("LOC"). Parties agree to distribute evenly any and all financial gains, after commissions and fee's, directly attributed to any use of this "LOC".

This agreement stands for the lifetime of the "LOC", and extends to parties successors, privies, agents, heirs, legatees, representatives, and assigns.

1.    **Binding Effect.**  The parties agree that this Agreement is and shall be binding on each signatory before and or each of their heirs, executors, administrators, assigns, agents, officers, shareholders, and successors in interest.

2.    **Entire Agreement.**  This Agreement contains the entire understanding between the parties and supersedes all prior agreements and understandings relating to the subject matter of this Agreement.  This Agreement shall not be modified, amended, or terminated except as subsequently executed in writing by the parties.

3.    **Review of Agreement.**  Each party represents and certifies that they (1) have received a copy of this Agreement for review and study before being asked to sign it; (2) have read this Agreement carefully; (3) have been given a fair opportunity to discuss and negotiate the terms of this Agreement; (4) understand its provisions; (5) have been advised and has consulted with their attorney; (6) have determined that it is in its best interest to enter into this Agreement; (7) have not been influenced to sign this Agreement by any statement or representation not contained in this Agreement, or that it is subject to as a condition precedent; and (8) enter into this Agreement knowingly and voluntarily.

4.    **Governing Law.**  This Agreement will be construed and interpreted in accordance with the laws of the State of Minnesota.  The parties agree that the State District Courts of Minnesota, Hennepin County, shall have exclusive jurisdiction over both the parties and any and all claims arising as a result of this Agreement or its enforcement. The parties specifically agree to personal jurisdiction of the Hennepin County State District Courts.

5.    **Joint Drafting of Agreement.**  The parties agree and acknowledge that neither party shall be determined to be the drafter of such agreement and it is acknowledged that all parties through counsel have had input in crafting this Agreement.  Accordingly, any rules against the drafter, including ambiguity, shall not be interpreted against any party.

12

6.     **Severability.**  In the event that any section or portion of this Agreement shall be deemed to be invalid, void, voidable, or otherwise unenforceable under law, then, in that event, such section shall be severed from the entire agreement with all remaining sections retaining their full force and effectiveness hereunder.

7.     **Execution of Agreement.**  This Agreement may be executed by the parties in any number of counterparts so that the collection of all counterparts or partial executions shall constitute a fully executed and enforceable agreement. A facsimile or electronic copy of any execution of a counterpart shall have the same force and effect as if the same were an original.

8.     **Headings.**  The headings in this Agreement are included herein for convenience and reference only and should not be construed a part of this Agreement for any other purpose.

9.     **Mutual Release.**  All parties hereby agree to unconditionally release one another from any and all liability or damages relating to the use or application of the SBLC. This release is applicable to all partners as well as their respective successors, privies, agents, heirs, legatees, representatives, and assigns, each hereby releases and forever discharges Alicorn and its respective successors, privies, agents, heirs, legatees, representatives, members, managers and governors together with any assigns from any and all manner of claims, actions, causes of actions, law suits, damages, liabilities, obligations, warranties, agreements, rights, costs, expenses, attorneys' fees, judgments, claims, counterclaims, crossclaims, and demands of any nature whatsoever, which relates to or has been asserted, or could have been asserted, whether they are in law, equity, or both, whether past, present, or future, known or unknown, suspected or unsuspected, asserted or unasserted, liquidated or unliquidated, absolute or contingent, contractual, tortious, or otherwise, or in any way arising out of or pertaining to said claims, including, without limitation, any claims or potential claims associated with the investment referenced above or the partnership formed by the parties. This release specifically excludes any and all rights and/or remedies to enforce the terms of this Agreement

[Signatures to follow on next page]

13

ACCEPTED AND AGREED:

Dated: _____

Lance Flores  MFI

Dated: _____

Winston J. Cook

Dated: *October 18, 2010*

Arcadio Ivan  Santos III

Alicorn Capital Management, LLC

Date: _____

By: _____
Its: _____

14

EXHIBIT  083 - 10/19 John Childs' Msg.  w/Att.  Sub Fee Agmt.

10/19/2010 5:45 PM

———— Original Message ————
Subject:   Your final Piece
Date:   Tue, 19 Oct 2010 15:45:07 -0700
From:   John Childs <jchilds3@gmail.com>
To:      Lance @ MFI <lance@mockingbirdfilms.com>
CC:      Scott Koster <koster.scott@gmail.com>

Lance,

I have attached a Sub Fee Agreement to this email.  This is the final piece of paperwork that requires your attention as it address' your obligations.  The other partners have their own obligations.  That said this does not affect them nor will theirs you.  Please sign it, add your letterhead to the Header and return it to me.  Once I have the entire file completed, I will disseminate it to all three parties.  Thanks in advance for both your time and consideration in this matter.

–
Regards,


John Childs
Independent Contractor
Direct: 925-858-3987
Fax: 925-407-8440
Skype: john.childs.cft
Conference Call: 712-432-0111
Access Code: 999381#


[Attachment follows:]

Must Include

**(Address, phone, Fax & Email)**

# IRREVOCABLE SUB-FEE PAY ORDER

Date: Monday, October 18th, 2010

DD

## SUB-FEE AGREEMENT

**This confidential Irrevocable Sub-Fee Pay Order references the Fee Agreement issued on Monday,
October 18, 2010 by Lance Flores of Mockingbird Films International, LLC bearing Passport No.
▆▆▆▆▆▆▆and is subject to terms and conditions set forth, is a full recourse commercial commitment
under penalty of perjury, and shall be covered by the laws set forth by International Chamber of
Commerce rules of Conciliation and Arbitration (latest amendments)**

**Lance Flores** of **Mockingbird Films International, LLC,** agrees to pay through paymaster, to the below
stated Beneficiaries via paymaster direct S.W.I.F.T.-wire transfer to the Beneficiaries banking accounts. The
paying agent irrevocably undertakes to make payment in full upon completion of the transaction on the
same day that good, clean, clear funds become available and cash settlement is complete. This is a legal and
binding Irrevocable Sub-Fee Protection Agreement for all transactions, including rollovers, extensions and
renewals, under the above referenced contract as well as any future contracts through this chain.

These amounts are to be paid in the currency of the underlying transaction without undue delay regardless of
any variation or condition, which may be agreed between the Principals.

Fees will be transmitted out of the paymaster's bank account, free of all charges, liens, taxes or encumbrances
of any kind *except* those wires charges that effect the transfer of said funds to the above named beneficiaries
and or assigns, and the pre-arranged paymaster fees.

This document is unchangeable and irrevocable as to its content and constitutes a legal and binding contract
for payment of the above said fees. This document may not be hypothecated without the express permission
from the undersigned.

A facsimile copy of this agreement is considered to be and deemed as original, duly validated, legal, binding
and enforceable with all Parties.

This Sub-Fee Agreement is Irrevocable, Unconditional, Assignable and Divisible and follows the Rules and
Regulations as set forth in the International Chamber of Commerce, ICC 2000 edition, rules of Conciliation
and Arbitration.

The Contract number, if any, or any Identification Codes, Banks, Fiduciaries or Trusts, shall always remain
the same and shall not be changed including all renewals, extensions, roll overs and additions until this
Transaction has been completed without the written consent of all Participants of this Sub-Fee Protection
Agreement including the Beneficiaries named above.

**Page | 1 of 3**
**Lance Flores of Mockingbird Films International, LLC**_____
**Kerim Emre**_____
**Vicki Clarkson**_____

Insert Company Logo
Must Include
(Address, phone, Fax & Email)

**Non-Circumvention**

The Parties shall respect the integrity and tangible value of this Transaction and shall agree not to circumvent any of the Parties in this Transaction, or any future Transactions under the above-mentioned Transaction code and shall apply to any following Transaction or New Agreement between the Parties. Each of the Parties below accept and understand that any overt or covert action of circumvention of the respected process shall constitute a serious trespass of trust and legality and will be subject to judicial action, recompense and possible punitive damages, as so awarded by legal process.

The names, identities, bank coordinates and other identifying information of persons or entities that are a party to this transaction, contained herein or learned hereafter, shall be a Corporate Trade Secret that shall not be disseminated or circumvented other than as provided for herein, or as allowed under applicable law.

**Non-Disclosure**

The Parties shall not disclose to any third party(ies) (except their bankers and/or attorneys), either directly or indirectly, the fact or nature of their respective professional and business association, or any transaction (or transactional information) in which the Parties are/were/or may be jointly involved, without the prior authority for the other Party and that all names, addresses, telephone numbers, telex/fax numbers, or any other medium of contact or the identity of such value to the respective Party which has expended time and money to develop its contact system except as may be required by law or court order.

Under no circumstances, either during or after the tenure of the formal associations of the above Parties, shall any Party violate the integrity and legality of the contact system without first securing full written authority from the other Parties to do so. Any authority given must require continued fee protection as well as automatic receipt of copies of all future correspondence with the referred partners;

The parties agree this sub-agreement will remain in place for all transactions for R. Lance Flores of Mockingbird Films International LLC.

Banking information along with copy of identification to be provided directly to if beneficiary does not disclose below.

Page | 2 of 3
**Lance Flores of Mockingbird Films International, LLC**_____
**Kerim Emre**_____
**Vicki Clarkson**_____

Must Include
(Address, phone, Fax & Email)

Beneficiary 1
10.71% of 100% of proceeds from **each payout**

**Beneficiary Name:** Kerim S Emre
**Bank Name/Address:** US Bank, 40473 Murrieta Hot Springs Rd, Murrieta, CA 92563
**Account Number:** ███████7523
**Swift Codes:** USBKUS44CAL
**Routing Number:** 122235821
**Account Name:** Kerim S Emre
**Bank Officer & Title:** Erica Acosta, Assistant Manager
**Bank Telephone Fax: (951) 894-1823**

Please notify of transfer: [kerim.emre@gmail.com]

Beneficiary 2
A **one-time fee** of 188,850.00 USD will be paid to Vicki Clarkson, from Lance Flores of Mockingbird Films International, LLC portion of proceeds after Beneficiary 1 is paid.

**Beneficiary Name:** Vicki Clarkson
**Bank Name/Address:** TD Canada Trust, 5680 Signal Hill Centre SW, Calgary, Alberta Canada T3H 3P8
**Account Number:** ████████
**Swift Codes:** TDOMCATTTOR
**Routing Number:** 026009593
**Account Name:** Vicki Clarkson
**Bank Officer & Title:** Leigh-Anne Eastman
**Bank Telephone Fax:** 403-292-2747 ext. 233/403-292-2943

**Page | 3 of 3**
**Lance Flores of Mockingbird Films International, LLC**_____
**Kerim Emre**_____
**Vicki Clarkson**_____

EXHIBIT  084 - 11/22 Koster Msg. Subject: Lets get this settled now.  Flores' legal notices/Emre's kickback.

———— Original Message ————
Subject:    Lets get this settled now.
Date:    Fri, 22 Oct 2010 04:08:37 +0000
From:  koster.scott@gmail.com
To:    Lance @ MFI <lance@mockingbirdfilms.com>, Kerim Emre <kerim.emre@gmail.com>
CC:    John Childs <jchilds3@gmail.com>


Lance, as ①→I have told you in the past, while I appreciate and understand your legal background, putting all that out there for everyone to see does nothing but put people on the defensive. Rather than point out where you see the liability is with Kerim, ②→lets focus on one thing, which is what is holding us back from moving this forward.

Lance, do you agree that ③→because you came into this transaction through your relationship with Kerim, that Kerim deserves some level of compensation for helping us get all the pieces together for this instrument?

If so, ④→please respond with what you feel is a fair % for Kerim to receive, and lets start there. I am just doing this as a friend to both of you, but more so because I want this to move forward.

Kerim, if Lance makes a fair offering, whatever that be, will you be willing to work with that, and accept it as a sort of settlement in place of the previous agreement that you had in place with Lance?

Please let me know guys. We have this and then logistical stuff to work out on the instrument, and its a live instrument to be delivered.

Scott

EXHIBIT  085 - (4 Msgs.)  Gold Transaction status - Exchange between Flores, Childs and Koster

① (Monday, October 25, 2010 2:30 PM CST)

From: "Lance @ MFI" <lance@mockingbirdfilms.com>
To: John Childs <jtchilds@gmail.com>, Scott Koster <koster.scott@gmail.com>
CC: Vicki Clarkson <vickiclarkson@shaw.ca>
Subject: Completion Status
Date: Mon, 25 Oct 2010 20:30:03 GMT
Content-Type: text/plain; charset=utf-8

Gentlemen,

    Vicki and I need to know if all transaction will be complete today and what is the exact status of our interests (the terms and the time-line) are at the moment; or exactly what the time-line. We need an answer today by 5:00PM CST today.

Best Regards,

Lance

② (Monday, November 1, 2010 12:54 PM CST)

——— Original Message ———
Subject:   incase you did not get my text back to you
Date:  Mon, 1 Nov 2010 12:54:08 -0500
From: Scott Koster <koster.scott@gmail.com>
To:     Lance @ MFI <lance@mockingbirdfilms.com>

I will call you later on today. In and out of meetings for most of the day regarding local business.

scott
 (&c.)

③ (Tuesday, November 2, 2010 3:38 AM CST)

—— Original Message ——
From: Lance @ MFI
To: Scott Koster
Sent: Tuesday, November 02, 2010 3:38 AM
Subject: Re: in case you did not get my text back to you

And you never called. So .. the last few words ...

    (&c.)

17

④ (Tuesday, November 2, 2010 6:07 PM CST)

———— Original Message ————
Subject:   Re: Fwd: Re: in case you did not get my text back to you
Date:  Tue, 2 Nov 2010 18:07:41 -0500
From: Scott Koster <koster.scott@gmail.com>
To:    Lance @ MFI <lance@mockingbirdfilms.com>

No, its not an issue of the instruments or the gold. The seller is asking for this prior to moving any of them forward, basically as a suplement to the other instruments. Richards group can only pull down 10% or so buying power on the instruments that we provide him. With a top rated instrument, he can pull upto 80%.

⑤→As far as where we are, the gold sample has already been asseyed at 93.44% purity. They were expecting 92% or better. When it reaches the smelter, it will be closer to 96-97%. The product is titled, and ready to ship as soon as we can get this other instrument lined up. Remember, that this was their backup seller, not the original that we were intending to use.

(&c.)

EXHIBIT  086 - Clarkson Msg. to Koster - Fiduciary Duty query and Gold Transaction status.

—— Original Message ——
From: Vicki Clarkson
To: Lance @ MFI ; Scott Koster
Sent: Tuesday, November 02, 2010 4:00 PM
Subject: Re: in case you did not get my text back to you

Scott,

I was under the impression that the communication was going to improve. Thusfar, I haven't seen any changes since the IDYLC deal, none.

What is the status of the gold buy/sell?

Kerim advised it would be completed on August 10th, via a telephone conversation I had with him in early August.  Here we are today, the second of November and we are still no closer to understanding where this deal is at.

Do you have any verifiable documents that you can send out? Such as the SBLC document? Verification that there is one in place?

In my last conversation with Lance, I was told that contracts were supposed to be sent out to finalize the buy/sell of the gold.  Where are these contracts, have they been sent?   Please advise, what is the hold up?


Vicki

19

**EXHIBIT 087 - Flores/Cook exchange - Flores' contact information and teleconference schedule**



EXHIBIT  088 - 11/11 Flores's answer to 11/10/ Clarkson Msg

(Thursday, November 11, 2010 12:03 PM CST)

(Notation of speakers added - original responses in color)

—— Original Message ——
From: Lance @ MFI
To: VICKI CLARKSON
Cc: Scott Koster
Sent: Thursday, November 11, 2010 12:03 PM
Subject: Re: Gold Buy/Sell

Vicki,
    please find responses to your direct questions below. Additionally, I have supplemented the responses with answers to your verbal inquiries in last night's telephone conference regarding other liability issues. I will send the contact information for our attorneys to you and your counsel, along with the "STIPULATION OF SETTLEMENT" which will presented to the court for approval which is intended to settle and resolve with finality all present and future civil claims against Scott, Alicorn, Kerim, IDLYC, inter alia.

You have our executed pledge for which a sub-fee pay order was executed against an purported (unverified) contract payout and a purported paymaster, also without any confirmation to the legitimacy of said claims. I sorry I can't provide any verification of the alleged SBLC instrument nor the purported contract to which it attaches. We have no proof by means of verifiable documents.  Unfortunately, the sub-fee assignment has no real legal worth as it attaches to nothing, as it must to an identified instrument and legal entity.  The attorney that is purported to be the paymaster should know this. Know that if this transaction and Paymaster do prove to evolve into a legal course business transaction I will reissue a valid sub-pay agreement, or in the alternative, have our bank establish an ICPO that shall issue to your account. I look forward to speaking with your legal counsel; I will inform ours to set up a conference at their convenience.

Best regards,
Lance

On 11/10/2010 8:03 PM, VICKI CLARKSON wrote:
        > Lance,
        >
        > As I know you are aware, the money that I sent on Dec 18, 2009 to Scott Koster in trust
        to you (Mockingbird Films) was to be returned to me on January 18, 2010 with our agreed
        upon rate and late payment charges, as of today November 10, 2010, no money has ever
        been returned.
        >
        > My counsel in Calgary is advising me to take action against Mockingbird films for
        immediate collection of the money that is owed.  There is not any information besides emails

21

and conversations which have no proof that any such buy/sell is in fact happening. Is this correct?

**[Flores Response]**
**Yes. That is correct. We have no proof that there is any legitimate gold buy/sell transaction that exists. There is no contract in place that can be confirmed nor any verifiable document. We have only conversations that purport there may be a draft or document that may exist.**
>
> **After weeks and weeks of promises and hope that something is happening, still no proof is available, just conversations of more reasons for delays. Kerim Emre told me in early August that this deal would be done by August 10, 2010. Frankly it was my understanding that the only hold up were contracts for the buy/sell.  Where are they?**

**[Flores Response]**
**We have no confirmation or evidence that such exists at all.**
>
> **During the past 47 weeks since the wire to Scott Koster on December 18, 2009 have you received any proof or evidence that Scott Koster or Alicorn Capital Management had engaged in any legitimate transaction using the funds you received from us?**

**[Flores Response]**
**No. I have continually asked throughout that period you have stipulated without any response. All inquiries for proof have been refused or ignored.**
>
> **During the past 47 weeks since the wire to Scott Koster on December 18, 2009 can you substantiate any of the claims or statements made to you regarding any of the transactions related to your investment by Scott Koster, Kerim Emre?**

**[Flores Response]**

**No, I cannot. We have engaged an investigation. We will share that information with you and your counsel.**
>
> **My lawyer will be contacting you before the end of the week. Please communicate your immediate intentions for a remedy.**
**We can have that prepared for your lawyer on Friday.**
>
>
> **Regards,**
>
>
> **Vicki**
>
> **Vicki Clarkson**

**EXHIBIT 089 - 11/11 1:23 PM Koster Msg. - Ruffled Feathers - Prove & Defend Everything in Court of Law - Theft of Plaintiffs' Gold Transaction ⅓ Interest Requested by Richard Hall, and the other two partners**

(Thursday, November 11, 2010 1:23 PM CST)

———— Original Message ————
Subject:   Re: Gold Buy/Sell
Date:   Thu, 11 Nov 2010 13:23:18 -0600
From: Scott Koster <koster.scott@gmail.com>
To:     Lance @ MFI <lance@mockingbirdfilms.com>

Lance,

①→As john told you on the phone, you more than ruffled feathers with your comments regarding the feds to winston and dr fletcher. This email is icing on the cake.

②→Everything that has been done to this point can be proven and defended in a court of law. Please tread carefully, as we are very aware of the lies you have told about your involvement with myself, as well as how you passed money through your family to get back to you.

③→Again, issues between you and vicki are between you and vicki. You did not make anyone aware of her involvement until mid this year.

④→If you wish to proceed in either this transaction, or just back out, let me know. After your comments to winston, it was requested by both richard, and the other two partners to find a replacement for your 1/3rd, as richard does not need that kind of drama in his world, and neither do the other two.

Lance, I see you, and who you are. I understand your back is against a wall from the decisions you have made. I have not shut you out, and continue to try to help you. I do not understand your constant need to be combative, when all you have been told is the truth.

Lance, all of us, kerim, john, wendy, richard and myself, want to help you, but not one of us belive that your intentions are true or just. We all feel that you are playing a game, and that we will end up hurting ourselves in the long run.

Let me know your thoughts.

Scott

P.s. happy veterans day.

EXHIBIT 090 - 11/11 2:56 PM Flores Msg to Koster - Opportunity or Recant and Clerify

(Thursday, November 11, 2010 2:56 PM CST)

From: "Lance @ MFI" <lance@mockingbirdfilms.com>
To: Scott Koster <koster.scott@gmail.com.readnotify.com>
CC: Vicki Clarkson <vickiclarkson@shaw.ca>, LegalDeptCV@mockingbirdfilms.com
Subject: Gold Buy/Sell
Date: Thu, 11 Nov 2010 20:56:07 GMT
Content-Type: text/plain; charset=utf-8

TO: Scott Koster, Alicorn Capital Management
CC: Vicki Clarkson & Counsel
CC: MFI Legal Counsel
RE: Gold Buy/Sell
VIA: Certified Electronic Mail IP

We will have the firm examine your message of 11/11/2010 1:23 PM and
will respond accordingly.

①→If your statement "/it was requested by both richard, and the other two partners to find a
replacement for your 1/3rd /" in your email response is not true, please state so immediately, and
consider such as legal opportunity to recant that statement. Otherwise, we take your statement as
your acknowledgment that same is, by your affirmation by silence, a accurate, true and correct
declaration of the facts. Our reliance on your statement may substantially affect those individuals.

②→If there is, in my response to the email inquiry by Ms. Vicki Clarkson, of Calgary, Canada, on
Nov 11, 2010 1:03 PM, a statement that you believe is incorrect, please note exactly the inaccuracy
of my answer to her and/or her counsel's question.

Please note that that the aforementioned email response to Ms. Clarkson was copied to you and to
no other member of any of the aforementioned parties including "Richard" or the purported other
partners, as this communication has not.

Sincerely,

Lance Flores

 EXHIBIT  091 - 11/12 Koster Msg to Flores - I Always Tell the Truth - Alicorn Gold Transaction
Offering is 100% - Richard's Group (Richard Hall, Christine Wong-Sang, Vladimir Pierre-Louise,
a.k.a. Berea Inc.)  is also very real.

(Friday, November 12, 2010 4:40 PM CST)

———— Original Message ————
Subject:   Re: Re: Gold Buy/Sell
Date:  Fri, 12 Nov 2010 16:40:04 -0600
From: Scott Koster <koster.scott@gmail.com>
To:     Lance @ MFI <lance@mockingbirdfilms.com>
CC:    LegalDeptCV@mockingbirdfilms.com, Vicki Clarkson <vickiclarkson@shaw.ca>


Lance, let me know the outcome of your dealings with Vicki. ①→Had you been upfront about her
involvement from the get go, I would have more compassion for your situation. But having learned
that you invested with not your money, but that the money was borrowed from another source first
from Kerim, then from Wendy, and finally from Vicki herself. The latter two were in blind sided
phone calls. That was not appreciated in any way shape or form. Then to hear about the
circumstances of how the loan came into place with other people placing collateral down for
you...Lance, you have been dishonest with me about this from the beginning. ②→ I ALWAYS tell
the truth, because it can be proven. Its easy to remember, and it does not come back to bite you.
My integrity is one of the things that has always set me apart from other brokers out there, and its
what has moved me forward into the position I am in today with my platforms, providers, and
lenders. Im finding it difficult to continue to feel compassion about this situation, while it risks to
affect my other clients in an adverse way.

Here is what I propose to you. Lets start with a clean slate, regarding the misunderstandings and
mistruths. I do not think that you did anything to deliberately tried to hurt anyone in this.

Get your paperwork in order, and let me know what you need. I understand your issue with Vicki
is very real, and very pressing. I will do what I can to help you with your needs. ③→The
paperwork is real, the SBLC offering is real, and I can prove what my company is offering to you
100%. ④→Richards group is also very real. I cannot comment on what they will be willing to offer.
⑤→I can however request a copy of the buy/sell agreement from Mr. Cook, which I actually
believe John has a copy of.

Regarding the paperwork you will be sending tomorrow. I will not have an opportunity to review
or respond until late Monday the 15th. I do not want that to cause you issues, and I need you to be
aware of that incase you need to prepare for additional timelines in your dealings with Vicki.

Scott

EXHIBIT  092 - 11/15 Gary W.  Grab Law Office Letter

## GARY W. GRAB LAW OFFICE

Suite 200, 816 – 7th Avenue SW
Calgary, Alberta T2P 1A1
Phone: (403) 819-7757
Facsimile: (403) 295-8021
Email: garygrab@shaw.ca

November 15, 2010

Mockingbird Films International LLC
3314 Pleasant Drive
Dallas Texas USA 75221

Attention:     Lance Flores
                     Executive Managing Partner

**In the matter of:**
**United States District Court, Northern District of Texas, Dallas Division - R. Lance FLORES,**
**MOCKINGBIRD FILMS INTERNATIONAL LLC, Vicki CLARKSON and CLARKSON'S CLASSICS INC.**
**(Plaintiffs)**
**v.**
**Scott KOSTER, ALICORN CAPITAL MANAGEMENT, and Kerim EMRE,**
**(Defendants)**

Dear Mr. Flores,

As you are aware, I represent Ms. Vicki Clarkson and Clarkson's Classics Inc., respectively.  Ms.
Clarkson is a Director and an authorized representative of Clarkson's Classics Inc. (collectively,
Vicki Clarkson and Clarkson's Classics Inc. being hereinafter referred to as "VC").

Upon reviewing with VC the issues in the above-styled cause of action and the circumstances
related thereto, VC hereby wishes to hereby confirm its intention to join and participate in the
abovementioned cause of action as a plaintiff alongside Mockingbird Films International LLC
("Mockingbird"), et al. In the event VC does not receive by close of business (5:00 pm MST) on
Tuesday, November 16, 2010 "verifiable documents" unconditionally evidencing that certain
Gold Buy / Sell transaction entered into with, inter alia, Scott Koster, Alicorn Capital
Management and Kerim Emre, respectively, hereby expresses its desire to proceed to litigation
and/or to pursue such other remedies available at law.

VC further hereby confirms its intentions to participate with Mockingbird, et al, in the
settlement stipulations, agreement(s) and other documentation being drafted at this time and

26

in any subsequent proceedings in the federal complaint action against Scott Koster / Alicorn Capital Management et al.

In connection with the "verifiable documents" unconditionally evidencing that certain gold buy / sell transaction entered into with, *inter alia*, Scott Koster, Alicorn Capital Management and Kerim Emre, respectively, as referred to above, please note that VC's minimum satisfactory requirements for such verifiable documents include, but are not necessarily limited to:

a)      a verifiable copy of the bank-to-bank MT transmission vehicle such as MT 760 of the SBLC or the financial instrument to which Lance Flores / Mockingbird has been assigned ownership in the "partnership" of the Gold Buy / Sell transaction - such shall be deemed valid upon verification by Lance Flores' law firm or banker.

b)      a verifiable copy of the partnership document to which the aforementioned SBLC has been proportionally assigned to Lance Flores or Mockingbird, Winston J Cook and Ivan Arcadia Santos.

c)      a verifiable copy of the signed gold purchase / sell contract.

d)      a verifiable copy of the instruments directing the proceeds for the sale of the gold sale benefits to be transmitted to the account of Lance Flores or Mockingbird.

e)      a verifiable copy of the payment schedule outlining   the schedule of funds transfer pertaining to the Gold Buy / Sell transaction.

Please be advised that in the event the above mentioned documents are not provided to VC by close of business (5:00 pm MST) on Tuesday, November 16, 2010 VC hereby confirms that it will pursue all available remedies, including, but not limited to, immediate injunctive relief from the Court and to proceed expeditiously to discovery and trial.

Please do not hesitate to contact the undersigned if you require anything further.

Yours truly,

Gary W. Grab Law Office

Gary W. Grab

27



EXHIBIT 093 - 11/16 Flores - Legal Counsel query - Plaintiffs Clarification - Demand for information: "I ALWAYS tell the truth, because it can be proven"

----- Original Message -----
From: Lance @ MFI
To: Scott Koster
Cc: Kerim Emre
Sent: Tuesday, November 16, 2010 1:43 PM
Subject: Re: How are things moving along

TO: Scott Koster, Alicorn Capital Management
CC: Kerim Emre
CC: Vicki Clarkson
CC: Gary W. Grab Law Office
CC: MFI Legal Counsel

RE: Gold Buy/Sell & IDLYC/BMW-Majestic, inter alia

VIA: Certified Electronic Mail

Scott,
①➙  Let me first ascertain that you haven't engaged legal counsel to represent you. Yes or No. I cannot discuss matters pertaining to this case if you have engaged an attorney to represent you. It appears you are saying you haven't engaged representation. Thusly:

②➙  Ms Clarkson is not bringing a "case" (a complaint {suit} or legal proceeding) against me. She could have filed a Petition to Intervene as of right under Fed. R. Civ. P. 24(a)(2) or permissively under Fed. R. Civ. P. 24(b)(2). et seq.

{To qualify for intervention of right under Fed. R. Civ. P. 24(a)(2), a prospective intervenor must (1) submit a timely application; (2) claim "an interest relating to the property or transaction which is the subject of the action"; (3) be "so situated that the disposition of the action may as a practical matter impair or impede [the applicant's] ability to protect that interest"; and (4) show that the would-be intervenor's interest is not "adequately represented by existing parties." All four preconditions must be met. Travelers Indem. Co. v. Dingwell, 884 F.2d 629, 637 (1st Cir. 1989). The would-be intervenor bears the burden of demonstrating compliance. International Paper Co. v. Inhabitants of Town of Jay, 887 F.2d 338, 342 (1st Cir. 1989).}

Notwithstanding, Ms Clarkson by counsel has chosen to petition MFI to join as a Plaintiff instead of petitioning to intervene and become an Intervenor. She was given permission and is now a Plaintiff, because she has an interest in the cause of action.

③➙  I am asking you for a production of documents which you have stated on more than one occasion that could evidence your claims of veracity. That is all you've been asked to deliver. Clarkson, et al., will press the Plaintiffs into aggressive action if you do not comply with the

28

request for documents.

I don't understand why, if you have the verifiable documents that you say which will prove the legitimacy of the transaction. You stated you were going to provide the information to me. This would quickly bring this matter to a conclusion.

I am at this time the Attorney of Record for FLORES/MOCKINGBIRD as Gary is for CLARKSON/CLARKSON CLASSICS.

Thanks for your kind consideration.

Sincerely,
Lance Flores

[CERTIFIED ELECTRONIC MAIL CERTIFICATE]

ReadNotify.com Proof-of-Posting certificate.

The one or more digital certificates shown below were generated and attached during dispatch to your email entitled " Re: How are things moving along" sent on Tue, 16 Nov 2010 20:44:01 GMT from lance@mockingbirdfilms.com to koster.scott@gmail.com with ReadNotify.com reference 1ac81c21decc3fa496645fef042ecbd4 and your messageid ' <4CE2ED0E.4020609@mockingbirdfilms.com>'

For your convenience, your original (now digitally signed & time-certified) email is attached hereto.

HTML portion certificate:-
ReadNotify.com E-mail Posting-Time Digital Certificate.   On Tue, 16 Nov 2010 20:44:01 GMT the above e-mail arrived from lance@mockingbirdfilms.com for koster.scott@gmail.com, was assigned sequence number #16187022 and ReadNotify reference 1ac81c21decc3fa496645fef042ecbd4, digitally signed, and immediately dispatched. NB: This certificate irrevocably links the body and headers of this email to the date and time they were dispatched. The following signature is now published online; to view it, verify it, or for more information, please visit www.ReadNotify.com.

——BEGIN PGP SIGNATURE——
Version: GnuPG v1.0.6 (ReadNotify.com TimeStamp Server v2.2)
Comment: Certificate #16187022, created Tue, 16 Nov 2010 20:44:01 GMT

iQBvAwUBTOLtETanThAdit3tAQH2XgLQl4ccrTz1rCAoqPwUGpTzSBt0vvw7ns8g
mr9j8+bPn736Y1OgX9s6lYcmaTI7reD/kE2Z07ZPjzewByjDLf+ExGh+nOdFBs9H
I3/8F0du/V+2yaY8KFcqpoFI
=O4/T
——END PGP SIGNATURE——
Re: How are things moving along.eml

EXHIBIT  094 - 11/16 2:24 PM Flores Msg to Emre

(Tuesday, November 16,  2:24 PM CST)

------ Original Message ------
From: Lance @ MFI
To: Kerim Emre
Sent: Tuesday, November 16, 2010 2:24 PM
Subject: Re: Stipulations for Settlement

**Kerim,**
I had to stop working on the settlement, which essentially formalizes "Scenario1" below, as Scott is rattling swords. I don't know if he is going to deliver the proof. I hope this not what he is doing. We will proceed to immediate injunctive relief from the Court to audit and take over the transaction, then proceed to discovery and trial if Scott does not deliver. If you can provide information it would suffice, and we could move onto the settlement. I don't understand why Scott will not comply, and most likely, neither will the judge. Scott seems determined to force this situation into full blown litigation. If you can provide any proof of the legitimacy of this transaction, I urge you to do so, and let's just move on. I think the settlement is actually an excellent opportunity to advance everyone's interests.

Best Regards,
Lance

On 11/15/2010 3:15 PM, Lance @ MFI wrote:
| Yes. Scenario 1 is the proposed principle for the agreement. We are completing the Stipulations for Settlement for you and the Settlement Agreement for the Court. We should have that available shortly.
|
| Best Regards,
|
| Lance
|
|
|
| On 11/15/2010 2:59 PM, Kerim Emre wrote:
|| Hi Lance,
|| Vicki and you were advised what my stance was on the settlement on October 25th. You still have not provided any paperwork to me, period. Â Still waiting on these docs that you "printed on letterhead to send out immediately."
|| &c.

**EXHIBIT  095 - 11/16 3:45 PM Koster Msg - Notice of defaced Gold Transaction Information Delivery**

(Tuesday, November, 2010  3:45 PM CST)

———— Original Message ————
Subject:   Attaching the requested documents.
Date:  Tue, 16 Nov 2010 15:45:25 -0600
From: Scott Koster <koster.scott@gmail.com>
To:    Lance @ MFI <lance@mockingbirdfilms.com>, LegalDeptCV@mockingbirdfilms.com
CC:    Kerim Emre <kerim.emre@gmail.com>


Lance,

I need you to understand that the to come attachments include sensitive information about the transaction, the parties involved, and important financial information that is not to be distributed freely. Please, prior to providing this information to any parties outside of those with a direct part in this transaction, sanitize the beneficiary information out of the documents, as well as any contact information for Richard and his parties. You are being provided this information as a member of the transaction, and only in those regards.

The items which cannot be provided are as follows:

①→ MT798/760 delivery conformation, as this has not yet taken place.
Specific dates/timelines for the payment, as these are directly dependent on the swift to take place.

I will send the attachments separate from this email.

If you have any questions, please address them directly to myself, so that I may be provided an opportunity to answer them prior to anyone else making assumptions of any manner.

–
Scott A. Koster
koster.scott@gmail.com
info@alicorncapitalmanagement.com
Direct: 612-916-7007
Conference Line: 218-844-8230
Access Code: 380262#
Skype: alicorn.capital

31

EXHIBIT  096 - 11/16 4:24 PM Koster Msg - Response to Flores 4:10 PM Msg

(Tuesday, November 16, 2020 4:24 PM CST)

——— Original Message ———
Subject:   Re: Attaching the requested documents.
Date:  Tue, 16 Nov 2010 16:24:57 -0600
From: Scott Koster <koster.scott@gmail.com>
To:     Lance @ MFI <lance@mockingbirdfilms.com>

I did not forget, Im uploading them separately. I have satellite internet, and the uploads are super super slow. I do not have a copy of the buy/sell contract, so I have requested this from Winston, so that it can be submitted into the package.

I will send over the SBLC engagement docs, signed and executed by Mr. Cook.

I will then get together the rest of the docs, and get them off to you after my meetings this evening.

Scott

> On Tue, Nov 16, 2010 at 4:10 PM, Lance @ MFI <lance@mockingbirdfilms.com> wrote:

> | Scott
> |
> |①➜   I'm not interested in anything but verification. If the information can be verified and we are satisfied that's all. But, you did forget to attach documents. I use to do that all the time. Now my Foxfire mail client, reminds me when I forget.
> |
> | Lance

(&c.)

EXHIBIT  097 - 11/16 Koster Msg w/7 Attachments

———— Original Message ————
Subject:   SBLC documents Part 1 of 2
Date:  Tue, 16 Nov 2010 16:26:41 -0600
From: Scott Koster <koster.scott@gmail.com>
To:    Lance @ MFI <lance@mockingbirdfilms.com>

Lance,

Please see the attached documents for the SBLC enagement. These have been signed and
executed by Mr. Cook, and reviewed/initialed by Ivan.
--
Scott A. Koster
koster.scott@gmail.com
info@alicorncapitalmanagement.com
Direct: 612-916-7007
Conference Line: 218-844-8230
Access Code: 380262#
Skype: alicorn.capital

{E-mail Attachments: scan0001.pdf; scan0002.pdf; scan0003.pdf; scan0004.pdf; scan0005.pdf ;
scan0006.pdf; scan0007.pdf; Exhibits 98-103}

EXHIBIT 098 - CBS/Alicorn Engagement Letter

**Cook Business Services LLC & Alicorn Capital Management LLC**

**ENGAGEMENT LETTER**

**Alicorn Capital Management, LLC.**
14391 80th Street, Milaca, MN 56353

612-916-7007

# ENGAGEMENT LETTER

This Engagement Letter is entered into this _____ by and between Alicorn Capital Management, LLC ("ACM"), a Minnesota Corporation with its principal place of business at 14391 80th Street, Milaca, MN 56353 ("ACM / Intermediary") and _____ a representative of _____ ("Recipient" / "Client"), an entity who's principal place of business is located at _____ (collectively, "the parties").

WHEREAS, Recipient requires a Stand by Letter of Credit (SBLC) to facilitate the requirements of a business transaction, and

WHEREAS, Intermediary has the ability to provide the SBLC subject to the terms and conditions stated herein.

NOW THEREFORE, in consideration of the mutual and respective covenants contained in this Engagement Agreement, Intermediary and Recipient agree as follows:

1.      **Agreement** -- Intermediary agrees to provide Recipient a provider for delivery of a: cash backed assignable, transferable and divisible Stand by Letter of Credit (SBLC) for ten million United States Dollars ($10,000,000.00) from a qualified financial service provider. The SBLC will be delivered via Swift Transmission MT760 via MT798 Envelope for LC delivery, Bonded Courier, as well as electronic dissemination:

| | |
|---|---|
| **Amount:** | 10,000,000.00 (USD) |
| **Term:** | Initial delivery for sixty (60) days and written for One year and One Day |
| **SBLC Supplier:** | Qualified Financial Service Provider - SBUSA |
| **Method of Delivery:** | SWIFT MT798 containing an 760 message type, Electronic Delivery, Courier |
| **Service Fee:** | 10% per calendar year |
| **Method for paying fees:** | Service fee for the first 60 days, due in escrow. And payable by ACM. Thirty 30 day extensions are at a discounted rate of 1%, per 30 days, for a period of 1 year. All fees are due and payable to financial coordinates provided. See Exhibit "D" Fee Protection Agreement. |
| **EXTENSIONS:** | One percent (1.0%) per month after initial sixty days. Full & Payable within 50 days of issuance. |
| **SWIFT:** | SBLC delivered via MT798/760; $32,000 USD per SWIFT |
| **Client to Supply:** | Application, Color copy of passport and engagement fee. |

Engagement Letter          Initials ____ / ____   _____          Page 1

EXHIBIT  099 - CBS/Alicorn Escrow & Wire Inst to Busch Law Cntr

**Cook Business Services LLC & Alicorn Capital Management LLC**

**ESCROW & WIRE INSTRUCTIONS TO BUSCH LAW CENTER**

35

**Alicorn Capital Management, LLC.**
**14391 80th Street, Milaca, MN 56353**
**612-916-7007**

3434 Anthem Way, Ste 118-621, Anthem, AZ 85086-0448
PHONE: (623) 826-1995 / FAX: (623) 551-1006
DATE:
ESCROW AGENT: LARRY J. BUSCH, JR, ATTORNEY AT LAW
ESCROW NO:

ESCROW INSTRUCTIONS EXHIBIT "A"

**PARTIES TO THIS ESCROW:** This escrow is established by and between _____ _____, _____, _____, hereinafter referred to as ("Company") and Alicorn Capital Management, LLC., with its principal place of business listed above, hereinafter referred to as ("ACM"), collectively referred to as ("Parties or Principals").

**PURPOSE OF THIS ESCROW:** ACM has arranged the lease of an SBLC. This transaction is between SBUSA ("Provider") and Company, and the purpose of this Escrow is to pay the fee and related costs for the lease of the funds. Escrow Agent has been provided a copy an unsigned "Engagement Letter" for informational purposes only. ACM shall wire transfer the amount required to secure delivery of the SBLC for a period of sixty (60) days. Immediately upon receipt by email or fax of a copy of a document titled "Engagement Letter" that has been signed by ACM and Company, and a copy of an operative SBLC, Escrow Agent shall wire transfer funds per ACM's instructions less escrow fees and charges without further authorization from the Company.

**ESCROW AGENT DUTIES:** Escrow shall receive by wire transfer from ACM for the purpose of securing an SBLC for a period of sixty days. Said SBLC will name the Company as the account holder with the beneficiary to be determined at a later date. Immediately upon receipt by email or fax of a copy of a document titled "Engagement Letter" that has been signed by ACM and Company, and receipt of an electronic copy of an operative SBLC, escrow agent shall wire transfer funds per ACM's instructions less escrow fees and charges without further authorization from the Company.

**NOTICES:** All notices, requests, demands, and other communications under this escrow shall be either in writing or sent by facsimile transmission with written confirmation mailed and shall be deemed to have been duly given on the date of service if served personally, or sent by facsimile transmission, or on the second day after mailing if mailed to the party to whom notice is to be given, by first class mail, registered or certified, postage prepaid and properly addressed.

**All funds received into escrow** shall be deposited with other escrow funds in a general trust account of Busch Law Center, LLC, unless otherwise instructed.

**Escrow Agent is not a party to,** or bound by, any provisions contained in any property which may be deposited under, evidenced by, or arise out of these instructions, and with respect thereto, acts as a depository only and is not responsible or liable in any manner whatsoever for the sufficiency, correctness, genuineness or validity of any property or with respect to the form or execution of the same, or the identity, authority or right of any person executing or depositing the same.

**Escrow Agent shall not be required** to take or be bound by notice of any default of any person, including any Principal, or to take any action with respect to such default whether or not such action involves any expense or liability. These instructions shall not be subject to modification or rescission except upon receipt by Escrow Agent (at the office named above) of written instructions from each of the principals or their successors in interest, and no such rescission or modification shall be effective unless consented to by Escrow Agent in writing.

**Principals hereby indemnify** and hold Escrow Agent harmless against any loss, liability, damage, cost or expense, including reasonable attorneys' fees, (a) related in any way to Escrow Agent's acting upon any

Initials: _____                              Page 1

# ESCROW INSTRUCTIONS, EXHIBIT "A"

Notice, request, waiver, consent, receipt or other paper or document believed by Escrow Agent to be signed by Principals or any other proper person, and (c) incurred in connection with any act or thing done hereunder.

**Escrow Agent shall not be liable for any error** of judgment or for any act done or step taken or omitted by it in good faith or for any mistake of fact or law or for anything which Escrow Agent may do or refrain from doing in connection herewith, except its own gross negligence or willful misconduct. Escrow Agent shall have duties only to the Principals, and no person shall be deemed a third party beneficiary of these instructions.

**Escrow Agent may consult with legal counsel** in the event of any dispute or question as to the construction of these instructions or Escrow Agent's duties there under, and Escrow Agent shall incur no liability and shall be fully protected in acting in accordance with the opinion and instructions of counsel.

**In the event of any disagreement between the Principals,** or any of them or any other person or persons whether or not named in these instructions, and adverse claims or demands are made in connection with or for any of the Property, Escrow Agent shall be entitled at its option to refuse to comply with any such claim or demand so long as such disagreement shall continue, and in so doing, Escrow Agent shall not be or become liable for damages or interest to the Principals, or any of them, or to any other person or persons for Escrow Agent's failure or refusal to comply with such conflicting or adverse claims or demands. Escrow Agent shall be entitled to continue so to refrain and refuse so to act until: (a) - the rights of the adverse claimants have been fully adjudicated in a court assuming and having a jurisdiction of the claimants and the Property; or (b) - all differences shall have been adjusted by agreement, and Escrow Agent shall have been notified thereof in writing by all persons deemed by Escrow Agent, in its sole discretion, to have an interest therein.

**In addition,** Escrow Agent in its sole discretion, may file a suit in interpleader for the purpose of having the respective rights of all claimants adjudicated, and may deposit with the court all of the Property; and the Principals agree to pay all costs and counsel fees incurred by Escrow Agent in such action; said costs and fees to be included in the judgment in any such action.

**In consideration of acceptance of this appointment** by Escrow Agent, the Principals agree to indemnify and hold Escrow Agent harmless as to any liability incurred by Escrow Agent to any person, firm or corporation by reason of its having accepted same or in carrying out any of the terms hereof, and to reimburse Escrow Agent for all its expenses, including among other things, counsel fees and court costs incurred by reason of its position or actions taken pursuant to these Escrow Instructions. The Principals hereby agree that the Escrow Agent shall not be liable to any of them for any actions taken by Escrow Agent pursuant to the terms hereof.

**Escrow Agent is hereby authorized, in its exclusive discretion,** to obey and comply with all writs, orders, judgments or decrees issued by any court or administrative agency affecting any money, documents or things held by Escrow Agent. Escrow Agent shall not be liable to any of the parties hereto, their successors, heirs or personal representatives by reason of Escrow Agent's compliance with such writs, orders, judgments or decrees, notwithstanding such writ, order, judgment or decree is later reversed, modified, set aside or vacated.

**If any action is brought to interpret or enforce these instructions,** or any part hereof, the Principals jointly and severally agree to pay to Escrow Agent all Escrow Agent's fees, accounting fees, special and extra service fees, and other costs related to such action.

**In the event the escrow established hereby is canceled,** the Principals jointly and severally shall nevertheless pay to the Escrow Agent the initial fee together with all costs and expenses of Escrow Agent. Notwithstanding anything in these instructions to the contrary, Escrow Agent may, in its sole discretion, upon ten (10) days written notice to any of the Principals, resign as Escrow Agent and Escrow Agent shall be entitled to reimbursement for those costs and expenses incurred to the date of such resignation.

Initials: _____   Page 2

## ESCROW INSTRUCTIONS, EXHIBIT "A".

Cancellation by the Principals or resignation by Escrow Agent, after deducting Escrow Agent's fees, costs and expenses, the balance of any funds or Property shall be returned to the respective Principals who shall have deposited same.

**In the event that:**
(a) Escrow Agent performs any services not specifically provided herein or
(b) There is an assignment or attachment of any interest in the subject matter of the escrow established hereby or any modification thereof, or
(c) Any dispute or controversy arises hereunder, or
(d) Escrow Agent is named a party to, or intervenes in, any litigation pertaining to this escrow or the subject matter thereof, Escrow Agent shall, in addition to fees and charges for ordinary services, be reasonably compensated therefore and reimbursed for all costs and expenses, including but not limited to attorneys' fees, occasioned thereby.

**Escrow Agent** shall have a first lien on the Property for such compensation and expenses, and the Principals agree jointly and severally to pay the same to Escrow Agent.

**These escrow instructions are not intended** to amend, modify, or supersede any prior contract or agreement that may contain certain contingencies by and between the Parties that may not be set forth in these instructions. Escrow Agent is a party only to these instructions and shall have no responsibility for the enforcement or adhere to any other agreements of the Parties.

**Escrow Agent shall be entitled to an initial**, non-refundable set-up fee ("initial fee") of $1,500.00, payable concurrently with its acceptance, and to additional compensation as follows: Plus: $50.00 per wire transfer.

**The Principals understand that Escrow Agent will charge** additional fees, including premium hourly fees, for any services performed according to these Escrow Instructions, or any modification or any service not specifically provided therein, that involve concerted effort, employees working overtime, expedited handling of any aspect of the Escrow, or other similar services.

**These escrow instructions may only be amended by a writing signed by all Principals. UPON THE DISBURSEMENT OF THE FUNDS AND DOCUMENTS, THIS ESCROW SHALL BE CONSIDERED CLOSED AND NO LATER THAN** _____, **OR AS SOON THEREAFTER AS THE CONDITIONS ARE MET.**

**These instructions may be executed in counterparts**, each of which so executed shall be deemed as original, irrespective of the date of its execution and delivery, and said counterparts together shall constitute one and the same instrument.

**EACH OF THE UNDERSIGNED STATES THAT THEY HAVE READ, UNDERSTAND, AND AGREE TO THESE INSTRUCTIONS. ESCROW AGENT IS NOT AUTHORIZED TO GIVE LEGAL ADVICE. IF THE PRINCIPALS DESIRE LEGAL ADVICE, CONSULT YOUR ATTORNEY BEFORE SIGNING.**

This Agreement is agreed to and acknowledged by:

Its: _____
Individually and on behalf of:

_____ Date _____

For Aljorn Capital Management, LLC

_____ Date _____
Scott A. Koster, General Partner

Initials: _____                    Page 3

**Alicorn Capital Management, LLC.**
14391 80th Street, Milaca, MN 56353
612-916-7007

EXHIBIT B

# FINDER FEE AGREEMENT

1.This **AGREEMENT** is entered into by and between Alicorn Capital Management, LLC ("ACM"), a Minnesota Corporation with its principal place of business at 14391 80th Street, Milaca, MN 56353 and _____ ("Client"), an entity in the state of Georgia with it's principal place of business at _____ (collectively, the "Parties").

2.**Client** has requested ACM to assist them in arranging _____ _____. Said introduction is so that client can facilitate project funding. **Client** herby engages ACM as **Client's** agent for a period of 90 days from the date of execution of this document and is granted the right for said period to obtain a SBLC/BG from an Investor or Correspondent to provide the said instrument. Upon delivery of said SBLC via any of the afore mentioned methods (electronic, bonded courier, or SWIFT MT760) and a document titled "Engagement Letter" which is signed by both **Client** and ACM during said period, then said service fee is considered earned. ACM agrees to use best effort in endeavoring to arrange said BG/SBLC during the term of this agreement. **Client** agrees to accept above mentioned terms: and

*[signature]*

3.**Service Requested:** ACM to provide Introduction to Lender for the purpose of obtaining a BG/SBLC.

## TERMS AND CONDITIONS

Initial Delivery:

| Type: | SBLC |
|---|---|
| Amount: | Ten Million USD. ($10,000,000) |
| Service Fee: | ACM to Pay all service related fees |
| ACM Fees: | ACM to pay all service related fees |
| Term: | Sixty days. (60) plus optional extensions |
| Method of Payment: | See Exhibit "A" Escrow Instructions and Exhibit "C" Wiring Instructions for banking coordinates |

Finder Fee Agreement *[signature]* / *[initials]* Initials                                    Page 1

Optional extensions:

| Type | SBLC |
|------|------|
| Amount: | Ten Million USD. ($10,000,000) |
| Service Fee: | Ten percent of face value. (10%) |
| ACM Fees: | One million USD. ($1,000,000), must be received at designated coordinates within fifty (50) days of initial instrument delivery or instrument will expire on day sixty (60). |
| Term of extension: | Remaining ten months. (10); total term one year and one day. |
| Method of Payment: | Per Fee Protection agreement (FPA), Exhibit "D", to be executed by "Client" and lodged with the paymaster of ACM's choice. |

*g. Disclosure of Funding and Supervising Regulations. Client agrees that it shall fully disclose to all parties who may ... are likely to ... in that act. If any ... whatsoever on the availability or existence of the Leased Funds that said Leased Funds are "leased from a Lessor" by the Client and that additional monies cannot be added to the Leased Funds or the Leased Funds Account, and that the Leased Fund or the Leased Funds Account cannot be joined or aggregated with other funds of the Client or anyone else in any manner whatsoever.*

*h. To Benefit & Insurance. Insurance warning: Client agrees that notwithstanding an understanding of the value of the Leased Funds is used in contracting a transaction contemplated by the Client, it may be that the use of the Leased Funds are have no economic or useful value in connection with regard to the completion of the contemplated transaction or any other matter. Because the Leased Funds may have no useful value, Client agrees that whether or not the use of the Leased Funds is a benefit to the client or on behalf of the client actually benefit, the Client at (1) not in any manner whatsoever the responsibility of ACM and (2) is the sole responsibility of the Client.*

*i. Read and Understands This Paragraph. The Client represents and agrees and certifies by placing Client's initials below that Client has read and understands it whole and in part this Paragraph 5 a. through f.h.*

Initials of Client [signature] / [signature]

## 5. DISCLAIMER OF IMPLIED WARRANTY(S). WITH REGARD TO THE USE OF THE LEASED FUNDS, ACM HEREBY DISCLAIMS ANY IMPLIED OR EXPRESS WARRANTY OF ANY KIND FOR FITNESS FOR A PARTICULAR PURPOSE AND/OR FOR ANY OTHER WARRANTY(S).

6  INDEMNITY:a. The Client agrees at its expense to defend, indemnify and hold ACM harmless from any and all third party claims, demands, causes of action and judgments (including attorney's fees, court costs and expert witness fees and claims by anyone or any entity) arising out of (i) Client utilizing the Leased Funds in any manner whatsoever, (ii) Client's advertising or promotion of any and all activities related directly or indirectly to the use of the Leased Funds, (iii) Client's misuse of the Leased Funds or the use thereof causing injury to third party(s), (iv) Client injuring a third party in any manner whatsoever or (v) Lessor withdrawing permission of the Client to use the Leased Funds. In any dispute, ACM shall be consulted with regard to any admission or settlement that may adversely affect the interests of ACM. Under this indemnity provision in no event shall ACM be liable for any damages, including without limitation, loss of profits by anyone, arising from or related to the Client's use of the Leased Funds or the termination of this Agreement or the Leased Funds Agreement, even if ACM has notice of the possibility of such damages.

**7.Client** warrants that the information furnished to ACM herein, elsewhere and otherwise by **Client** is true and accurate and complete to the best of **Client's** knowledge and belief, and not substantial information adverse or detrimental to the granting of the financing has been withheld from the ACM. Further, **Client** agrees to cooperate fully with ACM's requests in providing information, documentation or other material necessary to complete the application for obtaining said SBLC.

In the event of termination of this agreement due to breach of this agreement by **Client**, in addition to any other rights of ACM or Investor/Correspondent, **Client** agrees to pay all reasonable costs and other directly chargeable expenses paid or incurred by ACM or Investor/Correspondent acting pursuant to this Agreement or any or commitment issued pursuant hereto. **Client** further agrees that, in such event, ACM has the right to demand funds upon delivering an invoice for this purpose.

**8.Client** will not subsequently communicate either directly or indirectly with any Investor and or Financier approached and/or introduced to the Client by Alicorn Capital Management through these documents or otherwise

---

Finder Fee Agreement [signatures] / Initials                 Page 3

## Alicorn Capital Management, LLC.
14391 80th Street, Milaca,
MN 56353

# WIRING INSTRUCTIONS

**BANK:**     **MidFirst Bank**
**3611 W. Anthem Way**
**Anthem, AZ 85086**

**ACCOUNT NAME:**     Busch Law Center, LLC - IOLTA

**ROUTING #:**     122187445

**ACCOUNT #:**     ████████0443

**KNOWN TO PAYMASTER:**     *Alicorn Capital Management, LLC.*

**FOR THE BENEFIT OF:**     Cook Business Services, LLC..

ACCOUNT:     All related service fee for initial delivery

Bank Tel:     623-544-4143

Bank Agent:     Michael Favis

**International Funds Sent to Paymaster in U.S.**

**Bank Name:**     JP Morgan Chase
**SWIFT:**     Code CHASUS33
**Account Number:**     10069809
**Account Name:**     MidFirst Bank, aba 303087995, FCC Busch Law Center LLC
████████0443

Exhibit "C"     *signatures*  Initials     Page 1

EXHIBIT  100 - CBS 10/14/2010 Fee Protection Agmt

Cook Business Services LLC

**FEE PROTECTION AGREEMENT OF 10/14/2010**

# COOK BUSINESS SERVICES, LLC

5710 Melanie Trl; Atlanta, GA 30349-2853

Ofc: 770-969-2217  fax: 678-802-0901

## FEE PROTECTION AGREEMENT
## (IN BEHALF OF THE INTERMEDIARY GROUP)

Date                    : 10/14/2010

Transaction Code   : IGC-BI-CBS400
Borrower Code      :

BENEFICIARY        : INTERMEDIARY GROUP ..........................................

Transaction         : Managed Buy/sell : Commodities
Face Amount        : 12% of $10,000,000 SBLC monthly; Per Asset Management
Agreement
Instrument details  : SBLC from SBUSA
Remaining Service Fee: 10% per calendar year

The undersigned, with full corporate responsibility, under penalty of perjury, issue this irrevocable Fee Protection Agreement of eight hundred and sixty thousand United States Dollars ($860,000) to be paid as listed below, for intermediaries, of the total face value of each and every transaction described above, including all extensions thereof as outlined in the Asset Management Agreement provided by Berreria.. This Fee Protection Agreement shall be valid and binding upon signing of the contract with the Collateral Provider. Said fee to be paid to the following lender and borrower groups Paymaster:

ALL PAYMASTER FEES ARE TO BE SPLIT EVENLY BETWEEN WIRES 2-6.

**Wire number 1 for Intermediary Group and is for $180,000 United States Dollars and wired to:**

| Paymaster Name: | Busch Law Center, LLC |
|---|---|
| Bank Name: | MidFirst Bank |
| Bank Address: | 3611 W. Anthem Way, Anthem, AZ 85086 |
| Account Name: | Busch Law Center LLC |
| Account Number: | ▓▓04358 |
| Routing Number: | 122187445 |
| Bank Officer: | Michael Farris |
| Bank Telephone: | 623-544-4145 |
| Beneficiary Name: | Known by Paymaster: Alicorn Capital Management, LLC. |
| Special Wire Instructions: | Pre-advice must be sent via SWIFT to wire transfer and email notification immediately upon each tranche.  Transfer payment together with the transaction codes to Larry@BuschLawCenter.com. Please call 623-826-1995 to notify that a wire has been sent for the beneficiaries. |
| Required Message: | All transfer instructions shall state: Funds are clean and clear of non-criminal origin and are payable in cash immediately upon receipt by the beneficiary's bank. "The Remitter is known to us. This is done with full banking responsibility and we are satisfied as to the source of the funds sent to us |

Fee Agreement                                                           Page 1

# COOK BUSINESS SERVICES, LLC

5710 Melanie Trl; Atlanta, GA 30349-2853

Ofc: 770-969-2217   fax: 678-802-0901

**International Funds Sent to Paymaster in U.S.**

| Bank Name: | JP Morgan Chase |
|---|---|
| SWIFT Code: | CHASUS33 |
| Account Number: | ▮▮9609 |
| Account Name: | MIDFIRST Bank, aba 303087995, FCC Busch Law Center, LLC 2103004358 |

3434 W. Anthem Way Ste. 118-621 • Anthem, AZ 85086-0448
623-826-1995 • 623-551-1006 fax • Larry@BuschLawCenter.com

Fee Agreement   Page 2

**Volume 4 - 000049**

# COOK BUSINESS SERVICES, LLC

5716 Melanie Tel; Atlanta, GA 30349-2853
Ofc: 770-969-2217   fax: 678-802-0901

---

## FEE PROTECTION AGREEMENT
### (IN BEHALF OF THE INTERMEDIARY GROUP)

**Date**                    : 10/14/2010

**Transaction Code**   : IGC-BI-CBS400
**Borrower Code**       :

**BENEFICIARY**        : INTERMEDIARY GROUP ...........................................

**Transaction**          : Managed Buy/sell : Commodities
**Face Amount**        : 12% of $10,000,000 SBLC monthly; Per Asset Management
**Agreement**
**Instrument details**  : SBLC from SBUSA
**Remaining Service Fee: 10% per calendar year**

The undersigned, with full corporate responsibility, under penalty of perjury, issue this irrevocable Fee Protection Agreement of eight hundred and sixty thousand United States Dollars ($860,000) to be paid as listed below, for intermediaries, of the total face value of each and every transaction described above, including all extensions thereof as outlined in the Asset Management Agreement provided by Berreria.. This Fee Protection Agreement shall be valid and binding upon signing of the contract with the Collateral Provider. Said fee to be paid to the following lender and borrower groups Paymaster:

ALL PAYMASTER FEES ARE TO BE SPLIT EVENLY BETWEEN WIRES 2-6.

### Wire Number 2 for 340,000 United States Dollars and wired to:

|  |  |
|---|---|
| Bank Name: | JP Morgan Chase Bank |
| Bank Address: | 530 Fifth Ave, 10th Floor, New York, NY 10036 |
| Account Number: | ████9303 |
| Routing Number: | |
| Swift Number: | |
| Bank Tel: | |
| Bank Fax: | |
| Bank Officer: | Julia Fan |
| Account Name: | Arcadio Ivan A. Santos III |
| Email: | arcadioivan@gmail.com |
| Phone: | +639189223660 |

### Wire Number 3 for $340,000 United States Dollars and wired to: :

|  |  |
|---|---|
| Bank Name: | Wells Fargo |
| Bank Address: | Downtown- 246 E. Commerce Street, San Antonio, TX 78205 |
| Account Number: | ████7416 |
| Routing Number: | |
| Swift Number: | |
| Bank Tel: | |
| Bank Fax: | |
| Bank Officer: | Michelle Rovira |
| Account Name: | |
| Email: | lance@mockingbirdfilms.com |
| Phone: | +01-214-390-3638 |

---

Fee Agreement                                                          Page 3

# COOK BUSINESS SERVICES, LLC

5710 Melanie Trl; Atlanta. GA 30349-2853

Ofc: 770-969-2217   fax: 678-802-0901

---

**FEE PROTECTION AGREEMENT
(IN BEHALF OF THE INTERMEDIARY GROUP)**

**The payment shall be made without Protest, delay or deductions (other than bank wire transfer fees)**

**NON-CIRCUMVENTION AND NON-DISCLOSURE**

**All parties do herein agree that the Non-Circumvention and Non-Disclosure Rules (NCND) of all issues from the ICC 500 apply to this transaction for a period of five (5) years from date of execution of this Agreement by the undersigned, his or her assigns, agents and/or heirs. This NCND also applies to any and all other transactions direct or indirect initiated by these intermediaries.**

**The undersigned agree that this Fee Protection is assignable and transferable to the beneficiaries, designs, heirs and assigns upon written notice of all parties, and shall not be amended without the express written consent of the parties. If no contract is consummated, this Fee Protection Agreement is null and void in its entirety.**
**Should a contract be signed between the Provider and the Borrower, a Bank Endorsed Corporate Pay Orders will be issued to the paymaster of each Group, followed by a Swift Wire transfer to the Paymaster's Account, when payment for the BOND/CD/MTN is completed.**

**CONFIRMED AND APPROVED BY:**

**Winston J. Cook, Managing Member
Cook Business Services, LLC.
5710 Melanie Trail
Atlanta, GA 30349**

**Authorized Signatory**

| | |
|---|---|
| **PRINTED NAME** | : Winston J. Cook, _____ |
| **TITLE** | : General Partner, Cook Business Services, LLC |
| **DATE** | : October 18, 2010 |
| **PASSPORT NUMBER** | : ▮▮▮▮919 |
| **DATE OF ISSUE** | : September 27,2006 |
| **COUNTRY OF ISSUE** | : United States of America |

Fee Agreement

## COOK BUSINESS SERVICES, LLC

5710 Melanie Trl., Atlanta, GA 30349-2853
Ofc: 770-969-2217   fax: 678-802-0901

**FOR FURTHER DETAILS PLEASE REFER TO:**

**Allicorn Capital Management, LLC.**
14391 80th Street,
Milaca, MN 56353
Phone 612-916-7007, Fax
**Email:** koster.scott@gmail.com

Fee Agreement

Page 5