IN UNITED STATES DISTRICT COURT
for the
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

Civil Action

R. Lance FLORES, and
Vicki CLARKSON,

Plaintiffs,                Nº

v.

Scott Anthony KOSTER, et al.

Defendants.

---

## PLAINTIFFS' EXHIBITS
## VOLUME 6

---

[Note: ●➔ or #● annotations are reference marks added for referential clarity. — &c. some message inclusions omitted]

## CONTENTS

EXHIBIT 105 - CBS-Berea Gold Asset Mgt Agmt Signed 10142010. . . . . . . . . . . . . . . . . . . . . . . . . 3

EXHIBIT 106 - 11/17 Koster Msg w/Att: [IDLYC2SBLCMFI.doc] – Discovery of 8/16 and 10/18 Wrap-up Agmt Forgeries. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

EXHIBIT 107 - Koster Nov 17 Doc Prod/Aug 16 - IDLYC2SBLCMFI. . . . . . . . . . . . . . . . . . . . . . 6

EXHIBIT 108 - Koster Nov 17 Doc Prod/Aug 16 - signed wrapup agreement. . . . . . . . . . . . . . . 7

EXHIBIT 109 - Koster Nov 17 Msg – signedattachmenta.zip (Picture 004.jpg; Picture 005.jpg; Picture 006.jpg) – Aug 16 - signed wrapup agreement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

EXHIBIT 110 - 11/22/2010 Koster Msg - Follow up. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

EXHIBIT 111 - 11/22 Koster Msg - Follow up - Request to forward Plaintiffs' findings. . . . . . . . 10

EXHIBIT 112 - 11/22 Flores Msg - Inquiry of Gold Buy/Sell Contract Document – Notice of non-verifiable documents. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

EXHIBIT 113 - 11/23 Flores Msg -Notice of trespass on contract and frauds. . . . . . . . . . . . . . . . 12

EXHIBIT 114 - 12/1 Flores Msg w/Att: Tex DTPA Notice & Findings fr 1ST Exam Evdnc. . . . . 14

1

EXHIBIT 115 - Flores-Clarkson v Koster et al\20101122 TDTP Ltr. . . . . . . . . . . . . . . . . . . . . . . . 15

EXHIBIT 116 - Flores-Clarkson v Koster et al\20101122 FndgsEvdncry 1ST Exam Smry. . . . . 16

EXHIBIT 117 - 12/2 Flores Msg – Query on Settlement Agreement Quest. . . . . . . . . . . . . . . . . . 17

EXHIBIT 118 - 12/8 Flores Msg to Clarkson – Settlement Conference. . . . . . . . . . . . . . . . . . . . . . 17

EXHIBIT 119 - 12/9 Koster Msg - Settlement Conference delayed to Confer w/Harlan. . . . . . . 18

EXHIBIT 120 - 12/22 Tom Harlan Msg - First Contact following 12/1 DTPA delivery. . . . . . . . 18

EXHIBIT 121 - 1/19/2011 Harlan Msg. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

EXHIBIT 122 - 1/21/2011 12:56 PM Harlan Msg - I have been involved in hundreds if not
    thousands of lawsuits.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

EXHIBIT 123 - 1/21/2011 2:14 PM Flores Msg - Response to 12:56 PM Harlan Msg. . . . . . . . . . 25

EXHIBIT 124 - IDLYC Corp Filings. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

EXHIBIT 125 - IBalance LLC. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

EXHIBIT 126 - Godspeeds Endeavors 1 original filing date Dec 18 2009 40622674. . . . . . . . . . 28

EXHIBIT 127 - Godspeeds Endeavors LLC Jan 25 2010 67096798. . . . . . . . . . . . . . . . . . . . . . . . . 29

EXHIBIT 128 - Godspeeds Initiative original filing 10015651. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

**EXHIBIT 105 - CBS-Berea Gold Asset Mgt Agmt Signed 10142010**

# BEREA FINANCIAL
# CONSULTING & MANAGEMENT AGREEMENT

## Cook Business Services LLL/Winston J. Cook - INVESTOR
## &
## Berea Inc/Christine Wong-Sang - PRINCIPAL

**BEREA**

### FINANCIAL CONSULTING &

### MANAGEMENT AGREEMENT

This Financial Consulting and Management Agreement [hereinafter collectively referred to as the AGREEMENT] made this 14th day of October, 2010 is by and between **Cook Business Services, LLC/ Winston J. Cook - INVESTOR**, having a principle place of business at **5710 Melanie Trl. Atlanta, GA 30349**, and **Berea Inc / Christine Wong-Sang, PRINCIPAL**, having a principle place of business at **3330 Cumberland Blvd, Atlanta, GA 30339**, hereinafter collectively referred to as the PARTIES.

Whereas, the PARTIES hereby represent and warrant to each other that they each have the full legal authority and power to enter into this Agreement and that no consent or approval of any third party shall be required as a condition to the execution of this Agreement or the performance of either PARTY hereunder.

Now therefore, in consideration of the mutual covenants and agreements hereinafter set forth, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the PARTIES hereby agree as follows:

**1.**   Winston J. Cook  (INVESTOR) and  Christine Wong-Sang (PRINCIPAL) hereby enter into this Agreement for the purpose of participating in a private financial investment program. The PARTIES will transact and do business as an unincorporated association.

2.  INVESTOR hereby represents and warrants to PRINCIPAL that INVESTOR shall have delivered via MT760 (beneficiary coordinates to be provided) an SBLC with face value of $10,000,000. ($10M USD), hereinafter referred to as the "asset," and attest that the funds backing or used in obtaining this asset shall be of non-criminal origin, that the funds will not have been procured or issued pursuant to the perpetration of any fraud or misrepresentation, and that the funds will be and shall remain free of any lien or encumbrance.

**3.**  PRINCIPAL will identify and manage the entry of the asset into an investment opportunity on behalf of the PARTIES and will assist in consummating the entry of the asset into an agreement by, through or with, or a combination of one or several Security firms, Banks or other financial parties for the mutual benefit and profit of the PARTIES.

# BEREA

4. INVESTOR shall have delivered to PRINCIPAL as follows: $10,000,000.00 ($10.0M USD) in required format pursuant to paragraph two on page one. A minimum of twelve percent (12%) of the face value of the asset ($1,200,000.USD), hereinafter referred to as the "MINIMUM PAYMENT," will be paid to the INVESTOR monthly based on the gold commodity shipments for a term of 12 months. First payment to INVESTOR will be within 25 business days of successful acceptance, authentication and confirmation of the asset by the receiving/holding institution.

5.    Asset Safeguard and Protection Guarantee:   If PRINCIPAL fails to pay scheduled payment as indicated provided that the asset has met all criteria and has been confirmed and accepted by the receiving institution, PRINCIPAL will return the asset unencumbered within five business days and  hold INVESTOR harmless from withdrawing from this AGREEMENT.

6.  Termination of Agreement:   At any time PRINCIPAL is in default of the foregoing paragraphs, INVESTOR may terminate this Agreement.  Similarly, at any time INVESTOR is in default, PRINCIPAL may terminate this Agreement.

7.  Transaction Code Reference: The Investment Transaction Code reference for the transaction shall be: IGC-BI-CBS400

8.  Initial Term of the Agreement: The term of this Agreement shall be for 12 months or as required by the investment opportunity available under the applicable Investment Transaction Code. Upon the satisfaction of both PARTIES, this Agreement may be extended for an additional term of one (1) year and one (1) day; provided however, that such term will automatically be renewed for an additional term of one year and one day on each successive anniversary of the date of this agreement for up to a total of five years, unless either of the PARTIES gives written notice, no less than thirty (30) days prior to the renewal date, to the other party, that the term is not to be renewed.

9. Management:  The PARTIES agree that PRINCIPAL shall have the requisite authority and capacity to arrange acceptable business on behalf of and for the mutual benefit and interest of the PARTIES under the following terms and conditions:

# BEREA

## PROCEDURES

**A.** The PARTIES shall execute this Agreement as confirmation of their acceptance of the terms and conditions of this Agreement.

**B.** INVESTOR shall execute the Strategic Alliance letter attached to this Agreement marked as EXHIBIT A, authorizing PRINCIPAL to act on behalf of the PARTIES for arrangement of profit generation. INVESTOR shall also execute the request for Services/Non Solicitation Statement attached to this Agreement marked as EXHIBIT B.

**C.** **INVESTOR** shall have delivered to **PRINCIPAL an asset in the sum of $10.0M USD**, in required format pursuant to paragraph two (2) page one (1).

**D.** Where necessary, **PRINCIPAL** shall compile a profit summary on a monthly basis, or more frequently as needed by the PARTIES, on the last day of each month.

**E.** **PRINCIPAL** shall have remitted by wire to the account(s) of the PARTIES, as provided herein and identified below, those percentages agreed to under this Agreement.

**F.** <u>Execution of Documents:</u>  In order to facilitate the entry into, participation therein, and successful completion of profit producing activities, all documents or agreements requiring execution by both INVESTOR and PRINCIPAL will be signed by PARTIES.

**G.** <u>Allocation of Distributable Profits:</u>  The PARTIES hereby acknowledge and agree that the intended result of the business activities conducted by PRINCIPAL on behalf of the PARTIES will be the ongoing management of said asset to generate profits, (hereinafter referred to as "Distributable Profits"), and to distribute them to the PARTIES as agreed herein.  It is understood that the banking coordinates and wire transfers for Profit

# BEREA

Distribution shall be handled by *The Toussaint Law Group, P.C* acting in its capacity as Paymaster.

H. **Distributions of Profit:** First payment to INVESTOR will be *within* 25 business days as heretofore mentioned in paragraph 4. Thereafter, 12% of the face value of the asset, or $1,200,000 USD. will be paid to INVESTOR for a term of an additional eleven (11) months or as required by the investment opportunity available under the applicable Investment Transaction Code.

I. **Payment of Fees to Intermediaries and Other Expenses.** The PARTIES acknowledge and agree that each of them shall be solely responsible to pay their own respective expenses in connection with the transactions contemplated by this Agreement, including but not limited to the fees of each Party's own intermediaries employed by either of them respectively or to whom either of them may have incurred any liability. Each of the PARTIES agrees to hold the other harmless from the claims of any such intermediaries claiming by or through it.

J. **Confidentiality, Non-Disclosure and Non-Circumvention.** The PARTIES agree that they will be bound by the strictest rules legally possible governing Confidentiality and Non-Circumvention, and that these Confidentiality and Non-Circumvention provisions shall be in full effect for five years from the date of this signing. By signing below the PARTIES signify that they have understood these rules and agree to be bound by them. Breach of these provisions shall be cause for termination of this Agreement and shall be grounds for compensation to the harmed party to the fullest extent of the law. Notwithstanding the provisions of this section, PRINCIPAL and INVESTOR agree that INVESTOR shall not be prohibited from negotiating and executing Agreements for other financial opportunities including, but not limited to, trading platforms wherein PRINCIPAL has no interests in said financial opportunities and said financial opportunities are not conflicting with this Agreement.



**K. <u>Hold Harmless and Indemnification</u>**.   PRINCIPAL shall indemnify and hold INVESTOR harmless from all claims, damages, out of pocket expenses, court costs, and/or reasonable attorney's fees emanating from the PRINCIPAL'S negligence and/or breach of contract of this AGREEMENT or any other instrument executed by the PRINCIPAL relative to this Agreement.

**L.  <u>The PARTIES acknowledge and agree that:</u>**

1. They are aware that this transaction relies heavily on personal and business relationships that have been established and cultivated by each PARTY and that such relationships are considered to be Private and Confidential "Sources" in nature.
2. They shall keep Confidential any such sources and may not directly or indirectly contact any Confidential Source disclosed by the other PARTY during the normal course of business between the PARTIES without express written permission of the other PARTY.
3. Should one of the PARTIES attempt to contact, directly or indirectly, any Confidential Source of the other PARTY without express written permission from that PARTY, it would be considered a breach of this agreement and the injured PARTY shall have the right to terminate this agreement for cause and pursue all legal remedies under law for direct or indirect damages.

**M.   <u>Responsibility for Respective Tax Liabilities</u>**.   The PARTIES acknowledge and agree that neither this Agreement nor the association shall constitute the creation of a taxable entity.   Each of the PARTIES shall be responsible for making all required filings, including tax returns, with their respective governmental entities in which they are or may be respectively domiciled and for the payment of any and all taxes which may be assessed to either of them respectively.   However, the Paymaster shall deliver 1099's to INVESTOR, PRINCIPAL and all facilitators and/or intermediaries (if applicable).    Notwithstanding Section J above, and the terms of the agreement referred to therein, the PARTIES hereby authorize each other to disclose any information or details relative to such payments, as may be required by law pursuant to a demand for disclosure legally made upon them by a legally authorized tax authority or by a valid court order and after written notice is received by such party notices.  Any notice required to be furnished hereunder by one party to the other shall be sent via facsimile transmission,

# BEREA

mail (postage prepaid, return receipt requested) or overnight courier service to the party to receive such notice. The PARTIES agree that all transmissions of documents, including and arising out of this Agreement, between the PARTIES made by facsimile machine or by e-mail shall be deemed to be originals and legally binding.

**N.   Applicability of Applicable Laws, Rules, and Regulations:** The foregoing theoretical yield, must at all times comply with all Laws, Rules, and Regulations, issued by the United States of America, European Union Commission, and/or all existing Financial and Banking Regulations, that may heretofore be legislated and/or passed by relevant authorities.

**O.   Authority:** The PARTIES hereby represent and warrant to each other that they each have the full legal authority and power to enter into this Agreement and that no consent or approval of any third party (including any governmental authority having jurisdiction) is or shall be required as a condition to the execution or the performance of this Agreement.

**P.   Rights:** The PARTIES understand that INVESTOR represents that he has the full legal right to the asset being offered for investment, and is the beneficial owner thereof, and that PRINCIPAL claims *no interest* in the asset(s) belonging to INVESTOR, nor does PRINCIPAL carry any liability for INVESTOR's asset until it is successfully delivered and authenticated.

**Q.  Legal Venue:** The parties agree, if applicable, that the enforcement of this AGREEMENT shall be litigated in the Court of Common Pleas, Atlanta, GA, USA, and if the enforcement of this AGREEMENT is necessary, the PARTIES shall be bound by the Laws of the State of Georgia, but as pre-empted if applicable, by the provisions of paragraph 8 (N) of this AGREEMENT.

# BEREA

**IN WITNESS WHEREOF** the PARTIES have executed this Agreement as of **this __14th__ day of October, 2010.**

Signed for and on behalf of Berea

/s/_____
_____

**Mrs. Christine Wong-Sang**

**Title:** President

Passport No:  047299484

Country:  USA

Expiry Date: 4/12/2015

Signed for and on behalf of INVESTOR:

/s/ _____
_____

Name: Winston J. Cook
Passport No. 406331919
Country:  USA
Expiry Date: 26 sep 2016

# BEREA

## EXHIBIT A

### *LETTER OF STRATEGIC ALLIANCE*

### BY AND BETWEEN

### Cook Business Services, LLC/Winston J. Cook and Berea Inc/Christine Wong-Sang, transacting and doing business as an unincorporated association

I, **Winston J. Cook,** hereby declare, under penalty of perjury, that I am/will be the Beneficial Owner of $ 10.0M  USD ASSET TO BE DELIVERED VIA MT760, of clean, clear, un-encumbered funds of non-criminal origins, currently located in: **SUCCESS BULLION     .**

By this my Statutory Declaration, I confirm that I have legal authority over the above described funds and account. I further declare that I have requested of Berea/Christine Wong-Sang to act in my place and stead to arrange for this asset to be leveraged in order to generate profit(s).

To this end, I have engaged the services of Berea/Christine Wong-Sang in this Strategic Alliance for the mutual benefit of the PARTIES. This Alliance is not intended to, nor does it create a partnership or any other legal entity.

. Executed by the Undersigned this _14th_ day of October, 2010.

_____ **(SEAL)**



## EXHIBIT B

## <u>REQUEST FOR SERVICES / NON-SOLICITATION STATEMENT</u>

Date: October _14_ , 2010

**To: Berea Compliance Manager**

I, **Winston J. Cook,** as the owner of the asset for the above referenced transaction, do hereby confirm that I requested of you and your organization specific confidential information and documentation on behalf of myself regarding your currently available programs to serve my interests, purposes and understanding and not for further distribution.

I, **Winston J. Cook,** hereby declare that I am fully aware that the information presented by you is not anyway considered or intended to be a solicitation of funds of any sort and is intended for my general knowledge only.

I, **Winston J. Cook,** hereby affirm that I have not been solicited in any way. I understand that the contemplated transaction is strictly one of private placement and in no way relates to the United Stated Securities Act of 1933 or related regulations and does not involve the sale of registered securities.

I, **Winston J. Cook,** have mutually-agreed/understand that this private placement transaction is exempt from the Securities Act and not for the general public and that all materials are for private use only.

Executed by the Undersigned this _14_ day of October, 2010.

**EXHIBIT 106 - 11/17 Koster Msg w/Att: [IDLYC2SBLCMFI.doc] – Discovery of 8/16 and 10/18 Wrap-up Agmt Forgeries**

(Wednesday, November 17, 2010 1:13 AM)

——— Original Message ———
Subject:   Wrap up and supporting docs
Date:  Wed, 17 Nov 2010 01:13:20 -0600
From: Scott Koster <koster.scott@gmail.com>
To:     Lance @ MFI <lance@mockingbirdfilms.com>, LegalDeptCV@mockingbirdfilms.com


If you can think of anything else pertinent to these items, please let me know. I feel that the agreement between yourself and Kerim should be included in this, but it has not yet been worked out.

--
Scott A. Koster
koster.scott@gmail.com
info@alicorncapitalmanagement.com
Direct: 612-916-7007
Conference Line: 218-844-8230
Access Code: 380262#
Skype: alicorn.capital

DISCLAIMER: Scott Koster/Alicorn Capital Management is not a United States Securities Dealer, Broker, Real Estate Broker or US Investment Advisor (&c.)


[Original Message Attachments:
  • IDLYC2SBLCMFI.pdf {8/16 Signed Original Executed 'Wrap-up Agmt'}
  • signed wrapup agreement.pdf {Solo forgery of 8/16 Signed Original Executed 'Wrap-up Agmt' Signature Page}
  • signedattachmenta.zip {extracted .jpg files 10/18 'Wrap-up Agmt' forgeries}]

[Enclosure: expanded Original Message header w/msg tracking information, below]

-------- Original Message --------
From: - Wed Nov 17 01:18:04 2010
X-Account-Key:    account3
X-UIDL:    UID4698-1250662321
X-Mozilla-Status: 1001
X-Mozilla-Status2:    10000000
X-Mozilla-Keys:    $label1
Return-path:    <koster.scott@gmail.com>
Envelope-to:    lance@mockingbirdfilms.com
Delivery-date:        Wed, 17 Nov 2010 01:13:27 -0600
Received:  from mail-bw0-f46.google.com ([209.85.214.46]) by cl14.justhost.com with esmtp (Exim
4.69) (envelope-from <koster.scott@gmail.com>) id 1PIcCq-0007C2-80; Wed, 17 Nov 2010 01:13:27
-0600
Received:  by bwz15 with SMTP id 15so1442977bwz.5 for <multiple recipients>; Tue, 16 Nov 2010
23:13:22 -0800 (PST)
DKIM-Signature: v=1; a=rsa-sha256; c=relaxed/relaxed; d=gmail.com; s=gamma;
h=domainkey-signature:mime-version:received:received:date:message-id :subject:from:to:content-type;
bh=9dNvSrWHZcl/Ff/JJq/vpwZok+pExEjnhSdbjKR70Jc=;
b=tyY7vPFXbRD4qx/9W21b4ZaOJQajyr0XIuHgG5Rg+DYjSomkAN7M10hnO80VOUPJMH
nPtF/msnQsLnUybIleW96YF69f8R5HbnTxjpfW6bayX4pU+tgiyzr/SQF5yWlzDlsjFF
vCpqA7P//iLSiQikhYLO1gswzV2uH2dngf9QQ=
DomainKey-Signature:    a=rsa-sha1; c=nofws; d=gmail.com; s=gamma;
h=mime-version:date:message-id:subject:from:to:content-type;
b=hgzZWj3/xP0cuE/6zyY5ZcTo8XKTKQMdFDX+112tfRnOg+cwguMdoY6wyT49Y9CKZc
Mytv6jKYxva90hm+O4nRyulBZrxUOx/v9/ZeyYZnAhqxoqRO537tvWVssMuMqmSqCENk
53fmHdMfOvZBJkXWFI1OOiN9CUPdBp2vfm+EA=
MIME-Version:    1.0
Received:  by 10.223.97.13 with SMTP id j13mr6609711fan.146.1289978000792; Tue, 16 Nov 2010
23:13:20 -0800 (PST)
Received:  by 10.223.109.83 with HTTP; Tue, 16 Nov 2010 23:13:20 -0800 (PST)
Date:    Wed, 17 Nov 2010 01:13:20 -0600
Message-ID:    <AANLkTi=qtk4b-hDsrWJiwDvNyB3J6iRPc_AFnfXjpuQK@mail.gmail.com>
Subject:    Wrap up and supporting docs
From:    Scott Koster <koster.scott@gmail.com>
To:    Lance @ MFI <lance@mockingbirdfilms.com>, LegalDeptCV@mockingbirdfilms.com
Content-Type:    multipart/mixed; boundary=20cf3054a615816d1904953a68b1
X-Spam-Status:    No, score=
X-Spam-Score:
X-Spam-Bar:
X-Spam-Flag: NO
X-Brightmail-Tracker:    AAAAAA==
X-Brightmail-Tracker:    AAAAAA==

5

EXHIBIT 107 - Koster Nov 17 Doc Prod/Aug 16 - IDLYC2SBLCMFI

# PARTNERSHIP TERMINATION
## AND
## WIND-UP AGREEMENT AND MUTUAL RELEASE
(August 16TH Original Signed & Sealed 'Wrap-up Agreement' Document)

6

## PARTNERSHIP TERMINATION AND WIND-UP AGREEMENT
## AND MUTUAL RELEASE

**THIS PARTNERSHIP TERMINATION AND WIND-UP AGREEMENT AND MUTUAL RELEASE** (the "Agreement") is effective as of the 12th day of August 2010, by and between Lance Flores MFI ("MFI") and Alicorn Capital Management, LLC, a Minnesota limited liability company ("Alicorn").

## RECITALS

A.      On December 11, 2009, MFI and Alicorn entered into a Profit Sharing Agreement (the "Profit Sharing Agreement") whereby the parties formed a partnership in order to invest certain funds in bank guaranties issues by various foreign financial institutions including but not limited to Deutsche Bank Hong Kong.

B.      Under the terms of the Profit Sharing Agreement, MFI and Alicorn agreed to split the profits associated with the placement and use of various bank guarantees or letters of credits issued by the participating foreign financial institutions to its clients, customers and others in need of the guaranties.

C.      The investment program, which was offered through IDLYC Holdings Trust, a corporation organized under the laws of New Zealand, was discontinued before any profit was realized through the placement of any of the bank guaranties. As part of the discontinuance, IDLYC has offered to return the investment of Alicorn. As of the date of this Agreement, no monies have been returned to either party.

D.      Alicorn has offered and MFI has accepted to have the funds submitted on behalf of MFI to be applied towards the initial cost of a Standby Letter of Credit with the face value of 10,000,000.00USD, in which MFI will hold a 33% share of rights to.

E.      The parties desire to enter into this Agreement to terminate and wind-up their partnership and resolve any and all claims they may have against each other arising from or related to the investment and/or the partnership.

NOW, THEREFORE, the parties, by their signatures below, for good and valuable consideration, the sufficiency and adequacy of which is hereby acknowledged, agree as follows:

1.      **Payment by Alicorn to MFI.** In termination and wind-up of the partnership between them, Alicorn hereby agrees to assist in providing, and MFI hereby agrees to accept, a 1/3rd offering of a 10,000,000.00 USD Standby Letter of Credit. This financial instrument will be issued into the name of one party chosen by Alicorn, and delivered to 3rd party Gold Buy/Sell entity by lender. This instrument will be delivered by means of SWIFT messaging system, hard

IDLYC2SBLCMFI.wpd                    1 of 4          Partnership Termination – Wind-up Agreement &c.

**Volume 6 - 000016**

copy, as well as electronic copy. Introduction to Gold Buy/Sell group will be made after acceptance and signing of this agreement.

2.    **Termination and Wind-up of Partnership.**  Upon the execution of this Agreement and the facilitation of financial instrument delivery set forth in Section 1, the partnership between the parties shall be terminated and wound up. In doing so, the parties recognize that no amount of the investment made by each of the parties has been returned to either of them from IDLYC Holdings Trust and that the partnership has a claim against it for those proceeds. The parties agree that the claim and any proceeds that may originate from the same, unless those proceeds are identified as profits by IDLYC Holdings Trust, shall be assigned to Alicorn and it shall have the right to receive, compromise or prosecute the same, in its sole discretion.

3.    **Release by MFI.**  Except as provided herein, MFI, for himself and his respective successors, privies, agents, heirs, legatees, representatives, and assigns, each hereby releases and forever discharges Alicorn and its respective successors, privies, agents, heirs, legatees, representatives, members, managers and governors together with any assigns from any and all manner of claims, actions, causes of actions, law suits, damages, liabilities, obligations, warranties, agreements, rights, costs, expenses, attorneys' fees, judgments, claims, counterclaims, crossclaims, and demands of any nature whatsoever, which relates to or has been asserted, or could have been asserted, whether they are in law, equity, or both, whether past, present, or future, known or unknown, suspected or unsuspected, asserted or unasserted, liquidated or unliquidated, absolute or contingent, contractual, tortious, or otherwise, or in any way arising out of or pertaining to said claims, including, without limitation, any claims or potential claims associated with the investment referenced above or the partnership formed by the parties.  This release specifically excludes any and all rights and/or remedies to enforce the terms of this Agreement.

4.    **Release by Alicorn.**  Alicorn, for itself and its respective successors, privies, agents, heirs, legatees, representatives, members, managers and governors and assigns, each hereby releases and forever discharges the MFI, and his privies, agents, heirs, legatees, representatives, and assigns from any and all manner of claims, actions, causes of actions, law suits, damages, liabilities, obligations, warranties, agreements, rights, costs, expenses, attorneys' fees, judgments, claims, counterclaims, crossclaims, and demands of any nature whatsoever, which relates to or has been asserted, or could have been asserted, whether they are in law, equity, or both, whether past, present, or future, known or unknown, suspected or unsuspected, asserted or unasserted, liquidated or unliquidated, absolute or contingent, contractual, tortious, or otherwise, arising out of or pertaining to, without limitation, any claims or potential claims associated with the investment referenced above or the partnership formed by the parties.  This release specifically excludes any and all rights and/or remedies to enforce the terms of this Agreement.

5.    **Binding Effect.**  The parties agree that this Agreement is and shall be binding on each signatory hereto and on each of their heirs, executors, administrators, assigns, agents, officers, shareholders, and successors in interest.

IDLYC2SBLCMFI.wpd                    2 of 4          Partnership Termination – Wind-up Agreement &c.

**Volume 6 – 000017**

6.    **Entire Agreement.** This Agreement contains the entire understanding between the parties and supersedes all prior agreements and understandings relating to the subject matter of this Agreement.   This Agreement shall not be modified, amended, or terminated except as subsequently executed in writing by the parties.

7.    **Review of Agreement.** Each party represents and certifies that they (1) have received a copy of this Agreement for review and study before being asked to sign it; (2) have read this Agreement carefully; (3) have been given a fair opportunity to discuss and negotiate the terms of this Agreement; (4) understand its provisions; (5) have been advised and has consulted with their attorney; (6) have determined that it is in its best interest to enter into this Agreement; (7) have not been influenced to sign this Agreement by any statement or representation not contained in this Agreement or that it is subject to as a condition precedent; and (8) enter into this Agreement knowingly and voluntarily.

8.    **Governing Law.** This Agreement will be construed and interpreted in accordance with the laws of the State of Minnesota.  The parties agree that the State District Courts of Minnesota, Hennepin County, shall have exclusive jurisdiction over both the parties and any and all claims arising as a result of this Agreement or its enforcement. The parties specifically agree to personal jurisdiction of the Hennepin County State District Courts.

9.    **Joint Drafting of Agreement.**  The parties agree and acknowledge that neither party shall be determined to be the drafter of such agreement and it is acknowledged that all parties through counsel have had input in drafting this Agreement.  Accordingly, any rules against the drafter, including ambiguity, shall not be interpreted against any party.

10.    **Severability.** In the event that any section or portion of this Agreement shall be deemed to be invalid, void, voidable, or otherwise unenforceable under law, then, in that event, such section shall be severed from the entire agreement with all remaining sections retaining their full force and effectiveness hereunder.

11.    **Execution of Agreement.**  This Agreement may be executed by the parties in any number of counterparts so that the collection of all counterparts or partial executions shall constitute a fully executed and enforceable agreement. A facsimile or electronic copy of any execution of a counterpart shall have the same force and effect as if the same were an original.

12.    **Headings.**  The headings in this Agreement are included herein for convenience and reference only and should not be construed a part of this Agreement for any other purpose.

**{Signatures to follow on next page}**

IDLYC2SBLCMFI.wpd                    3 of 4          Partnership Termination – Wind-up Agreement &c.

**ACCEPTED AND AGREED.**

Dated:    Monday, August 16, 2010          _____
                                          Lance Flores  MFI


Alicorn Capital Management, LLC

Date:_____          _____


By: _____          Its: _____

4

EXHIBIT 108 - Koster Nov 17 Doc Prod/Aug 16 - signed wrapup agreement

# PARTNERSHIP TERMINATION
## AND
## WIND-UP AGREEMENT AND MUTUAL RELEASE
(Solo - Page 4 – August 16TH Document Forgery)

7

## ACCEPTED AND AGREED.

Dated:      Monday, August 16, 2010

_____

Lance Flores  MFI

Alicorn Capital Management, LLC

Date: _____

_____

By: _____

Its: _____

4

**EXHIBIT 109 - Koster Nov 17 Msg – signedattachmenta.zip (Picture 004.jpg; Picture 005.jpg; Picture 006.jpg) – Aug 16 - signed wrapup agreement**

# PARTNERSHIP TERMINATION
# AND
# WIND-UP AGREEMENT AND MUTUAL RELEASE

## ATTACHMENT "A" STRUCTURE OF FINANCIAL INSTRUMENT
(October 18TH Document Forgery)

## PARTNERSHIP TERMINATION AND WIND-UP AGREEMENT
## AND MUTUAL RELEASE

### Attachment "A"
### Structure of financial instrument

NOW, THEREFORE, the parties, to include, R. Lance Flores for Mockingbird Films International "MFI", Winston J. Cook "Cook" and Arcadio Ivan A. Santos "Santos" (hereinafter exclusively and collectively the "Parties") by their signatures below, for good and valuable consideration, the sufficiency and adequacy of which is hereby acknowledged, agree to take equal 1/3 partnership with one another. This partnership shall be for issuance, and all benefits that arise from the use of the Stand by Letter of Credit ("LOC"). Parties agree to distribute evenly any and all financial gains, after commissions and fee's, directly attributed to any use of this "LOC".

This agreement stands for the lifetime of the "LOC", and extends to parties successors, privies, agents, heirs, legatees, representatives, and assigns.

1. **Binding Effect.** The parties agree that this Agreement is and shall be binding on each signatory hereto and on each of their heirs, executors, administrators, assigns, agents, officers, shareholders, and successors in interest.

2. **Entire Agreement.** This Agreement contains the entire understanding between the parties and supersedes all prior agreements and understandings relating to the subject matter of this Agreement. This Agreement shall not be modified, amended, or terminated except as subsequently executed in writing by the parties.

3. **Review of Agreement.** Each party represents and certifies that they (1) have received a copy of this Agreement for review and study before being asked to sign it; (2) have read this Agreement carefully; (3) have been given a fair opportunity to discuss and negotiate the terms of this Agreement; (4) understand its provisions; (5) have been advised and has consulted with their attorney; (6) have determined that it is in its best interest to enter into this Agreement; (7) have not been influenced to sign this Agreement by any statement or representation not contained in this Agreement or that it is subject to as a condition precedent; and (8) enter into this Agreement knowingly and voluntarily.

4. **Governing Law.** This Agreement will be construed and interpreted in accordance with the laws of the State of Minnesota. The parties agree that the State District Courts of Minnesota, Hennepin County, shall have exclusive jurisdiction over both the parties and any and all claims arising as a result of this Agreement or its enforcement. The parties specifically agree to personal jurisdiction of the Hennepin County State District Courts.

5. **Joint Drafting of Agreement.** The parties agree and acknowledge that neither party shall be determined to be the drafter of such agreement and it is acknowledged that all parties through counsel

have had input in drafting this Agreement. Accordingly, any rules against the drafter, including ambiguity, shall not be interpreted against any party.

6.    **Severability.** In the event that any section or portion of this Agreement shall be deemed to be invalid, void, voidable, or otherwise unenforceable under law, then, in that event, such section shall be severed from the entire agreement with all remaining sections retaining their full force and effectiveness hereunder.

1.    **Execution of Agreement.** This Agreement may be executed by the parties in any number of counterparts so that the collection of all counterparts or partial executions shall constitute a fully executed and enforceable agreement. A facsimile or electronic copy of any execution of a counterpart shall have the same force and effect as if the same were an original.

8.    **Headings.** The headings in this Agreement are included herein for convenience and reference only and should not be construed a part of this Agreement for any other purpose.

9.    **Mutual Release.** All parties hereby agree to unconditionally release one another from any and all liability or damages relating to the use or application of the SBLC. This release is applicable to all partners as well as their respective successors, privies, agents, heirs, legatees, representatives, and assigns, each hereby releases and forever discharges Parties and its respective successors, privies, agents, heirs, legatees, representatives, members, managers and governors together with any assigns from any and all manner of claims, actions, causes of actions, law suits, damages, liabilities, obligations, warranties, agreements, rights, costs, expenses, attorneys' fees, judgments, claims, counterclaims, crossclaims, and demands of any nature whatsoever, which relates to or has been asserted, or could have been asserted, whether they are in law, equity, or both, whether past, present, or future, known or unknown, suspected or unsuspected, asserted or unasserted, liquidated or unliquidated, absolute or contingent, contractual, tortious, or otherwise, or in any way arising out of or pertaining to said claims, including, without limitation, any claims or potential claims associated with the investment referenced above or the partnership formed by the parties. This release specifically excludes any and all rights and/or remedies to enforce the terms of this Agreement.

{Signatures to follow on next page}

**ACCEPTED AND AGREED.**

Dated: Monday, October 18, 2010 _____     _____
                                                    Lance Flores  MFI

Dated: _____              _____
                                                    Winston J. Cook

Dated: *October 18, 2010*                            _____
                                                    Arcadio Ivan  A. Santos


Alicorn Capital Management, LLC

Date: **18, OCTOBER 2010**
                                                    _____
By: Scott A. Koster _____
                                                    Its: **CEO** _____

EXHIBIT 110 - 11/22/2010 Koster Msg - Follow up

(Monday, November 22, 2010 7:48 PM CST)

——— Original Message ———
Subject: Re: RE: Follow up
Date: Mon, 22 Nov 2010 19:48:06 -0600
From: Scott Koster <koster.scott@gmail.com>
To:    Kerim Emre <kerim.emre@gmail.com>
CC: Lance @ MFI <lance@mockingbirdfilms.com>

Lance/kerim,
Fyi, please get this worked out asap. We are expecting the verbiage, bank officer contact, and
swift verbiage for a 40m sblc tomorrow, to satisfy the requirement of the sellers request. Once we
get those items signed off on, we will get that instrument delivered, and then issue the sblc for you
guys.
Regarding that, lance, I need from you the initialed and returned copies of both the buy/sell
agreement, as well as the sblc docs. No need for anything other than your acceptance and
acknowledgement.
Thanks guys,
Scott

P.s. I will be away for the holidays starting tomorrow evening, and will return on Monday.

On Nov 22, 2010 4:44 PM, "Kerim Emre" <kerim.emre@gmail.com> wrote:
| Hi Lance,
| Following up to find out where the paperwork for the settlement is as I have | not heard
anything since last week from you. | Best, | Kerim | kerim.emre@gmail.com Cell: 714-408-8777
| Phone:714-408-4695 | Fax: 951-231-9804

9

EXHIBIT 111 - 11/22 Koster Msg - Follow up - Request to forward Plaintiffs' findings

(Monday, November 22, 2010 9:01 PM CST)

——— Original Message ———
Subject:  Re: Follow up
Date:  Mon, 22 Nov 2010 21:01:51 -0600
From: Scott Koster <koster.scott@gmail.com>
To:     Lance @ MFI <lance@mockingbirdfilms.com>, Kerim Emre <kerim.emre@gmail.com>


Please keep me informed. If something has been voided, it was done so un-intentionally. I
certainly have only tried to help matters. Please do forward me the "findings"
Regarding the SBLC/buysell documents, you acknowledged the receipt and forwarding of the
documents to your to your counsel, that were sent to you on the 17th of November.


On Mon, Nov 22, 2010 at 8:43 PM, Lance @ MFI <lance@mockingbirdfilms.com> wrote:

   Scott - counsel has done extensive evaluation on the documents we were presented. This is not
good. The so called wrap up agreement appears completely void by your own actions discovered by
counsels. I will be sending the report "Findings from the 1ST Examination of the Evidence" out
late tonight. The Settlement Stipulations which will be presented to the Court for incorporation
into the Settlement Agreement for the it's approval will be delivered to you early tomorrow
morning. It appears we may be removing Kerim from the complaint after counsels' next
conference scheduled immediately after the Thanksgiving weekend.

   I have no idea what you['re] are talking about. I do not have any buy/sell agreement nor sblc
documents.

 Lance Flores
 Attorney for the FLORES/MFI Plaintiffs
 CC:  Gary W. Grab Law Office Gary Grab, Attorney for the CLARKSON/CLARKSON'S
CLASSICS INC. Plaintiffs



On 11/22/2010 7:48 PM, Scott Koster wrote:
>
>    Lance/kerim,
>
>    Fyi, please get this worked out asap.  (&c.)

EXHIBIT 112 - 11/22 Flores Msg - Inquiry of Gold Buy/Sell Contract Document – Notice of non-verifiable documents

(Monday, November 22, 2010 11:18 PM, North America CST)

From: "Lance @ MFI" <lance@mockingbirdfilms.com>
To: Scott Koster <koster.scott@gmail.com.readnotify.com>
CC:
Subject: Fwd: Re: Re: Follow up
Date: Tue, 23 Nov 2010 05:18:00 GMT
Content-Type: text/plain; charset=utf-8

Scott,

The buy/sell document was requested however never received.  Ms. Clarkson's attorney is still waiting for this document. Please forward immediately, or advise which of the documents below is representing the buy/sell.

The documents that were received were as follows: IGM - Interlink Global Messaging Cook Business Services LLC which includes the Fee Protection Agreement Escrow Instructions Mutual Non Circumvention and Non-disclosure Agreement Engagement Letter Wiring Instructions Standby Letter of Credit - non verifiable information (Redacted) SWIFT MT760 - (non verifiable with editing of document (Redacted) Transaction Details Berea - Management Agreement

Lance Flores

EXHIBIT 113 - 11/23 Flores Msg -Notice of trespass on contract and frauds

(Tuesday, November 23, 2010 1:25 PM CST)

From: "Lance @ MFI" <lance@mockingbirdfilms.com>
To: Scott Koster <koster.scott@gmail.com>
CC:
Subject: Follow up
Date: Tue, 23 Nov 2010 19:25:15 GMT Content-Type: text/plain; charset=utf-8


TO:  Scott Koster CC:  Kerim Emre

We will only provide the portions of the finding as the information is attorney work-product  that
has substantive import relating to civil and criminal implications. We will only divulge that portion
that you are or should have been aware of since you have been the primary actor with access to all
of the information for which we only obtained after disclosing our intention to secure information
through injunction relief through the federal court.

You are urged to complete the transaction keep it moving forward and not interfere with that
process while we reform the settlement agreement in light of the evidence at hand and any other
forensic evidence through our discovery and investigations.

We are unconcerned about Richard Hall, Vladimir Pierre-Louise, or Christine Wong-Song, /inter
alios/,  interfering with the transaction completion as we have clear and convincing  evidence that
they are inextricably intertwined with this and other Alicorn financial transactions and same have
evolved a substantial nexus as to operate as a financial syndicate with common purpose, interest
and objectives.

We will work feverishly to make your transaction come to a fruitful conclusion fully resolved in the
Settlement Stipulations. Given the trespass upon the Wind Up /&c./ document subjugating the
settlement to another transaction without the permission nor full disclosure of the effecting
transaction, violates Alicorn's fiduciary obligation, as well as, intentional deceit, the intentional
continued and uninterrupted failure to disclose pursuant to those obligations thereby effecting,
/inter alia/, intentional tortuous interference /&c./, constructive fraud, extrinsic fraud, fraud in fact,
fraud in the factum, fraud in the inducement, the majority attaching to the engagement of a
continuous pattern of racketeering predicated on violations of 18 U.S.C. 1343 (wire fraud). All,
without any exception, rendering the aforementioned document null and void as a matter of
common law and statute.

We shall proceed with the completion of the settlement stipulation proposal for the Court and send
you a copy over the holiday for your original signature.
It is not our intent nor in our best interest halt Alicorn et al in the pursuit of its transactions or its
viability to continue as a productive institution, but neither shall allow the continued beaches of
trust, refusal to meet required disclosure requirements, and deceptions, etc. to continue. As such,
should you communicate, or we discover an intention or action by Alicorn or its agents or

12

partnerships to stop the proceeding transaction or obfuscate the Plaintiffs from being remunerated for the original IDLYC investment we are prepared to seek immediate  intervention **of the federal court through emergency injunction relief to maintain status quo, and if necessary to** have the Court appoint a receiver to discover and supervise all functions of the transactions.

For and behalf the Plaintiffs,
Lance Flores

On 11/22/2010 9:01 PM, Scott Koster wrote:
> Please keep me informed. If something has been voided, it was done so un-intentionally. I
certainly have only tried to help matters. Please do forward me the "findings" … &c.

13

EXHIBIT 114 - 12/1 Flores Msg w/Att: Tex DTPA Notice & Findings fr 1ST Exam Evdnc

(Wednesday, December 01, 2010 11:19 AM)


------- Original Message -------
Subject:    Fwd: DTPA Notice & Evidentiary Findings
Date:  Wed, 01 Dec 2010 12:19:36 -0600
From: Lance @ MFI <lance@mockingbirdfilms.com>
To:    Scott Koster <koster.scott@gmail.com>, Kerim Emre <kerim.emre@gmail.com>


   TO:   Scott Koster, Alicorn Capital Management,
         Kerim Emre

DATE:  Wednesday, December 1, 2010

RE: In the matter of Deceptive Trade Practices Notice & Abridged Findings fr 1ST Examination
of the Evidence:

VIA: Certified Electronic Mail

Please find attachments DTPA Notice and a copy the Findings you requested.

Call me tomorrow about the Settlement Agreement structure.
(&c.)

[Attachments:]

       20101122 FndgsEvdncry 1ST Exam Smry.pdf

       20101122 TDTP Ltr.pdf

14

EXHIBIT 115 - Flores-Clarkson v Koster et al\20101122 TDTP Ltr

# DECEPTIVE TRADE PRACTICE ACT NOTICE
## for
## IDLYC-BMW Majestic and substitution Gold Buy/Sell Contract
### (Texas DTPA Notice)

20101122 TDTP Ltr.pdf

Scott Koster
Alicorn Capital Management
14401 xth Street
Milaca, Minnesota 56353

**To:** Scott Koster and Whom it May Concern

**Re:** Deceptive Trade Practice Act Notice for H.H. Y( -BMW Majestic and subsumtion Gold Buy/Sell Contract (DTPA Notice)

**Attachment:** December 1, 2010 Findings from the 1ST Examination of the Evidence

*The attached Findings from the 1st Examination of the Evidence are incorporated by reference as though fully rendered and set forth herein.*

On or about December 18, 2009 R. Lenee Flores/Mockingbird Films International LLC (collectively "MFI") entered into a contract with you in a joint venture partnership where you as the senior partner would manage MFI intends relating to its financial contribution to the partnership that would pay-out over period of weeks in the format: 1.8M/week, of which 16.7% will be deducted for brokers' fees for a net sum $60M USD.

In MFI dealings with you, MFI contracted with you for services. Accordingly, in this transaction MFI was clearly a "consumer" as such term is defined in Section 17.45, Texas Business & Commerce Code.

MFI asserts that you committed a number of false, misleading, or deceptive acts and practices prohibited by Section 17.46 of the Texas Business & Commerce Code (the Texas Consumer Protection – Deceptive Trade Practices Act) including, but not limited to, the following:

1. Representing that services have characteristics, uses, or benefits which they do not or they are in default of, or have failed to perform in violation of Texas Business & Commerce Code § 17.46(b)(5);

2. Representing that services are of a particular standard, quality, or grade, if they are of another, in violation of Texas Business & Commerce Code § 17.46(b)(7);

4. Representing that an agreement confers or involves rights, remedies, or obligations which it does not have control over or have the power to enforce, or which are prohibited by law, in violation of Texas Business & Commerce Code § 17.46(b)(12);

5. Knowingly making false or misleading statements of fact concerning the need for replacement of the financial platform service, in violation of Texas Business & Commerce Code § 17.46(b)(13); and

6. Failing to disclose information concerning services which was known at the time of reducing term of the transaction thereby intending to induce MFI into entering into the referenced agreement, knowing that it would not have entered the transaction had the undisclosed information been disclosed during the transaction that transaction had lost viability and MFI would have rebutted, would not have entered into the agreement had such undisclosed been in a violation of Texas Business & Commerce Code § 17.46(b)(24).

*Each and every finding and statement of facts from the Findings from the 1ST Examination of the Evidence attached hereto, are incorporated by reference and reasserted and plead herein.*

# untitled

PAGE 2

The foregoing violations were committed knowingly and intentionally, and MFI relied on your representations, acts, and omissions to it's damage and detriment.

Further, the representations, acts, and omissions made by you in your dealings with MFI constituted an "unconscionable action or course of action" as such term is defined in Section 17.45(5), Texas Business & Commerce Code.

In addition to constituting numerous violations of the Texas Consumer Protection – Deceptive Trade Practices Act, the above described acts and omissions made by you constituted, among other things: misrepresentation; negligence; negligent misrepresentation; constructive fraud; breach of contract; fraud; and breach of duty of good faith fair dealing, and breach of fiduciary duty.

As a direct result of your wrongful acts and omissions, MFI has been compelled to proceed to constructing federal pleadings and thereafter to further retain additional legal services, trial attorneys, to prosecute and seek redress for the damages MFI has suffered.

The total damages thus far suffered by MFI as a direct consequence of yours, itemized as follows (See Findings from the 1st Examination of the Evidence, Summary ¶ 4):

1.   Total amount of the owed net financial instrument revenue: $60,000,000

2.   Total additional actual damages: $220,000,000

Demand is hereby made upon you to immediately pay the net financial instrument revenue damage amount sustained, $60,000,000, to MFI through its bank whose coordinates you have in your records immediately, the total actual damages to be determined at trial.

This letter constitutes notice that unless we receive a certified check, cashier's check or money order for such full amount, $60,000,000 on or before December 8, 2010, we shall instruct trial attorneys to take whatever steps are necessary to protect our interests. This does not presume that any other remedies such as immediate injunctive relief may be taken through the United States Federal Court by "Plaintiffs" identified in the Findings from the 1st Examination of the Evidence, OR, in the alternative a Settlement Agreement is executed prior to December 8, 2010, and an accompanying negotiated good faith payment. A Settlement Agreement, setting forth a reasonably constructed structured settlement, proposed for the Court's approval shall be provided to you within the next two days.

In such event that a Settlement Agreement is not executed, the Plaintiffs shall authorize and instruct trial attorneys to prosecute a lawsuit against you to collect all damages caused by the above described wrongful representations, acts, and omissions; AND, take such appropriate other actions such as federal court intervention by injunctive relief to maintain status quo of the ongoing transaction by appointing an accountant/auditor from a "Big Four" firm such as Deloitte Touche Tohmatsu to take control, audit and report to the Court.

2

In connection with such litigation, we shall pursue all proper legal remedies and to seek all available relief including, but not limited to, direct and consequential damages, penalties as provided by the Texas Consumer Protection – Deceptive Trade Practices Act, attorney fees, interest, court costs, and such additional punitive damages as may be legally appropriate through the federal courts.

Pursuant to Section 17.505, Texas Business & Commerce Code, please be advised that if this claim has not been resolved within sixty (60) days from the date you receive this notice, the petition in the above-referenced lawsuit against you will be amended to request additional relief under the provisions of Section 17.50, Texas Business & Commerce Code, including treble damages as authorized therein.

Please pay this claim now or execute a Settle Agreement to avoid litigation and further expense. Your immediate response to this serious matter will be appreciated.

Sincerely,
R. Lance Flores
for and behalf of the Plaintiffs

CERTIFICATE OF SERVICE

I, R. Lance Flores, certify that on Wednesday, December 1, 2010, the foregoing document and attachment entitled "Findings from the 1ST Examination of the Evidence" were served upon Scott Koster and Kerim Emre by Certified Electronic Mail (e-Mail) at their known e-mail address, and through the United States Postal Service by Certified Mail to Scott Koster/Alicorn Capital Management and Kerim Emre % Scott Koster as Kerim Emre's address is unknown to me.

CERTIFIED MAIL

7001 0360 0004 9283 8255

EXHIBIT 116 - Flores-Clarkson v Koster et al\20101122 FndgsEvdncry 1ST Exam Smry

Deceptive Trade Practices Act Notice Attachment

## DECEMBER 1, 2010 FINDINGS
## FROM THE
## 1ST EXAMINATION OF THE EVIDENCE

20101122 FndgsEvdncry 1ST Exam Smry.pdf



**MOCKINGBIRD FILMS INTERNATIONAL™**

TO: All Counsel                              DATE:   Wednesday, December 1, 2010

CC Scott Koster VIA:   **USPS Certified Mail**
CC All VIA:            **Certified Electronic Mail**
CC: Kerim Emre



RE: Findings In 1st Examination of the Evidence In the matter of:
United States District Court, Northern District of Texas, Dallas Division
R. Lance FLORES, Vicki CLARKSON, MOCKINGBIRD FILMS INTERNATIONAL LLC,
and CLARKSON'S CLASSICS INC.
(Plaintiffs)
v.
SCOTT KOSTER, ALLUREN CAPITAL MANAGEMENT, and Kerim EMRE,
(Defendants)

ENCL:
    EXHIBIT A:  e-Mail Msg - Tuesday, November 16, 2010 11:24 AM
    EXHIBIT B:  e-Mail Msg - Thursday, November 11, 2010 1:11 PM
    EXHIBIT C:  e-Mail Msg - Wednesday, 17 Nov 2010 13:32:54 -0600
From: Scott Koster <koster.scott@gmail.com>
    EXHIBIT D:  e-Mail Msg - Wednesday, 17 Nov 2010 01:23:40 -0600
From: Scott Koster <koster.scott@gmail.com>
    EXHIBIT E:  e-Mail Msg - Tue  16 Nov 2010 16:53:10 -0600
From:   Scott Koster <koster.scott@gmail.com>
    EXHIBIT F:  e-Mail Msg - Fri  11 Dec 2009 15:40:37 -0200
From: Kerim Emre <kerim.emre@gmail.com>
    EXHIBIT G:  BEREA INC. Certificate of Incorporation
    EXHIBIT H:  e-Mail Msg - Thu  24 Jun 2010 10:36:22 -0500
From: Scott Koster <koster.scott@gmail.com>
    EXHIBIT I:  e-Mail Msg - Wed  17 Nov 2010 01:23:40 -0600
From: Scott Koster <koster.scott@gmail.com>

**Findings from the 1st Examination of the Evidence**

> This is a limited version of the original document. It is provided to support its attaching
> Deceptive Trade Practices Letter. Certain information and elaboration of findings have been
> withheld on Attorney work-product privilege.

We, the Plaintiffs in above-styled, have come to an interim position after careful review and
and deliberate reinvestigation of the documents received from Scott Koster. "Plaintiff" refers to

production demand[...] Tue, 16 Nov 2010 10:26:41 -0600; Tue, 16 Nov 2010 16:27:15 -0600; 17 Nov 2010 01 13 20 -0600 which were demanded by the Plaintiffs, and on Wed, 17 Nov 2010 01 17 13 -0600 and other evidence. It is revealed as follows:

Summary:

[...] Defendants [...] to increase [...] instrument [...] by [...] funding positions or amounts for a certain time. Third-amended Plaintiffs [...] Defendant IDLYC instrument [...]

2.  [On December 18, 2009, Plaintiffs PLUREN/NRI] entered into an investment with Defendants Financial/Alison Capital Management, communicated by a wire of funds to the account of Koster via Vicki Clarkson[4]. For the IDLYC transaction [...] First Film project. The pay-out date for first NRI payment[5] was scheduled for January[...] 2010 and denied to CLARKSON/NRI on January 13, 2010.

4.  Following numerous inquiries and demand for verifiable documentation of the transactions by PLUREN/NRI concerning the IDLYC transaction, with only phone calls and emails intimating that the funds would delivered within two to four weeks, and refusal to produce any verifiable documents to establish proof of claims, including Defendants' veracity. These tactics would persist for both the IDLYC transaction and the replacement Gold Buy/Sell transaction until the recent demand for production of documents[6], as shall be fully set forth in Plaintiffs' original complaint;

5.  Mr. Koster was continually informed of the substantial damages being accrued as a result of the IDLYC failure to perform and the continued delay of that performance resulting in lost revenues from lost revenues from film productions and critical marketing windows as well as the original $100MM funding instrument lost at the end of February and a $10.7MM replacement instrument for the lost original instrument, which was also lost in April because of the IDLYC/Alison performance default. With film production revenue losses, among other damages, the accumulated losses including the $100MM NRI, amount to approximately $770MM

6.  On June 14, 2010, prior to the Thu, 24 Jun 2010 10:35:22 -0600 communications (EXHIBIT "H"), Koster negotiated to exchange the IDLYC performance liability for

1. [footnote text largely illegible] Plaintiffs have instrument contains the proofs related to the financial transaction related to the flows transaction involving the Plaintiff funds' contracted obligations' certificates of it's banking transaction [...] placement of [...] financial instruments that needs support of the claims of the status of the performance of Koster, Alison, IDLYC, CCM and [...] and the Koster/Alison purported Gold Buy/Sell replacement transaction for the faked IDLYC financial instrument transaction. The Defendants only objected on November 12-17, 2010, after Plaintiffs' offered the request to submit something relief to obtain disclosure and proposed a stay and ongoing documentation concluding [...] recovery of performance that would damage claims. None of the Defendants even responded to the Plaintiffs' demand nor provided conclusions that the Defendants were engaged in the recovery of the losses and damages. The Defendants have provided no documentation that would substantiate any of their claims or reply by telephone or claims or email communications.

2. [illegible] to accommodate FGA high cash flow needs of a certain film ("Render") that was scheduled for theatrical release in March of 2010.

3. A "private placement program" is an organized buy/sell investment where a PPP trader accesses discounted bank instruments, and then resells them at a higher value. Before the PPP trader purchases the discounted instrument from the bank, they get a contractual commitment from an exit buyer who agrees to buy the item at a higher value. This exit buyer is usually a PPP trader also, but they don't have the direct connection to the bank issuing the instrument, so they buy it from another trader. In short, the entire PPP business is designed to provide private placement financing for investors who have project funding needs. Though private placement investors can earn high yields, they must realize that most proceeds must be invested towards an approved project.

4. A bank/deposit wire was delivered to Koster, with the identification of the sender, Vicki Clarkson, of funds and coordinates of the originating bank on December 18, 2009.

5. See Exhibit "F"



placement into a "Gold Buy/Sell" transaction[7] which would be levered up to reach the IDLYC revenues, not withstanding damages from performance failure, and that he would fund the transaction and collect the original funds from IDLYC himself.

7.     On or about August 4, 2010 Mr. Emre stated that the first payment from FLORES/MFI Gold Buy/Sell participation would occur on August 10, 2010. This expectation was predicated by a telephone call made by Mr. Emre to Ms. Vicki Clarkson and reinforced by an email communication sent by Scott Koster on Thu, 29 Jul 2010 12:04:04 -0500 :

> "... Also as I stated before, and in the VM, [voice mail] they are prepared [sic] to issue a contract mid to late next week on this, pending they have the capability to do so    "I am most definitely not required by any duty, written or personal, to go this far for you guys. I am referring you over to the buy/sell group solely because of the legit projects that each of you have    "[8] (emphasis & notation added)

8.     However, it wasn't until September 1, 2010 at or about 12:23 PM CST, that the facilitator (Richard Hall)[9]/trade-company, was introduced on a conference call with KOSTER and EMRE affirming the participation of FLORES/MFI in the Gold Buy/Sell transaction. However, the September 1st meeting was already 22 days past the stated transaction date and no buy/sell agreement was delivered to that date; in keeping with Koster's and Alisen's continuing pattern of making deceptive material misrepresentation of past or existing facts or remaining silent when he had a duty to speak - not withstanding other breaches of their fiduciary duties of care and loyalty.[10]

9.     It is not coincidental that the August 10th "Wrap-up Agreement" was presented under previously agreed terms that KOSTER et al. would be relieved of any further damages other that the replacement value of the IDLYC financial instrument if the "Gold Buy/Sell" transaction was immediately executable so that MFI could take advantage of an available financial funding resource that would recover a portion of the damages inflicted by the 195 day performance delinquency of KOSTER/IDLYC/BMW MAJESTIC transaction.

10.     The insistence by Mr. Koster that the "Wrap-up Agreement" be immediately executed in order that the Gold Buy/Sell transaction could be completed as the other "Partners"[11] had already signed the agreement and Flores' signature was the only element delaying the transaction. In response to Flores asking for the partnership agreement, copy of the YBLC instrument, and the Gold Buy/Sell contract for the Partners which attach the Wrap-Up Agreement, Mr. Koster insisted the documents were being assembled by Richard Hall and would be delivered shortly. Though it appeared that claims of urgency by KOSTER and EMRE had been articulated their instance of the urgency [illegible] a delay to lull and lure confidential [illegible] and calm; the plain were super, in fact, evidence shows the contrary. None of the documents were delivered. It is factually apparent, given the evidence at hand, that the acts, relating to the Gold

7. A private Gold Buy/Sell transaction typically exists when an investor has located a buyer (usually a bank owned financial house for commodities in exchange for obtaining the gold product or its equivalent in cash value at or below market rate for commodities) that provides a [illegible] to a credit[] instrument. The investor will directly arrange and make the sale, after securing a piece of funds from the seller, taking a percentage of the sale; or the investor will use a sales-broker who, for a fee, makes the sale arrangements including securing the buyer & proof of funds in a bank-locked [illegible]

8. [sic] it is important to Koster Koster's client-invest in confirming his belief he is above the law [illegible] requirements [illegible] and common law as well as federal/local and U.S. Courts he doubt about any investor [illegible] with a well-established precedent all envisions the limited liability that an auto boundary cross.

9. Richard Hall, Stephen Flores Locquia and Caroline Wong Song are citizens of Illinois and a [illegible] [illegible] [illegible] on October 18, 2010.

10. The United States federal courts [illegible] the discount law of Texas funds that make an maxim are available to subscribe misrepresentation included it is the Richmond of Securities v Tuma v AFG First Texas Bank Andy v Renner 828 S.W. 242,255 252 (Tex. 1941) The standard of the act that (1) the misrepresent is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest(2) the defendant supplies false information for the guidance of others in their business (3) the defendant do not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation

11. G. Flores Plaintiffs, Arnaldo Juan R. Santos III, and Eugene Plummer

[illegible] to [illegible] [illegible] of this [illegible]          Page 3 of 18          93827eb9 [illegible] *01 [illegible] [illegible]

Volume 5     [illegible]

Buy/Sell transaction (the "Transaction"), of KOSTER/ALICORN were manufactured with the willful intent of:

- Fraud in the Factum[12],
- Fraud in the inducement[13],
- Constructive Fraud[14], by and through KOSTER/ALICORN's breach of fiduciary duty,[15]
- Fraud in Law[16], and
- Actual Fraud.[17]

11.     Factual exploration of the events unveil the deceptive intent and outcome which appears willful and contrived. Continuing the former, shortly after the Wrap-Agreement Mr. Koster communicated that the Transaction was delayed by Richard Hall. In a conversation in November, 2010, KOSTER stated that Richard Hall was the buyer; a fact which was never reveal until that time. However, there is no record of, nor was FLORES/MFI presented with Richard Hall bank's proof-of-funds or a bank RWA which would show his ability to buy the gold.

12.     Later Mr. Koster stated firmly that the Transaction was set aside because the "Seller" desired a larger purchase, but Koster also stated "they" had received an offer for additional "concessions" which Koster and/or Richard Hall intended to retail/market or otherwise fill those concessions. It in fact, it appears that Mr. Hall is not the buyer, but, is an intermediate buyer financing a gold purchase with the SBLC instrument collateral purchase by Cook Business Services, LLC/Winston J. Cook who actually financed KOSTER/ALICORN's IDLYC liability remuneration to the Partners, rather than Mr. Koster.

13.     Given Mr. Koster's message of Wed, 17 Nov 2010 01:23:40 -0600, "Subject: all docs have been sent" and assuming he was truthful, and given the documents were true and correct copies, it evident that FLORES/MFI and others were never intended to be placed into a Gold Buy/Sell transaction at all, but solely relegated to SBLC/Lender position to be paid only by a one-third share in the SBLC loan fee only. As witnessed by Koster's production, there is no a) bank to bank MT transmission vehicle such as MT 760 of the SBLC or the financial instrument to which Lance Flores / Mockingbird has been assigned ownership in the "partnership" of the Gold Buy / Sell transaction, b) partnership document, c) gold purchase / sell contract that includes or imparts benefits of a gold buy/sell transaction, d) instruments directing the proceeds for the sale of the gold sale benefits to be transmitted to the account of Lance Flores or Mockingbird, and there is no e) payment schedule outlining the schedule of funds transfer pertaining to the Gold Buy / Sell transaction.

- - - - - - - - - - - - - - - - -

12. Fraud in the Factum: fraud in which the deception causes the other party to misunderstand the nature of the transaction in which he or she is engaging esp. with regard to the contents of an instrument (as a contract or promissory note) (called also fraud in the execution).

13. Fraud in the inducement: fraud in which the deception leads the other party to engage in a transaction the nature of which he or she understands.

14. Constructive Fraud: conduct that is considered fraud under the law despite the absence of an intent to deceive because it has the same consequences as an actual fraud would have and it is against public interests (as because of the violation of a public or private trust or confidence, the breach of a fiduciary duty, or the use of undue influence).

15. The Federal Courts have implemented Texas law where, constructive fraud lies where a party breaches a "legal or equitable duty which, irrespective of moral guilt, the law declares fraudulent because of its tendency to deceive others, to violate confidence, or to injure public interests." *Archer v. Griffith*, 390 S.W.2d 735, 740 (Tex. 1965). State appellate courts frequently intimate that this occurs only where there is a fiduciary relationship between the parties,7 and a "decision by an intermediate appellate state court is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *First Nat'l Bank v. Trans Term Corp. Int'l*, 142 F.3d 802, Connell, 889 S.W.2d 624, 642 (Tex. App. SS San Antonio 1994, writ denied) ("To prove constructive fraud appellants must introduce evidence that Alvin breached a legal or equitable duty, which the law declares fraudulent because it violated a fiduciary relationship.").

16. Fraud in Law: fraud that is presumed to have occurred in light of the circumstances irrespective of intent to deceive.

17. Actual Fraud: fraud committed with the actual intent to deceive and thereby injure another (called also fraud in fact).

14.     In consideration of the foregoing, the Defendants, have circumvented and breached their fiduciary duties and committed torts against the Plaintiffs through various acts of fraud, unlawful acts, deceptive trade practices, where such occurred in the course of RICO violations executed through a number of acts of wire fraud exceeding the minimum predicate acts required for RICO claims all in the course of Defendants' business; where same significantly impacted FLORES/MFI their creditor, producers, crews, and MFI's production revenues; and the challenged practices proximately caused actual damages and injury to Plaintiffs.

RESPONDENT'S PRODUCTION

**Respondent Koster's Production 1: Pursuant to conditions under Items in Issue, Item a)**[18] a verifiable copy of the bank to bank MT transmission vehicle such as MT 760 of the SBLC or the financial instrument to which Lance Flores / Mockingbird has been assigned ownership in the "partnership" of the Gold Buy / Sell transaction such shall be deemed valid upon verification by Lance Flores' law firm or banker.
**Production:** No Document Produced.

 (EXHIBIT B, infra.) There is, and remains, no "verifiable copy of the bank to bank MT transmission vehicle such as MT 760 of the SBLC or the financial instrument to which Lance Flores / Mockingbird has been assigned ownership in the "partnership" of the Gold Buy / Sell transaction." The document provided to us presumed to be the evidence submitted to satisfy Item a), is lacking in substance or merit upon its face to evidence and satisfy the stipulations set forth in *Item a*).

**Respondent Koster's Production 2: Regarding Item b)**
**Production:** No Document Produced.[19] *Ibid.*, there is no "verifiable copy of the partnership document" to which the aforementioned SBLC has been proportionally assigned to Lance Flores or Mockingbird, Winston J Cook and Ivan Arcadia Santos" to which the Plaintiffs would recover, wholly or in part, the direct losses from the IDLYC/BMW Majestic performance failure (EXHIBIT E) notwithstanding, tort claims and resulting compensatory and other damages.

There appears to be a "MANAGEMENT AGREEMENT" by and between Cook Business Services, LLC/Winston J. Cook (identified thereupon as "INVESTOR") and Berea (incorporated August 10, 2010), Inc on October 14, 2010 alluding at ¶ 4 and ¶¶ 9H the management of a monthly distribution to Winston J. Cook of 12% the face value an unidentified $1,200,000 dollar asset based on a yet identified gold commodity shipment for a period of 12 months,bearing only the signature and/or initials of Winston J. Cook and Arcadio Ivan A. Santos III, thus presenting two of the wire beneficiaries the amount and conditions of remuneration of the failed IDLYC transaction. Absent from same, is the signature or initials of wire beneficiary Lance Flores/MFI, clearly establishes the intentional concealment the document and withholding vital information until it was demanded in the .
  The FEE PROTECTION AGREEMENT ("FPA 10/14/2010") dtd "10/14/2010" having the assigned Transaction Code IGC-BI-CBS400 was wholly subverted and trespassed upon by the FPA dtd "Oct. 19, 2010" ("FPA Oct. 19,2010") which bears the same Transaction Code. FPA Oct. 19,2010 renders the Wrap-up Agreement null and void, having no provisions for

– – – – – – – – – – – – – –

**18.**   a)   a verifiable copy of the bank to bank MT transmission vehicle such as MT 760 of the SBLC   or the financial instrument to which Lance Flores / Mockingbird has been assigned ownership in the "partnership" of the Gold Buy / Sell transaction   such shall be deemed valid upon verification by Lance Flores' law firm or banker.

**19.**   b)   a verifiable copy of the partnership document to which the aforementioned SBLC has been proportionally assigned to Lance Flores or Mockingbird, Winston J Cook and Ivan Arcadia Santos.

Volume 6 – 000041

its subrogation nor subjugation or otherwise any unauthorized encumbrances rendered to another agreement or contract by KOSTER/ALICORN or a third party.

**Respondent Koster's Production 3: Regarding Item c)** a verifiable copy of the signed gold purchase / sell contract.
**Production:** No Document Produced.

**Respondent Koster's Production 4: Regarding Item d)** a verifiable copy of the instruments directing the proceeds for the sale of the gold sale benefits to be transmitted to the account of Lance Flores or Mockingbird.
**Production:** No Document Produced.

**Respondent Koster's Production 5: Regarding Item e)** a verifiable copy of the payment schedule outlining the schedule of funds transfer pertaining to the Gold Buy / Sell transaction.
**Production:** No Document Produced.

**Findings:** findings include both immediate causes of action as well as causes of actions expected to be availed in discovery process.

> This version of the document does not include some
> details of findings for cause of action nor causes of
> action for the IDLYC investment.

**Finding 1 - Fraudulent Omissions/Nondisclosure/Constructive Fraud**

**Finding 2 - Breach of Fiduciary Duty by Investment Advisors**

**Finding 3 - Fraudulent Misrepresentations**

**Finding 4 - Conspiracy to Commit Fraud**
Defendants committed and caused to be committed one or more overt and unlawful acts in furtherance of the conspiracy, including but not limited to the acts described in the Complaint.

As a direct and proximate result of the Defendants' conspiracy to commit fraud, Plaintiffs suffered injuries, damages, or losses in an amount to be determined at trial.

Plaintiffs are entitled to punitive damages because the Defendants' conduct was malicious, willful, wanton, intentional, and outrageous, evidencing evil motive, reckless indifference to or reckless disregard for the rights of others.

**Finding 5 - Aiding and Abetting Fraud**
Each of the Defendants knew about the schemes used to defraud the Plaintiffs that are described in the Complaint.

Each Defendant actively participated in the schemes to defraud by knowingly providing encouragement and substantial assistance in perpetration of the fraud, as described in the Complaint.

As a direct and proximate result of the Defendants' encouragement and substantial assistance in perpetration of the fraud, Plaintiffs suffered injuries, damages, or losses in an amount to be determined at trial.

Plaintiffs are entitled to punitive damages because the Defendants conduct was malicious, willful, wanton, intentional, and outrageous, evidencing evil motive, reckless indifference to or reckless disregard for the rights of others and contrived with malice aforethought.

### Finding 6 - Negligent Misrepresentations and Omissions

### Finding 7 - Consumer Protection Act Violations

### Finding 8 - Breach of Fiduciary Duty by Officers and/or Directors

### Finding 9 - Gross Negligence by Officers and Directors

### Finding 10 - Gross Negligence by Investment

### Finding 11 - Aiding and Abetting Breach of Fiduciary Duty by Brokers
(Withheld Pending Discovery)

### Finding 12 - Gross Negligence by Brokers
(Withheld Pending Discovery)

### Finding 13 - Interference with Business Relationships (Tortious Interference with Contract) (Against the RICO Defendants)(Portions withheld pending discovery)

### Finding 14 - Conversion
(Against the RICO Defendants)

### Finding 15 - Unjust Enrichment

### Finding 16 - Money Had and Received

### Finding 17 - Constructive Trust

### Finding 18 - Legal Malpractice
(Against the Attorney Defendants if such participated in directing or advising fraudulent practices)

### Claims Having Inherent Capacity for Conclusive RICO Prosecution

### Finding 19 - Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c) (Against the RICO Defendants)
Plaintiffs incorporate by reference all allegations contained in this Complaint.
Each of the Plaintiffs is a "person" under 18 U.S.C. §§ 1961(3) and 1964(c).
Each of the RICO Defendants is a "person" under 18 U.S.C. §§ 1961(3) and 1962(c).

RICO Defendants were a group of persons associated in fact for the common purposes of investment contracts and of conducting the fraudulent scheme described in this Complaint: namely, fraudulently inducing investments that were supposed to be, and were represented to be, safeguarded and prudently managed. As a result, Defendants constitute an association-in-fact enterprise within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c) (the "ALICORN Enterprise"). During all relevant times, the ALICORN Enterprise was engaged in and its activities affected interstate and foreign commerce, and of conducting the fraudulent scheme described in this Complaint.

The RICO Defendants each conducted and/or participated in the conduct of the ALICORN Enterprise's affairs, as described in this Complaint, through a pattern of racketeering activity, as that phrase is defined in 18 U.S.C. §§ 1961(1), (5).

The pattern of racketeering consisted of wire fraud in violation of 18 U.S.C. §§ 1341, 1343. Specifically, the RICO Defendants engaged in an intentional scheme to defraud through false or fraudulent pretenses, representations, and promises. It was reasonably foreseeable to each RICO Defendant that the mails and/or wires would be used in furtherance of the scheme, and the mails and/or wires were in fact used to further and execute the scheme to defraud.

For the purpose of furthering and executing the scheme to defraud, the RICO Defendants regularly transmitted or caused to be transmitted by means of wire communication in interstate or foreign commerce, writings, signs, signals, pictures, and sounds (the "wirings"), and also regularly caused matters and things to be placed in any post office or authorized depository, or deposited or caused to be deposited matters or things to be sent or delivered by a private or commercial interstate carrier (the "mailings"). The details of the wirings and mailings are set forth above.

The RICO Defendants used the wires and/or mails on a regular basis for the above stated purposes to further and execute the scheme to.

The wire transfers detailed in this Complaint each constitute a predicate act of wire fraud because each wire transfer furthered and executed the scheme to defraud.

The RICO Defendants each participated in the scheme to defraud knowingly, willfully, and with a specific intent to defraud.

The predicate acts of mail and wire fraud constitute a pattern of racketeering activity as defined in 18 U.S.C. § 1961(5). The predicate acts were not isolated events but related acts aimed at the common purpose and goal of convincing through misleading information. The RICO Defendants were the common participants in the predicate acts and the Plaintiffs were the common victims.

As a direct and proximate result of the RICO Defendants' violation of 18 U.S.C. § 1962(c), Plaintiffs have been injured in their business or property within the meaning of 18 U.S.C. § 1964(c).

As a result of their misconduct, the RICO Defendants are liable to Plaintiffs for their losses, in an amount to be determined at trial.

In addition, pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover threefold their damages plus costs and attorney fees from the RICO Defendants.

**Finding 20 - Conspiracy to Violate RICO under 18 U.S.C. § 1962(d)**

---

{1} Fiduciary Duty Investors/Entrustors risk of being harmed by the fiduciaries (through conversion, embezzlement, constructive fraud, fraud, deception, misuse of authority, torturous interference with a contract, negligence, etc.) has become acutely visible and apparently widespread since the the trial and conviction of Bernie Madoff in which federal

investigators believe the fraud began as early as the 1980s, and that the investment operation may never have been legitimate.

Risks in is increased by the high costs associated with monitoring the actions of fiduciaries. These costs arise, in part, from fiduciaries' superior access to information as compared to entrustors, which may permit fiduciaries to effectively conceal activities from entrustors until after significant harm is inflicted. As a result of these risks, the common law evolved over time to impose certain substantive duties on fiduciaries that limit their freedoms.

Specifically, courts have imposed two primary duties on fiduciaries: (i) the duty of loyalty; and (ii) the duty of care. Fiduciary law thus vests in entrustors the legal right to rely on the integrity and honesty of their fiduciaries and the quality of the services they provide. From these overarching duties, various obligations have been imposed on fiduciaries under the common law.

{2}  The RICO statute creates civil liability for those who engage in a "pattern of racketeering activity." 18 U.S.C. §§ 1962, 1964. The statute defines racketeering activity to include, among other acts, acts of mail and wire fraud. 18 U.S.C. § 1961(1).

A "pattern of racketeering activity" requires "at least two acts of racketeering activity." 18 U.S.C. § 1961(5). While a minimum of two predicate acts is required, two acts alone do not necessarily establish a pattern. Sedima v. Imrex Co., Inc., 473 U.S. 479, 496 n.14, 497 (1985). To establish a pattern of racketeering activity, the plaintiff must show that the predicate acts are related and that they "amount to or pose a threat of continued criminal activity." *H.J. Inc.*, 492 U.S. at 239.

In this instant cause of action, Flores/Clarkson, et al. v. Koster, et al., the Plaintiffs do not dispute whether the predicate acts of mail and wire fraud in this case are related, and we agree that the acts satisfy the relatedness requirement. The question is whether Plaintiffs establish the requisite continuity.

Continuity refers "either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." Open-ended continuity may be established where, for example, the "related predicates themselves involve a distinct threat of long-term racketeering activity," or where the predicate acts "are part of an ongoing entity's regular way of doing business . . . or of conducting or participating in an ongoing and legitimate RICO enterprise." H.J. Inc., supra at 242-43.

- - - - - -

Chisolm v. Transouth Financial Corp., 95 F.3d 331 (4th Cir. 1996)

-- -- -- -- -- -- -- -- **[EXHIBITS]** -- -- -- -- -- -- -- --

**[EXHIBIT A]**

----- Original Message -----

From: Lance @ MFI
Cc: Scott Koster ; Kerim Emre
Sent: Tuesday, November 16, 2010 11:24 AM
Subject: Status: Gold Buy/Sell & IDLYC/BMW-Majestic, Settlement

TO: Gary W. Grab, Counsel for the Plaintiff Clarkson

CC: MFI Legal Counsel
CC: Scott Koster, Alicorn Capital Management
CC: Kerim Emre
CC: Vicki Clarkson

RE: In the matter of:
United States District Court, Northern District of Texas, Dallas Division - R. Lance
FLORES,
MOCKINGBIRD FILMS INTERNATIONAL LLC, Vicki CLARKSON and CLARKSON'S
CLASSICS INC.
(Plaintiffs)
v.
Scott KOSTER, ALICORN CAPITAL MANAGEMENT, and Kerim EMRE,
(Defendants)Status: Gold Buy/Sell & IDLYC/BMW-Majestic, inter alia

VIA: Certified Electronic Mail

Dear Gary,
  we expect to have the majority of the documents and pleadings, Agreed Settlement
Stipulations (Parties), Settlement Agreement (for approval), Motion to Approve Settlement
to petition Court to issue Memorandum and Order (order that settlement deemed and final)
completed this evening.

  Communications with Scott Koster and Kerim Emre suggest they can and intend to
present empirical and confirmable documents and/or instruments as proof of viable
transactions that will lend themselves to the initiation and eventual final settlement of the
issues. Mr Koster assures us he has the documents at hand and can easily satisfy our needs
for verification. He did state that he may not have an immediate and comprehensive
schedule of funds transfer, etc., however I believe a calculus of a tentative schedule can be
reasonably derived with the documents we have asked to examine. As well, Mr Emre has
inquired about the Agreed Settlement Stipulation, and appears anxious to move on.

  I understand your concern that after eleven months, we don't have a shred of evidence that
any of their assertions and claims are legitimate. Though I share your concern, I urge
restraint on seeking an emergency injunction until we have afforded Alicorn, et al, the
opportunity to deliver the evidence we've asked to inspect. I would like to believe that their
communications and intentions are genuine and urge restraint until after 6:00 PM CST this
evening. Thereafter, we can proceed to immediate injunctive relief from the court and
prepare Admissions, Interrogatories, Request for Production of Documents, and begin
Depositions for discovery and proceed to trial.

  The settlement is of a generous nature and while allowing us to begin the recovery of
damages, it will also benefit the other parties toward their business development, while
insuring that we not re experience the issues now at hand as they shall be under the scrutiny
and force of the Court.

Let's see what the next six hours bring and hope for a timely resolution.

Sincerely,
Lance Flores


**[EXHIBIT B]**

On 11/15/2010 1:17 PM, Lance @ MFI wrote:
TO: Scott Koster, Alicorn Capital Management
TO: Kerim Emre
CC: Vicki Clarkson
CC: Gary W. Grab Law Office
CC: MFI Legal Counsel

RE: Gold Buy/Sell & IDLYC/BMW-Majestic, inter alia

VIA: Certified Electronic Mail

Dear Scott.

The majority of this Sunday was spent on the proceedings and various issues including those relating to your concerns. Mr Grab and his client understand that confirmation transmittal of the requirements for verifiable documents will be directed and delivered to me. They also understand that certain requirements such as items d) and e) (below, "Items in Issue") may not be immediately deliverable because of the transaction's work-in-progress and may not be accurately predictable. A reasonable explanation would suffice as long as reasonably calculated estimation is provided.

I see no reason that we should be able to progress and advance to a quick and acceptable resolution to the issues at hand.

We presume for the moment that your statement that Mr Emre has agreed to the settlement is true and correct. As I am sure you are aware, such is but hearsay upon which we cannot presume to be wholly accurate or represent Mr Emre directly. We will however shall resolve Mr Emre's state-of-mind and intent upon the presentation of the Settlement Stipulation which will be presented with the Settlement Agreement for anticipated approval and order.

Items in Issue
"requirements for such verifiable documents include, but are not necessarily limited to":

a)    a verifiable copy of the bank to bank MT transmission vehicle such as MT 760 of the SBLC or the financial instrument to which Lance Flores / Mockingbird has been assigned ownership in the "partnership" of the Gold Buy / Sell transaction  such shall be deemed valid  upon verification by Lance Flores' law firm or banker.

b)    a verifiable copy of the partnership document to which the aforementioned SBLC has been proportionally assigned to Lance Flores or Mockingbird, Winston J Cook and Ivan Arcadia Santos.

c)    a verifiable copy of the signed gold purchase / sell contract.

d)   a verifiable copy of the instruments directing the proceeds for the sale of the gold sale benefits to be transmitted to the account of Lance Flores or Mockingbird.

e)   a verifiable copy of the payment schedule outlining  the schedule of funds transfer  pertaining to the Gold Buy / Sell transaction.


Sincere Yours.

Lance Flores


**[EXHIBIT C]**

-------- Original Message --------
Subject:    Re: Executed buy/sell
Date:   Wed, 17 Nov 2010 13:39:54 -0600
From:  Scott Koster <koster.scott@gmail.com>
To:     Lance @ MFI <lance@mockingbirdfilms.com>


Lance, the dates are not accurate for the transaction. As you are aware, before Richard can accept delivery of our 10m sblc to his beneficiary, a larger 25m plus financial instrument must be lodged with the beneficiary.


**[EXHIBIT D]**

-------- Original Message --------
Subject:    all docs have been sent
Date:    Wed, 17 Nov 2010 01:23:40 -0600
From:    Scott Koster <koster.scott@gmail.com>
To:    Kerim Emre <kerim.emre@gmail.com>, "Lance @ MFI"
<lance@mockingbirdfilms.com>


If you have any questions, feel free to ask. Please allow me to give anyone your camp will be contacting a heads up. It looks bad for everyone on this side if they are blindsided by investigative phone calls. I have not made Richard fully aware of what you have going on behind you with Vicki, as he would pull the plug if he felt threatened. Please keep that in mind, as we are honestly close to getting this accomplished, and we all stand to benefit from it moving forward.

--
Scott A. Koster
koster.scott@gmail.com
info@alicorncapitalmanagement.com
Direct: 612-916-7007
Conference Line: 218-844-8230
Access Code: 380262#
Skype: alicorn.capital

**[EXHIBIT E]**

-------- Original Message --------
Subject:    The rest of the documents
Date:     Tue, 16 Nov 2010 16:53:10 -0600
From:    Scott Koster <koster.scott@gmail.com>
To:    Lance @ MFI <lance@mockingbirdfilms.com>

Lance,

When I get back to my desk, I will send off the rest of what I can supply to you for this transaction. The one item that will change from now to when richard takes over is the transaction summary/detail form. Updated information such as codes and acct numbers may change. Just fyi.


**[EXHIBIT F]**

-------- Original Message --------
(attachment not included)

Subject:    JV agreement and FPA as a doc file
Date:    Fri, 11 Dec 2009 15:40:27 -0800
From: Kerim Emre <kerim.emre@gmail.com>
To:    lance@mockingbirdfilms.com

Hi Lance,
Just to be safe, I am sending you the PDF as a doc file. Â I also included the FPA for the trade. Â **You will be getting approximately 1.8M/week, of which 16.7% will be the brokers' fees, which will leave you, in your pocket, 1.5M based on the 1.8M being paid out.** Â
Best,
Kerim
kerim.emre@gmail.com
P: 951-719-4819
F: 951-224-6844

[EXHIBIT G]

Richard Hall – CEO
Vladimir Pierre-Louise – CFO/Secretary
Christine Wong-Sang – Vice President

BEREA, INC.  Current Name

---------------------------------------------------

Profit Corporation - Domestic - Information

Control No.: 10072742
Status: Active/Owes Current Year AR

Entity Creation Date: 10/18/2010

Jurisdiction: GA
Principal Office Address: 3330 Cumberland Blvd.
Suite 500
Atlanta GA 30339
Last Annual Registration Filed Date:
Last Annual Registration Filed:

---------------------------------------------------

Registered Agent

Agent Name: TOUSSAINT, HENDRICKX
Office Address: 3330 Cumberland Blvd
Suite 500
Atlanta GA 30339
Agent County: Fulton

Control No. 10072742

# STATE OF GEORGIA

## Secretary of State
### Corporations Division
315 West Tower
#2 Martin Luther King, Jr. Dr.
Atlanta, Georgia 30334-1530

# CERTIFICATE
# OF
# INCORPORATION

I, **Brian P. Kemp**, the Secretary of State and the Corporations Commissioner of the State of Georgia, hereby certify under the seal of my office that

## BEREA, INC.
### a Domestic Profit Corporation

has been duly incorporated under the laws of the State of Georgia on **10/18/2010** by the filing of articles of incorporation in the Office of the Secretary of State and by the paying of fees as provided by Title 14 of the Official Code of Georgia Annotated.

WITNESS my hand and official seal in the City of Atlanta and the State of Georgia on October 18, 2010



Brian P. Kemp
Secretary of State



**[EXHIBIT H]**

-------- Original Message --------
Subject:   Re: Fwd: What happened to call
Date:   Thu, 24 Jun 2010 10:35:22 -0500
From:   Scott Koster <koster.scott@gmail.com>
To:     Lance @ MFI <lance@mockingbirdfilms.com>

Lance,

I do appologize, [sic] and have been overwhelmingly busy with business completely
unrelated to the IDLYC transaction. I have not been at my desk for more than 1 hour or so at
a time, in the past few weeks.

I see and understand what you are saying, and commit to doing a better job conveying
information, as well as communicating.

I received word from IDLYC thismorning [sic] that all copies have been received. The
address that I was using initially had two numbers mixed up (I will forward this email onto
you, as it sounds like something made up). Additionally, I was provided a letter from BMW
MAJESTIC, the name of the traders corp, stating that they will have all refunds completed
on or before June [sic] 30th. I am not hiolding [sic] my breath, but did forward it on to my
attorney in a meeting with him Wed morning.

I am going to review the paperwork you sent over today, and follow up with you regarding
that, as well as update you on the status of the gold buy/sell, and timeline of moving that
forward.

> On Jun 24, 2010 8:46 AM, "Lance @ MFI" <lance@mockingbirdfilms.com
> wrote:
>
> Scott Koster
> June 24, 2010
>
> Scott what will it take to get you to fulfill the fiduciary duty or even keep
> appointments?
>
> You stated on June 14, 2010, at or about 11:32 AM CST, that you would call
> me to discuss further matters concerning the Gold Buy/Sell transaction,
> IDLYC/BMW Majestic trade matters, investment fund issues dates including
> demand letters and responses, SBLC resources, and my resources for
> monetizing instrument including my resource for 200% gold-backed
> collateral for funds (to which I responded within 48 hours).
>
> I iterate again the precepts of the duty of fiduciary responsibility, but in more
> detail the the last, for which I shall elaborate in a formal correspondence by
> U.S. Mail later today that shall also include the breach of those duties,
> damages and the reasonable expectation upon which damages have occurred. I
> hope we can find way to reconcile the difficulty you have in finding a way to
> directly communicate for more that 4o minutes in a six month period of time.
> Please call so we can move this process along. Et seq.

The principles defining and governing fiduciary duty arise out of the law of equity.

The basic fiduciary relationships generally involve two parties: (i) entrustors (e.g., clients, in the context of investment relationships), who grant certain powers and/or authority over their property to another party in order to receive certain services; and (ii) fiduciaries, who agree to take and use such powers and/or property to perform the designated services for the entrustors' benefit.

By granting such powers and/or property to their fiduciaries, entrustors risk being harmed by the fiduciaries (through embezzlement, misuse of authority, negligence, etc.) This risk is increased by the high costs associated with monitoring the actions of fiduciaries. These costs arise, in part, from fiduciaries' specialized skills and superior access to information as compared to entrustors, which may permit fiduciaries to effectively conceal activities from entrustors until after significant harm is inflicted.

As a result of these risks, the common law evolved over time to impose certain substantive duties on fiduciaries that limit their freedoms. Specifically, courts have imposed two primary duties on fiduciaries:
    (i) the duty of loyalty; and
    (ii) the duty of care.

Fiduciary law thus vests in entrustors the legal right to rely on the integrity and honesty of their fiduciaries and the quality of the services they provide. From these overarching duties, various obligations have been imposed on fiduciaries under the common law.

Sincerely,
Lance Flores


On 6/22/2010 1:56 PM, Lance @ MFI wrote:

Please call when you get this message.

[EXHIBIT I]

-------- Original Message --------
Subject:    all docs have been sent
Date:   Wed, 17 Nov 2010 01:23:40 -0600
From:  Scott Koster <koster.scott@gmail.com>
To:     Kerim Emre <kerim.emre@gmail.com>, "Lance @ MFI"
<lance@mockingbirdfilms.com>


If you have any questions, feel free to ask. Please allow me to give anyone your camp will
be contacting a heads up. It looks bad for everyone on this side if they are blindsided by
investigative phone calls. I have not made Richard fully aware of what you have going on
behind you with Vicki, as he would pull the plug if he felt threatened. Please keep that in
mind, as we are honestly close to getting this accomplished, and we all stand to benefit from
it moving forward.

--
Scott A. Koster
koster.scott@gmail.com
info@alicorncapitalmanagement.com
Direct: 612-916-7007
Conference Line: 218-844-8230
Access Code: 380262#
Skype: alicorn.capital

EXHIBIT 117 - 12/2 Flores Msg – Query on Settlement Agreement Quest

------- Original Message -------
Subject: Settlement Agreement
Date: Thu, 02 Dec 2010 14:01:57 -0600
From: Lance @ MFI <lance@mockingbirdfilms.com>
To:    Scott Koster <koster.scott@gmail.com>, Kerim Emre <kerim.emre@gmail.com>

Please let me know this afternoon if a Settlement Agreement is worth pursuing.  I am being
pressed to either have this settled or move to asking the court for federal intervention.  Let me
know. I can't hold the others off much longer.
Thanks Lance

EXHIBIT 118 - 12/8 Flores Msg to Clarkson – Settlement Conference

------- Original Message -------
Subject: Re: Gold Buy/Sell
Date: Wed, 08 Dec 2010 13:19:58 -0600
From: Lance @ MFI <lance@mockingbirdfilms.com>
To:    VICKI CLARKSON <vickiclarkson@shaw.ca>

Setting up the settlement conference for tomorrow. had only one message  from Scott.

On 12/8/2010 12:59 PM, VICKI CLARKSON wrote:
    >
    > Hi Lance,
    >
    > Any word at all from anyone?  Let me know if you have any news..
    > probably won't be back on till Friday but would be good to hear from you! > > Cheers, > >
    Vicki

(&c.)

17

EXHIBIT 119 - 12/9 Koster Msg - Settlement Conference delayed to Confer w/Harlan

On 12/9/2010 2:35 PM, Scott Koster wrote:

Lance,
I need to sit down with my attorney before I can think about any conference. He is in Trial until mid next week. If you would please, forward any further documentation or questions to him as well, as his contact information below.

Tom Harian
Email: harlan@mdh-law.com
Phone: 612-604-2000
Madigan, Dahl, and Harlan
Campbell Mithun Tower
222 South Ninth Street
Suite 3150
Minneapolis MN 55402

(&c.)

EXHIBIT 120 - 12/22 Tom Harlan Msg - First Contact following 12/1 DTPA delivery

(Wednesday, December 22, 2010 1:02)

-------- Original Message --------
Subject: RE: Settlement Conference doc
Date: Wed, 22 Dec 2010 13:03:19 -0500
From: Tom Harlan <harlan@mdh-law.com>
To:      Lance @ MFI <lance@mockingbirdfilms.com>
CC: Scott Koster <koster.scott@gmail.com>, Gary Grab Law Firm <GaryGrab@shaw.ca>,
Kerim Emre <kerim.emre@gmail.com>

Mr. Flores

I have finally had a chance to sit down and discuss this matter with Scott Koster. I am looking through the various documents now and should be ready to discuss this matter with you by Tuesday of next week.

At the outset, I am going to need some additional information regarding representation and the status of this matter. First, are you represented by counsel? If so, please provide me that information. I assume that Mr. Grab is representing Ms. Clarkson's interests? If not, please let me know who he is representing in this matter.  Second, has there been a cross-claim made against

18

you by Ms. Clarkson? If so, please provide that information. Third, I see no record of this being filed with the Federal Court in Texas. Please let me know if I missed something. And, if it has been filed, please provide me with a copy of the Complaint, the affidavit of service, the case file number and the judge assigned to the same as well as your initial case management documents associated with the same, if they are due yet. And if there is a scheduling order, I would appreciate getting a copy of that as well.

Thank you for providing this information. This will assist me in preparing for any discussions on how to resolve the same.

Regards,

TH

Thomas P. Harlan
Madigan, Dahl & Harlan, P.A. Campbell Mithun Tower 222 South Ninth Street, Suite 3150
Minneapolis, Minnesota 55402 612/604-2589 (direct) 612/604-2000 (main) 612/810-5506 (cell)
612/604-2599 (fax) harlan@mdh-law.com
&c.

> From: Lance @ MFI [mailto:lance@mockingbirdfilms.com]
> Sent: Thursday, December 09, 2010 3:39 PM
> To: Tom Harlan
> Cc: Scott Koster; Gary Grab Law Firm; Kerim Emre Subject: Re: Settlement Conference doc
>
> Tom Harlan
> Madigan, Dahl, and Harlan
> Campbell Mithun Tower
> 222 South Ninth Street
> Suite 3150
> Minneapolis MN 55402
> Phone: 612-604-2000
> Email: harlan@mdh-law.com
>
> I understand that you will be representing Mr. Koster as his legal counsel. I shall forward to you our draft of a settlement agreement and will insure that you will be listed to accept service for Mr. Koster.
>
> Unfortunately, much has transpired that may have been avoided had your client been forthcoming with information or a settlement. I understand that Ms. Clarkson initiated criminal complaints with the Minister of Justice and Attorney General of Canada; Minister of Justice and Attorney General of Alberta, Honourable Alison Redford, Alberta; Securities Commission, 4th Floor, 300-5th Ave SW, Calgary, AB T2P 3C4; and that the Canadian complaints have arrived at the U.S. Justice Dept. -- Federal Bureau of Investigation and

19

Merri Jo Gillette at the U.S. Securities Exchange Commission's Chicago Regional Office. As well, copies are headed to the Embassy of Canada – United States - Washington, 501 Pennsylvania Avenue, N.W., Washington, D.C., U.S.A.

I understand that you are in trial until Wednesday but cannot hope to halt other processes now in progress until you are free to resolve these matters. Perhaps we may make some progress at that time.

Best Regards,
Lance Flores

(&c.)

20

EXHIBIT 121 - 1/19/2011 Harlan Msg

(Wednesday, January 19, 2010  2:29 PM CST)

———— Original Message ————
Subject:  RE: Re:
Date:  Wed, 19 Jan 2011 14:29:26 -0500
From: Tom Harlan <harlan@mdh-law.com>
To:     Lance @ MFI <lance@mockingbirdfilms.com>
CC: Kerim Emre <kerim.emre@gmail.com>, Gary Grab <GaryGrab@shaw.ca>,
"LegalDeptCV@mockingbirdfilms.com" <LegalDeptCV@mockingbirdfilms.com>


Thank you for your response. I will await to see the complaint regarding the issues that you are
alleging and the damages that you seek. Please note that in any complaint that you file you must
account for any of the proceeds that you received back from the transaction as well.

With your email, while you did describe the process that you intend on filing and a reference to
some local rule, you have not addressed or provided me other information that I have requested.
Please provide that information as soon as you can.

Please note that until you provide me this information we will not have any settlement discussions.
We are willing to sit down with at anytime to have meaningful and substantive discussions but
need information first.  If we have to do this through discovery after you have commenced this
action, so be it. But I would prefer to get it voluntarily and then see if this matter can be settled.

Thank you in advance for your cooperation.

Regards,
TH
Thomas P. Harlan
Madigan, Dahl & Harlan, P.A. Campbell Mithun Tower 222 South Ninth Street, Suite 3150
Minneapolis, Minnesota 55402 612/604-2589 (direct) 612/604-2000 (main) 612/810-5506 (cell)
612/604-2599 (fax)
harlan@mdh-law.com  (&c.)


          From: Lance @ MFI [mailto:lance@mockingbirdfilms.com]
          Sent: Wednesday, January 19, 2011 12:49 PM
          To: Tom Harlan Cc: Kerim Emre; Gary Grab; LegalDeptCV@mockingbirdfilms.com
          Subject: Re:

          Tom -

           The Clerk will issue case number as soon as we have Gary's motion to appear pro hac vice.
          We both will appear as counsel through the required local rules LR 16.3 Settlement

21

"1. Settlement Negotiations. Parties in a civil action must make good-faith efforts to settle. Settlement negotiations must begin at the earliest possible time, well in advance of any pretrial conference.

2. Settlement Conferences. A judge will be available for settlement discussions. In nonjury cases the presiding judge will not discuss settlement figures unless requested to do so by all concerned parties."

Thereafter, I will provide the discovery document drafts and we shall hand over the case to the law firm to prosecute the complaint should LR16.3 Settlement process fail. I have sent the draft of the settlement agreement which I believe will pass muster, and would be agreeable to the court. Gary's client will be returning from Europe shortly and we would like to move things along before there is an opportunity for Canadian or US authorities to intervene in the case.

I will contact Gary and get back to you shortly.

Best regards,
R. Lance Flores


On 1/18/2011 5:21 PM, Tom Harlan wrote:

> Lance
> I am still waiting to hear from you and/or your legal department about when you
> would like to talk about a potential resolution to the IDYLIC matter. In preparation
> of this, I have asked that you provide me with some information. Please do so at your
> earliest convenience. I await your reply.
> Regards,
>
> TH
>
> Thomas P. Harlan
> Madigan, Dahl & Harlan, P.A. Campbell Mithun Tower 222 South Ninth Street,
> Suite 3150 Minneapolis, Minnesota 55402 612/604-2589 (direct) 612/604-2000 (main)
> 612/810-5506 (cell) 612/604-2599 (fax)
> harlan@mdh-law.com
> &c.

——BEGIN PGP SIGNATURE——
Version: GnuPG v1.0.6 (ReadNotify.com TimeStamp Server v2.2) Comment: Certificate
#16643989, created Wed, 19 Jan 2011 18:48:57 GMT
iQBvAwUBTTcyGTanThAdit3tAQF32ALOP4HY7V9VV9DhLTan/P1hxdynFS88imxG
hOpVj6LyNH81BUM4hc+FzlStbAQ/HeP9YAbHnutDZNliCRhQL0+n0L26+drMw+dh
kD9oTw6iW5qB+1vA6UW0NfOk =tDno ——END PGP SIGNATURE——

22



EXHIBIT 122 - 1/21/2011 12:56 PM Harlan Msg - I have been involved in hundreds if not thousands of lawsuits

(Friday, January 21, 2011  12:56 PM CST)

------ Original Message ------
Subject:  RE: Re:
Date:  Fri, 21 Jan 2011 12:56:48 -0500
From: Tom Harlan <harlan@mdh-law.com>
To:     Lance @ MFI <lance@mockingbirdfilms.com>
CC: Gary Grab <GaryGrab@shaw.ca>, Vicki Clarkson <vickiclarkson@shaw.ca>,
"LegalDeptCV@mockingbirdfilms.com" <LegalDeptCV@mockingbirdfilms.com>

Lance

I have been involved in hundreds if not thousands of lawsuits, including a number in Texas. As it relates to Federal Courts, the practice is pretty much the same from jurisdiction to jurisdiction with the details and differences set out in the local rules.

That being said, I am puzzled as to what you are attempting to accomplish here. This is not a real sophisticacted [sic] matter: you borrowed money to invest in an enterprise that has not worked out. The end of this is still unknown and we are working to get the investement [sic] back. That being said, it appears that there may be issues between what you presented as either the purposes for the money or the time/return of the same. You are now being called to task on those items and are passing this downstream to others. You yourself took $10k of the $90k that was provided. Was there disclosure of that prior to the loan being obtained? And wouldn't you be considered as much of a broker as anyone else in this matter? After all, you profited immediately from the investment and paid yourself a finder's fee.

So, if there is a settlement demand, please put it out there. There is no need that a court approve any settlement or that we work from the "agreement" that you have drafted. When this first started. you postured as if an action had been filed (including styling this all in the form of a pleading) when none existed. You have also suggested/threatened criminal prosecution [sic] in a civil matter. I would suggest that you exercise great caution with this issue in the future. That threat is a violation of the Professional Rules of Conduct in every state.

I have asked you repeatedly to tell me who is representing you. You have not provided me with that information nor has your "legal" department responded to my email. There has been no disclosure of who Crab represents nor has there been any indication on who repr esents [sic] Ms. Clarkson's interests, if any.

Finally, please be advised that while you have sent out the required noticed under Texas' Deceptive Trade Practices Act, you have not negotiated in good faith to settle this matter. We are not going to work with or sign anything remotely like the "Settlement Agreement" or other items that you have created. We will have a simple, straightforward settlement agreement that is customarily used in cases like this. Again, if there is an offer, please put it out there. We are more

23



than willing to work with you to bring this matter to a reasonable conclusion.
Please note that I not authorized to recieve [sic] service on behalf of anyone. As of now, I
represent only Scott and Acorn. Thank you and I look forward to hearing from you.

TH
Thomas P. Harlan
**Madigan, Dahl & Harlan, P.A.**
Campbell Mithun Tower
222 South Ninth Street South, Suite 3150
 Minneapolis, Minnesota 55402
612-604-2589 (direct)
612-604-2000 (main)
612-604-2599 (fax) harlan@mdh-law.com

&c. [additional message inclusions excluded] [emphasis added]

EXHIBIT 123 - 1/21/2011 2:14 PM Flores Msg - Response to 12:56 PM Harlan Msg

(Friday, January 21, 2011  2:14 PM CST)

——— Original Message ———Subject:  Re:
Date:  Fri, 21 Jan 2011 14:14:42 -0600
From: Legal <legaldeptcv@mockingbirdfilms.com> To:   Tom Harlan
<harlan@mdh-law.com.readnotify.com>
CC:  Gary Grab <GaryGrab@shaw.ca>, Vicki Clarkson <vickiclarkson@shaw.ca>,
LegalDeptCV@mockingbirdfilms.com

Dear Mr. Harlan -
    It appears you have made some false presumptions, out of conversation with your client and a
unreliable source perhaps. I have not participated as a broker in any capacity.  ①➥The "$10k"
which you reference, is no part of the Koster/Alicorn et al. transaction and pre-discovery fishing will not
provide credible facts.

②➥ As far as criminal actions, such is not in our sphere to prosecute, and is wholly in the hands of
appropriate authorities to effect responsive actions that which may be appropriate to the evidence at hand or
result from ongoing investigations. Further related inferences neither warrant nor merit additional response.

    Unfortunately, we have experienced agreements with your client, but ③➥if you have something that
would be acceptable to the Court, then certainly present it to us. Our demands have remained the
same:

    1) We want consideration for damages, knowing well that your client does not have the
wherewithal to make us whole, but we would accept a structured settlement on a portion of direct
and collateral damages would allow us to create financial mechanisms to recover a portion of the
damages your client is liable.
    2) In damage recovery for the IDLYC transaction and the promised replacement by means of
an alternative financial mechanism of equivalent worth such as Gold Buy/Sell or equivalent.
Doesn't get much simpler.

LF

(&c.)

**EXHIBIT 124 - IDLYC Corp Filings**

# IDLYC HOLDINGS TRUST LLC
# FLORIDA SEC. OF STATE COMPANY FILINGS

# Electronic Articles of Organization
## For
## Florida Limited Liability Company

L10000002491
FILED 8:00 AM
January 07, 2010
Sec. Of State
lsellers

## Article I

The name of the Limited Liability Company is:

IDLYC HOLDINGS TRUST LLC

## Article II

The street address of the principal office of the Limited Liability Company is:

3677 JASMINE AVE.
#10
LOS ANGELES, CA. US 90034

The mailing address of the Limited Liability Company is:

3677 JASMINE AVE.
#10
LOS ANGELES, CA. US 90034

## Article III

The purpose for which this Limited Liability Company is organized is:

ANY AND ALL LAWFUL BUSINESS.

## Article IV

The name and Florida street address of the registered agent is:

MARK A GELAZELA MR.
26 MARLWOOD LANE
PALM BEACH GARDENS, FL. 33418

Having been named as registered agent and to accept service of process
for the above stated limited liability company at the place designated
in this certificate, I hereby accept the appointment as registered agent
and agree to act in this capacity. I further agree to comply with the
provisions of all statutes relating to the proper and complete performance
of my duties, and I am familiar with and accept the obligations of my
position as registered agent.

Registered Agent Signature: MARK GELAZELA

## Article V

The name and address of managing members/managers are:

L10000002491
FILED 8:00 AM
January 07, 2010
Sec. Of State
lsellers

Title:  MGRM
MARK A GELAZELA MR.
3677 JASMINE AVE. #10
LOS ANGELES, CA.  90034  US

Title:  MGRM
WILLIAM C REYNOLDS DR.
26 MARLWOOD LANE
PALM BEACH GARDENS, FL.  33418  US

Signature of member or an authorized representative of a member

Signature: MARK GELAZELA

PLI 000 0002491

_____
(Requestor's Name)

_____
(Address)

_____
(Address)

_____
(City/State/Zip/Phone #)

☐ PICK-UP      ☐ WAIT      ☐ MAIL

_____
(Business Entity Name)

_____
(Document Number)

Certified Copies _____    Certificates of Status _____

┌──────────────────────────────┐
│ Special Instructions to Filing Officer: │
│                              │
│                              │
│                              │
│                              │
│                              │
│                              │
└──────────────────────────────┘

Office Use Only



900163773519

1/27/10
E. DENNARD

## Malave, Erin M.

| | |
|---|---|
| **From:** | Mark Zella |
| **Sent:** | Monday, January 25, 2010 1:07 PM |
| **To:** | CorpAddressChange |
| **Subject:** | FEIN ADDITION to L10000002491 |
| **Importance:** | High |
| **Attachments:** | EIN number.pdf |

PLEASE ADD FEIN NUMBER 27-1651047  TO OUR FILING L10000002491 FOR IDLYC HOLDINGS TRUST LLC.

PLEASE DO NOT LEAVE MY CONTACT INFO IN THIS MESSAGE WHEN IT IS POSTED.   THANK YOU.

Best Regards,
Mr. Mark Gelazela

# LI000 000 2491

_____
(Requestor's Name)

_____
(Address)

_____
(Address)

_____
(City/State/Zip/Phone #)

☐ PICK-UP      ☐ WAIT      ☐ MAIL

_____
(Business Entity Name)

_____
(Document Number)

Certified Copies _____      Certificates of Status _____

Special Instructions to Filing Officer:

Office Use Only



600164052476

AC
1/19/10

E. DENNARD

**Lilliston, Melinda**

| | |
|---|---|
| **From:** | Mark Zella |
| **Sent:** | Thursday, January 14, 2010 4:35 PM |
| **To:** | CorpAddressChange |
| **Subject:** | Priciple operating address change for IDLYC Holdings Trust LLC. |
| **Importance:** | High |

The street address of the principle office needs to be changed to

☒ 26 Marlwood Lane
Palm Beach Gardens FL 33418

It was imputed incorrectly by us the first time.

#10 LosAngles CA 90034

The mailing address is UNchanged and should remain as the 3677 jasmine ave address. Please correct and send us the new documents or let us know when they are posted online. How long does it take to implement changes

Best Regards,
Mr. Mark Gelazela

L10000002491

EXHIBIT 125 - IBalance LLC

# IBALANCE SEC. OF STATE COMPANY FILINGS

27

# Electronic Articles of Organization
## For
# Florida Limited Liability Company

L08000049751
FILED 8:00 AM
May 19, 2008
Sec. Of State
nculligan

## Article I

The name of the Limited Liability Company is:

IBALANCE, LLC

## Article II

The street address of the principal office of the Limited Liability Company is:

1070 E. INDIANTOWN RD.
#206
JUPITER, FL.   33477

The mailing address of the Limited Liability Company is:

26 MARLWOOD LANE
PALM BEACH GARDENS, FL.   33418

## Article III

The purpose for which this Limited Liability Company is organized is:

ANY AND ALL LAWFUL BUSINESS.

## Article IV

The name and Florida street address of the registered agent is:

WILLIAM C REYNOLDS
26 MARLWOOD LANE
PALM BEACH GARDENS, FL.   33418

Having been named as registered agent and to accept service of process
for the above stated limited liability company at the place designated
in this certificate, I hereby accept the appointment as registered agent
and agree to act in this capacity.  I further agree to comply with the
provisions of all statutes relating to the proper and complete performance
of my duties, and I am familiar with and accept the obligations of my
position as registered agent.

Registered Agent Signature:   WILLIAM C. REYNOLDS

## Article V

The name and address of managing members/managers are:

L08000049751
FILED 8:00 AM
May 19, 2008
Sec. Of State
nculligan

Title:  MGR
WILLIAM C REYNOLDS
26 MARLWOOD LANE
PALM BEACH GARDENS, FL.  33418

## Article VI

The effective date for this Limited Liability Company shall be:

05/15/2008

Signature of member or an authorized representative of a member

Signature: WILLIAM C. REYNOLDS

# 2009 LIMITED LIABILITY COMPANY ANNUAL REPORT

FILED
May 24, 2009
Secretary of State

DOCUMENT# L08000049751

Entity Name: IBALANCE, LLC

**Current Principal Place of Business:**

1070 E. INDIANTOWN RD.
#206
JUPITER, FL 33477

**New Principal Place of Business:**

26 MARLWOOD LANE
PALM BEACH GARDENS, FL 33418

**Current Mailing Address:**

26 MARLWOOD LANE
PALM BEACH GARDENS, FL 33418

**New Mailing Address:**

FEI Number: 26-2633991       FEI Number Applied For ( )       FEI Number Not Applicable ( )       Certificate of Status Desired ( )
In accordance with s. 607.193(2)(b), F.S., the limited liability company did not receive the prior notice.

**Name and Address of Current Registered Agent:**       **Name and Address of New Registered Agent:**

REYNOLDS, WILLIAM C
26 MARLWOOD LANE
PALM BEACH GARDENS, FL 33418     US

The above named entity submits this statement for the purpose of changing its registered office or registered agent, or both, in the State of Florida.

SIGNATURE: _____

| | Electronic Signature of Registered Agent | Date |

**MANAGING MEMBERS/MANAGERS:**                                    **ADDITIONS/CHANGES:**

| | | | | |
|---|---|---|---|---|
| Title: | MGR        ( ) Delete | | Title: | MGRM        (X) Change  ( ) Addition |
| Name: | REYNOLDS, WILLIAM C | | Name: | REYNOLDS, WILLIAM C |
| Address: | 26 MARLWOOD LANE | | Address: | 26 MARLWOOD LANE |
| City-St-Zip: | PALM BEACH GARDENS, FL 33418 | | City-St-Zip: | PALM BEACH GARDENS, FL 33418 |
| | | | | |
| Title: | ( ) Delete | | Title: | MGRM        ( ) Change  (X) Addition |
| Name: | | | Name: | GELAZELA, MARK A |
| Address: | | | Address: | 3877 JASMINE AVE #10 |
| City-St-Zip: | | | City-St-Zip: | LOS ANGELES, CA 90034 |

I hereby certify that the information supplied with this filing does not qualify for the exemption stated in Chapter 119, Florida Statutes. I further certify that the information indicated on this report is true and accurate and that my electronic signature shall have the same legal effect as if made under oath; that I am a managing member or manager of the limited liability company or the receiver or trustee empowered to execute this report as required by Chapter 608, Florida Statutes.

SIGNATURE:   WILLIAM C. REYNOLDS                                    MGRM                05/24/2009

| | Electronic Signature of Signing Managing Member, Manager, or Authorized Representative / Date |

Page 75 Filed PageID 488

**2010 LIMITED LIABILITY COMPANY ANNUAL REPORT**

DOCUMENT# L08000049751

Entity Name: IBALANCE, LLC

| | |
|---|---|
| **Current Principal Place of Business:** | **New Principal Place of Business:** |

26 MARLWOOD LANE
PALM BEACH GARDENS, FL  33418

| | |
|---|---|
| **Current Mailing Address:** | **New Mailing Address:** |

26 MARLWOOD LANE
PALM BEACH GARDENS, FL  33418

FEI Number: 26-2633991      FEI Number Applied For ( )      FEI Number Not Applicable ( )      Certificate of Status Desired ( )

| | |
|---|---|
| **Name and Address of Current Registered Agent:** | **Name and Address of New Registered Agent:** |

REYNOLDS, WILLIAM C
26 MARLWOOD LANE
PALM BEACH GARDENS, FL  33418      US

The above named entity submits this statement for the purpose of changing its registered office or registered agent, or both, in the State of Florida.

SIGNATURE: _____

Electronic Signature of Registered Agent                                    Date

**MANAGING MEMBERS/MANAGERS:**

| | |
|---|---|
| Title: | MGRM |
| Name: | REYNOLDS, WILLIAM C |
| Address: | 26 MARLWOOD LANE |
| City-St-Zip: | PALM BEACH GARDENS, FL  33418 |

| | |
|---|---|
| Title: | MGRM |
| Name: | GELAZELA, MARK A |
| Address: | 3877 JASMINE AVE #10 |
| City-St-Zip: | LOS ANGELES, CA  90034 |

I hereby certify that the information indicated on this report is true and accurate and that my electronic signature shall have the same legal effect as if made under oath; that I am a managing member or manager of the limited liability company or the receiver or trustee empowered to execute this report as required by Chapter 608, Florida Statues.

SIGNATURE:  WILLIAM C. REYNOLDS                          MGMR                    03/30/2010

Electronic Signature of Signing Managing Member, Manager, or Authorized Representative / Date

**EXHIBIT 126 – Godspeeds Endeavors 1 original filing date Dec 18 2009 40622674**

GODSPEEDS ENDEAVORS, LLC

**Electronic Articles of Organization
For
Florida Limited Liability Company**

28

# Electronic Articles of Organization
## For
# Florida Limited Liability Company

L09000120492
FILED 8:00 AM
December 18, 2009
Sec. Of State
ncausseaux

## Article I

The name of the Limited Liability Company is:

GODSPEEDS ENDEAVORS, LLC.

## Article II

The street address of the principal office of the Limited Liability Company is:

3677 JAMINE AVE.
APT 10
LOS ANGELES, CA. CA  90034

The mailing address of the Limited Liability Company is:

3677 JAMINE AVE.
APT 10
LOS ANGELES, CA. US  90034

## Article III

The purpose for which this Limited Liability Company is organized is:

ANY AND ALL LAWFUL BUSINESS.

## Article IV

The name and Florida street address of the registered agent is:

MARK A GELAZELA
26 MARLWOOD LANE
PALM BEACH GARDENS, FL.  33418

Having been named as registered agent and to accept service of process
for the above stated limited liability company at the place designated
in this certificate, I hereby accept the appointment as registered agent
and agree to act in this capacity.  I further agree to comply with the
provisions of all statutes relating to the proper and complete performance
of my duties, and I am familiar with and accept the obligations of my
position as registered agent.

Registered Agent Signature:  MARK ALAN GELAZELA

## Article V

The name and address of managing members/managers are:

L09000120492
FILED 8:00 AM
December 18, 2009
Sec. Of State
ncausseaux

Title:  MGR
MARK A GELAZELA
3677 JASMINE AVE #10
LOS ANGELES, CA.  90034  US

Title:  MGRM
IDLYC HOLDINGS TRUST
9 MELODY LANE, RUAKURA ROAD
HAMILTON  3216, NZ.  HAMILTON  NZ

## Article VI

The effective date for this Limited Liability Company shall be:

12/15/2009

Signature of member or an authorized representative of a member

Signature: MARK ALAN GELAZELA

**EXHIBIT 127 - Godspeeds Endeavors LLC Jan 25 2010 67096798**

# GODSPEEDS ENDEAVORS

## 2010 Limited Liability Company
## Annual Report

# 2010 LIMITED LIABILITY COMPANY ANNUAL REPORT

DOCUMENT# L09000120492

**FILED**
Jan 25, 2010
Secretary of State

**Entity Name:** GODSPEEDS ENDEAVORS, LLC.

**Current Principal Place of Business:**

3677 JAMINE AVE.
APT 10
LOS ANGELES, CA 90034    CA

**New Principal Place of Business:**

26 MARLWOOD LANE
PALM BEACH GARDENS, FL 33418    US

**Current Mailing Address:**

3677 JAMINE AVE.
APT 10
LOS ANGELES, CA 90034    US

**New Mailing Address:**

FEI Number: 68-0679518     FEI Number Applied For ( )     FEI Number Not Applicable ( )     Certificate of Status Desired (X)

**Name and Address of Current Registered Agent:**

GELAZELA, MARK A
26 MARLWOOD LANE
PALM BEACH GARDENS, FL 33418    US

**Name and Address of New Registered Agent:**

The above named entity submits this statement for the purpose of changing its registered office or registered agent, or both, in the State of Florida.

SIGNATURE: _____

Electronic Signature of Registered Agent                                          Date

**MANAGING MEMBERS/MANAGERS:**

| | |
|---|---|
| **Title:** | MGR |
| **Name:** | GELAZELA, MARK A |
| **Address:** | 3677 JASMINE AVE #10 |
| **City-St-Zip:** | LOS ANGELES, CA 90034 US |

| | |
|---|---|
| **Title:** | MGRM |
| **Name:** | IDLYC HOLDINGS TRUST |
| **Address:** | 9 MELODY LANE, RUAKURA ROAD |
| **City-St-Zip:** | HAMILTON 3216, NZ HAMILTON NZ |

I hereby certify that the information indicated on this report is true and accurate and that my electronic signature shall have the same legal effect as if made under oath; that I am a managing member or manager of the limited liability company or the receiver or trustee empowered to execute this report as required by Chapter 608, Florida Statues.

SIGNATURE:  MARK GELAZELA                                          MGR            01/25/2010
Electronic Signature of Signing Managing Member, Manager, or Authorized Representative / Date

**EXHIBIT 128 - Godspeeds Initiative original filing 10015651**

# GODSPEED INITIATIVE LLC

## Electronic Articles of Organization
## For
## Florida Limited Liability Company

# Electronic Articles of Organization
## For
## Florida Limited Liability Company

L10000062938
FILED 8:00 AM
June 11, 2010
Sec. Of State
dbruce

## Article I

The name of the Limited Liability Company is:

GODSPEEDS INITIATIVE LLC

## Article II

The street address of the principal office of the Limited Liability Company is:

26 MARLWOOD LANE
PALM BEACH GARDENS, FL.  33418

The mailing address of the Limited Liability Company is:

3677 JASMINE AVE.
10
LOS ANGELES, CA.  90034

## Article III

The purpose for which this Limited Liability Company is organized is:

ANY AND ALL LAWFUL BUSINESS.

## Article IV

The name and Florida street address of the registered agent is:

MARK A GELAZELA
26 MARLWOOD LANE
PALM BEACH GARDENS, FL.  33418

Having been named as registered agent and to accept service of process
for the above stated limited liability company at the place designated
in this certificate, I hereby accept the appointment as registered agent
and agree to act in this capacity.  I further agree to comply with the
provisions of all statutes relating to the proper and complete performance
of my duties, and I am familiar with and accept the obligations of my
position as registered agent.

Registered Agent Signature:  MARK GELAZELA

## Article V

The name and address of managing members/managers are:

L10000062938
FILED 8:00 AM
June 11, 2010
Sec. Of State
dbruce

    Title:  MGRM
    MARK A GELAZELA
    3677 JASMINE AVE., #10
    LOS ANGELES, CA.  90034

## Article VI

The effective date for this Limited Liability Company shall be:

    06/11/2010

Signature of member or an authorized representative of a member

Signature: MARK GELAZELA

LI000 0062938

_____
(Requestor's Name)

_____
(Address)

_____
(Address)

_____
(City/State/Zip/Phone #)

☐ PICK-UP      ☐ WAIT      ☐ MAIL

_____
(Business Entity Name)

_____
(Document Number)

Certified Copies _____    Certificates of Status _____

Special Instructions to Filing Officer:

Office Use Only



000182144520

fu 6/18/10
E. DENNARD

**Malave, Erin**        L1000 0062938

| | |
|---|---|
| **From:** | Mark Zella [gelazela@surfside.net] |
| **Sent:** | Wednesday, June 16, 2010 4:48 PM |
| **To:** | CorpAddressChange |
| **Subject:** | EIN addition for Godspeeds Initiative, LLC |
| **Importance:** | High |
| **Attachments:** | godspeeds initiative EIN.pdf |

Please add 27-2859488 as our EIN number per the attached.

Best Regards,
Mr. Mark Gelazela