№ 3:11-cv-00726-M -BH

In the
# United States District Court
## Northern District of Texas
## Dallas Division

R. Lance Flores, Vicki Clarkson,
Plaintiffs,

*v.*

Scott Anthony Koster, *et al.*,
Defendants.

FILED *EX PARTE* UNDER SEAL

## BRIEF IN SUPPORT OF PLAINTIFFS' MOTIONS TO EXTEND THE TIME FOR SERVICE AND FOR ALTERNATIVE SERVICE

*before the:*
Hon. Irma C. Ramirez,
*Referring Judge.*

R. Lance Flores
Lead Attorney
3314 Pleasant Drive
Dallas, Texas 75227 USA
Tel. (Dallas): +1 (214) 272-0349
Tel. (Fax): +1 (210) 519-6528
CM/ECF E-mail:
LF_legaldept@MockingbirdFilms.com
Attorney for the Plaintiff

Vicki Clarkson

2416 - 36 Street SW
 Calgary, AB T3E 2Z5
Tel. (Calgary): +1 (403) 244-9980
Tel.  (Fax:) +1 (403) 246-3331
CM/ECF E-mail:
VC_LegalDept@MockingbirdFilms.com
Attorney for the Plaintiff

| This page intentionally blank for the purpose of printing integrity.  |

---

# TABLE OF CONTENTS

---

Table of Contents. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Table of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v
   Federal Cases. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v
   Federal Rules. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi
   Federal Statutes. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi
   State Rules. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vii
   Other Citations.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vii

Plaintiffs' Brief. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.  STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   Nature of underlying proceeding. . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   Relief sought. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.  STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
      1.  Defendants Are Engaged In Illegal Activities Internationally and Within This District. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
      2.  Defendants Have Purposefully Falsified Their Public Physical Address Data, but Have Provided Valid E-mail Addresses that have been used interactively between the Defendants and Plaintiff in excess of nineteen months. . . . . . . . . . . . . . . . . . . . . . . . . 4
      3.  Defendants Rely Solely on Electronic Telecommunications & Internet.. . . . . . 5

III.  ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
   EXTENSION OF TIME FOR SERVICE OF COMPLAINT & SUBPOENA. . . . . . . . . . . . . . . . . . 6
      1.  Court should extend Service for good cause where such "an extension is mandatory"  ... even in the case of excusable neglect causing lack of service extension is "permissive.". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
   ALTERNATE SERVICE BY E-MAIL, TELEPHONIC FACSIMILE, AND ON PERSON. . . . . . . . . 9
      2.  Traditional methods and orthodoxy means of alterative service fly in the teeth of prevailing technological advances. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
      3.  CONSIDERATION OF ALTERNATE SERVICE. . . . . . . . . . . . . . . . . . . . . 10
      4.  **Newspaper Publication No Longer Effective for Notification**. . . . . . . . . . . 13
      5.  The Court May Authorize Service via Electronic Mail and Publication The Constitution does not direct that service be effected in any specific way. . . . . . . . . . . 15
   Service by E-Mail. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
      6.  Service by Telephonic Facsimile & E-FAX. . . . . . . . . . . . . . . . . . . . . . 19
      7.  Reformulation of Service of Complaint and Summons. . . . . . . . . . . . . . . . 19

IV.  CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

V.  PRAYER. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

---

VI.  **CERTIFICATE OF CONFERENCE BETWEEN COUNSEL**. . . . . . . . . . . . . . . . . . . . . . . . . [25](#)

VII.  **CERTIFICATE OF SERVICE**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [25](#)

Appendix A – 2ND VERIFIED DECLARATION OF VICKI CLARKSON. . . . . . . . . . . [26](#)

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Brookshire Bros., Ltd.* , 2007 WL 1577771,. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Chanel, Inc. v. Song Xu*, No. 2:09-cv-02610-cgc, 2010 WL 396357 (W.D. Tenn. Jan. 27, 2010)

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Coleman v. Milwaukee Bd. of School Directors,* 290 F.3d 932 (7th Cir. 2002). . . . . . . . . . . . 6, 7

*Ditkof v. Owens-Illinois, Inc.*, 114 F.R.D. 104 (E.D. Mich. 1987). . . . . . . . . . . . . . . . . . . . . . . 8

*Espinoza v. U.S.*, 52 F.3d 838, 841 (Co. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Gaffigan v. Does* 1-10, 689 F. Supp.2d 1332, 1342 (S.D. Fla. 2010). . . . . . . . . . . . . . . . . 16, 18

*Grannis v. Ordean*, 234 U.S. 385, 394 (1914).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*In re Int'l Telemedia Assocs.*, 245 B.R.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Karkoukli's, Inc. v. Dohany*, 409 F.3d 279, 283 (6th Cir. 2005).. . . . . . . . . . . . . . . . . . . . . . . 12

*McGinnis v. Shalala*, 2 F.3d 538 (5th Cir. 1993).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). . . . . . . . . 12, 14, 16, 20

*New England Merchants Nat'l Bank v. Iran Power Generation & Transmission Co.*, 495 F. Supp. 73, 80 (S.D.N.Y. 1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Panaras v. Liquid Carbonic Industries Corp.*, 94 F.3d 338, 341 (7th Cir. 1996).. . . . . . . . . . . 7

*Parson v. Cole (In re Cole)*, 142 B.R. 140 (Bankr. N.D. Tex. 1992). . . . . . . . . . . . . . . . . . . . . 7

Petrucelli v. Bohringer and Ratzinger, 46 F.3d 1298, 1305 (3d Cir.1995). . . . . . . . . . . . . . . . 8

*Popular Enters., LLC v. Webcom Media Group, Inc.*, 225 F.R.D. 560, 562 (E.D. Tenn. 2004)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 18

*Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007 (9th Cir. 2002). . . . . . . . . . . . 11, 16, 18

*Thompson v. Brown*, 91 F.3d 20, 21 (5th Cir. 1996).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Tulsa Professional Collection Services, Inc. v. Pope* 485 U.S. 478, 484, 108 S.Ct. 1340 (1988)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 100 S. Ct. 559, 564, 62 L. Ed. 2d
490 (1980)... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

## FEDERAL RULES

Fed. R. Civ. P. (h)(1)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Fed. R. Civ. P. 4.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11

Fed. R. Civ. P. 4(e)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Fed. R. Civ. P. 4(f)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Fed. R. Civ. P. 4(j). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Fed. R. Civ. P. 4(m). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 7

Fed. R. Civ. P. 6(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

U.S. Dist. Ct. ND Tex. LR 5.1 e.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

U.S. Dist. Ct. ND Tex. LR 5.1 f.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## FEDERAL STATUTES

18 U.S.C. 1956 (Laundering of Monetary Instruments). . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

18 U.S.C. § 1001 (False Statements). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

18 U.S.C. § 1028A (Aggravated identity theft). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

18 U.S.C. § 152(6) (Extortion and Bribery). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

18 U.S.C. § 152(7) (Fraudulent Transfer or Concealment). . . . . . . . . . . . . . . . . . . . . . . . . . 4

18 U.S.C. § 1961–1968. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

18 U.S.C. § 371 (Conspiracy). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

26 U.S.C. § 7201 (Evasion). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

26 U.S.C. § 7206(4) (Removal or Concealment with Intent to Defraud). . . . . . . . . . . . . . . . . 4

26 U.S.C. § 7206(5) (Compromises & Closing Agreements). . . . . . . . . . . . . . . . . . . . . . . . . 4


**STATE RULES**

Cal. Civil P. Code §415.20. (a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 18

Cal. Civil P. Code §416.10. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Cal. Civil P. Code §416.20. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Cal. Civil P. Code §416.30. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Cal. Civil P. Code §416.40. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Cal. Civil P. Code §416.50. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9


**OTHER CITATIONS**

Christopher B. Woods, *Commercial Law: Determining Repugnancy in an Electronic Age: Excluded Transactions Under Electronic Writing and Signature Legislation*, 52 Okla. L. Rev. 411. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Frank Ahrens, *The accelerating decline of newspapers*, THE WASHINGTON POST, Tuesday, October 27, 2009. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Lauren A. Rieders, *Old Principles, New Technology, and the Future of Notice in Newspapers*, 38 Hofstra L. Rev. 1009, 1043 (2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Mike Sachoff, *Less Than Half Of Americans Read A Daily Newspaper*, WEBSITEPRO NEWS [January 13, 2010 at 12:26pm]. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Richard Perez-Peña, *U.S. Newspaper Circulation Falls 10%*, THE NEW YORK TIMES, October 26, 2009. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

№ 05-05-01188-CV

## PLAINTIFFS' BRIEF

MAY IT PLEASE THE COURT:

Plaintiffs, Vicki Clarkson and R. Lance Flores, submit the PLAINTIFFS' BRIEF (the/this "Brief") in support of their MOTIONS TO EXTEND THE TIME FOR SERVICE AND FOR ALTERNATIVE SERVICE (the "Motion").

Plaintiffs' case should not be dismissed; this honorable Court should grant additional time in which to serve the defendants as required by law. Failure to serve the defendants named in this lawsuit was not due to inadvertence, neglect or willful disobedience. The failure stemmed from the deliberate and determined efforts declared intent of Defendants to avoid service to evade and despoil the orderly and the necessary notice of summons and complaint which reach to the substantive and procedural due process of notice to the Defendants. Plaintiffs further aver that ongoing investigations of Defendants by the United States of America and the State of Alabama are inextricably intertwined with the instant case and have caused the Defendants to conceal and entrench themselves into deep physical obscurity while maintaining fraudulently published operational business addresses[1] to carry on criminal operations.

The motions before the Court are necessitated by circumstances related to the nature and events surrounding this case and considerations for the pursuit of both civil and criminal investigations of the various departments of United States and others. Plaintiffs ask the Court to

---

[1]   Appendix A – 2ND VERIFIED DECLARATION OF VICKI CLARKSON (2ND Decl.) at 4- ln. 9, 13-16, 7- ln. 4-18; *Eg.*, Exs. Vol. 7A, Ex. 137 § 8 pg. 21, 23 (see company contact information), Ex. 138 § 9 pg. 24 (see company contact information), Ex. 139 § 10 pg. 25 (see company contact information), Ex. 146 § 17 pg. 43 (see company contact information). Also note Idlyc Holding Trust LLC, Spin Entertainment and iBalance LLC, addresses were confirmed to Vicki Clarkson on June 28, 2011 at 11:35 AM (MST) by Special Agent John Amberg, Washington D.C. Office, United States Securities and Exchange Commission to be fraudulent as well. See, John Amberg conversations Exs. Vol. 8, Ex. 165 §15 at 3 ¶ 4.

extend the time for service an additional twenty-one days passed the issue of an order granting

extension of time to serve and for alterative service.

Plaintiffs will be referred to as the "Plaintiffs" by name as aforesaid proper names Vicki

Clarkson (or "Clarkson") and R. Lance Flores (or "Flores"). The Defendants by name as

aforesaid proper name, as case status, remain as so defined in the Plaintiffs' Original Complaint

("POC" or the "Complaint").

---

## I. STATEMENT OF THE CASE

*Nature of underlying proceeding:*

This matter comes before the Court on Plaintiffs' specific damages and tort claims complaint of a complex nature where RICO violations[2] are specified but as yet not set forth as causes of action.

*Relief sought:*

Plaintiffs request pursuant to Fed. R. Civ. P. Rule 4(m), to extend the time for service of the complaint and summons on all Defendants for twenty-one extra days.

Plaintiffs also request permission to serve all Defendants by: (1) e-mail; and (2) facsimile as supplemental service; thereafter (3) initiate personal service attempts upon those Defendants for which Plaintiffs have domiciliary or business addresses by the Sheriff Departments identified in and profession service provider concurrently with e-mail and facsimile service; or thereafter (4) initiate service upon Defendants' counsel, if known, and (5) initiate additional supplemental alternate service by publication at Internet WWW site location where Defendants are known to have already downloaded[3] Complaint, as well as Defendants' known social and business website accounts.

---

[2]   RICO - Organized Crime Control Act of 1970 (Pub.L. 91-452, 84 Stat. 922, enacted October 15, 1970) codified as Chapter 96 of Title 18 of the United States Code, 18 U.S.C. § 1961–1968.

[3]   Process of copying the Complaint file from Scribd Inc., an online service and electronic publication board service (EPBS) and MFI website, to Defendant's own computer, smart-phone, etc.; e.g., http://www.scribd.com/doc/56810659/20110202-Complaint-Flores-Clarkson-v-Koster-Et-Al-ECF2-Publish , and http://media.litigation.mockingbirdfilms.com/ .

II. STATEMENT OF FACTS

**1. Defendants Are Engaged In Illegal Activities Internationally and Within This District.**

Defendants operate, promote, facilitate and sell financial instruments and services on their

Internet websites existing under their various Domain Names direct telemarketing and e-mail

marketing acquiring prospect information through intelligence gathering efforts in various

industries that use the same or similar financial instrument and services which are promoted and

marketed by the Defendants.

Defendants are unlicenced broker/solicitor/advisors using direct marketing, solicitation and

sales through telephone solicitations and direct contact from referrals from their direct network of

association-in-fact enterprises and other sources. Through their websites, telemarketing, and

e-mail marketing, Defendants are unlawfully and/or illegally advertising, soliciting, offering for

sale, and selling various legitimate and counterfeit financial instruments and/or financial services

and ponzi scheme creations using fraudulent business addresses, or falsified addresses

legitimately belonging to other companies or corporations.[4] They establish credibility and

perception of legitimacy by falsely associating themselves with legitimate businesses bearing

similar or identical names.

Defendants also use the identities they have stolen from various attorneys whose practices

include escrow attorney services and paymaster (funds distribution) services. Defendants identity

theft[5] of attorney information includes the lawyer's name, state bar license, bank account

---

[4] Complaint, *passim*; also Exs. Vol. 8, Exs. 166-169. (e.g., Exs. Vol. 7: Exs. 133-150.)

[5] See, Ch. 47 18 U.S.C. § 1028A. Aggravated identity theft.

numbers, and other information.[6] Defendants use the stolen identities to fraudulently lend credibility to transactions and documents, falsely fulfill transaction or contract requirements, and use as a mechanism to evade taxes[7] and money laundering scheme.[8]

**2. Defendants Have Purposefully Falsified Their Public Physical Address Data, but Have Provided Valid E-mail Addresses that have been used interactively between the Defendants and Plaintiff in excess of nineteen months**.

As demonstrated below, Defendants have ignored the applicable SEC and FTC regulations and provided false physical addresses information to their domain name registrars in order to avoid liability for their criminal conduct. However, out of necessity, Defendants have provided accurate contact e-mail addresses to their domain name registrars and clients. In addition, Defendants have directly provided Plaintiff's with accurate contact e-mail addresses in connection with their contract. Furthermore, it is necessary for merchants, such as Defendants, who operate entirely online, to provide customers with accurate e-mail addresses by which customers can contact their merchant contacts to ask questions about the merchants' products, and initiate contracts.[9]

The evidence makes it abundantly clear that Defendants intentionally falsified their physical address data in violation of various state, county, and city tax authority rules and regulations as

---

[6] Exs. Vol. 8, Ex. 159 § 9 at 21 (Decl. of David B. Kaplan, Esq.), Ex. 160 § 10 at 24 (Decl. of Hendrickx Toussaint, Esq.), Ex. 161 § 11 at 28 (Decl. of Gary W. Allman, Esq.)

[7] While carrying on of specified unlawful activity certain Defendants violated 26 U.S.C. § 7201 (Evasion) Felony, 26 U.S.C. § 7206(4) (Removal or Concealment with Intent to Defraud) Felony, 26 U.S.C. § 7206(5) (Compromises & Closing Agreements) Felony, 18 U.S.C. § 152(6) (Extortion and Bribery) Felony, 18 U.S.C. § 152(7) Fraudulent Transfer or Concealment) Felony, 18 U.S.C. § 371 (Conspiracy) Felony, 18 U.S.C. § 1001 (False Statements) Felony and 18 U.S.C. 1956 (Laundering of Monetary Instruments) Felony.

[8] See, Exs. Vol. 8: Ex. 151 at 5, Ex. 152 at 9, Ex. 153, Ex. 154 at 13, Ex. 155 at 15, Ex. 157 at 17, Ex. 158 at 18-19, Ex. 159 at 20-22, Ex. 160 at 23-25 and § 20, Ex. 170, annot. ①, at 45.

[9] Extensively documented throughout Complaint and Exhibits Volumes 1-8.

well as a tool of their frauds. Moreover, after conducting diligent investigations, neither of the Plaintiffs' investigations were able to identify valid physical addresses for service of process on Defendants other than those listed in Motion's Table 1. Thus, based on the majority Defendants' provisioning of invalid company postal addresses and Plaintiffs' inability to uncover domicile, company or other physical addresses, Plaintiffs cannot serve certain Defendants by traditional means.

Of further consideration, Plaintiffs' individual and separate conversations with the several Defendants unambiguously bespeaks their intractable position and the mutual commitment of all Defendants' commitment to evade service, as well as their demonstrated well-documented surreptitious behavior, both individually and as members of the Syndicate.[10] Given the Syndicate's efficacious and internal unmediated communication network, exhibited throughout the Defendants' commercial involvement[11] with the Plaintiffs it is highly likely upon any attempt of service upon any single Defendant that all Defendants will be alerted to the service attempt and will entrench deeper and move aggressively conceal of their whereabouts.

Despite falsifying their physical contact address data, Defendants had provided accurate contact e-mail addresses which continue to be reliable means of communications.

### 3. Defendants Rely Solely on Electronic Telecommunications & Internet.

Defendants have structured their website businesses so that the sole means for customers to purchase investment products. The Defendants manufacture some quasi-legitimate financial products, but primarily fabricate fraudulent and counterfeit goods. Defendants process these

---

[10]  POC §III, ¶3.3 at 18; id. FN 23 at 44;  *passim*; also Exs. Vol. 8, Exs. 166-169, pp. 41-44.

[11]  Id., *passim*.

instruments over the Internet and issue financial instruments through orders and execution of

transactions as do many legitimate banks, and financial and trading institutions. Defendants take

and confirm orders solely through their e-mail and facsimile, answer inquiries and provide

notices only via e-mail or facsimile.

---

## III.  ARGUMENT

Plaintiffs incorporate by reference the PLAINTIFFS' ORIGINAL COMPLAINT (the

"Complaint" or "POC" for citatory), EX PARTE VERIFIED MOTIONS TO EXTEND THE

TIME FOR SERVICE and FOR ALTERNATIVE SERVICE, and Exhibit Volumes 1 through

7A (Exhibits 1-150) (Exhibits Volume 8 Exhibits 151- 172, attached hereto under seal) as if fully

copied in their entirety and set forth herein; the allegations and sworn evidence being contained

in all of the paragraphs of the Complaint and Exhibits are hereby re-averred and re-alleged, for

all purposes, and incorporated herein with the same force and effect as if set forth verbatim

herein.

---

### EXTENSION OF TIME FOR SERVICE OF COMPLAINT & SUBPOENA

**1.   Court should extend Service for good cause where such "an extension is mandatory"  … even in the case of excusable neglect causing lack of service extension is "permissive."** *Coleman v. Milwaukee Bd. of School Directors,* 290 F.3d 932 (7th Cir. 2002).

Defendants belong to a large interactive network of association-in-fact enterprises[12] and are

networked through instantaneous communications by e-mail and mobile cell phone and use those

---

[12]   Complaint, passim;

attributes in this case with intent on avoiding summons service present extraordinary circumstances. Defendants have demonstrated a coordinated stratagem to evade service in an attempt to undermine Plaintiffs' required due process of notice as a weapon to delay and evade service.

Pursuant to Fed. R. Civ. P 4(m), service of process must be accomplished within 120 days of filing the complaint, in this case, service is therefore due on or before August 8, 2008. Rule 4(m), however, further states that: "if plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period."  The Seventh Circuit in *Coleman*[13] has noted that "[g]ood cause means a valid reason for delay, <u>such as the defendant's evading service</u>." (emphasis added).[14] Where a plaintiff demonstrates good cause, "an extension is mandatory." *Coleman, supra.* In the case of excusable neglect causing lack of service, an extension is "permissive." *Id.*

In the Fifth Circuit, "good cause" had been equated with excusable neglect.[15] Inadvertence, mistake or ignorance of counsel did not establish good cause.[16] A reasonable basis for noncompliance within the time specified had to be shown.[17]

Presently, however, a finding of good cause is not necessary for a court to extend the time of service. The 1993 Amendments to Fed. R. Civ.  P. 4(m) reads:

> "Time Limit for Service. If service of the summons and complaint is not made
> upon a defendant within 120 days after the filing of the complaint, the court,
> upon motion or on its own initiative after notice to the plaintiff, shall dismiss

---

[13]  *Coleman*, at 934;

[14]  Relief may be justified, for example, if the applicable statute of limitations would bar the refiled action, <u>or if the defendant is evading service</u> or conceals a defect in attempted service. *Panaras v. Liquid Carbonic Industries Corp.*, 94 F.3d 338, 341 (7th Cir. 1996).

[15]  Fed. R. Civ. P. 4(j) was amended in 1993. Most of the former 4(j), including the relevant 120 day language is now found in 4(m).

[16]  *McGinnis v. Shalala*, 2 F.3d 538 (5th Cir. 1993).

[17]  *Parson v. Cole (In re Cole)*, 142 B.R. 140 (Bankr. N.D. Tex. 1992) (citing McDonald)

the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period. This subdivision does not apply to service in a foreign country pursuant to subdivision (f) or (j)(1)."

If there is good cause for the plaintiff's failure to effect service in the prescribed 120 days, and authorizes the court to relieve a plaintiff of the consequences of an application of this subdivision even if there is no good cause shown. Such relief formerly was afforded in some cases, partly in reliance on Fed. R. Civ. P. 6(b). Relief may be justified, for example, if the applicable statute of limitations would bar the re-filed action, or if the defendant(s) is/are evading service or conceal a defect in attempted service.[18] Allowing an extension without a finding of "good cause" is within the discretion of the trial court "even when a plaintiff fails to show good cause."[19]  Certainly, given the extraordinary circumstances presented in the Statement of Facts, Plaintiffs ought be given the time to execute their Reformulation of Service Strategy which is *reasonably calculated* to meet the constitutional standard of constructive notice formulated in Mullane[20] in light of the Rule 4's accommodation expressed in *Espinoza*[21] for extension even if there were no good cause shown.

The Court should especially consider, *inter alia*, the Plaintiffs' continual coordination with the federal agencies also involved in investigations of the Defendants and *the complexity of service requirements and/or whether plaintiff[s] [are] proceeding pro se when determining*

---

[18]  *E.g.*, *Ditkof v. Owens-Illinois, Inc.*, 114 F.R.D. 104 (E.D.Mich. 1987).

[19]  See *Thompson v. Brown*, 91 F.3d 20, 21 (5th Cir. 1996), citing, among other cases, *Petrucelli*, 46 F.3d 1298, 1304 (3rd Cir. 1995).

[20]  *Mullane* at 314.

[21]  *Espinoza v. U.S.*, 52 F.3d 838, 841 (Co. 1995).

*whether permissive extension of time should be granted under Rule 4(m).* [22]

---

### ALTERNATE SERVICE BY E-MAIL, TELEPHONIC FACSIMILE, AND ON PERSON

**2. Traditional methods and orthodoxy means of alterative service fly in the teeth of prevailing technological advances. This progress has altered global social interaction and behavior changing the reality of the past's conventional wisdom and notions of effectiveness, reliability and relevancy affecting fair notice through traditional newspaper notice publication for service.**

FRCP Rule 4 has been reconstructed to insure that Defendants due process rights are

maintained that they may have a fair notice and opportunity to respond. However, situations

often arise, as in the instant case, where domicile or business[23] address are unknown despite

substantial investigation and research being made, and/or where Defendants intentionally,

conscientiously and with deliberate evasive actions. Defendants' actions include attaining

obscurity and concealment of their physical whereabouts through the erection of identification

and location barriers as well as creation of fraudulent business addresses, misleading address

decoys, continual transiency to avoid detection of their person, domiciliary status, and business

locations by investors, state and federal law enforcement, and various state and federal regulatory

agencies.

---

[22]  *Id.* 842

[23]  Some States allow service at recipient's business location if no domiciliary service is possible, especially in the case of California business-based or domiciled Defendants. *Ex.*, Cal. Civil P. Code §415.20. (a) In lieu of personal delivery of a copy of the summons and complaint to the person to be served as specified in Section 416.10, 416.20, 416.30, 416.40, or 416.50, a summons may be served b; leaving a copy of the summons and complaint during usual office hours in his or her office or, if no physical address is known, at his or her usual mailing address, other than a United States Postal Service post office box, with the person who is apparently in charge thereof, and by thereafter mailing a copy of the summons and complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left.

Additionally, it is Defendants' well-calculated purpose to evade lawful civil notice/service by Plaintiffs, whether individual or government. The premeditation of Defendants' devised evasion tactics that began within days following the Complaint filing was realized when it was discovered that previous valid domiciliary addresses were no longer, and certain Defendants speaking in behalf of the others, would not accept or would otherwise avoid service of the summons in order to force dismissal and eventual abandonment of the suit.

These modern day outlaws for the most part, use Internet bastioned operations as hideaways and the Fifth Amendment's Due Process Clause by way of Rule 4 as the *porte coulissante* of their hideout to bar access to physical whereabouts of person, domicile, business operation, funds and bank accounts. Regardless the motive for their avoidance, it is the Constitutional duty and procedural mandate, that the courts insure fair notice and opportunity to respond, no matter how trying on the patience of the courts, service officers, and plaintiffs. To this end Plaintiffs have formulated a service strategy reasonably calculated to exceed the *Mullane* to give substantial due consideration to all Defendants in order to provide adequate notice due to each Defendant's valuable interest in the possible outcomes at issue in this case.

### 3. CONSIDERATION OF ALTERNATE SERVICE

Most discussion and renderings among the Circuits concerning alternative service by electronic/telecommunication means has been argued and analyzed on issues brought pursuant Fed. R. Civ. P. Rule 4(f)(3) where compliancy with either the Hague Convention or foreign countries' internal laws is the predominant concern. Yet out of these rulings and dicta, the courts have derived a rational approaches for the use of electronic service. These are particularly effective in those cases where Defendants taunt, individual and government plaintiffs, service

officers and the courts with *a catch me if you can* and play cat and mouse games to avoid service, and with the intent to insure the determent of their own right to due process.

Perhaps among the more profound and noteworthy reasoning among he courts' renderings has been by the Ninth Circuit in *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007 (9th Cir. 2002) declared that Rule 4 does not create a "hierarchy of preferred methods of service". The appellate court held that the alternative service was proper since the gambling business actively evaded the conventional means of service attempted by Rio. The court held that Rio was not required to attempt every conventional means of service before requesting alternative service. Further, email service was an appropriate alternative as the method of communication preferred by the gambling business. Similarly, if not more exclusively in the instant case, the Defendants are alleged to be engaged in criminal internet fraud, and the solicitation and execution investment ponzi schemes. They are exclusively disposed to use email, telephonic facsimile, and e-facsimile exclusively to conduct the various schemes. USPS mail or commercial carrier delivery is not possible for the majority of Defendants. Plaintiffs have only two verified physical business or domicile addresses; the remaining Defendants refuse to provide domiciliary locations and only their publically published fraudulent physical business addresses can be found. Moreover, Defendants have demonstrated their intent to evade service by previous refusal to accept USPS Certified Mail, refusal to execute waiver of service after having agreed to do so, and have made declarations that the Defendants did not intend to accept service or would evade attempts to be served.

Finally, as noted by the court in *New England Merchants*[24], in allowing service of process

---

[24] *New England Merchants Nat'l Bank v. Iran Power Generation & Transmission Co.*, 495 F. Supp. 73, 80 (S.D.N.Y. 1980)

via telex on Iranian defendants:

> "I am very cognizant of the fact that the procedure which I have ordered in
> these cases has little or no precedent in our jurisprudence. Courts, however,
> cannot be blind to changes and advances in technology. No longer do we live
> in a world where communications are conducted solely by mail carried by fast
> sailing clipper or steam ships. Electronic communication via satellite can and
> does provide instantaneous transmission of notice and information. No longer
> must process be mailed to a defendant's door when he can receive complete
> notice at an electronic terminal inside his very office, even when the door is
> steel and bolted shut. 4" (*Id.* at 81)

Clearly, technology has benefitted businesses, individuals and the judicial system. Its use in this case for service of process is proper, as the Northern District of Texas has apparently deemed use of the Internet as reliable and necessary by its issuance of LR 5.1 e., f., whereby respectively, "Electronic Filing Required. *&c.*"and "Registration as an ECF User Required. *&c.*"

Under the Federal Rules of Civil Procedure, individuals and corporations may be served "following state law for serving a summons … in the state where the district court is located." Fed. R. Civ. P. 4(e)(1), (h)(1)(A) … See also *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) ("'The fundamental requisite of due process of law is the opportunity to be heard.'") (quoting *Grannis v. Ordean*, 234 U.S. 385, 394 (1914)); *Karkoukli's, Inc. v. Dohany*, 409 F.3d 279, 283 (6th Cir. 2005) ("The 'reasonably calculated' standard is now widely accepted as the benchmark for resolving questions about the constitutionality of notice procedures.")). Where a party is missing or unknown, even futile attempts at service may be constitutionally permissible:

> "This Court has not hesitated to approve of resort to publication as a customary
> substitute in another class of cases where it is not reasonably possible or practicable to
> give more adequate warning. Thus it has been recognized that, in the case of persons
> missing or unknown, employment of an indirect and even a probably futile means of
> notification is all that the situation permits and creates no constitutional bar to a final
> decree foreclosing their rights." *Mullane*, 339 U.S. at 317.

The Supreme Court has since "adhered to these principles, balancing the "interest of the State" and "the individual interest sought to be protected by the Fourteenth Amendment." *Ibid.* The focus is on the reasonableness of the balance, and, as Mullane itself made clear, whether a particular method of notice is reasonable depends on the particular circumstances.[25]

### 4.  Newspaper Publication No Longer Effective for Notification.

On reflection of our posteriori knowledge attending to the evolution of information distribution, it is inevitable that the procedural mechanisms, processes of law and jurisprudence generally, must evolve as well, particularly of note here; due process in its function of effective notice. The well-established and social dependency of electronic media as the primary information exchange challenges past truistic formulations of effective application and mechanics of due process, and begs procedural adaptation of the courts within constitutional constructs to reflect the present state of social communications and the evolution of legal epistemological and philosophical development.

As newspaper publications continue to diminish in readership along with their relevance in American society, recent argument have arisen to dispute the effectiveness of restrictions on service by publication. It has been frequently asserting that electronic publication may not only be constitutionally permissible, but a superior means of effecting service. As one commentator suggested that electronic publication "offers a potentially greater likelihood to effect notice than

---

[25]  *Tulsa Professional Collection Services, Inc. v. Pope* 485 U.S. 478, 484, 108 S.Ct. 1340 (1988).

traditional methods of publication."[26]

A paper by law student Lauren A. Rieders, begins her article[27] with:

> "The American newspaper industry is dying. [FN1] Nearly two hundred
> newspapers have turned their last pages in recent years [FN2] due to declining
> advertising and subscription revenue, and the propagation of free information
> on the Internet. [FN3]In 2008, the 100-year-old Christian Science Monitor
> announced that it would cease printing daily and instead, publish its content
> online. [FN4] In 2009, the 146-year-old Seattle Post-Intelligencer became an
> online-only publication. [FN5] Recently, Arthur J. Sulzberger, Jr., the
> chairman and publisher of The New York Times, revealed that the company
> will stop printing the newspaper "'sometime in the future, date TBD.'"[FN6]
> The demise of the newspaper institution is unsettling, not only because
> newspapers have played a paramount role throughout American history, but
> also because their decline may compromise citizens' statutory and
> constitutional rights.[FN7] *Id.* at 1009-1010."

There are obvious examples by common and general knowledge, inter alia, for which

judicial notice should be taken. First, trustworthy publications such as the New York Times, in

the Media and Advertising section, Richard Perez-Peña notes:[28]

> "The two-decade erosion in newspaper circulation is looking more
> like an avalanche, with figures released Monday [Oct 26, 2009]
> showing weekday sales down more than 10 percent since last year,
> depressed by rising Internet readership, price increases, the recession
> and papers intentionally shedding unprofitable circulation."

Perez-Peña goes on to show the decline of other major publication succumbing to Internet use as

---

[26]   Is this hypothetical web directory a viable option? The test espoused by the Supreme Court is that when a
defendant cannot be located, the method chosen to provide notice is constitutionally permissible if "it is not
substantially less likely to bring home notice than other of the feasible and customary substitutes." [citing *Mullane*,
339 U.S. at 315] Electronic publication satisfies this test because it offers a potentially greater likelihood to affect
notice than traditional methods of publication. Christopher B. Woods, *Commercial Law: Determining Repugnancy
in an Electronic Age: Excluded Transactions Under Electronic Writing and Signature Legislation*, 52 Okla. L. Rev.
411 🔴 LexisNexis·

[27]   Lauren A. Rieders, *Old Principles, New Technology, and the Future of Notice in Newspapers*, 38 Hofstra
L. Rev. 1009, 1043 (2010).

[28]   Richard Perez-Peña, *U.S. Newspaper Circulation Falls 10%*, THE NEW YORK TIMES, October 26, 2009.

a means of news and information service.

In The Washington Post article *The accelerating decline of newspapers*[29]  Frank Ahrens

wrote:

> "U.S. newspaper circulation has hit its lowest level in seven decades,
> as papers across the country lost 10.6 percent of their paying readers
> from April through September, compared with a year earlier.

> "The ABC data estimate that 30.4 million Americans now pay to buy
> a newspaper Monday through Saturday, on average, and about 40
> million do so on Sunday. These figures come from 379 of the nation's
> largest newspapers. In 1940, 41.1 million Americans bought a daily
> newspaper, according to the Newspaper Association of America."

More recently and more essential to the issue at hand is an article base on source information

with demographic relevance to the subject Defendants in the instant case. WebSitePro News[30]:

> "Less than half (43%) of Americans say they read a daily newspaper, either
> online or in print almost everyday, according to a new report from Adweek
> Media and Harris Interactive.

> "Nearly three-quarters (72%) of Americans say they read one at least once a
> week while 81 percent read a daily newspaper at least once a month. Ten
> percent say they never read a daily newspaper."

**5.  The Court May Authorize Service via Electronic Mail and Publication The
Constitution does not direct that service be effected in any specific way.**

Constitutional due process considerations require only that the method of service selected be

"reasonably calculated, under all the circumstances, to apprise interested parties of the pendency

---

[29]  Frank Ahrens, *The accelerating decline of newspapers*, THE WASHINGTON POST, Tuesday, October 27,
2009 < http://www.nytimes.com/2009/10/27/business/media/27audit.html >

[30]  Mike Sachoff, *Less Than Half Of Americans Read A Daily Newspaper*, WEBSITEPRO NEWS  [January 13,
2010 at 12:26pm]

of the action and afford them an opportunity to present their objections; the Court in *Rio*, holding

e-mail service of online business defendant was *constitutionally acceptable*."[31] Accordingly,

federal courts have allowed a variety of alternative service methods, including service by e-mail

and publication, where a plaintiff demonstrates the likelihood that the proposed alternative

method of service will notify a defendant of the pendency of the action.[32]

### Service by E-Mail

Numerous federal courts have held that service by e-mail is appropriate and consistent with

Due Process in circumstances where the party to be served does business on the internet and via

e-mail:

> *Chanel, Inc. v. Song Xu*, No. 2:09-cv-02610-cgc, 2010 WL 396357, at *4
> (W.D. Tenn. Jan. 27, 2010) (permitting alternate service by e-mail where the
> physical address provided in connection with the registration of the defendant's
> internet domain name was determined to be invalid, but e-mails sent to the
> defendant were not returned as "undeliverable" and a return receipt was
> received for each e-mail); *Popular Enters., LLC v. Webcom Media Group, Inc.*,
> 225 F.R.D. 560, 562 (E.D. Tenn. 2004) (permitting alternate service by e-mail
> where the plaintiff located several of the defendant's e-mail addresses, and
> e-mails sent to those addresses did not "bounce back"). See also *Rio Props,
> Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1018 (9th Cir. 2002) ("[W]hen faced
> with an international e-business scofflaw, playing hide-and-seek with the
> federal courts, e-mail may be the only means of effective service of process.");
> *Gaffigan v. Does* 1-10, 689 F.Supp.2d 1332, 1342 (S.D. Fla. 2010) ("[I]n this
> case, email was the method of communication used by Defendants in
> confirming orders placed on its websites, and thus, e-mail should be calculated
> to provide Defendants with notice.").

---

[31] *Brookshire Bros., Ltd.* , 2007 WL 1577771, at *1 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). See also *Rio Props.*, 284 F.3d at 1016.

[32] *E.g.*, *Rio Props.*, 284 F.3d at 1017 (holding, "without hesitation," that e-mail service of an online business defendant "was constitutionally acceptable"); *In re Int'l Telemedia Assocs.*, 245 B.R. at 721 ("If any methods of communication can be reasonable calculated to provide a defendant with real notice, surely those communication channels utilized and preferred by the defendant himself must be included among them.").

Plaintiffs argue that service by e-mail is reasonably calculated to give Defendants actual

notice of the proceedings and an opportunity to be heard because Defendants operate their

businesses, the operations of each of the *association-in-fact enterprises*, the communications

within the Syndicate[33] network of *association-in-fact enterprises* using e-mail exclusively (Tele.

Facsimile are primarily used for client credential submission and perception of physical office

presence.  Plaintiffs have identified and verified[34] that Defendants do business under the

following e-mail addresses and facsimile numbers:

| Defendant | Email Address | Fax # |
|---|---|---|
| Scott Anthony Koster | koster.scott@gmail.com | 925-407-8440 |
| | | 763-389-2018 |
| Kerim S. Emre | kerim.emre@gmail.com | 925-407-8440 |
| | | 951-224-6844 |
| | | 951-231-9804 |
| Mark Alan Gelazela a/k/a Mark Zella | gelazela@surfside.net | |
| William C. Reynolds | unknown | unknown |
| Steven E. Woods | altfund07@yahoo.com | |
| Winston Jerome Cook | cookbusservices@gmail.com | 678-802-0901 |
| Tulin Emre | tulinreid@gmail.com | 925-407-8440 |
| | | 951-224-6844 |
| | | 951-231-9804 |
| John T. Childs (see John Doe List) | john@cftpartners.com | 925-407-8440 |
| | KimEriksen@comcast.net | |
| | jchilds3@gmail.com | |
| | jtchilds@gmail.com | |
| Richard Hall | richardhall_ipa@yahoo.com | |
| Christine Wong Sang | cwongsang@gmail.com | |
| Vladimir Pierre-Louise | consultants509@gmail.com | |
| Cook Business Services | ☞ Winston Cook | |
| Idylc Holdings Trust nz | ☞ Mark Gelazela | |
| Idylc Holdings Trust | ☞ Mark Gelazela | |
| LLC (USA) | | |
| Ibalance LLC | ☞ William Chandler | |

---

[33]   See, Exhibits

[34]   Complaint, *passim*; *See*, Motion, Table 1, pp. 3-5.; and, Exs. Vol. 8

| | Reynolds |
|---|---|
| Alicorn Capital | ☞ Scott Koster |
| Management LLC | |
| Berea Inc. | ☞ Richard Hall |
| BMW Majestic LLC | ☞ Steven Woods |

*Compare* available domiciliary locations, Table 1, Motion at 3.

The Court has been shown with evidence confirming that the above listed Defendant received certified e-mail from the Plaintiffs, and that e-mail was delivered successfully.[35] Furthermore, Plaintiffs have secured the use of an e-mail tracking service that follows the progress of an e-mail and reports when the e-mail arrives at its destination address and whether it is opened. Utilizing this service, Plaintiffs sent an e-mail to Defendants' e-mail address, and the tracking system confirmed, with traceable metadata, that it was received and opened. Accordingly, the Court should find that service by e-mail is reasonably calculated to give Defendants actual notice of the proceedings and an opportunity to be heard.

Plaintiffs successfully sent certified e-mail or verifiable e-mail via social-network messaging system, with the exception of Steven Woods,[36] to all Defendants. Plaintiffs' communication between they and the Defendants exceed the veracity of the measure of successful delivery cited by the courts in *Chanel*, *Popular Enters., Rio Props, Inc.* and *Gaffigan* above, as Plaintiff's messages were certified and/or verifiable. Thus, the tested and verified accessible Defendant

---

[35] Motion, Table 1, pp. 3-5.

[36] Plaintiffs have since received a serviceable e-mail address for Steven Woods' through Special Agent John Amberg from the Washington D.C. Office of the United States Securities and Exchange Commission (the "SEC"). The SEC, by John Amberg, Lead Attorney, established an agreed service for Steven Woods and has since successfully served Mr. Woods by e-mail.

email delivery[37] by Plaintiffs, should assure the Court that service would meet Constitutional muster if sent by Certified Email with Proof of Posting Certificate, Return Receipt (proof of downloaded from mail server to mail client) and if needed Ensured Certificate of envelope/message opening which guarantees tacking of the message body to any recipient on any computer or mobile device including *Blackberry* cellular telephones.

### 6. Service by Telephonic Facsimile & E-FAX

Plaintiffs maintain that some Defendants conduct business in part by facsimile, that they have an active fax line through which they receive communications, and that service by facsimile is therefore reasonably calculated to give Defendants actual notice of the proceedings and an opportunity to be heard. Plaintiffs propose that Defendants having facsimile service be additionally served by FAX as supplemental service.

### 7. Reformulation of Service of Complaint and Summons.

Plaintiffs propose the following as means to assure all Defendants effective service meeting if not exceeding the alternate methods of service Supreme Court's that fall in accord with the *Mullane standard*. Further, this reformulation of the service process will best insure almost instantaneous concurrent delivery of Summons, Complaint, and a copy of the Northern District of Texas' Local Rules.

---

[37]     Exs. Vol. 1, Ex. 002 – Cert. USPS Tex. DTPA & 1ST Evidentiary Findings (12/01/2010); also Exs. Vol 8, Ex. 153 — Kerim Emre 2/18/2011 Msg. - Follow up of demand w/Cert. E-Mail Return Receipt, Ex. 154 — Kerim Emre, David Kaplan 4/11/2011 Msg. - IRS Reporting - Follow-up on Demand for Address Information Cert. E-Mail Return, Ex. 162 —Legal 5/2/2011 1:06 PM CST Msg to Tulin Emre, Terra Koster - Dclr Cmplnt Fmt, Ex. 163 — Legal 5/2/2011 1:12 PM CST Msg to Tulin Emre, Terra Koster – Dclr Cmplnt Fmt, and Ex. 164 — Legal 5/2/2011 1:12 PM CST Msg Via CERTIFIED E-MAIL to Scott Koster, Kerim Emre, Winston Cook, Richard Hall, Steven Woods, John Childs, Mark Gelazela, William Reynolds – Dclr Cmplnt Fmt.

The proposed procedure would be the optimal method of service for insuring that Defendants would be given notice before the Syndicate communications network could generate an alert and tactical response that could result in the circumvention of wire/Internet delivery. Service made upon the Defendants shall follow the inherent hierarchal preference expressed by the court[38] as follows:

1) issue service by *certified e-mail*[39] of complaint and summons upon all Defendant's with known operable e-mail addresses,

2) simultaneously issue service by telephonic facsimile of complaint and summons upon all Defendant's with known operable facsimile telephone numbers,

3) simultaneously notify all sheriff departments and private service to initiate the service process of personal delivery of complaint and summons upon all Defendant's for whom domicile addresses are known, or locations which Defendants are likely to reside, by "personal service of written notice" where such can be accomplished; in the alternative, to Defendant registered agents or counsel, if any have been designated.

4) immediately thereafter cause to be published the summons at Internet sites/page-locations where Plaintiffs' had previous published copies of the Plaintiffs' Original Complaint and where Defendants are known or believed to have secured (downloaded) the Complaint, and at those social, commercial, or business websites where Defendants are known to operate, manage, subscribe or have used for their own commercial services promotion and press/media releases.

5) following thereafter Plaintiffs shall retain all transaction receipts and shall file with the

---

[38] "… personal service of written notice within the jurisdiction is the classic form of notice always adequate in any type of proceeding." *Mullane*, 339 U.S. at 313.

[39] Service provider: ReadNotify Email Notary and Timestamping service provides timestamp and certification of email and other documents. < http://www.readnotify.com/readnotify/notary.asp >

Clerk of the Northern District within fifteen days of filing of Court's Order, an affidavit reporting service receipt status of each Defendant including:

- Certified E-mail Proof of Posting Certificate (Verifiable Digital Proof of Posting Certificate showing proof when e-mail was sent and delivered to recipient's server by irrefutable receipt.)

- Certified E-mail Return Receipt (Proof of downloaded from mail server to recipient's mail client.)

- Certified E-mail Ensured Certificate of envelope/message opening which guarantees tacking of the message body to any recipient on any computer or mobile device if applicable.

- Telephonic Facsimile - fax message confirmation report.

6) initiate additional supplemental alternate service by publication at Internet WWW site locations where Defendants are known to have already downloaded as well as Defendants' know social and business website accounts.

7) Clerk Personal Service affidavits from Sheriffs' Departments and Private Service Providers shall be filed pursuant to the Fed. R. Civ. P. with the Clerk and

8) On or before the thirtieth (30th) day following the Order issuance, Plaintiffs shall file a report on service status of all Defendants by affidavit.

---

## IV.  CONCLUSION

---

Plaintiffs' Motions to Extend the Time for Service and for Alternative Service should be granted in order that justice be served, preserve substantive and procedural due process, and to move this case forward without additional delay from evading of service or refiling of this case because service could not be effected.

These requests presented to the Court are well-reasoned, well-supported by established law and precedent and thus stand on all fours. These motions are justified by the foregoing because of the complexity of the case including issue:

1) involving various corroboration with various federal agency investigations,

2) Defendants' historical refusal to accept certified mail, their unified, concerted and hostile declarations and effort to evade service,

3) inability to locate Defendants because of continual untraceable address changes, publication of fraudulent business addresses, failure to provide valid address and contact information with proper tax authorities of various jurisdictions pursuant to prevailing law,

4) Defendants' well coordinated network inter-Syndicate communications,

5) informant information and concern and Plaintiffs' belief that two Defendants intend to flee to Turkey because of ongoing criminal investigations and Plaintiffs suit as well as belief that two other Defendants may flee upon learning the service attempts have been effected,

6) Agent-attorney Hendrickx Toussaint's (representing Berea Inc. and Corporate Officers Richard D. Hall, Christine Wong-Sang & Vladimir Pierre-Louis) reporting of disappearance of and loss of contact with Christine Wong-Sang,

7) the verbal declaration by certain Defendants representing that all Defendant are in accord

with the pursuit of avoiding or otherwise evading service of the Summons.

The conduct of the Defendants can only be construed as an intentional avoidance of service of process in an effort to frustrate the instant suit. Surely, justice demands that a substitute form of service has been formulated in which careful calculation has been made to provide defendants with adequate notice of the pendency and nature of the instant suit.[40] Plaintiff believe such has been proposed to the Court, and

8) the need to coordinate simultaneous and reasonably instantaneous service process in order to effectively serve Defendants while maintaining their due process rights, and preventing a network *qui vive* and a Syndicate network orchestrated alert and tactical response to circumvent the wire facsimile/e-mail, and personal delivery service processes.

---

[40] See, *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 100 S. Ct. 559, 564, 62 L. Ed. 2d 490 (1980).

---

## V.  PRAYER

---

Therefore in consideration of the foregoing, the Plaintiffs pray the Court grant Plaintiffs'

motions and effect in its Order the provisions set forth in § III.7 *Reformulation of Service of*

*Complaint and Summons*, *supra*, and maintain the keeping of the Motions and this Brief under

seal until the fifteenth day following the filing of Court's Order granting extension of time to

serve and alternate service. Plaintiffs pray for any further relief and for any additional provisions

for service the Court may find necessary to accomplish effective substantive and procedural due

process notice.


Respectfully Submitted on August 21, 2011,


s/                                              s/

R. LANCE FLORES                                 VICKI CLARKSON
Lead Attorney

3314 Pleasant Drive                             2416 - 36 Street SW
Dallas, Texas 75227 USA                         Calgary, AB T3E 2Z5
Tel. (Dallas): +1 (214) 272-0349                Tel. (Calgary): +1 403-244-9980
Tel. (Fax): +1 (210) 519-6528                   Tel.  (Fax:) +1 (403) 246-3331
ECF & Case Management E-mail:                    ECF & Case Management E-mail:
LF_legaldept@MockingbirdFilms.com               VC_LegalDept@MockingbirdFilms.com

Attorney for the Plaintiff                      Attorney for the Plaintiff

## VI.  CERTIFICATE OF CONFERENCE BETWEEN COUNSEL

On August 20, 2011, I conferred with Vicki Clarkson, attorney *pro per*, and she approved

the foregoing and agreed to jointly file the Plaintiffs' BRIEF IN SUPPORT OF PLAINTIFFS' MOTIONS

TO EXTEND THE TIME FOR SERVICE AND FOR ALTERNATIVE SERVICE.


s/ _____

R. Lance Flores
Lead Attorney for the Plaintiffs


## VII.  CERTIFICATE OF SERVICE

On August 21, 2011, I electronically submitted the foregoing document with the clerk of

court for the U.S. District Court, Northern District of Texas, using the electronic case filing

system of the court. I hereby certify that I have served all counsel and/or pro se parties of record

electronically or by another manner authorized by Federal rule of Civil Procedure 5 (b)(2).


s/ _____

R. Lance Flores
Lead Attorney for the Plaintiffs

**APPENDIX A** – 2ND VERIFIED DECLARATION OF VICKI CLARKSON



UNITED STATES DISTRICT COURT
*for the*
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

R. Lance Flores, and
Vicki Clarkson,

*Plaintiff*s,

*v.*

Scott Anthony Koster, *et al.*
*Defendants.*

CIVIL ACTION

№ 3:11-cv-00726-M -BH

*before*:
Hon. Barbara M.G. Lynn,
*Presiding Judge*,
Hon. Irma C. Ramirez,
*Referring Judge*.

## 2ND VERIFIED DECLARATION OF VICKI CLARKSON
### and
### Certification of Domestic Business Records

My name is Vicki Clarkson (Clarkson), Plaintiff and I am competent to make this declaration. The facts stated in this declaration are within my personal knowledge. Further, I am a custodian of the records of the citations made therefrom and presented herein in support thereof. Also, it was the regular course of business of my company and in the course of investigation in the matters of this action that I have knowledge of the acts, events, conditions, opinions, analysis, preliminary forensic examination or diagnosis, to make the records or to transmit information of the occurrences to be included in the records. The facts and/or records cited within this declaration were made at, near, or reasonably soon after the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters. The attached records or statements made herein were made or are duplicate original records or exact duplicate copies of the original records or recordings, and

1   from regular electronic Internet communications.

2       On or just prior to May 19, 2011, John Childs retained Charles A. Koss of GagenMcCoy[1]

3   counsel. Mr. Koss stated in his May 19, 2011 letter to each Plaintiff, that Mr. Childs had

4   provided him with a copy of the Complaint and stated:

5           "… I stopped reading the Complaint after 50 pages because at that point I
            still had absolutely no idea as to the nature of your supposed claims."

6

7       Mr. Koss asked that we not contact Mr. Childs, but direct further communications to him.

8   Despite calls to Mr. Koss, he would not acknowledge wether he would accept service of

9   summons, and additionally, after three messages were sent to Mr. Koss asking for a service

10  address for Mr. Childs, neither Koss nor the any attorney from GagenMcCoy would respond.

11      On 06/19/2011 at 12:18 PM MST, Plaintiff R. Lance Flores ("Flores"), sent a weblink to me

12  via Skype of a press release for Interlink Global Messaging(IGM) a d/b/a Defendant identifying

13  Defendant John Childs as a Managing member of IGM.[2]  The location of IGM is 1900 North

14  California Blvd., Walnut Creek, CA 94596 and John Childs can be reached via telephone at 925-

15  482-6084.  This was our first verifiable information that it was John Childs that was affiliated

16  with IGM and not Scott Koster, as Koster had written in an email message to Flores on Monday,

17  August 30, 2011 20:43:32 GMT.[3]  Whereby Koster states:

18           "Right now, John and I have several pending, and delivered financial instruments
            to Richard and his group. In addition to dealing with those clients, we have
19          lending files to follow up on, instrument files not going to the Buy/Sell, two
            separate [sic] BG purchase transactions, and we are starting a new company, to

20

21      [1]  Charles A.  Koss & Office of Gagen, McCoy, McMahon, Koss, Markowitz & Raines
    • 279 Front Street • P.O. Box 218 • Danville  CA  94526-0218 • Tel: +01.925.837.0585 • FAX: +01.925.838.5985
22  • danville@gagenmccoy.com
        [2]  Exs. Vol. 7A, Exhibit 134, Press Release IGM - John Childs Managing Member –PR.com.
23      [3]  Exs.Vol. 3, Exhibit 072 Koster August 30, 2010 20:43:32 - 0500 Msg. - Magnitude of Koster's
    Commercial Enterprise

24

issue SWIFT messages for HedgeFunds, small banks, brokerages, and individuals who do not otherwise have the relationships with their own bank to get items delivered. Its like depository of sorts. In addition to those, we are working with several banks in the Phillipines [sic] to start getting them to issue instruments directly, rather than having an investor town the money."

Plaintiffs found relief in the aforementioned as it provided a business with a corporate address for service of Defendant John Doe 4 (John Childs) n/k/a John T. Childs.[4]  It appeared the Plaintiffs had acquired an opportunity to serve John Childs through his business address.

Immediately I went to my web browser and read the press release and started looking for additional press releases for Interlink Global Messaging. I discovered a press release for Brandon Colker identifying him as an officer of, and a partner in Interlink Global Messaging.[5]

On earlier attempts, I had called the 800-880-1771, a call center individual answered but could not provide any address information or any information on the IGM services. The only function they provided was an answering service to take a name and number and have someone return my call.

On 06/20/2011 I called the IGM telephone number 925-482-6084  and received a voice prompt which indicated that I had reached Sustainable Venture Capital, there was an option to leave a message for three individuals,"Brandon Colker" for "David Killebrew" and for "Alexander Kortesky."  Within a few days, this number was changed to a  "Interlink Global Messaging" call center message answering call response. Clearly my call caused the company alarm that caused the company to change their telephone communication response. Nevertheless, I received no response to my call inquiry.

---

[4]  POA §VI ¶6.9.2.4; *also* "John Childs", *passim*.
[5]  Exs. Vol. 7A, Exhibit 137 - 6/8/2011 Press release IGM - Brandon Colker Managing Member - i-Newswire IGM Offers Worldwide SWIFT Message services_1310131616861.pdf.

1   On June 20, 2011 at 08:59 MST I found a number of companies affiliated with Brandon

2   Colker, David Killebrew and Alexander Kortesky through an Internet search. The Sustainable

3   Venture Capital[6] search revealed Brandon Colker as the CEO along with Alexander Kortesky as

4   the Managing Director. Then by a *Google* search on Brandon Colker, I located the website for

5   CFT Commercial a/k/a Creative Finance Team Inc.[7] whereby both Brandon Colker (CEO) and

6   David Killebrew (President) are found under the management tab of the website. Within the

7   Term of disclosure on the Sustainable Venture Capital website is listed the following companies:

8   CFT Partners, CFT Green, CFT Capital[8] and CFT Commercial.  CFT Capital website has

9   Brandon Colker listed as the CEO along with David Killebrew as the President. When searching

10  CFT Partners on the Internet, in fact the Management Team web page for CFT Capital website

11  appears. CFT Green has no reference to any individual or any address and no telephone number

12  to contact the office, there is a link whereby interested parties can submit a project online.

13  Sustainable Venture Capital, CFT Commercial and CFT Capital states the same address on their

14  respective websites as Interlink Global Messaging of 1900 North California Blvd, Walnut Creek,

15  CA 94596, with the exception that CFT Commercial, CFT Capital and Sustainable Venture

16  Capital all indicate a floor number of eight.

17   In searching the California Secretary of State website the Business Entity Detail for

18  Sustainable Venture Capital Inc.[9] and Creative Finance Team[10] Brandon Colker is listed for both

19

20   [6]  Exs. Vol. 7A, Exhibit 144 -6/29/2011- Sustainable Venture Capital LLC - Web Site

21   [7]  Exs. Vol. 7A, Exhibit 144 - 7/10/2011 - CFT Commercial a/ka/ Creative Finance Team Inc. Website
     [8]  Exs. Vol. 7A, Exhibit 146 - July 10, 2011 - CFT Capital

22   [9]  Exs. Vol. 7A, Exhibit 143 - 17/10/2011- Sustainable Venture Capital LLC - Business Entity Detail
     -California Secretary of State.

23   [10]  Exs. Vol. 7A, Exhibit 141 - 17/10/2011- Creative Finance Team Inc.- Business Entity Detail -California
     Secretary of State.

24

companies as the registered agent for Service of Process. However, Mr. Colker and other company officers have not been diligent in keeping the agent address up to date as required by the Secretary of State as the address for the agent is completely different including the cities in which he resides, whereby one is in Walnut Creek, California and the other is in Alamo, California therefore, it is not possible to verify an exact address for Brandon Colker or these two companies. Corporation Wiki identifies John B Murphy as a managing member of Sustainable Venture Capital LLC.

The company Meridian Capital Mortgage Inc.[11] was found on Corporation Wiki connected to Brandon Colker and Roman Stauchansky. We found Meridian Capital Mortgage Inc. registered with the Secretary of State in Florida.  The registered agent appears as a company Compliance Consulting Corporation.  Compliance Consulting Corporation has a website, however when you call the number you get a voice message to leave a message, regardless if you call day or night, you will not reach a live person.

Lithium Exploration Group came up under the Brandon Colker search and he is listed as a Director for this company. It appears Brandon Colker holds numerous executive positions as CEO for three financial company's, Sustainable Venture Capital, CFT Commercial and CFT Capital, and is a Managing Member and Officer of Interlink Global Messaging as well a Director for Lithium Exploration Group.

After an exhaustive search, the company of Pacific Business Centers was uncovered, this is a company that offers instant offices at 14 California locations, one of which is located in Walnut Creek, CA 1900 North California Blvd. 8th Floor, Walnut Creek CA, 94596.

---

[11]  Exs. Vol. 7A, Exhibit 145 - 06/20/2011 Meridian Capital Mortgage Inc. - State Corp. Registration -Florida Secretary of State

1   On June 20, 2011, I called the Pacific Business Center in Walnut Creek at 925-932-7000 and

2   was referred to, and spoke to Terri Reno the Site Manager for Walnut Creek.  In our

3   conversation, I requested the suite number on the 8th floor of IGM or Interlink Global Messaging

4   which I stated was at this address based on information I received from the IGM website, in

5   which Ms. Reno informed me that none of the individuals nor businesses[13] were tenants of

6   Pacific Business Centers and they [PBC Management LLC a/k/a Pacific Business Centers] were

7   under no contract with anyone by those names at their facility at the Walnut Creek location.  Nor

8   was Sustainable Venture Capital a company that had a contract with Pacific Business Centers.

9   A request was made to Terri Reno via a letter sent in an email[14] from Plaintiffs on June 21,

10  2011 at 9:59 am MST, Plaintiffs Lance Flores and Vicki Clarkson asking Pacific Business

11  Centers to identify each and every entity that may have registered with the Walnut Creek location

12  or the Oakland location of the following companies and individuals: John Childs, John Childs

13  Interlink Global Messaging, Alexander Kortesky, David Colker, a/k/a Brandon David Colker,

14  Sustainable Venture Capital, David R. Killebrew, CFT Commercial, Interlink Global Messaging,

15  Roman Stauchansky – Meridian Capital (Agent Compliance Corporation of Florida), Kerim

16  Emre.  In addition, Plaintiffs asked for verify if fax number 925-407-8440 as a fax service

17  number. Ms. Reno responded on June 21, 2011 at 12:26 pm MST, via email advising that we

18  would need to speak to the Chief Operating Officer Scott Chambers at (925) 932-7000.

19  Plaintiffs R. Lance Flores and Vicki Clarkson called Scott Chambers on June 21, 2011 at

20  1:20 pm MST on June 21, 2011.  We verified that Mr. Chambers had received the letter which

21

22  ───────────────────

[13]   John Childs, John Childs for Interlink Global Messaging, Alexander Kortesky, David Colker, a/k/a
Brandon David Colker, Sustainable Venture Capital, David R. Killebrew, CFT Commercial, Interlink Global
23  Messaging, Roman Stauchansky – Meridian Capital (Agent Compliance Corporation of Florida), Kerim Emre
[14]   2011062115139 ltr.Terri Reno.pdf.

24

1    was sent to Terri Reno earlier that day and we were conducting an investigation for a federal

2    lawsuit, whereby defendants and companies were believed to be fraudulently using the address of

3    Pacific Business Centers to conduct business.

4         In a telephone conference with Mr. Chambers on June 21, 2011, he acknowledged that indeed

5    John Childs, John Childs Interlink Global Messaging, Alexander Kortesky, David Colker, a/k/a

6    Brandon David Colker, Sustainable Venture Capital, David R. Killebrew, CFT Commercial,

7    Interlink Global Messaging, Roman Stauchansky – Meridian Capital (Agent Compliance

8    Corporation of Florida), Kerim Emre were not tenants of Pacific Business Centers and did not

9    occupy space on the "8th floor" as the addresses implied by John Childs Interlink Global

10   Messaging, Alexander Kortesky, David Colker, a/k/a Brandon David Colker, Sustainable

11   Venture Capital, David R. Killebrew, CFT Commercial, Interlink Global Messaging, Roman

12   Stauchansky – Meridian Capital (Agent Compliance Corporation of Florida).

13        On June 22, 2011 Terri Reno of Pacific Business Centers informed me that Pacific Business

14   Centers occupies the entire 8th Floor at 1900 North California Blvd, Walnut Creek, CA.  Pacific

15   Business Centers subleases to Cloud Virtual Offices is a client but Pacific Business Centers is

16   aware of all contracts Cloud Virtual Offices executes. Again, Terri Reno verified that none of the

17   companies we inquired about are listed as an occupant or has any contract of any type with

18   Pacific Business Centers or Cloud Virtual Offices.

19

20   ====================

21

22

23

24

VERIFICATION

5.   I Vicki Clarkson hereby declare, verify and certify under penalty of perjury as provided by 28 U.S.C. § 1746 that I am a Plaintiff in the above-styled and -numbered cause of action, that I have read the foregoing verified DECLARATION, that I am familiar the contents thereof, and that the matters contained in the Declaration are true and correct to my own knowledge, except those matters herein stated to be alleged on information and belief and, as to those matters, I believe them to be true and correct. The sources of my knowledge and information, and the grounds of my belief are the official files and records made by me through investigation through Secretary of State documents in California and Florida, and through telephone and email communications in normal course of business and investigations in these matters.

SUBSCRIBED AND EXECUTED on August 9, 2011 pursuant to 28 U.S.C. § 1746:


s/...................................................................................................

VICKI CLARKSON