BH

In the United States District Court
for the
Northern District of Texas

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
MAR 15 2012
CLERK, U.S. DISTRICT COURT
By ___CTF___
Deputy

R. Lance Flores and Vicki Clarkson, :
  *Plaintiff*

v                               Civil Action Number: S-11CV-726-M

Scott Anthony Koster, et all.   :    3:11-cv-726-M
  *Defendant*

## ANSWER / NOTICE OF INTENTION TO DEFEND

Come now, the defendants Richard D. Hall and Berea, Inc., currently representing himself/themselves, and hereby file this Notice of Intention to Defend and demand strict proof of Plaintiff's claims. In further answer, we deny any and all representations of "fact" pursuant to us as represented in plaintiff's original complaint. As plaintiff's failed to truthfully represent us in any way, we respectfully request to be removed from said complaint as we never even attempted to do business together.

A detailed listing of the fifty plus factual misrepresentations relevant to Richard D. Hall and Berea, Inc. are hereby attached to this Notice and will be kept on file for any/all future needs by said defendants.

*[signature]*
Richard D. Hall/Berea, Inc.
3330 Cumberland Blvd
Atlanta, GA 30039
(404) 919-2197

### Certificate of Service

I HEREBY CERTIFY that on this 14th day of March, 2012, a copy of the foregoing Notice of Intention to Defend was mailed, postage prepaid, to R. Lance Flores, 3314 Pleasant Drive, Dallas, TX 75227 and Vicki Clarkson, 2416-36 Street SW, Calgary, AB T3E 2Z5.

*[signature]*
Richard D. Hall/Berea, Inc.

In the United States District Court
for the
Northern District of Texas

R. Lance Flores and Vicki Clarkson,      :
    *Plaintiff*

V        Civil Action Number: **S–11CV–726–M**

Scott Anthony Koster, et all.        :
    *Defendant*

## FACTUAL MISREPRESENTATIONS REGARDING RICHARD D. HALL, BEREA, INC., and OTHER ALLEGATIONS RELEVANT TO SAID PARTIES

**OVERVIEW:** The only contact between Mr. R. Lance Flores and Richard Hall/Berea, Inc. prior to Mr. Flores and Ms. Clarkson filing a complaint against the above mentioned defendants occurred when Mr. Flores entertained a *single telephone conversation* with Mr. Richard Hall, CEO of Berea, Inc., regarding the possibility of his "Joint Venture Participation" with a proposed representative client, Cook Business Services of Atlanta, GA. At no point in time did Mr. Flores 1) ever produce substantiating documentation to Richard Hall or any member of Berea, Inc. acknowledging any kind of relationship with Cook Business Services; 2) ever provide any personal or corporate information (to include contact information) to Richard Hall or any member of Berea, Inc.; 3) nor did he choose to disclose to Richard Hall or any member of Berea, Inc. that the funds he verbally represented as "his own" during the one telephone conference entertained were, in fact, someone else's. To further, we (Berea, Inc. as a corporate entity and I as a principal decision maker within that entity) declined to do business with Cook Business Services. No contracts (or Agreements) were ever mutually executed. No assets (bank instruments) were ever procured or delivered for transactional (or any other) use. No Buy/Sell transactions for Cook Business Services (or any potentially related entity/individual) were ever even attempted; and no revenues or profits were ever created or realized. Lastly, at no point in time did Richard Hall or any member or direct affiliate of Berea, Inc. ever entertain custodianship of Ms. Clarkson's assets (funds) or property acquired with her assets (bank instruments).

    Neither Richard Hall (as an individual) nor Berea, Inc. (as a corporate entity) had/have *any* affiliation, direct or indirect, with IDYLC, BMW Majestic, or any affiliates. Mr. Flores' misrepresentation of such is nothing more than attempted character assassination and liable. Neither I (as an individual) nor Berea, Inc. (as a corporate entity) has ever had any contact with either of the above mentioned Defendants or any contact with members of those entities, corporate or personal.

    In summary, Mr. Flores is a reasonably well-known "scam artist." He is a failed "revolutionary politician" and make-believe movie writer/producer/director (with absolutely no work to his credit) who stole a movie script from James Post and Shelly Waxman and then took Ms. Clarkson's investment funds (admittedly in excess of $120,000 USD) under false pretenses, and put a significant percentage of her investment funds into his own pocket as a type of "upfront commission." He attempted to "invest" less than $80,000 USD into an offshore investment program and set expectations for Ms. Clarkson that "their

investment" should return millions of dollars a month. When that ludicrous plan failed, he attempted to hide behind another entity requesting to utilize my name and my corporation to recover "perceived losses" due to someone else's failure, all the while doing everything possible to stay as anonymous as possible. He knew and understood that our ability to find out incriminating information about prospective clients in our compliance and due diligence process would ultimately prohibit his involvement and expose the fraud he had already committed against Ms. Clarkson. When we declined to participate, Mr. Flores knew he had two alternatives: 1) admit his fraud and deceit, or 2) take an offensive to shield his wrong-doings for as long as possible and hopefully find someone willing to "give in" to his extortion attempts to compensate Ms. Clarkson (and possibly others) for his miss-management and theft of assets. He is now deceitfully referring to himself as "lead attorney" knowing full well he has never passed the bar anywhere on the planet; and to the best of our knowledge, is being investigated by the FBI for numerous counts of fraud, theft, and attempting to utilize the court system for extortion.

http://www.ripoffreport.com/producers/lance-flores-mocking/lance-flores-mocking-bird-film-349eb.htm

http://www.whoscammedyou.com/scams/5244/LANCE_FLORES_OF

http://insidetradellc.com/forum/fraud-protection/23-blacklist-private-placement-brokers-traders-avoid-19.html

http://insidetradellc.com/forum/members/amergreed.html

http://www.gobignetwork.com/users/lance-flores

http://www.akama.com/company/Mockingbird_Films_aa84b3222226.html

http://books.google.com/books?id=Rb9JEnWVYYAC&pg=PR9&lpg=PR9&dq=Shelly+Waxman+The+Black+Messiah+Murders+movie+script&source=bl&ots=Cd2K5PAuUy&sig=7V_2Q59658xCucWKrnxVT7TKvKs&hl=en&sa=X&ei=g6dgT9-CEcmcgQe7-uigCA&ved=0CCEQ6AEwAA#v=onepage&q=Shelly%20Waxman%20The%20Black%20Messiah%20Murders%20movie%20script&f=false

http://dockets.justia.com/docket/california/cacdce/2:2007cv04871/393203/

http://www.boogieonline.com/revolution/by_name/F/LanceFlores.html

http://www.campaignmoney.com/political/campaigns/lance_flores.asp?cycle=02

**Page 7; 1.2.8**: At no point in time did I (as an individual) or Berea, Inc. (as a corporate entity) supervise the "Alicorn PSP Gold Buy/Sell transaction" or "subscribe investors (specifically R. Lance Flores & Vicki Clarkson) in the profit sharing of the gold purchases and its sale," as the investors (specifically R. Lance Flores and Vicki Clarkson) *never* "financed" a single transaction nor did they *ever* procure (much less deliver) a bank instrument. Similarly, neither I (as an individual) nor Berea, Inc. (as a corporate entity) "initiated the removal of the Plaintiff's one-third interest in that transaction" as there was never a "transaction" to dispute.

**Page 21; 3.4**: There was no "substitute schema" and no revenues were *ever* generated since *no transaction was ever even attempted*. As we declined to move forward and no bank instrument was ever

procured or delivered for us to utilize showing "capacity to pay" in order to legitimize the proposed series of commodity transactions, there is no "mala in sese" as alleged. Similarly, Mr. Flores has deliberately attempted to connect Richard D. Hall/Berea, Inc. to unrelated third parties and is clearly guilty of liable and slander as we (individually and collectively) have absolutely no connection with/to IDYLC or BMW Majestic.

**Page 23; 3.4.2**: IDYLC/BMW and Berea Inc. (to include Richard Hall) have never been "concurrent" in any way. To allege as such is a complete misrepresentation of the facts as they actually exist. We have never defrauded an investor; we have never stolen a single dollar; we have never been involved in any criminal activity; and until now, we have never even been accused of devious or malicious behavior.

**Page 31; 3.4.13**: As I have never entertained so much as a single conversation with "Mr. Emre," I do not know how he could allege "that the first payment ... would occur on August 10, 2010." Similarly, as I/we had yet to be introduced to the plaintiffs (to include the proposed signatory for the JV, Mr. Cook of Cook Business Services) and no asset had been procured to utilize towards our proposed transactions, I do not understand how Mr. Flores and Ms. Clarkson could expect us to create revenue for their benefit out of thin air?

**3.4.14**: Mr. Flores' assertion that during our initial (and only) conference call on September 1, 2010, I somehow "affirmed" his participation is a complete misrepresentation of the facts. Mr. Flores was introduced as a "silent partner" with "no signatory authority" (as he was not the representative client to Berea, Inc.-Mr. Cook of Cook Business Services was). The call that took place on September 1, 2010 was an introductory call. No commitments were made by any entity other than to proceed forward in an attempt to consummate a business relationship.

**3.4.15**: There was no "malice aforethought and willful intent of constructive fraud..." Similarly, there was no fiduciary duty to the plaintiffs as they were *never* Berea's representative clients. I was given no information regarding Mr. Flores and Ms. Clarkson (either personal or professional) until I was served with a summons. Similarly, I was not made aware of Ms. Clarkson's involvement prior to receiving (electronically) a copy of the original complaint. And as no Agreements were ever signed and no asset (Bank Guarantee/SBLC) was ever procured or delivered to transact with, we (Richard Hall and Berea, Inc.) have no responsibility-and therefore no liability-to R. Lance Flores, Vicki Clarkson, or Cook Business Services.

**3.4.16**: At no point in time did I ever lead Mr. Cook of Cook Business Services (the proposed representative client) to believe we had moved forward with the requested series of transactions. Since I/we were transparent with the proposed representative client, how then can we be accused of "intentional," "willful," "deceptive intent"?

**3.4.17**: The plaintiff's assertion that they "have made every effort to resolve this issue" is a blatant lie. At no point in time did the plaintiff's ever contact me (telephone, email, physical delivery of US mail, fax, or otherwise) prior to filing their original complaint. I did, however, receive their proposed "Settlement" after-the-fact, but refused to sign it as it was/is a clear case of extortion. I (as an individual) and Berea, Inc. (as a corporate entity) have done nothing wrong. Neither Mr. Flores nor Ms. Clarkson have been willing to entertain intelligent adult conversations or review the facts as they actually happened, but have insisted on dragging my personal and corporate name through the court system ("through the mud") in a clear attempt to extort money.

**Page 43; 4.7.2**: Mr. Flores failed to disclose how much of Ms. Clarkson's money he put directly into his own (or his direct beneficiary's) pocket. He disclosed that $80,000 USD (or less) was to be utilized to procure assets to transact with; however, he failed to mention the denomination of the sum total Ms. Clarkson invested that went to his direct benefit which he is now attempting to sue against.

**Page 49; 4.12.3**: Mr. Flores' assertion that the defendants caused "irreversible damage to his reputation, and loss of credibility and trust with the 'A' List crews and talent..." is completely unfounded as Mr. Flores has no verifiable history in filmmaking whatsoever. This claim is a total fabrication obviously intended on creating a "backdrop" necessary to gain empathy from uninformed readers and further his/their scheme to extort money.

**Page 81; 4.31.3**: Never once did I/we "promise" or "commit" anything to the plaintiffs. Nobody can make a promise for a third party and hold the third party accountable to it.

**Page 97; 4.41.2**: Mr. Flores' assertion that their plan was to "purchase" a "Hong Kong bank instrument to secure a loan" is misleading at best. His intent was to *lease* a bank instrument and attempt to get a loan against it, thereby defrauding the lender, which is against the law. In order to purchase a bank instrument, one must spend *at least* sixty percent of the face value of the instrument (usually considerably more) which nullifies the necessity to take out a loan against it as every real, accredited lender provides an LTV (loan to value) against bank paper. Mr. Flores is either ignorant or lying.

**Page 104; 4.46.2**: As Mr. Flores was not a representative signatory to any proposed series of transactions, he has no legal ground to stand on to demand private information about a third party entity or persons (Berea, Inc./Richard Hall). I (as a private person) and Berea, Inc. (as a private entity) have every legal right to share information only with those whom we choose to share it if we are not doing business with the person/entity demanding it. However, we were unaware of Mr. Flores's demands as he purposefully declined to share any public or private information about himself and/or his professional entities (to include Ms. Vicki Clarkson) with Berea or any officers of the company, and we had no way of contacting him as a result.

**Page 107; 4.47.2**: To the best of my knowledge, Mr. Koster never funded escrow for the proposed SBLC to be acquired from Success Bullion out of California (or anywhere else for that matter.) Consequently, nothing else ever happened. I do know for a fact that 1) Berea, Inc. and Cook Business Services never mutually executed an Asset Management Agreement, and 2) no attempt to deliver an instrument for Cook Business Services (the proposed representative client Mr. Flores and Ms. Clarkson are claiming 1/3 "ownership" with) ever took place. Additionally, neither Berea, Inc. nor any of its associates have agreed to or accepted a single client from Scott Koster, John Childs, or any known associates since before July of 2010, so it is impossible to make the claim we (collectively) transacted in any other way.

**Page 112; 4.49.1**: I never indicated to Mr. Koster, Mr. Childs, or anyone else that we were "ready to execute... live by the end of the week."

    **4.49.3**: To the best of my knowledge, Winston Cook never executed anything for the financial instrument. I know for a fact Berea's Asset Management Agreement was never mutually executed.

**Page 119; 4.55.1**: Flores' effusive demand for performance was absolutely in "vain" since we (Richard Hall and Berea, Inc.) had already declined moving forward under the situation and circumstances. (The

"partners" in the proposed series of transactions, specifically R. Lance Flores, failed to come to an agreement and understanding as to how they, collectively, would move forward as a single representative client. There was too much "bickering" and immature behavior for me/Berea to agree to work with the partners.)

**4.55.2**: No "verifiable proof" was presented because the assayed gold had *nothing to do* with Cook Business Services or Lance Flores. That gold was from a completely unrelated series of transactions. My best educated guess leads me to believe Mr. Koster shared the results of that assay to establish credibility as to the veracity of Berea's operation to the "partners" in an effort to get them to resolve whatever their internal disputes may have been so we (Berea, Inc.) might reconsider accepting Cook Business Services request to participate in our Managed Buy/Sell operation.

**4.56**: Mr. Flores, in our single conversation early in September, failed to disclose to me and Berea, Inc. that the funds to be contributed for the procurement of a transactionable SBLC of which he intended to benefit were actually *someone else's funds*. Similarly, he failed to disclose how much of the invested funds he had already put into his own pocket. He purposefully never made us aware that the portion of the funds he represented as his own were, in fact, Ms. Vicki Clarkson's. The only relevance that point has at this current time is that Mr. Flores failed to disclose the true history and origin of the funds, which is a "disqualifying offense" when dealing with the wholesale side of international finance, thereby prohibiting involvement. As neither Berea, Inc. (as a corporate entity) nor Richard Hall (as an individual) ever benefited in any way from Ms. Clarkson's error in judgment to give Lance Flores control over her funds (which she admitted to be in excess of $120,000 USD), there is no responsibility or liability here.

**Page 124; 4.60.3**: As neither Mr. Flores nor Ms. Vicki Clarkson was the proposed representative client, we had no obligation to share private and/or confidential information with him/her/them. As he refused to provide any contact details to us, we would have been unable to even if asked. There was no more "Concealment" going on here than there is "concealment" to keep existing client's personal information (to include their Agreements and Contracts with us) private. There was/is absolutely no "Breach of Contract for Nonperformance" as no contract was ever entered into. There was/is no "Breach of Common Law Duty of Good Faith" as neither Lance Flores nor Vicki Clarkson ever requested to participate in our Managed Buy/Sell Operation and neither presented critical information required in order to do so. There were no misrepresentations or willful omissions by Richard Hall or any member of Berea, Inc. And there was no "Fraud by Concealment" as Lance Flores was not "legally due" anything.

**Page 126; 4.61.3**: Mr. Flores' representation that Richard Hall and Berea, Inc. "have chosen a posture of forcing Plaintiffs into a standoff" is completely untruthful. Never once was Richard Hall or Berea, Inc. given an opportunity to defend themselves prior to Mr. Flores filing a complaint. Not once did Mr. Flores or Ms. Vicki Clarkson follow proper protocol and procedure to find the truth and expose it. Similarly, no earnings were ever created, so once again, Mr. Flores has misrepresented himself and the facts as they actually happened.

**4.61.6**: Neither Richard Hall nor Berea, Inc. are "barred by equitable tolling to now respond to Plaintiff's demands or effect their fiduciary duty" for two reasons. 1) We were never given the opportunity to "respond and produce," and 2) We have no fiduciary duty or obligation to Mr. Flores or Ms. Vicki Clarkson as we never contractually obligated ourselves to them or any associated third party and never benefited from Ms. Clarkson's error in judgment to give control of her asset(s) to Mr. Flores.

**Page 128; 4.62.1:** Mr. Flores never gave me an opportunity to "recant" Mr. Koster's statement. I made it clear to Mr. Koster that we (Berea, Inc.) would not move forward as long as there was dissention among the "partners" and as no word was ever provided to me/us that situation ever changed-we declined to move forward. There most certainly was not a "conspiracy" at play as Mr. Flores has alleged.

**4.62.2:** As neither Mr. Flores nor Ms. Clarkson were *ever* real or prospective Berea clients, we have never had a "duty to provide the Plaintiffs" any information. Additionally, as no contract was ever entered into between Cook Business Services (or any affiliated entity/persons) and Berea, there was no "Violation of the Deceptive Trade Practices Act, Interference with and Existing Contract." Similarly, Mr. Flores' and Ms. Clarkson still possess full "ownership and rights to the property known as the 'one-third' interest in the returns (profits) of the Gold Transaction," it's just that their "one-third interest" isn't worth anything as we never went to contract, never attempted to transact on their behalf, and never created profits to give their "one-third interest" any monetary value.

**Page 132; 4.64.1.1:** Mr. Flores fails to mention that he was not Berea's client, and he did not provide to Richard Hall or Berea, Inc. any documentation substantiating his position as "a one-third" owner of anything. As such, we (Richard Hall and Berea, Inc.) fulfilled our fiduciary responsibility to the letter of the law to the proposed signatory for the series of transactions. As neither Mr. Flores nor Ms. Clarkson produced any evidence of their involvement at that time, there was no information "legally due them," and to suggest otherwise is fallacious.

**Page 136; 4.66.2:** As no SBLC was *ever* procured, Mr. Flores' claim as a "beneficiary" is totally erroneous and demonstrates his abhorrent lack of knowledge as it pertains to bank instruments, private finance, and common business practices. As there was no "initial gold transaction," much less a "final Gold Transaction," Mr. Flores was not removed from anything. "The documents do not show Flores participation in the final Gold Transaction" because there were no gold transactions to show anyone's participation in. There was no "conspiracy" to remove Mr. Flores-only a demand to stop acting immaturely and resolve whatever squabbles he was having with his "business partners" before moving forward. As I understood, Mr. Flores could not/would not resolve his differences with Mr. Cook, Mr. Fletcher, and others, so we (Berea, Inc.) walked away. Additionally, as Mr. Flores never provided a single document to substantiate his "would be" one-third position in the proposed series of transactions, neither I nor any officer within Berea had any obligation to keep Mr. Flores (who's email address and phone numbers were intentionally kept "private") abreast of anything related to the "dead deal" any more than I would have an obligation to keep any other undocumented third party abreast.

**Page 137; 4.66.3:** As I intentionally chose not to do business with Cook Business Services and affiliates and failed to benefit (monetarily or otherwise) from the introduction to that group, there is nothing I or Berea, Inc. owes the Plaintiffs. As no contract was ever entered into, no asset (bank instrument) ever procured, and no transactions attempted, there was/is no fiduciary duty, "Concealment, Breach of Contract for Nonperformance, Breach of Common Law Duty of Good Faith… Conspiracy to enact tortious conduct" etc…

**Page 144; 4.70.5:** Mr. Flores has intentionally misrepresented the facts as neither I nor Berea, Inc. was ever "served notice of a Deceptive Trade Practices Act claim against them (us)." As Mr. Flores lied and failed to follow TEX BC. CODE ANN. 17.505: Texas Statutes-Section 17.505: NOTICE; INSPECTION requiring "written notice to the person at least 60 days before filing the suit advising the person in

reasonable detail of the consumer's specific complaint and the amount of economic damages..." and in light of the fact that we have done nothing improper, illegal, or unethical, <u>I request Richard Hall and Berea, Inc. be removed from this complaint without protest.</u>

**Page 147; 5.2.2**: Neither I nor Berea, Inc. ever "made a material representation to Plaintiffs that was false." To further, neither I nor Berea, Inc. ever made a single material representation to the Plaintiffs. I never once indicated to Mr. Flores or Ms. Clarkson that I or Berea could/would "acquire funding for the acquisition funding" for any purpose under any time restraints. Additionally, neither I nor Berea ever agreed to Mr. Flores' terms of doing business...

**Page 149; 5.4.2**: As neither Mr. Flores nor Ms. Clarkson ever produced a single document verifying their position as "one-third owners" of anything and by their own admission had signatory rights over nothing, neither I nor Berea, Inc. ever had an obligation to disclose anything to the Plaintiffs.

**Page 150; 5.5.2/3/5**: Neither I (as an individual) nor Berea, Inc. (as an entity) had or have any knowledge about "the schemes to defraud the Plaintiffs and other PSP partners." Neither I (as an individual) nor Berea, Inc. (as an entity) participated in any "schemes to defraud" anyone. And the Plaintiffs are not entitled to anything from Richard Hall or Berea, Inc. for choosing not to do business with them and/or their associates.

**Pages 157-158; 5.8.2/3/4**: Plaintiffs clearly did not believe we (Richard Hall and Berea, Inc.) had a "formal or informal fiduciary relationship of trust and confidence" as they never once provided 1) documentation substantiating their position in the proposed series of transactions, or 2) critical information required for their direct entry into one or more of our existing programs. As such, they cannot claim that Richard Hall and/or Berea, Inc. have any "fiduciary duties" to them as there is absolutely nothing that shows either of the Plaintiffs had any kind of relationship with Richard Hall and/or Berea, Inc. because no relationship existed. There is no "1) duty of loyalty and utmost good faith; 2) duty of candor... 6) duty of full disclosure." Neither I (as an individual) nor Berea, Inc. (as an entity) ever entertained management duties and responsibilities over any of the Plaintiffs assets, either real or imagined. At no point in time did we ever accept cash or an instrument (in which the Plaintiffs contend they entertained a "one-third interest") for any purpose. We never contractually obligated ourselves to do so either.

**Pages 159-160; 5.9.2/3/4/5/7**: As no contracts were ever entered into, no bank instrument ever procured or delivered, and no transactions attempted, there are no profits for Plaintiffs to "have a right of ownership and entitlement to" as Plaintiffs' "investment funds (along with their partners) were never utilized for "the Gold Transaction." Plaintiffs' "investment funds" (to include the SBLC which was never paid for) were *never* placed in Richard Hall's or Berea, Inc.'s custody. As neither Richard Hall nor Berea, Inc. ever entertained "custody" of Plaintiffs' investment, we never diverted or misappropriated any portion for any reason. On the contrary, Mr. Flores is guilty of taking a portion of Ms. Clarkson's "invested funds" and using those funds for his own personal use. We never participated in depriving the Plaintiffs "of their possessory rights to the investment funds." And Plaintiffs are *not* "entitled to punitive damages" from Richard Hall or Berea, Inc. in-as-much-as we have conducted ourselves to the highest ethical and legal standards.

**Pages 167-168; 5.14.3/6**: Neither I (as an individual) nor Berea Inc. (as an entity) ever "made promises to Plaintiff…" As Plaintiffs' held funds were never utilized to procure an SBLC to transact with, they never "invested" with us. Without an investment, there can be no return on an investment. As we declined moving forward with Plaintiff (and their reported "business partners"), there are/were no "monthly earnings payments" to disperse. Neither I nor Berea ever promised Lance Flores anything; and we most certainly had no part in inducing "Plaintiffs to take and/or forego certain actions." Additionally, as we never entered into a contract (Agreement) with Cook Business Services (or any affiliates), there most certainly was no "breach of contract."

**Pages 168-169; 5.15.2/3/4**: Neither Mr. Flores nor Ms. Clarkson ever provided required documentation to enter into a Berea program as a "principal." They never provided information connecting themselves to Cook Business Services. They never provided a means to contact them directly. So for Mr. Flores to insinuate that Richard Hall and/or Berea Inc. had/have any obligations to him and/or Ms. Clarkson is insidious. Mr. Flores failed to conduct himself "with reasonable care," and he failed to ensure the funds Ms. Clarkson placed with him were managed and monitored with competence, the utmost good faith, fairness, and candor. To further, neither Richard Hall nor Berea, Inc. "have intentionally or recklessly engaged in extreme and outrageous conduct" and to assert otherwise is treacherous. Lastly, I don't doubt that "the Plaintiffs have suffered and continue to suffer severe emotional distress;" but that has nothing to do with Richard Hall and /or Berea, Inc.

**Pages 170-171; 5.16.2/3/4/5**: At no point in time did Richard Hall and/or Berea, Inc. "conspire" with *any* persons, Defendants or not. We have never concealed "material information from the Plaintiffs" nor have we ever provided them "with false or misleading material information." For reasons thoroughly explained already, the Plaintiffs were not legally due any information from Richard Hall and/or Berea Inc. Neither Richard Hall (as an individual) or Berea, Inc. (as an entity) have ever been involved "in that fraud, including wire fraud, and coercion, extortion, forgery, obstruction of justice…" etc. As we have no relationship with the Plaintiffs, as we never entertained custodianship of their assets (or bank instruments their assets allegedly were to have secured), and as we never attempted to transact for their (or any "associated party" related in any way to them) benefit-we have no responsibility and therefore no liability.

**Page 171; 5.17.2**: We are not involved in the buying or selling of any securities and are exempt from Regulation D. Similarly, at no time has Richard Hall or Berea, Inc. "acted as controlling persons within the meaning and contemplation of Section 20 (a) of the Securities Exchange Act of 1934…"

**Page 173; 5.18.2/3/5**: No relationship has ever existed between Richard Hall/Berea, Inc. and the Plaintiffs. We never secured fees of any kind or benefited in any way from the one-time telephone introduction to Mr. Lance Flores. As already reviewed in great detail, neither Richard Hall nor Berea, Inc. ever had any duties to the Plaintiffs nor have I/we "defrauded them."

**Page 176; 6.2.3**: As I was unaware of the "acts and omissions of Koster, Emre, Childs, etc." and never given an opportunity to disapprove or "un-ratify" the "acts and omissions," Mr. Flores cannot legitimately/honestly state "on information and belief" as he purposefully failed to collect any significant, relevant information.

**Page 179; 6.5.3/4/5**: Neither Richard Hall nor Berea, Inc. directly or indirectly "made use of the means and instrumentalities of interstate commerce and extensively used the domestic communications wires in

connection with acts, practices, and courses of business alleged herein within the Northern District of Texas" or anywhere else. Neither Richard Hall nor Berea, Inc. has violated any Sate and/or Federal law. Neither Berea, Inc. nor Richard Hall is "interconnected" to any Defendant.

**Pages 190-191; 6.16.2/3/4**: "Equitable estoppel" does not apply to Richard Hall and/or Berea, Inc. as we were given no reason to believe we needed to speak and no opportunity to do so. I had no idea I had "15 months" to tell someone I had no relationship with and no contact information for that I chose not to move forward with their "business partner" they never proved/documented a Joint Venture Partnership with. And I was never given an opportunity to "recant" statements made by a third party that Mr. Flores has assigned value and validity to egregiously.

*/s/ Richard D. Hall*

Richard D. Hall/Berea, Inc.
3330 Cumberland Blvd
Atlanta, GA 30039
(404) 919-2197



**EXPRESS MAIL**
UNITED STATES POSTAL SERVICE

**Flat Rate Mailing Envelope**
For Domestic and International Use
Visit us at usps.com

UNITED STATES POSTAL SERVICE   1007   $18.95   00090259-02

When used internationally affix customs declarations (PS Form 2976, or 2976A).

EI30537118 2US

**EXPRESS MAIL**
UNITED STATES POSTAL SERVICE

**Addressee Copy**
Label 11-B, March 2004
**Post Office To Addressee**

**DELIVERY (POSTAL USE ONLY)**
Delivery Attempt / Time / AM PM / Employee Signature
Mo. Day
Delivery Attempt / Time / AM PM / Employee Signature
Mo. Day
Delivery Date / Time / AM PM / Employee Signature
Mo. Day

**CUSTOMER USE ONLY**
WAIVER OF SIGNATURE (Domestic Mail Only)
Additional merchandise insurance is void if customer requests waiver of signature. I wish delivery to be made without obtaining signature of addressee or addressee's agent (if delivery employee judges that article can be left in secure location) and authorize that delivery employee's signature constitutes valid proof of delivery.

NO DELIVERY  Weekend  Holiday  Mailer Signature

**ORIGIN (POSTAL SERVICE USE ONLY)**
PO ZIP Code / Day of Delivery / Postage $
Next / 2nd / 2nd Del. Day
Date Accepted / Scheduled Date of Delivery / Return Receipt Fee $
Month Day
Mo. Day Year / Scheduled Time of Delivery / COD Fee / Insurance Fee
Time Accepted AM PM / Noon / 3 PM / $ $
Military / Total Postage & Fees $
Flat Rate ☐ or Weight / 2nd Day / 3rd Day
lbs. ozs. / Int'l Alpha Country Code / Acceptance Emp. Initials

PRESS HARD. YOU ARE MAKING 3 COPIES.

FROM: (PLEASE PRINT) PHONE ( )

TO: (PLEASE PRINT) PHONE ( )

ZIP + 4 (U.S. ADDRESSES ONLY. DO NOT USE FOR FOREIGN POSTAL CODES.)
+
FOR INTERNATIONAL DESTINATIONS, WRITE COUNTRY NAME BELOW.

**FOR PICKUP OR TRACKING**
Visit www.usps.com
Call 1-800-222-1811
EMS

RECEIVED MAR 15 2012 CLERK, U.S. DISTRICT COURT NORTHERN DISTRICT OF TEXAS

Visit us at usps.com

EP13F

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Express Mail® shipments. Misuse may be a violation of federal law. This packaging is not for resale. EP13F © U.S. Postal Service; Oct. 2008. All rights reserved.

packaging products have been ded Cradle to Cradle Certification℠ eir ecologically-intelligent design. ore information go to .com/usps
Cradle to Cradle Certified℠ is a certification mark of MBDC.