**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| R. LANCE FLORES, § | |
| VICKI CLARKSON, § | |
|     Plaintiffs, § | |
| vs. § | Civil No. 3:11-CV-0726-M-BH |
| § | |
| SCOTT ANTHONY KOSTER, et. al, § | |
|     Defendants. § | Referred to U.S. Magistrate Judge |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION**

Pursuant to *Special Order 3-251*, this case has been automatically referred for pretrial management, including the determination of non-dispositive motions and issuance of findings of fact and recommendations on dispositive motions. Before the Court are *pro se* Defendant William Chandler Reynolds' filing received September 19, 2012 (doc. 203), which is liberally construed as a motion to dismiss and alternative motion for more definite statement, and his supplemental motion to dismiss, filed October 24, 2012 (doc. 215). Based on the relevant filings and applicable law, the motion to dismiss should be **GRANTED**, and the alternative motion for more definite statement and supplemental motion to dismiss should be **DENIED as moot**.

**I. BACKGROUND**

On April 8, 2011, R. Lance Flores (Flores) and Vicki Clarkson (Clarkson) (collectively Plaintiffs) filed this *pro se* action against fourteen defendants (including William Chandler Reynolds (Defendant)) and eight nominal defendants based on an alleged fraudulent investment scheme. (*See* doc. 1.) On March 19, 2012, Plaintiffs filed an amended complaint adding numerous defendants and alleging different causes of action. (*See* doc. 36.) The amended complaint alleged claims arising under the federal Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 et seq., and state law claims of fraud in the inducement, common law fraud, negligent

misrepresentation and deceit, fraud by nondisclosure, aiding and abetting fraud, breach of confidential or special relationship, promissory estoppel, intentional infliction of emotional distress, and civil conspiracy.[1] (*Id*.) They seek $220,000,000 in actual damages,[2] and ask that the amount be trebled under RICO for a total award of $660,000,000. (*Id*. at 187, 190-191, 217, 219.)[3] The amended complaint further alleges joint and several liability. (*Id*. at 12, 219, 221.)

Flores is a resident of Dallas, Texas; Clarkson is a resident of Calgary, Alberta, Canada. (Doc. 36 at 8.) Defendant is alleged to be a resident of Palm Beach Gardens, Florida. (*Id*. at 18.) He is one of several named "RICO" defendants and is alleged to be a managing member of IDLYC Holdings Trust LLC, USA (IDLYC USA) and the registered agent for service of process for IBalance, LLC (IBalance). (*Id*.)

Plaintiffs' claims arise out of their investment in two financial platforms in 2009-2010. The IDLYC/BMW platform allegedly involved the lease of a bank guarantee on a standby letter of credit. (*Id*. at 41.) Plaintiffs' investment entitled them to a share of the anticipated weekly profit stream from the bank guarantee. (*Id*. at 63, 73, 84, 87.) The investment never paid out. (*Id*. at 41, 101.) After Plaintiffs complained, Scott Koster of Alicorn Capital Management, LLC (also defendants) offered to shift Plaintiffs' investment into a gold buy/sell program, the Alicorn-Hall-Berea-CBS enterprise. (*Id*. at 43-44, 92-93, 99-101, 105, 107-121.) Plaintiffs elected to do so, but

---

[1] Plaintiffs' amended complaint makes numerous references to a case now pending in the Central District of California. *SEC v. Wilde*, 8:11-CV-315-DOC-AWJ, involving several of the named defendants in this case. (Doc. 36 at 8 n. 2, 11 & n. 11, 48 n. 22, 60.) Whether the two suits are related, and to what extent, is unclear from the record.

[2] The source of Plaintiffs' alleged damages is not readily apparent from the amended complaint; the damages sought are not necessarily limited to the sum of Plaintiffs' investment. (*See* doc. 36.)

[3] Citations refer to the cm/ecf system page number at the top of each page rather than the page numbers at the bottom of each filing.

that investment never paid out as promised either. (*Id*. at 41, 45, 101, 126.) Although the 222-page amended complaint provides very specific factual details about the involvement of the other defendants, Defendant's involvement in the alleged IDLYC/BMW scheme is described only in general terms.[4] (*Id*. at 41.) Plaintiffs do not allege that Defendant solicited their investment, contacted them in any fashion, or was otherwise involved in the details of their investment transaction, in Texas or otherwise. (*See* doc. 36.) Nor do they allege that Defendant has any contacts associated with the IDLYC/BMW scheme in Texas, or any other contacts with Texas. (*Id*.)

On September 19, 2012 and October 24, 2012, Defendant moved to dismiss the action against him for lack of personal jurisdiction, insufficient service of process, and failure to state a claim. (*See* doc. 52.) The motions are ripe for consideration.

## II. RULE 12(b)(2) MOTION

Defendant moves to dismiss under FED. R. CIV. P. 12(b)(2). (*See* doc. 203.) He contends that he lacks the requisite minimum contacts with Texas to support the exercise of personal jurisdiction over him. (*Id*. at 1-2.)

The exercise of personal jurisdiction over a non-resident defendant is proper when: (1) the non-resident is subject to jurisdiction under the laws of the state in which the court sits; and (2) the exercise of jurisdiction over the defendant comports with the due process requirements of the United

---

[4] The only specific factual allegation that references Defendant is in paragraph 4.1.4, which states, in relevant part: "The said transactional funding platform and related financial instruments were created within an association-in-fact business enterprises in which Defendants Woods, Linder, Gelazela, *Reynolds*, Koster, Childs, Emre and others including Melissa Shapiro presented security for investment funds based on a stated written bank guarantee on a Deutsche Bank SBLC instrument and monetization of that SBLC through HSBC Hong Kong. Koster's Alicorn Capital Management LLC company was used as a funneling tool overseen by Koster to move funds into the IDLYC/BMW investment platform. The Defendants used a complex network of their companies and other indirect network resources to accomplish their theft of money, frauds and criminal activities." (*See* doc. 36 at 41 (*emphasis added*).) Plaintiffs do not allege that Defendant was involved in the gold buy/sell enterprise. (*See generally* doc. 36.)

3

States Constitution. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-74 (1985); *Panda Brandywine Corp. v. Potomac Electric Power Co.*, 253 F.3d 865, 867 (5th Cir. 2001) (per curiam). A defendant is amenable to the personal jurisdiction of a federal court sitting in diversity to the same extent as a state court in the same forum. *Pedelahore v. Astropark, Inc.*, 745 F.2d 346, 347 (5th Cir. 1984); *see also* Fed. R. Civ. P. 4(e)(1), 4(h)(1). Because the Texas long-arm statute authorizes the exercise of personal jurisdiction to the extent allowed by the due process clause of the Fourteenth Amendment, only the federal due process inquiry need be addressed. *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999); TEX. CIV. PRAC. & REM. CODE ANN. § 17.041 *et seq*. (West 2012). "Exercising personal jurisdiction over a nonresident defendant is compatible with due process when (1) that defendant has purposefully availed [itself] of the benefits and protections of the forum state by establishing minimum contacts with the forum state, and (2) the exercise of jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice." *Panda Brandywine Corp.*, 253 F.3d at 867.

The "minimum contacts" prong of the analysis is satisfied when a defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). The nonresident defendant's availment must be such that the defendant "should reasonably anticipate being haled into court" in the forum state. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). There are two types of minimum contacts: those giving rise to general jurisdiction and those giving rise to specific jurisdiction. *Clemens v. McNamee*, 615 F.3d 374, 378 (5th Cir. 2010), *cert. denied*, 131 S. Ct. 3091 (2011). General jurisdiction exists where the nonresident's contacts with the forum state are unrelated to the cause of action but are "continuous and

4

systematic." *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 (1984); *Alpine View Co. Ltd. v. Atlas Copso AB*, 205 F.3d 208, 215 (5th Cir. 2000). Specific jurisdiction is appropriate where the nonresident has purposefully directed its activities at the forum state and the "litigation results from alleged injuries that arise out of or relate to those activities." *Alpine View Co. Ltd.*, 205 F.3d at 215 (quoting *Burger King Corp.*, 471 U.S. at 472) (internal quotation marks omitted). The plaintiff has the burden of establishing minimum contacts. *WNS, Inc. v. Farrow*, 884 F.2d 200, 203 (5th Cir. 1989).

Where, as here, the court does not conduct an evidentiary hearing, the plaintiff need only make a *prima facie* showing in support of jurisdiction. *Central Freight Lines Inc. v. APA Transport Corp.*, 322 F.3d 376, 381 (5th Cir. 2003). The Court must accept that party's uncontroverted factual allegations as true and resolve all factual disputes in its favor. *Alpine View Co., Ltd.*, 205 F.3d at 215 (citing *Felch v. Transportes Lar-Mex SA de CV*, 92 F.3d 320, 326 (5th Cir. 1996). It is not required "to credit conclusory allegations, even if uncontroverted," however. *Panda Brandywine Corp.*, 253 F.3d at 869.

**A.     General Jurisdiction**

A court may assert general jurisdiction over a nonresident defendant when the defendant's contacts are substantial, continuous, and systematic. *Central Freight Lines Inc.*, 322 F.3d at 381 (citing *Helicopteros Nactionales*, 466 U.S. at 414). As recently reaffirmed by the Supreme Court, these contacts must be "so 'continuous and systematic' as to render [the defendant] essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, ___ U.S. ___, 131 S. Ct. 2846, 2851 (2011). The Fifth Circuit has "consistently imposed the high standard set by the Supreme Court when ruling on general jurisdiction issues." *Johnston v. Multidata Systems Int'l.*

5

*Corp.*, 523 F.3d 602, 610-11 (5th Cir. 2008). In determining whether general jurisdiction exists, courts do not examine each of a non-resident's contacts with the forum state in isolation from one another, but examine them "*in toto* to determine whether they constitute the kind of continuous and systematic contacts required to satisfy due process." *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 779 (5th Cir. 1986).

Defendant is a resident of Florida. (Doc. 36 at 18.) The amended complaint contains no allegations regarding any contacts by Defendant with Texas–either personally or as an agent for IDLYC.[5] Instead, it includes only conclusory allegations that all the defendants should be considered the alter ego of the businesses with which they are affiliated, and that defendants willfully availed themselves of the benefits and protections of the forum state through "selective and continuous and substantial communications." (*Id*. at 30.) Because the amended complaint does not allege facts showing that Defendant had contacts with Texas that were so continuous and systematic as to deem him "at home" in the forum state," Plaintiffs have not made a *prima facie* showing of general jurisdiction as to Defendant. *Goodyear Dunlop Tires*, 131 S. Ct. at 2581.

### B. Specific Jurisdiction

As discussed, specific jurisdiction over a non-resident defendant exists when a plaintiff's claims against the defendant arise out of or relate to activities that the defendant purposefully directed at the forum state. *Burger King Corp.*, 471 U.S. at 472. Specific jurisdiction is a claim-specific inquiry and requires less pervasive contacts with the forum state than general jurisdiction. *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009).

---

[5] Plaintiffs may not rely on the other defendants' contacts with the forum state for purposes of determining whether personal jurisdiction over Defendant exists; aggregation of contacts is improper. *See Rush v. Savchuk*, 444 U.S. 320, 332 (1980) (holding that it is improper to aggregate the forum contacts of defendant parties in deciding whether to exercise personal jurisdiction).

Plaintiffs assert claims against Defendant under RICO as well as state law claims for fraud in the inducement, common law fraud, negligent misrepresentation and deceit, fraud by nondisclosure, aiding and abetting fraud, breach of confidential or special relationship, promissory estoppel, intentional infliction of emotional distress, and civil conspiracy. (*See* doc. 36.) The amended complaint includes extensive specific factual allegations, but it alleges *no* relevant contacts with Texas by Defendant in connection with either the IDLYC/BMW investment or the substituted investment in the ALICORN-HALL-BEREA-CBS transaction.[6] (Doc. 36 at 18, 40-41, 70 n. 53, 110 n. 99, 148 n. 145, 170 n. 178, 172, 199-201, 208-10.) Because Plaintiffs have not alleged that Defendant purposefully directed his activities at the forum state, they cannot establish minimum contacts related to their RICO or state law tort claims against him. *Burger King Corp.*, 471 U.S. at 472; *Alpine View Co. Ltd.*, 205 F.3d at 215. Plaintiffs have not made a *prima facie* showing of specific jurisdiction as to Defendant.[7]

## C.   RICO's Nationwide Service of Process Provision

Plaintiffs also rely on RICO's nationwide service of process provision, 18 U.S.C. § 1965(b), to confer personal jurisdiction over Defendant. (Docs. 36 at 29 & n. 7; 203 at 27-31.) A party residing in another district may be brought before the court under this statute if: (1) a plaintiff can show that at least one defendant is subject to personal jurisdiction within the forum pursuant to §

---

[6] Neither plaintiff Flores' contacts with the forum state nor those of other defendants are relevant. *See Stuart v. Spademan*, 772 F.2d 1185, 1190 (5th Cir. 1985) ("The unilateral activity of those who claim some relationship with a nonresident defendant, however, cannot satisfy the requirement of contact with the forum state."); *Rush*, 444 U.S. at 332 (holding that it is improper to aggregate the forum contacts of defendant parties in deciding whether to exercise personal jurisdiction).

[7] Since Defendant does not have the requisite minimum contacts with Texas, it is unnecessary to consider whether exercising jurisdiction would comport with traditional notions of fair play and substantial justice. *See Southern Copper, Inc. v. Specialloy, Inc.*, No. 00-50408, 2000 WL 1910176, at *4 (5th Cir. Dec. 22, 2000) (per curiam); *Felch*, 92 F.3d at 329 n. 20.

1965(a); and (2) "the ends of justice require" that other parties be joined in the case. 18 U.S.C. § 1965(a)-(b); see also *Allstate Ins. Co. v. Plambeck*, No. 3:08-CV-0388-M, 2009 WL 347423, at *3 (N.D. Tex. Feb. 11, 2009); *see also Rolls-Royce Corp. v. Heros, Inc.*, 576 F. Supp.2d 765, 778-79 (N.D. Tex. 2008); *Oblio Telecom, Inc. v. Patel*, No. 3:08-CV-0279-L, 2008 WL 4936488, at *4 (N.D. Tex. Nov. 18, 2008).

If a plaintiff satisfies the conditions necessary to invoke § 1965(b), then a district court may exercise personal jurisdiction over a nonresident defendant so long as the defendant has minimum contacts with the United States. *Busch v. Buchman, Buchman & O'Brien, Law Firm*, 11 F.3d 1255, 1258 (5th Cir. 1994) (addressing the intersection of a nationwide service of process provision with minimum contacts analysis in context of Securities Exchange Act of 1934); *see also Bellaire General Hosp. v. Blue Cross Blue Shield of Michigan*, 97 F.3d 822, 825-26 (5th Cir. 1996) (analyzing the same issue in the context of ERISA). Furthermore, when a defendant resides in the United States, the exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice. *Id*.

The "ends of justice" provision was intended to "enable plaintiffs to bring *all* members of a nationwide RICO conspiracy before a court in a single trial." *United Power Assn., Inc. v. L.K. Comstock & Co.*, No. 3-89 CIV 766, 1992 WL 402906, at *3 (D. Minn. Oct. 27, 1992) (quoting *Butchers Union*, 788 F.2d at 539) (internal quotation marks omitted) (emphasis added); *see also Southmark Prime Plus, L.P. v. Falzone*, 768 F. Supp. 487, 491-92 (D. Del. 1991); *Miller Brewing Co. v. Landau*, 616 F. Supp. 1285, 1290 (E.D. Wis. 1985). The Court has already considered and rejected Plaintiffs' argument that § 1965(b) is sufficient to confer personal jurisdiction on all defendants in this case. (*See* docs. 287, 332.) After employing the multi-factor analysis recognized

8

by district courts in Texas, it concluded that the ends of justice did *not* "require that other parties residing in any other district be brought before the court" when they were not otherwise subject to personal jurisdiction in this context.[8]  (*Id.*)  Likewise, the Plaintiffs have not satisfied their burden of showing that the ends of justice warrant forcing this Defendant to mount a defense in a distant forum where he is not otherwise subject to personal jurisdiction.[9]

### III.  RECOMMENDATION

The motion to dismiss should be **GRANTED**, and the alternative motion for more definite statement and supplemental motion to dismiss should be **DENIED as moot**.

**SO RECOMMENDED**, this 3rd day of May, 2013.

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　IRMA CARRILLO RAMIREZ
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE

---

[8] Recognized factors include: (1) the existence of another forum where all defendants would be subject to personal jurisdiction; (2) whether most defendants are amenable to jurisdiction within the chosen forum; (3) the likelihood and extent of delay in the event of transfer to another forum; (4) possible prejudice to the plaintiff if required to litigate in a distant forum; (5) the inconvenience to defendants of litigating in the plaintiff's chosen forum; (6) judicial economy; and (7) any allegations of a nationwide RICO conspiracy.  *See Hewlett-Packard Co. v. Byd: Sign, Inc.*, No. 6:05-CV-456, 2006 WL 2822151, at *9-10 (E.D. Tex. Sept. 28, 2006); *United Power Ass'n, Inc. v. L.K. Comstock & Co.*, No. 3-89 CIV 766, 1992 WL 402906, at *3 (D. Minn. Oct. 27, 1992); *Southmark Prime Plus, L.P. v. Falzone*, 768 F. Supp. 487, 491-92 (D. Del. 1991); *Miller Brewing Co. v. Landau*, 616 F. Supp. 1285, 1290 (E.D. Wis. 1985)

[9] Because dismissal for lack of personal jurisdiction has been recommended, it is unnecessary to reach Defendant's arguments regarding insufficient service of process and failure to state a claim.

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE