IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| R. LANCE FLORES, | § | |
| VICKI CLARKSON, | § | |
| Plaintiffs, | § | |
| vs. | § | Civil No. 3:11-CV-0726-M-BH |
| | § | |
| SCOTT ANTHONY KOSTER, et. al, | § | |
| Defendants. | § | Referred to U.S. Magistrate Judge |

## FINDINGS, CONCLUSIONS AND RECOMMENDATION

Pursuant to *Special Order 3-251*, this case has been automatically referred for pretrial management, including the determination of non-dispositive motions and issuance of findings of fact and recommendations on dispositive motions. Before the Court is *Defendant John Childs' Motion for Summary Judgment*, filed September 19, 2012 (doc. 299). Based on the relevant filings and applicable law, the motion should be **GRANTED in part** and **DENIED in part**.

## I. BACKGROUND

On April 8, 2011, R. Lance Flores (Flores) and Vicki Clarkson (Clarkson) (collectively Plaintiffs) filed this *pro se* action against fourteen defendants and eight nominal defendants based on an alleged fraudulent investment scheme. (*See* doc. 1.) On March 19, 2012, Plaintiffs filed an amended complaint adding numerous defendants (including John Childs (Defendant)) and alleging different causes of action. (*See* doc. 36.) The amended complaint alleged claims arising under the federal Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 et seq., and state law claims of fraud in the inducement, common law fraud, negligent misrepresentation and deceit, fraud by nondisclosure, aiding and abetting fraud, breach of confidential or special

relationship, promissory estoppel, intentional infliction of emotional distress, and civil conspiracy.[1] (*Id.*) They seek $220,000,000 in actual damages,[2] and ask that the amount be trebled under RICO for a total award of $660,000,000. (*Id.* at 187, 190-191, 217, 219.)[3] The amended complaint further alleges joint and several liability. (*Id.* at 12, 219, 221.)

Plaintiffs' claims arise out of an investment in two financial platforms in 2009-2010. (*Id.* at 41, 43-44.) The IDLYC/BMW platform allegedly involved the lease of a bank guarantee on a standby letter of credit (SBLC). (*Id.* at 41.) Flores negotiated the terms of the investment and Clarkson provided the funding for the investment on behalf of Flores' film company, Mockingbird Films International. (Docs. 1-3 at 7-11; 1-4 at 3-4.) Plaintiffs' investment entitled them to a share of the anticipated weekly profit stream from the bank guarantee. (*Id.* at 63, 73, 84, 87.) The investment never paid out. (*Id.* at 41,101.) After Plaintiffs complained, Scott Koster of Alicorn Capital Management, LLC (also defendants) offered to shift Plaintiffs' investment into a gold buy/sell program, the Alicorn-Hall-Berea-CBS enterprise. (*Id.* at 43-44, 92-93, 99-101, 105, 107-121.) Plaintiffs elected to do so, as evidenced by Flores' execution of a Partnership Termination and Wind-Up Agreement on August 16, 2010. (Doc. 1-9 at 16-19.) That investment never paid out as promised, and by December 1, 2010, Flores issued a Deceptive Trade Practices Notice regarding both the IDLYC/BMW and the substituted gold buy/sell transactions. (Docs. 1-3 41, 45, 101, 126;

---

[1] Plaintiffs' amended complaint makes numerous references to a case now pending in the Central District of California. *SEC v. Wilde*, 8:11-CV-315-DOC-AWJ, involving several of the named defendants in this case. (Doc. 36 at 8 n. 2, 11 & n. 11, 48 n. 22, 60.) Whether the two suits are related, and to what extent, is unclear from the record.

[2] The source of Plaintiffs' alleged damages is not readily apparent from the amended complaint; the damages sought are not necessarily limited to the sum of Plaintiffs' investment. (*See* doc. 36.)

[3] Citations refer to the cm/ecf system page number at the top of each page rather than the page numbers at the bottom of each filing.

1-9 at5 32, 37, 40.)

According to Defendant's affidavit, he introduced Flores to Koster as a potential investor in the IDLYC/BMW profit sharing agreement. (Doc. 301 at 2.) After the investment was funded, Koster wired Defendant $40,000 (which represented finders fees of $15,000 each for Defendant and Kerim S. Emre (another defendant), and an extra $10,000 that Defendant returned to Flores). (*Id*. at 3.) Defendant also engaged in certain e-mail correspondence with Flores and Koster relating to the anticipated investment payout and associated delays. (*Id*.) In connection with the Alicorn-Hall-Berea-CBS enterprise, Defendant offered to arrange for the issuance of a SBLC once Koster provided the escrow funding; however, Koster never did so and the transaction was not consummated. (Docs. 1-6 at 46-47; 301 at 3.) In response to Plaintiffs' continued complaints, Defendant offered to return his $15,000 fee in exchange for the execution of an agreement releasing him from all liability relating to either of the failed investment platforms. (Doc. 301 at 3.) Plaintiffs acquiesced to Defendant's offer, and Flores prepared a release agreement. (*Id*.) After the agreement was executed on December 20, 2010, Defendant returned his finder's commission to Flores. (*Id*.)

Defendant filed an answer and counterclaim on February 11, 2013. (*See* doc. 297.) He denied liability and asserted several affirmative defenses, including release and waiver. (*Id*. at 45.) He also asserted a claim against Plaintiff pursuant to §§ 9.011, 9.012(c) and 10.001 of the TEXAS CIVIL PRACTICE AND REMEDIES CODE. (*Id*. at 50-55.) Plaintiffs did not respond to Defendant's counterclaim. Defendant moved for summary judgment (*see* doc. 299), and the motion is ripe for consideration.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the pleadings and evidence on file show that no

genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id*. The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In a case in which "the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original).

Once the movant makes this showing, the non-movant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324. To carry this burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-movant must show that the evidence is sufficient to support a resolution of the factual issue in her favor. *Anderson*, 477 U.S. at 249.

While all of the evidence must be viewed in a light most favorable to the motion's opponent, *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)), neither conclusory allegations nor unsubstantiated assertions satisfy the non-movant's summary judgment burden, *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). "The party opposing summary

judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). "The parties may satisfy their respective burdens by 'citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials.'" *Rooters v. State Farm Lloyds*, 428 F. App'x 441, 445 (5th Cir. 2011) (per curiam) (citing Fed. R. Civ. P. 56(c)(1)).

### III. PLAINTIFF'S CLAIMS

Defendant moves for summary judgment on all of Plaintiff's claims based on the signed release agreement between the parties.

Federal law governs the release of federal claims. *See Ingram Corp. v. J. Ray McDermott & Co.*, 698 F.2d 1295, 1316 n. 27 (5th Cir. 1983) (construing a release of antitrust and RICO claims); *Kessell v. Mega Life & Health Ins. Co.*, No. 3:03-CV-2788N, 2005 WL 383700, * (N.D. Tex. Feb. 15, 2005). State law controls the construction and enforceability of releases of state law claims. *See Smith v. Amedisys Inc.*, 298 F.3d 434, (5th Cir. 2002) (applying state law in determining the validity of a release of plaintiff's state law claims). Because federal common law and Texas state law rely on general principles of contract to determine the validity of a release, the same standard applies to a release of federal and state law claims. *See Kessell*, 2005 WL 383700, *(federal claims); *Loy v. Kuykendall*, 347 S.W.2d 726, 728 (Tex. Civ. App.–San Antonio 1961, writ ref'd n.r.e.) (state claims).

A release is a writing that extinguishes a duty or obligation owed to one party to the release immediately or upon the occurrence of a specific condition. *In re Endeavour Highrise, L.P.*, 432

5

B.R. 583, 651-52 (Bankr. S.D. Tex. 2010) (citing RESTATEMENT (SECOND) OF CONTRACTS § 284 (1981). It "is a bar to any right of action growing out of the matter discharged. It conclusively estops the releasor from making further efforts to enforce the claim released." *Hart v. Traders & Gen. Ins. Co.*, 189 S.W.2d 493, 494 (Tex. 1945); *see also Tobbon v. State Farm Mut. Auto. Ins. Co.*, 616 S.W.2d 243, 245 (Tex. Civ. App.–San Antonio 1981, writ ref'd n.r.e.) ("A settlement agreement and release . . . is a complete bar to any later action based on the matters included in the settlement agreement and covered by the release.").

To be enforceable, the parties to a release must agree to all material terms. *Guidry v. Halliburton Geophysical Servs., Inc.*, 976 F.2d 938, 940 (5th Cir. 1992); *Murtagh v. Univ. Computing Co.*, 490 F.2d 810, 815-16 (5th Cir. 1974) (citing *Missouri, K & T. Ry. Co. v. Texas*, 275 S.W. 673 (Tex. Civ. App.–Austin 1925, writ ref'd); *Mutual Fire & Auto. Ins. Co. v. Green*, 235 S.W.2d 739 (Tex. Civ. App.–Forth Worth 1950, no writ)); *United States v. Williams*, 6:06CV524, 2008 WL 5572655, *5 (E.D. Tex. Oct. 31, 2008), *adopted by* 2008 WL 5424090 (Dec. 30, 2008). Moreover, the agreement must be supported by consideration. *In re Endeavor Highrise, L.P.*, 432 B.R. at 651-52 (citing *Southwest Fire & Cas. Co. v. Atkins*, 346 S.W.2d 892, 897 (Tex. Civ. App–Houston 1961, no writ) ("The law is well settled that a release is not binding unless supported by a consideration."). "The existence of an antecedent bona fide dispute between the parties concerning the subject matter of a subsequent settlement agreement is sufficient legal consideration for creation of an enforceable agreement." *Murtagh*, 490 F.2d at 815. The party asserting a release of claims bears the burden of proving: 1) an agreement; 2) supported by consideration; and a breach of the release. *Id.*; *see also Jarallah v. Sodexo, Inc.*, 452 F. App'x 465, 467-68 (5th Cir. 2011) (same); *Williams v. Phillips Petroleum Co.*, 23 F.3d 930, 935 (5th Cir. 1994).

A release may be set aside on the same bases as any contract, e.g., failure of consideration, mutual mistake, fraud, or duress. *See Williams*, 23 F.3d at 935; *McClellan v. Boehmer*, 700 S.W.2d 687, 693-94 (Tex. App.–Corpus Christi 1985); *Tobbon*, 616 S.W.2d at 245. However, the party opposing enforcement of a release–valid on its face– bears the burden of pleading and proving grounds to set the agreement aside. *Williams*, 23 F.3d at 935; *Tobbon*, 616 S.W.2d at 245; *see also Schmaltz v. Walder*, 566 S.W.2d 81, 84 (Tex. Civ. App.–Corpus Christi 1978, writ ref'd n.r.e.). The enforceability of a release is a question of law. *In re Endeavor Highrise*, 432 B.R. at 652 (citing *Mickens v. Longhorn DFW Moving, Inc.*, 264 S.W.3d 875, 880 (Tex. App.–Dallas 2008, pet. denied); *see also Montanaro v. Montanaro*, 946 S.W.2d 428, 430 (Tex. App.–Corpus Christi 1997, no writ).

To meet its summary judgment burden, Defendant points to evidence of the release that Flores signed. (Doc. 301 at 21.) The contract recites plaintiff Flores' intention to release Defendant "from all manner of action, debts, accounts, bonds, contracts, claims and demands for or by reason of any damage, loss or injury to person and property which has been or may be sustained as a consequence" of certain dealings between the parties in exchange for Defendant's payment of $15,000.00. (*Id*.) The first numbered paragraph of the states that Plaintiffs' claim stemmed from Defendant's role in introducing Mockingbird and Flores to Koster and Alicorn; the second numbered paragraph acknowledges that Defendant "was not at anytime [sic] engaged in the origination, formation, management or administration of the original or any subordinate instrument construction management or administration of the IDLYC/Alicorn/Koster MTN transaction." (*Id*.) The release also states that it is "given with the express intention of effecting the extinguishment of certain obligations", and that it was being executed by Flores on behalf of "Mockingbird Films International

7

LLC, and all interested parties having engaged in the purchase of the guarantee above identified and having full authority to execute the aforementioned stipulations of Release." (*Id.*) Notably, the release was drafted and executed by Flores on behalf of Plaintiffs on December 20, 2010, shortly after Flores issued his notice of deceptive trade practices on December 1, 2010–which recounted alleged misconduct arising out of both the IDLYC/BMW and gold buy/sell platforms. (Docs. 1-9 at 32, 37, 40; 301 at 21.) Defendant also submitted evidence of the wire transfer showing payment to "Lance and Vicki Flores" in the amount of $15,000.00. (Doc. 301 at 23.) This evidence is sufficient to meet Defendant's initial summary judgment burden to demonstrate the existence of a settlement agreement and release of claims, and the payment of valuable consideration in the amount of $15,000.00 to settle a bona fide dispute between the parties. (*Id.*)

Plaintiffs' response incorporates numerous documents and cites to their verified complaint.[4] (*See* doc. 334 at 2-3.) They point to no evidence to refute Defendant's showing that they agreed to release their claims against him, that the Plaintiffs' claims in this lawsuit are covered by the terms of the December 20, 2011 release, or that there is adequate consideration for the release of Plaintiffs' claims, however. (*See* doc. 334.) They did not allege, much less submit evidence of, circumstances that would render the release unenforceable. *See Anderson*, 477 U.S. at 249, 106 S. Ct. 2505; *Celotex*, 477 U.S. at 324, 106 S. Ct. 2548. In fact, Plaintiffs' response does not address the release issue *at all*. Because Plaintiffs have not identified the existence of a genuine issue of fact regarding their release of their claims against Defendant, Defendant's motion for summary judgment as to each

---

[4] Plaintiffs also submitted affidavits in opposition to Defendant's motion. (*See* docs. 335; 336.) The affidavits were stricken because they were not filed in accordance with the local rules. (*See* doc. 337.) Even if considered, however, the affidavits would not affect the recommendation because they do not address the release.

of Plaintiffs' claims against him should be **GRANTED**.[5] *See Hart*, 189 S.W.2d at 494; *Tobbon*, 616 S.W.2d at 245.

## IV. DEFENDANT'S COUNTERCLAIM

Defendant also moves for summary judgment on his counterclaim under TEX. CIV. PRAC. & REM. CODE §§ 9.011, 9.012(c) and 10.001.

Chapters 9 and 10 of the Texas Civil Practice and Remedies Code govern frivolous pleadings and claims, and sanctions for such pleadings and motions. *See McCaig v. Wells Fargo Bank (Texas), N.A.*, No. 2:11-CV-351, 2013 WL 3229663, *2 (S.D. Tex. June 25, 2013); *Peavy v. New Times, Inc.*, No. CA 3-96-CV-547-R, 1998 WL 548705, *2 (N.D. Tex. Aug. 20, 1998). The Fifth Circuit has not addressed whether a claim based on §§ 9.011, 9.012(c) and 10.001 may be brought in federal court. However, district courts in Texas have concluded that the sanctions provisions in the Texas Code address are procedural in nature and have no application in federal court. In *Peavy*, the court noted that:

> the sanctions provisions in the Texas Code are not the appropriate source of law for this particular issue. In federal court, federal law applies to procedural matters, not state law. Rule 11 of the Federal Rules of Civil Procedure addresses sanctions for frivolous claims. Matters covered by the Federal Rules of Civil Procedure are almost by definition procedural, and therefore should be applied instead of state law. Indeed the Fifth Circuit has specifically ruled that Rule 11 is procedural in nature, not substantive.

1998 WL 548705, at *2 (citing *Port Drum Co. v. Umphrey*, 852 F.2d 148, 150 (5th Cir. 1988) (other citations omitted); *see also McCaig*, 2013 WL 3229663, at *2 ("Defendant's counterclaim for Plaintiffs' alleged groundless suit is, contrary to *Erie*, based upon Texas law."). In a related vein,

---

[5] Defendant raises several additional bases for summary judgment. Because the release issue is dispositive, it is unnecessary to consider the additional grounds raised in Defendant's motion.

9

district courts in this circuit–and within this district–have held that Rule 11 does not create a cause of action which may be raised as a counterclaim. *See Hooker v. Dallas Indep. Sch. Dist.*, 3:09-CV-1289-D, 2010 WL 4025877, *10 (N.D. Tex. Oct. 13, 2010); *Lenoir v. Tannehill*, 660 F. Supp. 42, 44 (S.D. Miss. 1986) ("[I]t appears clearly beyond question that Rule 11 by its express terms only permits an attorney procedurally to raise a claim for sanctions through a motion."); *Jackson v. Betts Indus., Inc.*, No. 3:93-CV-1185-D, slip op. at 7-8 (N.D. Tex. Nov. 5, 1993) (Fitzwater, J.) (dismissing counterclaim *sua sponte* without prejudice to the filing of a proper Rule 11 motion).[6] Defendant's counterclaim under TEX. CIV. PRAC. & REM. CODE §§ 9.011, 9.012(c) and 10.001 is not cognizable under federal procedural law. *McCaig*, 2013 WL 3229663 at *2; *Peavy,* 1998 WL 548705 at *2. His motion for summary judgment on his counterclaim should be **DENIED**, and the counterclaim should be **DISMISSED** with prejudice.

## V. RECOMMENDATION

The motion for summary judgment should be **GRANTED in part** and **DENIED in part**. Plaintiffs' claims against Defendant should be **DISMISSED with prejudice**, and Defendant's counterclaim under TEX. CIV. PRAC. & REM. CODE §§ 9.011, 9.012(c) and 10.001 should be **DISMISSED with prejudice**.

---

[6] Courts in other jurisdictions have reached the same conclusion. *See SE Property Holdings, LLC v. Rookery III*, No. 11-0629-WS-B, 2013 WL 69030, *16 (S.D. Ala. Jan. 3, 2013); *Stark v. Gov't Accounting Solutions, Inc.*, No. 2:07-CV-755, 2008 WL 4683289, *2 (S.D. Ohio Oct. 22, 2008); *Wapato Heritage, LLC v. Evans*, No. CV-07-314-EFS, 2008 WL 4148871, *1 (E.D. Wash. Aug. 29, 2008); *Pettrey v. Enter. Title Agency, Inc.*, No. 1:05-CV-1504, 2006 WL 3342633, *2 (N.D. Ohio Nov. 17, 2006); *Sosland Publ'g. Co. v. Mulholland*, No. 87 CIV. 8432 (MBM), 1988 WL 87335, *2 (S.D.N.Y. Aug. 17, 1988); *United States v. Articles of Drug*, 601 F. Supp. 392, 398 (D. Neb. 1984).

**SO RECOMMENDED**, this 12th day of August, 2013.

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE